06 CV 5199

JUDGE COTE

Charles D. Schmerler (CS0953)
Mark A. Robertson (MR8906)
Joann Kahn (JK8671)
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, NY  10103
Telephone:  212-318-3000
Telecopier:  212-318-3400
*Attorneys for Plaintiffs*



RECEIVED
JUL 10 2006
U.S.D.C. S. ... ..
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

GVEC RESOURCE, INC. and PRIVATE EQUITY
MANAGEMENT GROUP, INC.,

              Plaintiffs,

        - against -

STRATEGY INTERNATIONAL INSURANCE GROUP,
INC., STRATEGY INVESTMENTS, LLC,
STRATEGY RESORT FINANCING, INC.,
JOHN HAMILTON and MICHAEL KELLY,

              Defendants.

------------------------------------------------------------x

____Civ.____

**COMPLAINT**

     Plaintiffs GVEC Resource, Inc. ("GVECR") and Private Equity Management Group, Inc.

("PEMG") (together, "plaintiffs") as and for their Complaint against defendants, allege as

follows.

## INTRODUCTION

     1. Plaintiffs bring this action for money damages and declaratory and injunctive relief in

connection with defendants' intentional breaches of various agreements between and among the

parties related to GVECR's loan of over twenty million dollars to defendant Strategy

Investments, LLC ("SILLC").  Defendants SILLC, Strategy International Insurance Group, Inc.

("SIIG") and Strategy Resort Financing, Inc. ("SRFI") have taken steps which jeopardize the

collateral which secures the millions of dollars owed by defendants to GVECR and PEMG.

- 1 -

Plaintiffs seek monetary damages and interim relief in order to protect the collateral and to recover the monies owed to them.

## JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(3).  Complete diversity of citizenship exists because the controversy is between citizens of different states and has additional parties which are citizens of foreign countries.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

3.  Venue in this Court is proper because defendants SILLC, SIIG and SRFI entered into a loan agreement with plaintiffs dated as of January 26, 2006, which states that

> all actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this agreement shall be litigated, at [GVEC's] sole discretion and election, in courts having a situs within the State of New York.

All claims arise directly or indirectly from the loan agreement dated as of January 26, 2006, or otherwise are connected with, arise out of, or are related to the loan agreement dated as of January 26, 2006.  In addition, all defendants including defendants John Hamilton and Michael Kelly entered into an Escrow Agreement dated as of April 4, 2006, in which

> [e]ach of the parties ... consents to the exclusive jurisdiction or [sic] the courts of the State of New York located in Borough of Manhattan and the Federal District Court for the Southern District of New York.

The claims against defendants John Hamilton and Michael Kelly arise from the Escrow Agreement.

## THE PARTIES

4.  Plaintiff GVEC Resource, Inc. ("GVECR") is a business company organized under the laws of the British Virgin Islands with its principal place of business in the British Virgin Islands.

- 2 -

5. Plaintiff Private Equity Management Group, Inc. ("PEMG") is a corporation organized under the laws of Nevada with its principal place of business in California.

6. Defendant Strategy Investments, LLC ("SILLC") is upon information and belief a Florida limited liability company with its principal place of business in Canada.

7. Defendant Strategy International Insurance Group, Inc. ("SIIG") is incorporated under the laws of Texas with its principal place of business in the province of Ontario, Canada. Upon information and belief, SIIG owns 100 percent of the membership interest in SILLC.

8. Defendant Strategy Resort Financing, Inc. ("SRFI") is, upon information and belief, a foreign corporation organized under the laws of Canada with its principal place of business in the Province of Ontario, Canada. Upon information and belief, SRFI is a wholly owned subsidiary of SIIG.

9. Defendant Michael Kelly ("Kelly") is an individual residing, upon information and belief, in the State of New Jersey and Freeport, Bahamas.

10. Defendant John Hamilton ("Hamilton") is an individual residing, upon information and belief, in Canada. Upon information and belief, Hamilton is a controlling shareholder of defendant SIIG.

## FACTS

**A.      The Financing Of The Shell Time Share Development Projects**

11. Shell Vacations, LLC ("Shell") is one of the largest independent developers of time share real estate projects in the United States. Among other projects, Shell is developing time share condominium real estate projects in Napa Valley, California; Waikiki, Hawaii; and British Columbia, Canada. These three real estate developments are sometimes identified in this Complaint as the "Shell Project." As to each of these projects, a Shell affiliate sought and obtained financing through a company affiliated with SIIG, SILLC and SRFI. With respect to

the Waikiki and Napa properties, the lender is Strategy Resort Financing, Inc. (Florida) ("Strategy Resort").  With respect to the British Columbia project, the lender is Hamsor, Inc.[1] The borrower in each case is a Shell affiliate – SVC–Napa, SVC–Waikiki and SVC-Mountainside (collectively, the "SVC Borrowers").  Each has executed and delivered a first mortgage and first note with respect to the relevant property.

12. Upon information and belief, Strategy Resort and Hamsor were unable to fulfill their loan commitments on the projects.  Accordingly, Strategy Resort secured financing from Veritas High Yield Arbitrage Funds LLC and certain of its affiliates (together, "Veritas").  The Veritas name is used in at least three of the funds sponsored by Argent Funds Group, a group of funds based in Greenwich, Connecticut, which are affiliated with McMahan Securities.

13. Upon information and belief, the various Veritas entities made a loan payment or payments to Strategy Resort in the total amount of approximately $56 million, and in turn received interest only notes.

14. Although Veritas apparently transferred the sum of approximately $56 million to Strategy Resort, upon information and belief, Strategy Resort and Hamsor were not obligated contractually to make the full amount of those funds immediately available to the SVC Borrowers.  Instead, Strategy Resort and Hamsor were obligated to make loans to SVC–Waikiki and SVC-Mountainside collectively in the amount of $32.5 million, and Strategy Resort was obligated to lend to SVC-Napa the amount of $23.5 million.  The SVC-Napa loan was a revolving line of credit, which obligated Strategy Resort to make loans in tranches, with no more than $23.5 million outstanding at any one time.  In turn, as monies were received from the buyers of the time shares, a certain percentage was to be allocated to paying down the outstanding

---

[1]  Plaintiffs understand that Hamsor is an affiliate of the Strategy companies.

balance of the Strategy Resort loan. Strategy Resort then would become obligated to loan additional amounts to SVC-Napa.

15. SILLC entered into second promissory notes with the SVC Borrowers with respect to each of the three properties, and agreed to loan them the total amount of $16,400,000.00 to finance the Shell Project.

### B.   The Loan Agreement between GVECR and SILLC

16. In the second half of 2005, SIIG and SILLC approached GVECR and PEMG about the possibility of GVECR providing capital for the Shell Project. SIIG and SILLC stated that SILLC required the funds to meet its loan obligations under the second notes to the SVC Borrowers. SIIG and SILLC proposed that GVECR act as a lender to SILLC, which in turn would loan the funds for the Shell Project.

17. By a Loan Agreement dated as of January 26, 2006, GVEC agreed to loan to SILLC $29 million (the "Loan Agreement"). The loan was "secured by ... the guarantees of the Guarantors signing this [Loan] Agreement." SRFI and SIIG signed the Loan Agreement as guarantors.

18. The Loan Agreement provides further that SILLC shall:

> . . . offer a surety bond or insurance policy to further secure the re-payment of the funds borrowed plus payment of the third year's interest in the amount of US$31,900,000 and, [SILLC] has provided [GVECR] with assurances for the placement of such bond in a financial performance bond in the amount of US$31,900,000 or direct endorsement of the policy to an insurance or financial guarantee company as security for the repayment of such funds set forth below.

19. The Loan Agreement states that the insurance policy that SILLC was to provide shall:

> Secur[e] the re-payment of the principal borrowed plus payment of the third year's interest in the total amount of US$31,900,000

- 5 -

directly underwritten by Strategy Insurance Limited, a Barbados insurance company ("SIL"), with 100% of the obligation of SIL retroceded to an insurance or financial guarantee company, rated at least "A" or better, by way of direct endorsement of the Insurance Policy, or by the pledge of negotiable securities which are rated no less than "A" and reasonably acceptable to [GVECR].

20. The Loan Agreement prohibited certain borrowed funds from being distributed until and unless, among other requirements, the following were in place:

(3)      Financial Guarantee:

a.      Payment Bond from Builder's and Contractor's Assurance Co., Ltd ("Builders") (draft in the form to be issued at closing): or

b.      Insurance Policy from Strategy Insurance Limited ("SIL") (draft in the form to be issued at closing); [and]

(4)      Reinsurance

a.      Reinsurance Cover Attachment (draft in the form to be issued at closing); or

b.      Direct Endorsement (draft in the form to be issued at closing).

21. The Loan Agreement contains similar provisions stating that the remaining borrowed funds could not be distributed until the following were in place:

(1)      Financial Guarantee

(a)      Bond

   i.      Payment Bond (original executed)

   ii.      Reinsurance Cover Attachment (original executed); or

(b)      Policy

   i.      Policy (original executed);

   ii.      Direct endorsement [name of insurance or financial guarantee company].

22. The bond, insurance policy and reinsurance required for the disbursement of the funds from escrow to SILLC are identified in this Complaint as the "Financial Guarantee."

23. The Loan Agreement sets forth the following Events of Default, among others:

> (i) the failure to pay any payment as and when required under this Agreement or the Note (after the expiration of any applicable grace period); (ii) failure to perform or observe any covenant or agreement contained herein and such failure shall continue for 30 days after receipt of written notice thereof from the other party, or if cure is not possible within such time, the failure to diligently pursue a cure and cure within a reasonable time; ... [or] (iv) there shall be an event of default under any other Loan Document....

24. The Loan Agreement defines "Loan Documents" as meaning (i) the Loan Agreement itself; (ii) the $29 million promissory note dated January 26, 2006, executed by SILLC in favor of GVECR and guaranteed by SIIG and SRFI (the "Note") (described below); (iii) the Member Interest Pledge Agreement; and (iv) a Management Agreement dated as of January 26, 2006, between SILLC and PEMG with SIIG initialing each page (the "Management Agreement") (described below).  The parties entered into two Member Interest Pledge Agreements dated as of January 26, 2006 -- an Interim Pledge Agreement dated as of January 26, 2006, by and between GVECR and SIIG with SILLC initialing each page (the "Interim Pledge Agreement") (described below), and a Management Fee Pledge Agreement, dated as of January 26, 2006, by and between SIIG and PEMG and initialed on each page by SILLC (the "Management Fee Pledge Agreement") (described below).  A default under any of those documents constitutes an Event of Default under the Loan Agreement.

25. The Loan Agreement provides further that the defendants shall be liable for all reasonable costs and attorneys' fees incurred by GVECR related to collecting the loan amount, to protecting the liens and security interests, or to any proceeding connected with the Loan Documents.

26. Upon an Event of Default under the Loan Agreement,

> (i) [GVECR] may, at its option and without notice … declare the Loan immediately due and payable; and (ii) [GVECR] may pursue all rights and remedies available under the Assignments, the Surety Bond and all other Loan Documents.

27. Defendants are in default under the Note, the Interim Pledge Agreement, the Management Agreement, and the Management Fee Pledge Agreement as described below. GVECR has declared the Loan immediately due and payable.

**C.     The Promissory Note**

28. In connection with the Loan Agreement, SILLC made a $29 million Promissory Note in favor of GVECR, dated January 29, 2006.   SIIG and SRFI signed the Note as guarantors. Under the Note, SILLC:

> promises to pay to the order of [GVECR] … in lawful money of the United States of America, and in immediately available funds, the sum of U.S. twenty-nine million dollars (U.S. $29,000,000.00), together with all other amounts added thereto pursuant to this Note … together with interest thereon as set forth in this Note and the Loan Agreement between [SILLC] and [GVECR] and guaranteed by [SRFI] and [SIIG] dated January 24, 2006.

29. An "Event of Default" under the Note is defined in relevant part as:

> (i)      the failure to pay any payment as and when required under this Note;
>
> (ii)     default under any of the Loan Documents….

30. The term "Loan Documents" in the Promissory Note includes the "[Promissory] Note, the Loan Agreement, … [and] all other documents securing the Loan or executed in connection therewith…."   Accordingly, any default under the Interim Pledge Agreement, the Management Agreement or the Management Fee Pledge Agreement constitutes an Event of Default under the Promissory Note.

31. The Promissory Note provides that upon the occurrence of an Event of Default,

[GVECR] may, at its option and without notice (such notice being expressly waived), declare the Loan immediately due and payable; (ii) the Default Interest Rate shall be in effect from that time forward, and (iii) [GVECR] may pursue all rights and remedies available under the Assignments and all other Loan Documents. [GVECR's] rights, remedies, and powers, as provided in this Note and the other Loan Documents, are cumulative and concurrent, and may be pursued singly, successively, or together against [SILLC], any guarantor of the Loan or the Loan Agreement, the security described in the Loan Documents, and all other security given at any time to secure the payment of this Noted, all at the discretion of [GVECR].

32. The Promissory Note further provides that SILLC shall be liable for all reasonable costs and attorneys' fees incurred by GVECR:

If any attorney is engaged: (i) to collect the Loan or any sums due under the Loan Documents ... (iii) to protect the liens and security interests of any of the Loan Documents ... (v) to represent [GVECR] in any other proceedings whatsoever in connection with any of the Loan Documents....

33. Events of Default have occurred under the Loan Agreement and the Interim Pledge Agreement as a consequence of defendants' failure to deliver to GVECR both the Financial Guarantee and the Member Interest in SILLC. Those Events of Default create an Event of Default under the Promissory Note. SILLC and SIIG also are in default under the Management Agreement and the Management Fee Pledge Agreement. As a result, GVECR has declared the loan immediately due and payable.

**D.     The Interim Pledge Agreement**

34. As the date of the closing of the Loan Agreement approached, defendants advised GVECR and PEMG that they had been unable to obtain the Financial Guarantee. Defendants, by John Hamilton and Sandro Sordi, represented to GVECR and PEMG that they could easily obtain the required Financial Guarantee from a company with a rating of at least "A" because

entities in the defendants' corporate family owned two seats at Lloyd's of London.  Defendants knew or should have known that those statements were false.

35. In reasonable reliance upon defendants' statements, GVECR and PEMG agreed to extend the date by which defendants were required to provide the Financial Guarantee on the condition that SILLC and SIIG provide GVECR and PEMG with additional collateral in the event that the SILLC, SIIG and SRFI failed to obtain the Financial Guarantee.

36. In an Interim Pledge Agreement, dated as of January 26, 2006, between SIIG and GVECR and initialed on each page by SILLC, SIIG pledged "one hundred percent (100%) of the membership interest in SILLC" (the "Member Interest").

37. The Interim Pledge Agreement provided that "SILLC shall obtain the Financial Guarantee on or before May 21, 2006."  The agreement further provided as follows::

> As collateral security until the Financial Guarantee is obtained by
> SILLC for the repayment of the Loan Agreement by SILLC and
> which Loan Agreement is guaranteed by [SIIG] ... [SIIG] hereby
> pledges, assigns and grants to [GVECR] a first priority security
> interest in and to the Member Interest, together with all additional
> membership interests in SILLC acquired by the [SIIG] after the
> date hereof ("Additional Member Interest"), and the certificates, if
> any, representing Member Interest and Additional Member Interest
> ("Pledged Member Interest").

38. In the event that the defendants failed to provide the Financial Guarantee by May 31, 2006, or if an event of default under the Loan Agreement or any of the other loan documents occurred, the Interim Pledge Agreement provides that GVECR may:

> upon prior written notice to [SIIG], transfer the Pledged Member
> Interest and the Additional Member Interest in to the name of
> [GVECR] or a designee thereof, and [GVECR] or such designee
> shall thereafter have ownership of the Pledged Member Interest
> and the Additional Member Interest, as the case may be, together
> with all rights, including voting rights, appurtenant thereto.

39. Upon information and belief, pursuant to an agreement with Shell or an affiliate thereof, SILLC is contractually entitled to receive 45% of the cash flow from the Shell Project after the payment of certain fees and expenses. SIIG's ownership interest in SILLC, therefore, has value as collateral. The availability of this collateral was integral to GVECR's willingness to permit the disbursement of millions of dollars without first receiving the Financial Guarantee. Absent the collateral, GVECR would not have entered into the Loan Agreement, would not have agreed to the disbursement of the loan funds, and would not have agreed to extend the deadline by which the Financial Guarantee was to be provided.

40. The Interim Pledge Agreement also required certificates representing the Member Interest, if any, to be delivered to GVECR upon execution of the Interim Pledge Agreement. No certificate representing any Member Interest has been delivered to GVECR.

41. The Interim Pledge Agreement further obligates SIIG to refrain from taking any action

> which, in [GVECR's] reasonable judgment, would impair the [Member Interest] or which would be inconsistent with or result in any violation of any provision of the Loan Agreement and the Loan Documents, this Interim Pledge Agreement, Management Fee Pledge Agreement, or any other document or instrument related to the foregoing or the transactions contemplated thereby and to which [GVECR] has not consented in its sole discretion in writing.

**E.      The Management Agreement**

42. At the same time that the parties entered into the Loan Agreement, SILLC and PEMG entered into a Management Agreement, made as of January 26, 2006 (the "Management Agreement"). SIIG signed the Management Agreement as guarantor of SILLC's obligations.

43. Pursuant to the terms of the Management Agreement, PEMG was to arrange and facilitate the Loan Agreement and the Promissory Note and was to monitor the collection of

revenues by SILLC to ensure that SILLC made payments of funds that SILLC received from the time share condominium project to GVECR. The Management Agreement also gave PEMG the right to cover any shortfall if the funds received by SILLC from the time share condominium project were insufficient to retire the Note.

44. The Management Agreement obligated SILLC to pay PEMG up to $9 million as a "Management Fee" "on a priority basis" before any other payments were made for expenses and other borrowings and distributions except for payments owed to GVECR.

45. Under the Management Agreement, "[a] default of SILLC or any guarantor or their subsidiaries under the Promissory Notes, the Secured Promissory Notes, Deeds of Trust, Mortgages or Assignments" constitutes an Event of Default. Upon the occurrence of an Event of Default, PEMG has the right to declare the Management Fee immediately due and payable.

46. The Management Agreement further provides that SILLC shall pay all reasonable costs, attorneys' fees and expenses incurred by PEMG in connection with any attorney engaged by PEMG to, among other things, collect the Management Fee, protect any liens or security interests under the Management Agreement or represent PEMG in connection with the Management Agreement.

F.      **The Management Fee Pledge Agreement**

47. In order to secure the obligations of SILLC and SIIG, as guarantor, under the Management Agreement, PEMG and SIIG entered into a Management Fee Pledge Agreement, dated as of January 26, 2006 (the "Management Fee Pledge Agreement").

48. Under the Management Fee Pledge Agreement, SIIG pledged, assigned and granted to PEMG:

> [a]s collateral security for the payment of the Management Fee by SILLC and guaranteed by [SIIG] in accordance with the terms of the Management Agreement ... [SIIG] hereby pledges, assigns and

> grants to [GVECR] a first priority security interest in and to the
> [Membership Interest] ... subordinate only to the Interim Pledge
> Agreement entered into of even date between [SIIG] and
> [GVECR]....Simultaneously herewith, [SIIG] is delivering to
> [PEMG] the certificates, if any, representing the [Member
> Interest], together with [Member Interest] powers, duly executed in
> blank.

49. SIIG represented and warranted that it was the sole legal and beneficial owner of one

hundred percent of the Member Interest in its subsidiary SILLC.  SIIG further represented and

warranted that it would deliver to PEMG any certificate representing any Member Interest.

50. Subject to the rights of GVECR under the Interim Pledge Agreement, PEMG may:

> upon the failure of SILLC or [SIIG] to fulfill the Obligations or on
> the occurrence of an Event of Default as that term is defined in the
> Management Agreement ... at its option, upon prior written notice
> to [SIIG] transfer or register the Pledged [Member Interest] ... into
> its or its nominee's name ... and [SIIG] will cause SILLC to
> cooperate with [PEMG] in effecting any such transfer or
> registration.

51. The term "Obligations" is defined as the payment of the Management Fee by SILLC.

52. SIIG further agreed that it would take no action which, in the judgment of PEMG,

would:

> impair the Pledged Member Interest or which would be
> inconsistent with or result in any violation of any provision of the
> Management Agreement, this Management Fee Pledge Agreement,
> the Interim Pledge Agreement or any other document or instrument
> related to the foregoing or the transaction contemplated thereby....

53. PEMG has demanded that SIIG transfer the Member Interest in SILLC to PEMG.

SIIG has refused.

## G.    The Escrow Agreement

54. An Escrow Agreement was entered into dated as of April 4, 2006, by and among

SILLC, SRFI, SIIG, John Hamilton, Michael Kelly, GVECR, PEMG and Baker & McKenzie, as

Escrow Agent (the "Escrow Agreement").  The Escrow Agreement governs the mechanism for

the payment of the premiums for the Financial Guarantee which SILLC, SRFI and SIIG had failed to provide.

55. The Escrow Agreement provides that "Hamilton and Kelly have agreed to pay the premium for the Payment Bond and the Reinsurance" and that "GVECR has agreed to reimburse Hamilton and Kelly upon receipt of the Payment Bond and Reinsurance in good order and authorized form."  The Escrow Agreement specifically provides that GVECR shall not be obligated to reimburse the advance payment for the premium until the bond and reinsurance documents are delivered in good order.

**H.     SILLC, SIIG and SRFI Have Failed To Supply The Financial Guarantee**

56. On May 1, 2006, and again on May 18, 2006, GVECR wrote SILLC and SIIG to remind them that the Financial Guarantee was to be in place on or before May 31, 2006. GVECR requested that SIIG's Member Interest in SILLC be transferred to GVECR if defendants failed to obtain the Financial Interest.  Defendants failed to provide the Financial Interest by May 31, 2006.  Even though the Escrow Agreement specifically requires the purchase of the Financial Guarantee prior to the time when GVECR has to reimburse anyone for the cost of the Financial Guarantee, defendants have asserted that they have not acquired the Financial Guarantee because GVECR has not paid the premium.  Defendants Kelly and Hamilton have refused to advance the premium.

57. SILLC and SIIG's refusal to transfer SIIG's Member Interest to GVECR constitutes a breach and an event of default of the Interim Pledge Agreement.  It also constitutes a default under the Loan Agreement because (i) the defendants were obligated to provide a Financial Interest; (ii) the default under the Interim Pledge Agreement is a default of the Loan Agreement: and (iii) the default of the Interim Pledge Agreement constitutes a default under the Note, which in turn constitutes a default under the Loan Agreement.

58. The Interim Pledge Agreement prohibits SIIG from taking any action which in GVECR's "reasonable judgment, would impair the [Member Interests] or which would be inconsistent with or result in any violation of any provision of the Loan Agreement and the Loan Documents, this Interim Pledge Agreement, [or] the Management Fee Pledge Agreement...." The Management Fee Pledge Agreement contains a similar provision. Upon information and belief, SIIG and SILLC have offered the Member Interest to a third party. SIIG and SILLC's apparent offer to transfer the Member Interest to a third party places GVECR's collateral at risk, in further breach of the Interim Pledge Agreement and the Management Fee Pledge Agreement. The transfer of the Member Interest would constitute a breach of both the Interim Pledge Agreement and the Management Fee Pledge Agreement.

## I.    The Notice of Default to Defendants

59. By letter dated June 2, 2006, GVECR advised defendants SILLC, SIIG and SRFI that a default had occurred under the Loan Agreement. Defendants did not respond to the notice of default.

60. At a meeting in California on June 6, 2006, defendants assured plaintiffs that the defendants would deliver the insurance policy or payment bond. Defendants did not state that they were not obligated to provide the insurance policy or payment bond. In addition, SIIG's lawyer represented that he would contact GVECR within days of the meeting to arrange for the delivery and review of the relevant documents. SIIG's lawyer also stated that he would attempt to arrange for the delivery of the Member Interest.

61. Defendants have failed to deliver an insurance policy or payment bond in violation of the Loan Agreement and the Interim Pledge Agreement, failed to deliver an Opinion Letter, and failed to deliver the Member Interest.

62. By letters dated June 19, 2006, and June 21, 2006, defendants demanded the transfer of the Member Interest. Defendants have failed to provide the Member Interest, and have failed to provide a bond or the reinsurance.

**J.      Defendants' Failure To Disclose Material Facts**

63. In the Loan Agreement, SILLC represented that no action, suit or proceeding was pending or threatened "against or affecting" SILLC that would materially impair SILLC or the financial condition, business or operations of SILLC or the transactions contemplated by the Loan Agreement.

64. At or about the time that defendants entered into the Loan Agreement, however, the defendants knew or should have known of an impending lawsuit in the United States District Court for the Southern District of New York against SIIG, Strategy Real Estate Investments Ltd., John Hamilton, and other individuals who control the SIIG corporate family by several investors in a real estate project in Toronto, seeking damages for fraud in an amount in excess of $50 million. Defendants failed to disclose the dispute or the impending claims. Had GVECR or PEMG known of these issues, or of the allegation set forth in the complaint which subsequently was filed, they would not have agreed to provide funding to SILLC.

65. The Complaint alleges that defendants made numerous fraudulent misrepresentations in filings with the SEC, and that the filings were false and misleading. The complaint alleges further that the defendants in that case failed to disclose that Hamilton and Sordi had been named as defendants in a $20 million fraud lawsuit, that Sordi had been found liable in a Florida lawsuit for nearly $1 million in damages arising from claims of fraud, and that SIIG was in a significantly negative financial condition.

66. Defendants failed to disclose either the existence of a dispute with these investors or the threat of litigation, and failed to disclose any of the matters alleged in the complaint,

including that Sordi had been found liable in the Florida lawsuit. Had PEMG or GVECR known of any of this, they would not have agreed to loan funds to SILLC.

### K. The Shell lawsuit

67. In the Spring of 2006, Shell advised GVECR and PEMG that Shell had been unable to obtain a Final Time Share Public Report from the State of California in connection with the Napa development. Shell requested that GVECR, the Strategy entities, and Veritas make certain economic concessions in order to bring the Napa property into compliance with the California statutory requirements. Shell advised that it could not sell memberships in the Napa time-share project without such compliance.

68. At or about the same time, Veritas informed GVECR and PEMG that Veritas believed that Strategy Resort had improperly misappropriated approximately $11 million of cash flow generated by the Shell Project and paid to Strategy Resort. Veritas stated that the funds properly should have been paid by Strategy Resort to Veritas pursuant to the terms of an agreement between them. Strategy Resort has failed to fund requested draws under the Napa project first note, and Shell thereupon has demanded that Veritas fund the draws. Veritas has refused.

69. Shell thereafter requested a meeting of the parties to seek a resolution to certain issues. When the meeting was not scheduled, Shell delivered to each of the parties a courtesy copy of a complaint which it had filed in the United States District Court for the Northern District of California, encaptioned *SVC-Napa, L.P. v. Strategy Resort Financing, Inc., et al.,* Case No. C 06 3561 (SI) (the "Shell Litigation"). In a cover letter delivered with the complaint, Shell stated that it still desired a meeting. Veritas then refused to attend a meeting. Shell attempted to serve its complaint on each of the parties.

70. The Shell Litigation alleges that Strategy Resort improperly assigned the First Note and First Mortgage in the Napa project to Veritas in violation of clearly stated provisions requiring the prior written consent of Shell, which allegedly was not given. The Shell Complaint alleges further that the interest rate set forth in the first and second notes on the Napa project violates the usury laws of the State of California. The Shell Complaint also alleges that Veritas acted in bad faith by refusing to fund the First Note, and that all defendants have acted in bad faith by failing to cooperate with Shell's efforts to obtain statutory compliance under California law.

71. Significantly, the Shell Litigation alleges that Strategy Resort and SILLC fraudulently induced Shell to enter into the loan transaction based on knowingly false statements regarding the true financial condition of SILLC and Strategy Inc., including their inability to perform under the loan agreement.

**L.      Defendants' refusal to indemnify GVECR**

72. Section 6.4 of the Loan Agreement states that SILLC, SIIG, and SRFI:

> ... will at all times protect and hold [GVECR] ... harmless against any claims or liability resulting from any loss or damage to property or any injury to or death of any person that may be occasioned by any cause whatsoever pertaining to the Loan or the use thereof ... such indemnification to include reasonable expenses and attorneys' fees....

Section 7.1(b) of the Loan Agreement states:

> If any attorney is engaged by [GVECR]: (i) to collect the Loan or any sums due under the Loan Documents including this Agreement or the Note, whether or not legal proceedings are thereafter instituted by the Lender; ... (iii) to protect the liens and security interests under any of the Loan Documents; ... (v) to represent [GVECR] in any other proceedings whatsoever in connection with any of the Loan Documents ... then [SILLC, SIIG, and SRFI] shall pay to [GVECR] all reasonable costs, attorneys' fees, and expenses in connection therewith, in addition to all other amounts due under this Agreement or the Note.

73. The Note and the Management Fee Agreement contain similar attorneys' fees, costs and expenses provisions.

74. GVECR is named as a defendant in the Shell Litigation. The claims against GVECR in the Shell Litigation arise from GVECR's role as a party to the Loan Agreement, the Promissory Note, and the related agreements. The Shell lawsuit's usury claim relates to the Note.

75. SILLC, SIIG, and SRFI are required to pay to GVECR all reasonable costs, attorneys' fees and expenses incurred in connection with the Shell Litigation, and to indemnify GVECR for all losses that may arise from the lawsuit. By letter dated June 14, 2006, GVECR's attorneys requested that SILLC, SIIG, and SRFI meet those obligations. SILLC, SIIG and SRFI refused.

**M.    The Irreparable Harm To Plaintiffs**

76. Unless the Court grants injunctive relief to GVECR and PEMG, plaintiffs will suffer immediate and serious harm which cannot be adequately compensated by an award of monetary damages against SILLC, SIIG or SRFI.

77. Upon information and belief, SILLC, SIIG and SRFI do not have the resources to repay the loan under the Note or to pay the Management Fee.

78. Defendants have been unable to comply with their funding obligations in connection with the Shell Project. In addition, SIIG and SILLC, along with other corporate affiliates, have been named as defendants in substantial federal lawsuits seeking tens of millions of dollars in damages based upon allegations of, among other things, fraudulent misstatements regarding the financial condition of SIIG's corporate family.

79. Upon information and belief, SIIG and SILLC are seeking to tender all or part of the Member Interest to a third party. Such a pledge or transfer of the Member Interest would constitute a violation of the Interim Pledge Agreement and the Management Fee Pledge

Agreement. If SIIG and SILLC were to transfer the Member Interest, it would deprive GVECR and PEMG of their bargained for rights, and leave them without sufficient collateral for the loan and Management Fee.

80. The Interim Pledge Agreement and Management Fee Pledge Agreement each provide that the Strategy signatories shall take no steps to impair the Member Interest, and that they shall deliver the member certificates to GVECR and/or PEMG. Plaintiffs will suffer immediate and irreparable injury if defendants are not enjoined from transferring or impairing the Member Interest.

81. The failure of defendants to provide the bond and reinsurance deprives plaintiffs of their essential collateral, without which they would not have entered into the transaction. The loss of the Member Interest will leave plaintiffs with inadequate collateral and the likely inability to recover monetary damages from defendants.

82. The interim relief which plaintiffs seek is only that to which GVECR and PEMG are entitled under the loan agreements, and will serve to preserve the *status quo* and assure that plaintiffs' rights can be enforced. Defendants will not suffer any injury. The injury to GVECR and PEMG is imminent and irreparable, and only a restraining order can assure that it will not occur.

FIRST CLAIM FOR RELIEF
Against Defendants SILLC, SIIG and SRFI
(Breach of Loan Agreement)

83. Plaintiffs restate and reallege all allegations contained in paragraphs 1 through 82 as if fully set forth herein.

84. SILLC's failure to provide the Financial Guarantee constitutes a material breach of the Loan Agreement. In addition, SILLC's failure to provide the Financial Guarantee and the failure to transfer the Member Interest in SILLC from SIIG to GVECR constitutes a breach and

Event of Default under the Note and the Interim Pledge Agreement. An Event of Default under those agreements constitute a separate breach and Event of Default under the Loan Agreement.

85. GVECR has declared the Loan immediately due and payable, as it is permitted to do under the Loan Agreement. SILLC and its guarantors, SRFI and SIIG, therefore are indebted to GVECR in the full amount of the loan, plus all applicable interest

86. As a direct and proximate result of the material breaches of the Loan Agreement by defendants SILLC, SRFI and SIIG, GVECR has been damaged in an amount to be determined at trial, but in no event less than $20,000,000.00, plus all applicable interest.

SECOND CLAIM FOR RELIEF
Against Defendants SILLC, SIIG and SRFI
(Breach of Promissory Note)

87. Plaintiffs restate and reallege all allegations contained in paragraphs 1 through 86 as if fully set forth herein.

88. Defendants have failed to deliver the Financial Guarantee and failed to deliver the Member Interest in SILLC to GVECR and PEMG. These failures constitute Events of Default under the Note because they are defaults under the Interim Pledge Agreement and the Mortgage Fee Pledge Agreement. GVECR declared the loan immediately due and payable as permitted under the Note as a result of the Events of Default.

89. SILLC, SRFI and SIIG's failure to repay the loan amount constitutes a material breach of the Note.

90. As a direct and proximate result of the material breaches of the Note by defendants SILLC, SRFI, and SIIG, GVECR has been damaged in an amount to be determined at trial, but in no event less than $20,000,000.00, plus all applicable interest.

THIRD CLAIM FOR RELIEF
Against Defendants SILLC and SIIG
(Breach of Interim Pledge Agreement)

91. Plaintiffs reallege and reassert all allegations contained in paragraphs 1 through 90 as if fully set forth herein.

92. Under the Interim Pledge Agreement, the Financial Guarantee was to be provided on or before May 31, 2006.   SILLC failed to provide the Financial Guarantee.  SIIG and SILLC have refused to transfer the Member Interest in breach of the Interim Pledge Agreement.

93. The failure of SILLC to obtain the Financial Guarantee and SIIG and SILLC's refusal to transfer the Member Interest constitute material breaches of the Interim Pledge Agreement.

94. Plaintiffs have no adequate remedy at law.  Only through the issuance of injunctive relief can plaintiffs be protected from the irreparable injury threatened by the actions of SILLC and SIIG.  Unless injunctive relief is granted, plaintiffs will be illegally and inequitably deprived of their rights under the Interim Pledge Agreement.

95. By reason of the foregoing, plaintiff GVECR is entitled to a temporary restraining order, a preliminary injunction and a permanent injunction enjoining SILLC, SRFI, and SIIG as requested below.

FOURTH CLAIM FOR RELIEF
Against Defendants SILLC and SIIG
(Breach of Management Agreement)

96. Plaintiffs restate and reallege all allegations contained in paragraphs 1 through 95 as if fully set forth herein.

97. A default under the Note constitutes a default under the Management Agreement.  As a result, PEMG has declared the Management Fee immediately due and payable.

98. SILLC and SIIG's failure to pay the Management Fee constitutes a material breach of the Management Agreement.

99. As a direct and proximate result of the material breach of the Management Agreement by defendants SILLC and SIIG, PEMG has been damaged in an amount to be determined at trial, but in no event less than $9 million, plus all applicable interest.

FIFTH CLAIM FOR RELIEF
Against Defendants SILLC and SIIG
(Breach of Management Fee Pledge Agreement)

100.    Plaintiffs restate and reallege all allegations contained in paragraphs 1 through 99 as if fully set forth herein.

101.    PEMG has demanded that the Member Interest in SILLC be transferred to it. SILLC and SIIG have refused to transfer the Member Interest.

102.    SILLC and SIIG's failure to transfer the Member Interest to PEMG constitutes a material breach of the Management Fee Pledge Agreement.

103.    PEMG has no adequate remedy at law.  Only through the issuance of injunctive relief can PEMG be protected from the irreparable injury threatened by the actions of SILLC and SIIG.  Unless injunctive relief is granted, PEMG will be illegally and inequitably deprived of its rights under the Management Fee Pledge Agreement.

104.    By reason of the foregoing, plaintiff PEMG is entitled to a temporary restraining order, a preliminary injunction and a permanent injunction enjoining SILLC, SRFI, and SIIG as requested below.

SIXTH CLAIM FOR RELIEF
Against Defendants SILLC, SIIG and SRFI
(Fraudulent Misrepresentation)

105.    Plaintiffs reallege and reassert all allegations contained in paragraphs 1 through 104 as if fully set forth herein.

106.    Plaintiffs reasonably relied upon the defendants' statements that they could and would obtain the Financial Guarantee.  Defendants knew or should have known that they would

- 23 -

be unable to obtain the Financial Guarantee. Absent the assurances made by defendants that the Financial Guarantee could and would be obtained, plaintiffs would not have entered into the Loan Agreement, would not have loaned millions of dollars, and would not have extended the deadline for the acquisition of the Financial Guarantee.

107.   Defendants not only made affirmative misrepresentations, but also concealed material information from plaintiffs. Defendants knew or should have known that investors were about to bring a lawsuit against the SIIG corporate family claiming fraud, and that such facts were material to plaintiffs' decision to participate in the loan transaction. The defendants also knew, but failed to disclose, that Hamilton and Sordi had been named as defendants in a $20 million fraud lawsuit, that Sordi had been found liable in a Florida lawsuit for nearly $1 million in damages arising from claims of fraud, and that SIIG was in a weak financial condition.

108.   As a direct and proximate result of defendants' fraudulent misrepresentation and omissions of material fact, plaintiffs have been damaged in an amount to be determined at trial, but in no event less than $30,000,000.00.

SEVENTH CLAIM FOR RELIEF
Against Defendants SIIG, SILLC and SRFI
(Attorneys' Fees and Expenses)

109.   Plaintiffs reallege and reassert all allegations contained in paragraphs 1 through 109 as if fully set forth herein.

110.   The Loan Agreement, the Note and the Management Agreement provide that defendants shall pay plaintiffs' reasonable attorneys' fees and expenses incurred in collecting the loan or Management Fee and incurred in protecting the security interests under those agreements. Plaintiffs seek their reasonable attorneys' fees and expenses related to this lawsuit and the events leading up to this lawsuit in an amount to be proven at trial.

111.    Further, GVECR is entitled to its reasonable legal fees and expenses in defending itself in the Shell Litigation, and has demanded such payment.  Defendants have refused.  The failure and refusal of SILLC, SRFI and SIIG to agree to indemnify and pay those fees and expenses constitute a material breach of the Loan Agreement and the Note.

112.    As a direct and proximate result of the material breach of the Loan Agreement's, the Note's, and the Management Agreement's indemnity and legal fees and expenses paragraphs, GVECR has been damaged in an amount to be determined at trial.

EIGHTH CLAIM FOR RELIEF
Against All Defendants
(Declaratory Judgment)

113.    Plaintiffs reallege and reassert all allegations contained in paragraphs 1 through 113 as if fully set forth herein.

114.    There exists a case of actual controversy between plaintiffs and defendants as to whether GVECR is obligated to pay the premiums for the Financial Guarantee into an escrow account before the Financial Guarantee has been acquired.  The Escrow Agreement requires that defendants John Hamilton and Michael Kelly advance the premium for the insurance policy or payment bond and reinsurance.  The Escrow Agreement does not require a payment by GVECR until such time as Hamilton and Kelly have paid the premium for the insurance policy or payment bond and reinsurance and until such time as the Escrow Agent requests the reimbursement for the premiums.  Defendants have alleged that they are not obligated to acquire the insurance policy or the payment bond and reinsurance because GVECR has not advanced the funds for the policy.  A controversy exists.  That controversy is within the jurisdiction of this Court.

115.    By reason of the foregoing, GVECR is entitled to a declaration that, pursuant to the Loan Agreement and the Escrow Agreement, GVECR is not obligated to fund the escrow

account for the Financial Guarantee premiums until such time as John Hamilton and Michael Kelly pay the Financial Guarantee premiums and deliver the documents in good order, and until such time as the Escrow Agent requests the payment from GVECR.

### NINTH CLAIM FOR RELIEF
Against Defendants Kelly and Hamilton
( Specific Performance )

116.   Plaintiffs reallege and reassert all allegations contained in paragraphs 1 through 115 as if fully set forth herein.

117.   Defendants Kelly and Hamilton agreed in the Escrow Agreement to pay the premium for the Financial Guarantee.  SILLC has taken the position that it has not purchased the Financial Guarantee because GVECR did not advance the cost of the Financial Guarantee, and Hamilton and Kelly have failed and refused to advance the premium.

118.   Plaintiff GVECR is without an adequate remedy at law.   Absent specific performance of the obligations of Kelly and Hamilton under the Escrow Agreement, GVECR will not be in a position to obtain the Financial Guarantee.

119.   By reason of the foregoing, GVECR is entitled to a judgment of specific performance directing defendants Hamilton and Kelly to advance the premium for the Financial Guarantee and to deliver to GVECR in good order the documents in connection therewith, as required pursuant to the terms of the Escrow Agreement.

WHEREFORE, plaintiffs demand judgment as follows:

1.   A temporary restraining order, preliminary injunction, and permanent injunction enjoining defendants and each of their affiliates, and all of the officers, directors, managers employees, agents, servants and agents of any of the foregoing, including all persons and entities acting in concert or participation with any of them, from:

a.  exercising dominion or control over, or any rights they may have in connection with, the Member Interests or Additional Member Interests of defendant Strategy International Insurance Group ("SIIG") in defendant Strategy Investments LLC ("SILLC"), each such term as defined in the Interim Pledge Agreement, dated January 26, 2006, by and between SIIG and plaintiff GVEC Resource Inc. ("GVECR")(the Member Interest and Additional Member Interest, together with any membership or ownership interest in SILLC, whether a security or not or whether certificated or not, referred to herein as the "Member Interest"); and

b.  creating, transferring, pledging, registering, diluting, encumbering or otherwise impairing in any way, directly or indirectly, any Member Interest; and

c.  creating or authorizing the creation of any certificate representing any Member Interest; and

d.  amending, restating, modifying and/or altering the formation documents of, the governing documents of or any Member Interest in SILLC in any way for the purpose of or having the effect of, either directly or indirectly, causing any Member Interest to be a security governed by Article 8 of the Florida Uniform Commercial Code; and

e.  pledging, granting or perfecting a security interest in, transferring control of , transferring possession of and/or delivering any certificated or uncertificated Member Interest to any person or entity, except to GVECR and/or plaintiff Private Equity Management Group ("PEMG"); and

f.  exercising dominion or control over, or any rights they may have in connection with, or transferring, pledging, registering or encumbering in any way, directly or indirectly, any (w) equity interest, (x) right to any cash flow (other than that payable pursuant to any First Note in the Shell Project, as defined herein) from, or (y) rights to revenue from any interest they have or may have in any entity of any kind, including without limitations any corporation, limited liability company or partnership, in any way related to or associated with those certain time share communities under development by Shell Vacation Homes, Inc. or any affiliate thereof in Napa, California, Waikiki, Hawaii or British Columbia, Canada.

2.    A temporary restraining order and permanent injunction directing defendants and each of their affiliates, and all of the officers, directors, managers, employees, servants and agents of any of the foregoing, including all persons and entities acting in concert or participation with any of them, to take all steps necessary to transfer control of and/or deliver (each, in accordance with Articles 8 and 9 of the Florida Uniform Commercial Code) to GVECR for the benefit of GVECR and PEMG, (x) all certificated and uncertificated Member Interest; and (y) Member Interest powers, duly executed in blank.

3.    Declaring and determining that, pursuant to the terms of the Loan Agreement and the Escrow Agreement, Hamilton and/or Kelly are obligated to advance the payment of the premiums for the guarantee and reinsurance, and that GVECR has no obligation to fund the premium payments in advance of the delivery of the documents reflecting the acquisition of the bond and reinsurance.

4.    Directing that defendants Hamilton and Kelly specifically perform their obligations pursuant to the terms of the Escrow Agreement to advance the payment of premium for the Financial Guarantee and deliver to GVECR in good order all documents in connection therewith.

5.    Monetary damages in an amount to be determined at trial but in no event less than $30,000,000.00 plus all applicable interest, plus punitive damages for defendants' fraud.

6.    Reasonable attorneys' fees, costs and expenses related to (i) this lawsuit and (ii) seeking the payment of the loan and the Management Fee, and seeking the Member Interest.

7.    Reasonable attorneys' fees, costs and expenses in connection with the Shell Litigation.

8.      Such other and further relief which to this Court appears just and reasonable.

Dated: New York, New York
       July 10, 2006

                                        FULBRIGHT & JAWORSKI L.L.P.


                                        By:_____
                                             Charles D. Schmerler (CS0953)
                                             Mark A. Robertson (MR8906)
                                             Joann Kahn (JK8671)
                                        666 Fifth Avenue
                                        New York, NY  10103
                                        Telephone:  212-318-3000
                                        Telecopier:  212-318-3400
                                        *Attorneys for Plaintiffs*