# SECURED PROMISSORY NOTE

$1,380,000                                                    Date: April __, 2005

FOR VALUE RECEIVED, the undersigned, SVC-WAIKIKI, LLC, a Delaware limited liability company ("MAKER") promises to pay to the order of STRATEGY RESORT FINANCING INC., a Florida corporation ("HOLDER") the principal sum of One Million Three Hundred Eighty Thousand Dollars ($1,380,000), together with interest at the "Interest Rate" (as defined below) on the unpaid balance of principal (the "Outstanding Balance"), commencing on the date hereof, principal and interest payable as follows:

Section 1.  The Outstanding Balance, and accrued and unpaid interest thereon, is due and payable on or before April __, 2008 (the "Maturity Date").  Until such time, there shall be no payment of principal due hereunder.

Section 2.  Maker shall pay interest at the Interest Rate on the principal amount outstanding in arrears commencing on the first day of July 2005, and continuing on the 1st day of each calendar quarter thereafter, until the Maturity Date, at which time all unpaid accrued interest and other amounts payable hereunder shall be due and payable in full.  For purposes hereof, the "Interest Rate" shall be the fixed rate of zero percent (0%) per annum.

Section 3.  Interest hereunder shall be computed on the basis of a year consisting of three hundred sixty-five (365) day year.  Maker may prepay the loan evidenced by this Note in full or in part without penalty at any time upon not less than one (1) days notice.  The "Release Price" (as defined in the "Mortgage" (as defined below)) delivered to Holder in connection with a release of a "Timeshare Interest" (as defined in the Mortgage) shall be applied to the principal amount due hereunder.

Section 4.  If any payment hereunder is not made on or before its due date (taking into account any applicable grace or cure period), other than the payment of the outstanding principal amount due under this Note upon the Maturity Date, a late charge of four percent (4%) of the amount so overdue shall be charged by Holder for the purpose of defraying the expense incident to handling such delinquent payments.  Upon any "Event of Default" (as defined below), Holder shall be entitled to charge interest equal to four percent (4%) per annum.

Section 5.  This Note is secured by that certain Mortgage, Security Agreement, Assignment of Leases and Rents, and Financing Statement (the "Mortgage").  The Mortgage, this Note and all other documents delivered by Maker in connection therewith or herewith are referred to herein collectively as the "Loan Documents."

Section 6.  The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder:

a)    Maker shall fail to make any payment of interest under this Note within ten (10) days of when due hereunder and after not less than five (5) days written notice of delinquency; or

42781\1138298v1





b)   The occurrence of any other "Event of Default" under any other Loan Document (after passage of any applicable grace or cure period).

Upon the occurrence of an Event of Default, Holder may (i) declare all indebtedness evidenced by this Note to be immediately due and payable, and (ii) exercise all rights and remedies available under this Note, the Mortgage, and applicable law.

Section 7.   In the event that Holder institutes legal proceedings to enforce this Note, Maker agrees to pay Holder, in addition to any indebtedness due and unpaid, all reasonable and documented costs and expenses of such proceedings, including reasonable and documented attorneys' fees. Maker and any parties now or hereafter liable for the payment hereof, primarily or secondarily, directly or indirectly, and whether as endorser, guarantor, surety, or otherwise, hereby severally waive presentment, demand, protest, notice of protest and/or of dishonor, and all other demands or notices of any sort whatever with respect to this Note unless specifically provided for elsewhere herein. If any provision hereof is, for any reason and to any extent, invalid or unenforceable, then neither the remainder of the document in which such provision is contained, nor the application of the provision to other persons, entities, or circumstances, nor any other document referred to herein, shall be affected thereby, but instead shall be enforceable to the maximum extent permitted by law. This Note shall be construed and enforced in accordance with the laws of the State of Hawaii.

Section 8.  All notices hereunder shall be in writing and shall be given or served by actual delivery or by being deposited in the United States Mail, registered or certified, return receipt requested, or with a nationally recognized overnight commercial delivery service requiring proof of delivery, addressed to the parties as follows (or to such other address as any party may notify the others in writing in the manner set forth herein):

> AS TO HOLDER:   Sandro Sordi
> 200 Yorkland Boulevard - Suite 200
> Toronto, Ontario
> CANADA M2J 5C1

> AS TO MAKER:   Sheldon H. Ginsburg and
> Craig J. Goldstein
> Shell Vacations LLC
> 40 Skokie Boulevard - #350
> Northbrook, IL  60062-1699

Such notice shall be deemed delivered on the date personally delivered, or if mailed, on the third (3rd) business day after the same was deposited in the United States mail, postage prepaid, as aforesaid or on the next business day after the same was sent via a nationally recognized express next-business-day-delivery service.

IN WITNESS WHEREOF, the undersigned has executed this Note on the day and year first written above.

> MAKER:
> SVC-WAIKIKI LLC
> By: Shell Vacations LLC, its member
>
> By: _____
>
> Its: _Managing Director_

Waikiki Strategy investments Promissory Note Secured 030105



L-511        STATE OF HAWAII
OFFICE OF ASSISTANT REGISTRAR
RECORDED
APR 05, 2005       10:00 AM

Doc No(s) 3250000
on Cert(s) 741,772

/s/ CARL T. WATANABE
ASSISTANT REGISTRAR



2D     9/9     Z1

---

AFTER RECORDATION, RETURN BY MAIL (X) PICK-UP ( )

Strategy Resort Financing Inc.
200 Yorkland Blvd., Suite 200
Toronto, Ontario, Canada  M2J 5C1
Attn:  Sandro Sordi

TG-2004064675-S

Total Pages: 20

LC-9

TITLE OF DOCUMENT:

MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF
LEASES AND RENTS, AND FINANCING STATEMENT

---

PARTIES TO DOCUMENT:

MORTGAGOR:        SVC-WAIKIKI, LLC, a Delaware limited liability company

MORTGAGEE:        STRATEGY RESORT FINANCING INC., a Florida corporation

---

| PROPERTY DESCRIPTION: | LIBER/PAGE/DOCUMENT NO.: |
|---|---|
| | LAND COURT DOCUMENT NO.: 3249997 |
| | TRANSFER CERTIFICATE OF TITLE NO(S).: 741,772 |

Tax Map Key No.  2-6-010-007 (Oahu)

42781\1138295v1

## MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS, AND FINANCING STATEMENT

THIS MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS, AND FINANCING STATEMENT ("Mortgage") is made and executed as of April 5 , 2005, by and between SVC-WAIKIKI, LLC, a Delaware limited liability company ("Mortgagor"), whose address is 40 Skokie Boulevard, Suite 350, Northbrook, Illinois 60062-1699 in favor of STRATEGY RESORT FINANCING INC., a Florida corporation ("Mortgagee"), whose address is 200 Yorkland Blvd, Suite 200, Toronto, Ontario M2J5C1.

The defined terms used in this Mortgage, if not otherwise defined, have the meanings set forth in the Secured Promissory Note in the amount of $1,380,000, dated as of the date hereof, by Mortgagor, as maker, in favor of Mortgagee, as holder (the "Note"). The terms of this Mortgage are in addition to and supplement the terms and conditions of the Note. In the event of conflict, the terms and conditions of the Note shall control over the terms and provisions of this Mortgage.

For valuable consideration, Mortgagor irrevocably grants, transfers mortgages, releases, liens and assigns to Mortgagee, its successors and assigns, WITH POWER OF SALE AND RIGHT OF ENTRY AND POSSESSION, and creates a security interest in favor of Mortgagee in, all rights, title, interests, estates, powers and privileges that Mortgagor now has or may hereafter acquire in or to the following property and interests therein (the "Mortgaged Property"):

A.     The real property located in the State of Hawaii, City and County of Honolulu, more particularly described on Exhibit A hereto (the "Premises");

B.     All buildings, structures and other improvements now or in the future located or to be constructed on the Premises (the "Improvements");

C.     All tenements, hereditaments, appurtenances, privileges, options to purchase or lease all or any part of the Premises or Improvements or any interest therein (and any greater estate in the Premises or Improvements now owned or hereafter acquired pursuant thereto), and other rights and interests now or in the future benefiting or otherwise relating to the Premises or the Improvements, including easements, rights-of-way, sidewalks, alleys and strips and gores of land adjacent to or used in connection with the Premises, development rights, mineral rights, water rights and water stock;

D.     All income, rents, room rates, issues, profits, revenues (including oil and gas or other mineral royalties and bonuses), deposits, and other benefits from the Premises or Improvements (collectively, the "Rents");

E.     All present and future rights, title and interests of Mortgagor, in and to all leases and other agreements affecting the use, enjoyment or occupancy of the Premises or Improvements heretofore or hereafter entered into (including without limitation subleases, licenses, concessions, tenancies and other occupancy agreement covering or encumbering all or

4278J\1\138295v1

any portion of the Premises or Improvements), together with any guarantees, supplements, amendments, modifications, extensions and renewals of any thereof, and all additional remainders, reversions, and other rights and estates appurtenant thereto (collectively, the "Leases");

F.     All present and future rights, title and interest of Mortgagor in and to all machinery, furnishings, equipment, fixtures, inventory and articles of personal property and accessions thereof and renewals, replacements thereof and substitutions therefor, other customary equipment and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises, or appurtenant thereto, and usable in connection with the present or future materials and supplies of any nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises or in the Improvements, or appurtenant thereto, or usable in connection with the present or future operation, enjoyment and occupancy of the Premises or the Improvements (the "Equipment");

G.     All present and future rights, title and interests of Mortgagor in and to (i) all accounts, escrows, documents, instruments, chattel paper, claims, deposits and general intangibles, as such terms are defined in the Uniform Commercial Code of the State of Hawaii, Hawaii Revised Statutes, Chapter 490, as the same may hereafter be amended from time to time (the "UCC"), and (ii) all contract rights, franchises, books, records, appraisals, architects and engineering plans, specifications, environmental and other reports relating to the Premises or the Improvements, licenses, contracts, permits and agreements required, related to or used in connection with the ownership, operation and/or maintenance of the Premises or the Improvements (to the extent assignable), approvals, actions, correspondence with present and prospective purchasers, tenants and suppliers, advertising materials and telephone exchange numbers as identified in such materials, refunds of real estate taxes and assessments and causes of action which now or hereafter relate to, are derived from or are used in connection with the Premises or the Improvements, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (collectively, the "Intangibles");

H.     All present and future rights, title and interest of Mortgagor in and to Equipment, awards for any taking in or by any condemnation or other eminent domain proceeding, insurance proceeds, tradenames, trademarks, servicemarks, logos, copyrights, goodwill, books and records, all refunds, rebates or credits in connection with a reduction in real estate taxes and assessments charged against the Premises as a result of tax certiorari or any applications or proceedings for reduction, all agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all proceeds, substitutions and replacements thereof;

I.     All of the rights and benefits accruing to Mortgagor in connection with Mortgagor's ownership, management and/or leasing of the condominium units and under the condominium documents creating the condominium regime at the Premises (the "Condominium Documents"), including without limitation all unsold timeshare interests (whether represented as points or otherwise); and

J.     All proceeds, products, profits or offspring of any of the foregoing.

3

FOR THE PURPOSE OF SECURING, in such order as Mortgagee may elect:

A.    Payment of an indebtedness in the sum of One Million Three Hundred Eighty Thousand Dollars ($1,380,000), with interest thereon, evidenced by the Note, and any and all modifications, replacements, extensions and renewals thereof whether hereafter evidenced by the Note or otherwise;

B.    Payment of all other sums, with interest thereon at the Default Rate becoming due or payable under the provisions hereof or under the Note and any other document executed in connection with the Note (collectively, with the Note, the "Loan Documents");

C.    Payment of such additional sums and interest thereon which may hereafter be loaned to Mortgagor, or its successors or assigns, by Mortgagee, when evidenced by a promissory note or notes reciting that they are secured by this Mortgage;

D.    Due, prompt and complete observance, performance and discharge of each and every obligation, covenant and agreement of Mortgagor contained herein, in the Note or in the Loan Documents, and all supplements, amendments and modifications thereto and all extensions and renewals thereof, or in any other instrument or document heretofore or hereafter executed by Mortgagor having reference to or arising out of the indebtedness represented by the Note which recites that the obligations thereunder are secured by this Mortgage; and

E.    Payment of all sums advanced by Mortgagee to protect the Mortgaged Property, with interest thereon at the Default Rate.

This Mortgage constitutes a financing statement filed as a fixture filing in the Bureau of Conveyances of the State of Hawaii with respect to any and all fixtures included within the Mortgaged Property and with respect to any goods or other personal property that may now be or hereafter become such fixtures.

UPON CONDITION that subject to the terms hereof, until the happening of an Event of Default, the Mortgagor shall be permitted to use and possess the Mortgaged Property and to use and receive the rents, issues, profits, revenues and other income thereof.

## ARTICLE 1.  AFFIRMATIVE COVENANTS
## AGREEMENTS OF MORTGAGOR

Mortgagor hereby agrees as follows:

1.1    Performance of Obligations.    Mortgagor shall pay, perform, observe and discharge each and every obligation, covenant and agreement for which this Mortgage has been given as security as provided above.

1.2    Covenants.    Mortgagor shall comply with each and every term, covenant and condition of the Note and the Loan Documents, all of which are incorporated by reference herein and made a part hereof.

4

**1.3** <u>Actions Affecting Mortgaged Property.</u> Mortgagor, at Mortgagor's expense, shall appear in and contest any action or proceeding purporting to affect the Mortgaged Property or the security hereof or the rights or powers of Mortgagee. Mortgagor shall pay all costs and expenses incurred by Mortgagee, including the cost of evidence of title and reasonable and documented attorneys' fees, costs and expenses in any such action or proceeding in which Mortgagee may appear.

**1.4** <u>Actions by Mortgagee to Preserve Mortgaged Property.</u> If there is an Event of Default under this Mortgage, the Note, or other Loan Documents, then Mortgagee, in its discretion, without obligation to do so and without notice to or demand upon Mortgagor and without releasing Mortgagor from any obligation, may make or do the same in such manner and to such extent as Mortgagee may deem necessary to protect the security hereof. In connection therewith (without limiting its general powers), Mortgagee shall have and is hereby given the right, but not the obligation to: (a) enter upon and take possession of the Mortgaged Property; (b) make additions, alterations, repairs and improvements to the Mortgaged Property that Mortgagee may consider necessary or proper to keep the Mortgaged Property in good condition and repair; (c) appear and participate in any action or proceeding affecting or that may affect the security hereof or the rights or powers of Mortgagee; (d) pay, purchase, contest or compromise any encumbrance, claim, charge, lien or debt that in the judgment of either may affect or appears to affect the security of this Mortgage or may be or appears to be prior or superior hereto; and (e) in exercising such powers, pay necessary expenses, including employment of counsel or other necessary or desirable consultants. Mortgagor shall, immediately upon demand therefor by Mortgagee, pay all costs and expenses incurred by Mortgagee in connection with the exercise by Mortgagee of the foregoing rights, together with interest at the Default Rate until paid, and all such sums shall be secured by this Mortgage.

**1.5** <u>Inspections.</u> Mortgagee, through its agents, representatives or employees, is authorized, to enter during normal business hours and upon reasonable notice, upon or in any part of the Mortgaged Property for the purpose of inspecting the same and for the purpose of performing any of the acts it is authorized to perform under the terms of any of the Loan Documents.

## ARTICLE 2. NEGATIVE COVENANTS OF MORTGAGOR

Mortgagor hereby covenants, promises and agrees as follows:

**2.1** <u>Other Financing.</u> Mortgagor shall not create or permit to continue in existence any mortgage, pledge, security interest, lien or charge of any kind or other encumbrance upon any of the Mortgaged Property except for (a) liens for taxes and assessments not yet delinquent, (b) the liens to secure the "<u>Other Lender Debt</u>" (as defined below), and (c) such other liens or charges as are specifically permitted by the Note or approved in writing by Mortgagee prior to the recordation thereof. For purposes hereof, "<u>Other Lender Debt</u>" means that certain Twenty Three Million Dollar ($23,000,000) loan made by Mortgagee to Mortgagor and secured by that certain first priority mortgage and that certain Eight Million Two Hundred Seventy Five Thousand Dollar ($8,275,000) loan to be made by Strategy Investments LLC, a limited liability company ("SIL"), to Mortgagor and secured by that certain second priority mortgage (it being

understood and agreed by Mortgagee, by its acceptance hereof, that it shall be bound by the provisions of Section 6.5 hereof with respect to the automatic subordination of this Mortgage upon SIL's funding of the Eight Million Two Hundred Seventy Five Thousand Dollar ($8,275,000) loan to Mortgagor). Mortgagor shall take all action necessary to promptly secure releases of all liens and encumbrances which in the opinion of Mortgagee are or may be prior to Mortgagee's security interest.

2.2    Transferability. Other than in connection with sales of timeshare interests in the Mortgaged Property (when and as provided in the Note), Mortgagor shall not, directly or indirectly, sell, convey, alienate, mortgage, encumber, pledge or otherwise transfer all or any part of the Mortgaged Property or permit the Mortgaged Property or any part thereof to be sold, conveyed, alienated, mortgaged, encumbered or otherwise transferred, except as expressly permitted by the Note. Mortgagor shall have the right to sell timeshare interests (whether as points or otherwise) (collectively, "Timeshare Interests"), and Mortgagee shall release the lien hereof with respect to such sold Timeshare Interests, upon the following conditions: (a) there shall be then no Event of Default; and (b) Mortgagor shall pay to SRF the "Release Price" (as defined below). For purposes hereof, "Release Price" shall mean $1.32 per point represented in the Shell Owners' Association Club associated with the Timeshare Interest being sold. Upon any such sale and release of such Timeshare Interests, Mortgagee shall execute all such releases, reconveyances or other documentation to establish the lien free transfer of the applicable Points to the applicable buyer.

## ARTICLE 3. SECURITY AGREEMENT

This Mortgage shall be self-operative and constitute a security agreement pursuant to the UCC with respect to all such part of the Mortgaged Property as is governed by the UCC, and Mortgagee shall have all of the rights and remedies of a secured party under the UCC as well as all other rights and remedies available at law or in equity. This Mortgage also shall be self-operative as a fixture filing pursuant to UCC Section 490:9-408. For purposes of the preceding sentences, Mortgagor shall be the "debtor" and Mortgagee shall be the "secured party," each with the addresses set forth herein. Mortgagor, upon demand of Mortgagee, shall assemble all such part of the Mortgaged Property and make it available to Mortgagee at the Premises or a place which is reasonably convenient to Mortgagee. Expenses of retaking, holding, preparing for sale, selling or the like shall be borne by Mortgagor.

## ARTICLE 4. INTENTIONALLY OMITTED

## ARTICLE 5. EVENTS OF DEFAULT
## AND REMEDIES UPON DEFAULT

5.1    Events of Default. Any of the following events shall be deemed an event of default ("Event of Default") hereunder:

(a)     The failure to make any payment of interest within ten (10) days of the due date thereof and after not less than five (5) days written notice of delinquency, or to make payment principal upon the Maturity Date;

(b)     if for more than thirty (30) days after receipt of written notice from Mortgagee, Mortgagor shall continue to be in default under any term, covenant, or condition hereof, the Note, or any of the other Loan Documents other than as specified in any of subsections (a) above or (c) below; provided, however, that if the cure of any such default cannot reasonably be effected within such thirty (30) day period and Mortgagor shall have promptly and diligently commenced to cure such default within such thirty (30) day period, then the period to cure shall be deemed extended for so long as Mortgagor diligently and continuously proceeds to cure such default to Mortgagee's satisfaction; and

(c)     The occurrence of any "Event of Default" under any of the other Loan Documents (as the same is defined therein).

    5.2     <u>Acceleration Upon Default, Additional Remedies</u>.  Upon the occurrence of any Event of Default, Mortgagee may, at its option, declare all indebtedness secured hereby to be immediately due and payable without any presentment, demand, protest or notice of any kind. Thereafter, Mortgagee may to the extent permitted by law:

(a)     Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of its security, enter upon and take possession of the Mortgaged Property, or any part thereof, in its own name, and do any acts which it deems necessary or desirable to preserve the value, marketability or rentability of the Mortgaged Property, or any part thereof or interest therein, increase the income therefrom or protect the security hereof and, with or without taking possession of the Mortgaged Property, sue for or otherwise collect the Rents, and apply the same, less costs and expenses of operation and collection including without limitation reasonable and documented attorneys' fees, costs and expenses, upon any indebtedness secured hereby, all in such order as Mortgagee may determine.  The entering upon and taking possession of the Mortgaged Property, the collection of such Rents and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done in response to such default or pursuant to such notice of default and, notwithstanding the continuance in possession of all or any portion of the Mortgaged Property or the collection, receipt and application of Rents, Mortgagee shall be entitled to exercise every right provided for in any of the Loan Documents or by law upon occurrence of any Event of Default, including the right to exercise the power of sale.  Failure or discontinuance of Mortgagee at any time, or from time to time, to collect the Rents shall not in any manner affect the subsequent enforcement of Mortgagee of the right to collect the same.

(b)     Commence an action to foreclose this Mortgage, by power of sale, commencement of action or otherwise, appoint a receiver, or specifically enforce any of the covenants hereof.  Mortgagee shall be entitled to foreclose against the entire fee interest in the Mortgaged Property, or any portion thereof, or interests therein that are subject or junior to the lien of this Mortgage, in any order which it chooses.  Mortgagee shall be entitled to foreclose against the leasehold estates of each Lease which is subordinate to this Mortgage, whether such

subordination arose by virtue of its original priority, contract, or election of Mortgagee pursuant to this Mortgage, in any order which it chooses. Mortgagee shall be entitled to complete its foreclosure as to any portion of the Mortgaged Property and/or leasehold estates, and postpone foreclosure as to the remainder.

(c)     Exercise all other rights and remedies provided herein, in the Note, in any of the Loan Documents or other document or agreement now or hereafter securing all or any portion of the obligations secured hereby, or by law. Notwithstanding any statute or rule of law to the contrary, the failure to join any tenant(s) of the Mortgaged Property as party defendant or defendants in any foreclosure action or the failure of any such order or judgment to foreclose their rights shall not be asserted by Mortgagor as a defense in any civil action instituted to collect (1) the Debt, or any part thereof or (2) any deficiency remaining unpaid after foreclosure and sale of the Mortgaged Property.

(d)     Should Mortgagee elect to foreclose by exercise of the power of sale contained herein, Mortgagee shall: (1) cause to be recorded and delivered to Mortgagor such notice of default as may then be required by law and by this Mortgage; (2) without demand on Mortgagor, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale has been given as required by law, sell the Mortgaged Property at the time and place of sale fixed by it in said notice of sale, either as a whole or in separate lots or parcels or items as Mortgagee shall deem expedient, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale; and (3) deliver to the purchaser or purchasers at such sale its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied, with the recitals in such deed of any matters or facts being conclusive proof of the truthfulness thereof. Any person, including without limitation Mortgagor or Mortgagee, may purchase at such sale, and Mortgagor hereby covenants to warrant and defend the title of such purchaser or purchasers. Mortgagee may postpone the sale of all or any portion of the Mortgaged Property from time to time in accordance with the laws of the State in which the Land is located.

To the fullest extent allowed by law, Mortgagor hereby expressly waives any right which it may have to direct the order in which any of the Mortgaged Property shall be sold in the event of any sale or sales pursuant to this Mortgage. Upon any foreclosure sale, Mortgagee may bid for and purchase the Mortgaged Property and shall be entitled to apply all or any part of the Debt as a credit to the purchase price.

Mortgagee may from time to time rescind any notice of default or notice of sale before any sale as provided above in accordance with the laws of the State in which the Premises is located. The exercise by Mortgagee of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or otherwise affect any provision, covenant or condition of any Loan Document or any of the rights, obligations or remedies of Mortgagee hereunder or thereunder.

(e)     If Mortgagee, its nominee, designee, successor, or assignee acquires title to one or more of the Condominium Units by reason of foreclosure of this Mortgage, deed-in-lieu of foreclosure or otherwise, Mortgagee, its nominee, designee, successor, assign or such

purchaser shall (1) succeed to all of the rights of and benefits accruing to Mortgagor under the Condominium Documents, and (2) be entitled to exercise all of the rights and benefits accruing to Mortgagor under the Condominium Documents. At such time as Mortgagee shall request, Mortgagor agrees to execute and deliver to Mortgagee such documents as Mortgagee and its counsel may require in order to insure that the provisions of this paragraph will be validly and legally enforceable and effective against Mortgagor and all parties claiming by, through, under or against Mortgagor. Mortgagor hereby absolutely and irrevocably appoints Mortgagee as its true and lawful attorney, coupled with an interest, in its name and stead to make and execute on behalf of Mortgagor any documents necessary to validly and legally carry out the rights granted to Mortgagee under the terms of this paragraph, Mortgagor ratifying all that is said attorney shall do by virtue thereof. In addition, Mortgagor covenants and agrees to give to Mortgagee prompt notice of any notice of any special assessment relating to the condominium units received by Mortgagor.

(f)     After deducting all costs, fees and expenses of Mortgagee, including costs of evidence of title in connection with sale, Mortgagee shall, to the extent permitted by law, apply the proceeds of sale in the manner provided in the Note.

(g)     Subject to applicable law, Mortgagee may postpone sale of all or any portion of the Mortgaged Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement or subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give a new notice of sale.

(h)     Upon the occurrence of an Event of Default hereunder, Mortgagee may proceed, in any sequence: (1) to exercise its rights hereunder with respect to all or any portion of the Mortgaged Property and all or any portion of the personal property subject hereto; and (2) to exercise its rights under Article 4 hereof with respect to all or any portion of the personal property subject hereto in accordance with the provisions of the UCC.

(i)     In addition to all other rights and remedies of Mortgagee, Mortgagee may waive its lien against the Mortgaged Property or any portion thereof, together with fixtures or personal property thereon, to the extent such property is found to be environmentally impaired, and may exercise any and all rights and remedies of an unsecured creditor against Mortgagor and all of Mortgagor's assets and property for the recovery of any deficiency. No such waiver shall be final or binding on Mortgagee unless and until a final money judgment is obtained against Mortgagor. Notwithstanding anything to the contrary contained in this Mortgage or the other Loan Documents, Mortgagor shall be fully and personally liable for any such deficiency and Mortgagor's liability to Mortgagee in such event shall not be limited to the original principal amount of the obligations secured by this Mortgage. Mortgagor's obligations hereunder shall survive the foreclosure, deed in lieu of foreclosure, release, reconveyance or any other transfer of the Mortgaged Property or this Mortgage. For the purpose of any action brought under this Section, Mortgagor hereby waives the defense of laches.

5.3     Appointment of Receiver.     Upon the occurrence of an Event of Default, Mortgagee, as a matter of right and without notice to Mortgagor or anyone claiming under Mortgagor, and without regard to the then value of the Mortgaged Property or the interest of

9

Mortgagor therein, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers of the Mortgaged Property, and Mortgagor hereby irrevocably consents to such appointment and waives notice of any application therefor. Any such receiver or receivers shall have all the usual powers and duties of receivers in like or similar cases and all the powers and duties of Mortgagee in case of entry as provided in this Mortgage and shall continue as such and exercise all such powers until the later of: (a) the date of confirmation of sale of the Mortgaged Property; (b) the disbursement of all proceeds of the Mortgaged Property collected by such receiver and the payment of all expenses incurred in connection therewith; or (c) the termination of such receivership with the consent of Mortgagee or pursuant to an order by a court of competent jurisdiction.

    5.4    <u>Remedies Not Exclusive</u>.  No remedy herein conferred upon or reserved to Mortgagee is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute.  Every power or remedy given by the Note or any of the Loan Documents to Mortgagee may be exercised concurrently or independently, from time to time and as often as may be deemed expedient by Mortgagee.  No delay or omission of Mortgagee in the exercising of any right or power accruing upon any Event of Default hereunder shall impair such right or power or any other right or power nor shall the same be construed to be a waiver of any default or any acquiescence therein.  If there exists additional security for the obligations secured hereby, Mortgagee, at its sole option, and without limiting or affecting any of the rights or remedies hereunder, may exercise any of the rights or remedies to which it may be entitled hereunder either concurrently with whatever rights it may have in connection with such other security or in such order and in such manner as Mortgagee may deem fit without waiving any rights with respect to any other security.

    5.5    <u>Request for Notice</u>.  Mortgagor hereby requests a copy of any notice of default and that any notice of sale hereunder be mailed to it at the address set forth in this Mortgage.

## ARTICLE 6.  MISCELLANEOUS

    6.1    <u>Governing Law, Severability</u>.  THIS MORTGAGE AND THE OBLIGATIONS ARISING HEREUNDER  SHALL  BE  GOVERNED  BY,  AND  CONSTRUED  IN ACCORDANCE WITH, THE LAWS OF THE STATE OF HAWAII APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA.

        In the event of any one or more of the provisions contained in this Mortgage or in the Note or in any of the other Loan Documents shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability will not affect any other provision of this Mortgage, but this Mortgage shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein or therein.

    6.2    <u>Amendment, No Implied Waiver</u>.  This Mortgage cannot be modified, waived, discharged or terminated orally, but only by a written instrument signed by the party against whom enforcement of the modification, waiver, discharge or termination is asserted.  No waiver

42781\1138295v1                                              9

by Mortgagee of any default or breach by Mortgagor hereunder shall be implied from any omission by Mortgagee to take action on account of such default if such default persists or is repeated, and no express waiver shall affect any default other than the default identified in the waiver and such waiver shall be operative only for the time and to the extent therein stated. Waivers of any covenant, term or condition contained herein shall not be construed as a waiver of any subsequent breach of the same covenant, term or condition. The consent or approval by Mortgagee to or of any act by Mortgagor requiring further consent or approval shall not be deemed to waive or render unnecessary the consent or approval to or of any subsequent similar act. No delay or omission of Mortgagee in the exercising of any right or remedy available upon an Event of Default shall impair such right or remedy or any other right or remedy nor shall the same be construed to be a waiver of any Event of Default or any acquiescence therein; and every right and remedy given under this Mortgage to Mortgagee may be exercised from time to time as often as may be deemed expedient by Mortgagee.

     6.3    <u>Reconveyance; Release.</u>

     (a)    If all sums secured hereby have been paid as provided in the Note, Mortgagee shall release the lien of this Mortgage and reconvey the applicable portion of the Mortgaged Property then held hereunder by proper instruments(s) to Mortgagor or the person or persons legally entitled thereto, without warranty, and Mortgagor shall pay all fees in connection with the preparation, recordation and filing thereof. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in any reconveyance may be described as "the person or persons legally entitled thereto."

     (b)    Mortgagee agrees to release the lien of this Mortgage on any Timeshare Interest sold consistent with the provisions of Section 2.2 hereof.

     6.4    <u>Notices.</u> All notices hereunder shall be in writing and shall be given or served by actual delivery or by being deposited in the United States Mail, registered or certified, return receipt requested, or with a nationally recognized overnight commercial delivery service requiring proof of delivery, addressed to the parties as follows (or to such other address as any party may notify the others in writing in the manner set forth herein):

     "Mortgagor"    SVC-WAIKIKI, LLC
                    40 Skokie Boulevard - #350
                    Northbrook, IL 60062-1699
                    Attention: Sheldon H. Ginsburg and
                    Craig J. Goldstein

     "Mortgagee"    STRATEGY RESORT FINANCING INC.
                    200 Yorkland Boulevard – Suite 200

Toronto, Ontario
CANADA M2J 5C1
Attention: Sandro Sordi

Such notice shall be deemed delivered on the date personally delivered, or if mailed, on the third (3rd) business day after the same was deposited in the United States mail, postage prepaid, as aforesaid or on the next business day after the same was sent via a nationally recognized express next-business-day-delivery service.

**6.5    Automatic Subordination of Mortgage upon funding by SIL of Eight Million Two Hundred Seventy Five Thousand Dollar ($8,275,000) loan.**   Mortgagee, by its acceptance hereof, hereby agrees and acknowledges that it has approved of the that certain Eight Million Two Hundred Seventy Five Thousand Dollar ($8,275,000) loan to be made by SIL to Mortgagor.  Mortgagee, by its acceptance hereof, acknowledges that, as a condition to funding such loan, such loan must be secured by a mortgage, junior in priority only to the mortgage securing the Twenty Three Million Dollar ($23,000,000) loan made by Mortgagee to Mortgagor on the date hereof and the other items identified in Section 2.1(a) and (c) hereof.  Therefore, Mortgagee (by its acceptance hereof) further agrees that upon funding of the Eight Million Two Hundred Seventy Five Thousand Dollar ($8,275,000) loan by SIL to Mortgagor, this Mortgage shall be automatically subordinated to the mortgage securing the Eight Million Two Hundred Seventy Five Thousand Dollar ($8,275,000) by SIL to Mortgagor.  This provision is self operative, with no need of any future action by Mortgagee or Mortgagor.

**6.6    Intentionally Omitted.**

**6.7    Successors and Assigns; Gender.**  This Mortgage applies to and shall be binding on and enure to the benefit of all parties to this Mortgage and their respective successors and assigns.  In this Mortgage, whenever the context so requires, the masculine gender shall include the feminine and/or neuter and the singular number shall include the plural and conversely in each case.

**6.8    Headings.**  Headings are for convenience only and are not intended as a limitation on the content of the paragraph following or as an aid to the construction thereof.

**6.9    Waiver.**  To the full extent permitted by law, Mortgagor waives the pleading of any statute of limitations as a defense to any and all obligations secured by this Mortgage.

**6.10    Assignment.**  This Mortgage is assignable by Mortgagee, and any assignment hereof by Mortgagee shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Mortgagee.

**6.11    Time of the Essence.**  Time is of the essence with respect to each and every covenant, agreement, and obligation of Mortgagor under this Mortgage and any and all other Loan Documents.

**6.12    Attorneys' Fees.**  Mortgagor shall forthwith pay to Mortgagee the amount of all reasonable and documented attorneys' fees, costs and expenses incurred by Mortgagee under and

12

pursuant to this Mortgage, any other Loan Document given to Mortgagee as security for the Mortgagor's obligations to Mortgagee under the Loan or in connection with any transaction contemplated hereby or thereby, or with respect to the Mortgaged Property or any defense or protection or enforcement of Mortgagee's security interest in the Mortgaged Property which Mortgagee believes is necessary or desirable (whether or not Mortgagee files a lawsuit against Mortgagor and including without limitation a judicial foreclosure action or a non-judicial foreclosure proceeding) in the event Mortgagee retains counsel, or incurs costs in order to: obtain legal advice; enforce, or seek to enforce, any of its rights; commence, intervene in, respond to, or defend any action or proceeding; file or prosecute a claim in any action or proceeding (including without limitation, any probate claim, bankruptcy claim, third-party claim, or secured creditor claim); protect, obtain possession of, lease, dispose of or otherwise enforce Mortgagor's right, title and interest in the Premises or any portion thereof; or obtain the appointment of a receiver.  In addition to the foregoing reasonable and documented attorneys' fees, costs and expenses, Mortgagee shall be entitled to its reasonable and documented attorneys' fees, costs and expenses incurred in any post judgment proceedings to enforce any judgment in connection with the matters described above.  This provision is separate and several and shall survive the merger of this provision into any judgment.

    6.13    **Loss of Note.**  Upon notice from Mortgagee of the loss, theft, or destruction of any of the Notes and upon receipt of indemnity reasonably satisfactory to Mortgagor from Mortgagee, or in the case of mutilation of the Note, upon surrender of the mutilated Note, Mortgagor shall make and deliver a new note of like tenor in lieu of the then to be superseded Note.

    6.14    **Waiver of Jury Trial.**  MORTGAGOR HEREBY WAIVES ITS RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS MORTGAGE AND THE RELATIONSHIP THAT IS BEING ESTABLISHED.   THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY MORTGAGOR, AND MORTGAGOR ACKNOWLEDGES THAT NEITHER MORTGAGEE NOR ANY PERSON ACTING ON BEHALF OF MORTGAGEE HAS MADE ANY REPRESENTATIONS OF FACT TO INCLUDE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT.   MORTGAGOR ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT MORTGAGEE HAS ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS MORTGAGE AND THAT MORTGAGEE WILL CONTINUE TO RELY ON THIS WAIVER IN ITS RELATED FUTURE DEALINGS WITH MORTGAGOR. MORTGAGOR FURTHER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED, IN THE SIGNING OF THIS MORTGAGE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL.

    6.15    **No Liability or Obligation on Mortgagee.**  Nothing in this Mortgage shall be construed to impose any obligation upon Mortgagee to expend any money or to take any other discretionary act herein permitted and Mortgagee shall not have any liability or obligation for any delay or failure to take any discretionary act.

13

IN WITNESS WHEREOF, Mortgagor has executed this Mortgage as of the date first above written.

Mortgagor:                    SVC-WAIKIKI, LLC,
                              a Delaware limited liability company

                              By: SHELL VACATIONS LLC,
                                  an Arizona limited liability company
                                  Its Sole Member

                              By: _____
                                  Robert Lee Foster
                                  Its Vice President

14

STATE OF HAWAII                              )
                                             ) SS.
CITY AND COUNTY OF HONOLULU                  )


On April 4, 2005, before me appeared ROBERT LEE FOSTER, to me personally known, who being by me duly sworn or affirmed, did say that such person executed the foregoing instrument as the free act and deed of such person, and if applicable in the capacity shown, having been duly authorized to execute such instrument in such capacity.

Name:  Noelani N. Jinbo
Notary Public, State of Hawaii

My commission expires:  9/22/2006

15

EXHIBIT "A"

-ITEM I:-

-FIRST:-

Apartment Nos. (described in Exhibit "1" attached hereto) of the Condominium Project known as the "ILIKAI APARTMENT BUILDING", as established by Declaration of Horizontal Property Regime dated April 22, 1964, filed in said Office of the Assistant Registrar of the Land Court as Land Court Document No. 330338, as amended, and as shown on Condominium Map No. 3 and any amendments thereto.

-SECOND:-

An undivided percentage interest appurtenant to each apartment, as set forth in said Exhibit "1", as tenant in common with the owners from time to time of other undivided interests in and to the common elements, including the aforesaid building and the lands described herein, said common elements being more particularly described in said Declaration of Horizontal Property Regime filed as Land Court Document No. 330338, as amended.

-ITEM II:-

-FIRST:-

Apartment Nos. (described in Exhibit "2" attached hereto) of the Condominium Project known as the "ILIKAI APARTMENT BUILDING", as established by Declaration of Horizontal Property Regime dated April 22, 1964, filed in said Office of the Assistant Registrar of the Land Court as Land Court Document No. 330338, as amended, and as shown on Condominium Map No. 3 and any amendments thereto.

-SECOND:-

An undivided percentage interest appurtenant to each apartment, as set forth in said Exhibit "2", as tenant in common with the owners from time to time of other undivided interests in and to the common elements, including the aforesaid building and the lands described herein, said common elements being more particularly described in said Declaration of Horizontal Property Regime filed as Land Court Document No. 330338, as amended.

The lands upon which said Condominium Project "ILIKAI APARTMENT BUILDING" is located are described as follows:

All of those certain parcels of land situate at Kalia, Waikiki, Honolulu, City and County of Honolulu, State of Hawaii, described as follows:

LOTS: 1-A-1, area 122,071 square feet, and
   1-A-2, area  143 square feet, as shown on Map 4;
   2, area   467 square feet,

1

|  |  |
|---|---|
| 3, area | 293 square feet, |
| 4, area | 120 square feet, and |
| 5, area | 2,202 square feet, as shown on Map 1; |

The Maps above referred to by numbers are filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Consolidation No. 64 of Ala Moana Properties, Limited;

Together with a perpetual easement appurtenant to said Lots 1-A-1 and 1-A-2 for the construction, use and maintenance for storm drain purposes only over, across or under Lot 25, as shown on Map 4, filed in said Office with Land Court Consolidation No. 32 of Bishop Trust Company, Limited, Trustee for Hobron Land Trust;

Together also with a perpetual nonexclusive easement appurtenant to Lots 1-A-1 and 1-A-2 for pedestrian and vehicular traffic over and across Lot 23, as shown on said Map 4;

Being the land(s) described in Transfer Certificate of Title No. 746,772 issued to SVC-Waikiki, LLC, a Delaware limited liability company, as to an undivided interest appurtenant to each apartment referred to in said Exhibits "1" and "2".

Being the premises conveyed by FORWARD ONE, LLC, a California limited liability company, to SVC-WAIKIKI, LLC, a Delaware limited liability company, by Limited Warranty Deed, filed with the Office of the Assistant Registrar of the Land Court of the State of Hawaii as Land Court Document No. 3249997.

SUBJECT, HOWEVER, to the following:

1.   Improvement Assessment: Waikiki Business Improvement District, Second Installment, for the Fiscal Year July 1, 2004 - June 30, 2005.

2.   -AS TO LOT 1-A-2 ONLY:-  A perpetual easement for a public right-of-way over, across, along and upon said Lot, reserving the right to use said easement for a right-of-way in common with the public, as set forth in Grant dated December 31, 1963, filed as Land Court Document No. 324985.

3.   -AS TO LOTS 1-A-1 and 1-A-2 ONLY:-

   (A)   Reservation in favor of the State of Hawaii of "all littoral rights of whatever nature or kind which are or may be thereunto appertaining"; as reserved in Exchange Deed dated December 20, 1956, filed as Land Court Document No. 196551.

   (B)   All of the access rights over and across the common boundaries of said Lots, reserving the right to use said Lot 1-A-2 for a right-of-way in common with the public, as set forth in Deed dated December 31, 1963, filed as Land Court Document No. 324987.

4.   -AS TO LOT 3 ONLY:-  A perpetual easement in favor of the City and County of

2

17

Honolulu for an existing concrete box culvert.

5.     -AS TO LOTS 2, 3, 4 and 5 ONLY:-

    (A)     A perpetual easement in favor of the State of Hawaii for a public right-of-way.

    (B)     Agreement dated December 23, 1963, filed as Land Court Document No. 324984, by and among the State of Hawaii, Ilikai, Incorporated and Makaha Valley Farms, Limited.

6.     -AS TO LOTS 1-A-1, 1-A-2, 2 and 5 ONLY:-  Any and all littoral rights appurtenant to said Lots in favor of the State of Hawaii, as set forth in instrument dated December 20, 1956, filed as Land Court Document No. 196552.

7.     The terms and provisions, including the failure to comply with any covenants, conditions and reservations, contained in First Restated Declaration of Condominium Property Regime of Ilikai Apartment Building dated May 10, 1994, recorded as Land Court Document No. 2158834, and as shown on Condominium Map No. 3 and any amendments thereto, which Restated Declaration restates the original Declaration dated April 22, 1964, filed as Land Court Document No. 330338, and any amendments thereto, and which Restated Declaration was amended by instrument dated March 6, 2001, recorded as Land Court Document No. 2709107.

8.     The terms and provisions, including the failure to comply with any covenants, conditions and reservations, contained in First Restated By-Laws of the Association of Apartment Owners of Ilikai Apartment Building dated May 10, 1994, recorded as Land Court Document No. 2158835, which Restated By-Laws restates the original By-Laws dated April 22, 1964, filed as Land Court Document No. 330338, and any amendments thereto, and which Restated By-Laws were amended by instruments dated — (acknowledged September 16, 1997), recorded as Land Court Document No. 2429786, dated August 3, 2001, recorded as Land Court Document No. 2734838, and dated September 24, 2002, recorded as Land Court Document No. 2849302.

9.     The rights granted or reserved to the Association of Owners of such Horizontal Property Regime to give, convey, transfer, cancel, relocate, and otherwise deal with any and all utility and other easements now or hereafter located on or affecting the premises and to grant, convey or exchange easements to or with the adjoining lot or lots for construction of a structure, or structures, to facilitate parking and use of the lands described herein and for ingress and egress between the lands described herein and said adjoining lot or lots, pursuant to Paragraph 7 of said Declaration of Horizontal Property Regime, as amended.

10.    The following Survey matters as shown on map prepared by Russell Figueiroa, Land Surveyor, with R.M. Towill Corporation, dated November 8, 1984, updated January 5, 2000:  Concrete curb crosses from Lot 1-A-1 (Items I and II) into Lot 5-C-2, Land Court Application 852, by approximately 1 foot.

11.    Declaration of Annexation (Ilikai) dated April _5_, 2005, filed with the Office of the Assistant Registrar of the Land Court of the State of Hawaii as Land Court Document No. 3249998.

## ILIKAI APARTMENT BUILDING
### Exhibit "1"

| Apartment No. | Undivided Interest | HPR No. |
|---|---|---|
| 301 | 1/1330 | 708 |
| 303 | 1/1330 | 710 |
| 305 | 1/1330 | 712 |
| 307 | 1/1330 | 714 |
| 311 | 1/1330 | 715 |
| 312 | 1/1330 | 716 |
| 313 | 1/1330 | 717 |
| 314 | 1/1330 | 718 |
| 315 | 1/1330 | 719 |
| 316 | 1/1330 | 720 |
| 317 | 1/1330 | 721 |
| 318 | 1/1330 | 722 |
| 319 | 1/1330 | 723 |
| 320 | 1/1330 | 724 |
| 321 | 1/1330 | 725 |
| 322 | 1/1330 | 726 |
| 323 | 1/1330 | 727 |
| 324 | 1/1330 | 728 |
| 328 | 1/1330 | 730 |
| 330 | 1/1330 | 732 |
| 332 | 1/1330 | 734 |
| 334 | 1/1330 | 736 |
| 336 | 1/1330 | 738 |
| 338 | 1/1330 | 740 |
| 340 | 1/1330 | 742 |
| 342 | 1/1330 | 744 |
| 530 | 1/1330 | 764 |
| 532 | 1/1330 | 765 |
| 534 | 1/1330 | 766 |
| 536 | 1/1330 | 767 |
| 538 | 1/1330 | 768 |
| 540 | 1/1330 | 769 |

### END OF EXHIBIT "1"

1

19

ILIKAI APARTMENT BUILDING
Exhibit "2"

| Apartment No. | Undivided Interest | HPR No. |
|---|---|---|
| 403 | 1/1330 | 0559 |
| 411 | 1/1330 | 0562 |
| 415 | 1/1330 | 0564 |
| 417 | 1/1330 | 0565 |
| 428 | 1/1330 | 0016 |
| 432 | 1/1330 | 0020 |
| 434 | 1/1330 | 0022 |
| 442 | 1/1330 | 0030 |
| 503 | 1/1330 | 0570 |
| 511 | 1/1330 | 0573 |
| 515 | 1/1330 | 0575 |
| 519 | 1/1330 | 0577 |
| 523 | 1/1330 | 0579 |
| 636 | 1/1330 | 0075 |
| 715 | 1/1330 | 0597 |
| 717 | 1/1330 | 0598 |
| 721 | 1/1330 | 0600 |
| 723 | 1/1330 | 0601 |
| 740 | 1/1330 | 0103 |
| 902 | 1/1330 | 0137 |
| 903 | 1/1330 | 0614 |
| 913 | 1/1330 | 0618 |
| 915 | 1/1330 | 0619 |
| 920 | 1/1330 | 0147 |
| 921 | 1/1330 | 0622 |
| 942 | 1/1330 | 0167 |
| 1011 | 1/1330 | 0628 |
| 1012 | 1/1330 | 0176 |
| 1014 | 1/1330 | 0177 |
| 1023 | 1/1330 | 0634 |
| 1024 | 1/1330 | 0182 |
| 1040 | 1/1330 | 0198 |
| 1103 | 1/1330 | 0508 |
| 1111 | 1/1330 | 0636 |
| 1112 | 1/1330 | 0209 |
| 1211 | 1/1330 | 0638 |
| 1213 | 1/1330 | 0519 |
| 1215 | 1/1330 | 0520 |
| 1301 | 1/1330 | 0639 |
| 1303 | 1/1330 | 0640 |
| 1305 | 1/1330 | 0641 |
| 1311 | 1/1330 | 0643 |
| 1317 | 1/1330 | 0646 |
| 1807 | 1/1330 | 0690 |
| 1811 | 1/1330 | 0691 |
| 1813 | 1/1330 | 0692 |
| 1815 | 1/1330 | 0693 |
| 1823 | 1/1330 | 0540 |

END OF EXHIBIT "2"

1

20

## SECURED PROMISSORY NOTE

$23,000,000                                                    Date:  April __, 2005

FOR VALUE RECEIVED, the undersigned, SVC-WAIKIKI, LLC, a Delaware limited liability company ("MAKER") promises to pay to the order of STRATEGY RESORT FINANCING INC., a Florida corporation ("HOLDER") the principal sum of Twenty Three Million Dollars ($23,000,000), together with interest at the "Interest Rate" (as defined below) on the unpaid balance of principal (the "Outstanding Balance"), commencing on the date hereof, principal and interest payable as follows:

Section 1.  The Outstanding Balance, and accrued and unpaid interest thereon, is due and payable on or before April __, 2008 (the "Maturity Date").  Until such time, there shall be no payment of principal due hereunder.

Section 2.  Maker shall pay interest at the Interest Rate on the principal amount outstanding in arrears commencing on the first day of July 2005, and continuing on the 1st day of each calendar quarter thereafter, until the Maturity Date, at which time all unpaid accrued interest and other amounts payable hereunder shall be due and payable in full.  For purposes hereof, the "Interest Rate" shall be the fluctuating rate (the "Interest Rate") per annum at all times equal to the greater of (a) three percent (3%) over the Reference Rate and (b) eight percent (8%).  As used herein, "Reference Rate" shall mean the per annum rate of interest announced by *The Wall Street Journal* to be in effect from time to time, as the "Prime Lending Rate".  Any change in the Reference Rate shall take effect on the day specified by *The Wall Street Journal* in connection with the establishment thereof.  In the event *The Wall Street Journal* ceases to have a Prime Lending Rate, Maker and Holder shall negotiate in good faith an alternative rate as the "Reference Rate".

Section 3.  Interest hereunder shall be computed on the basis of a year consisting of three hundred sixty-five (365) day year.  Maker may prepay the loan evidenced by this Note in full or in part without penalty at any time upon not less than one (1) days notice.  The "Release Price" (as defined in the "Mortgage" (as defined below)) delivered to Holder in connection with a release of a "Timeshare Interest" (as defined in the Mortgage) shall be applied to the principal amount due hereunder.

Section 4.  If any payment hereunder is not made on or before its due date (taking into account any applicable grace or cure period), other than the payment of the outstanding principal amount due under this Note upon the Maturity Date, a late charge of four percent (4%) of the amount so overdue shall be charged by Holder for the purpose of defraying the expense incident to handling such delinquent payments.  Upon any "Event of Default" (as defined below), Holder shall be entitled to charge interest equal to twelve percent (12%) per annum.

Section 5.  This Note is secured by that certain Mortgage, Security Agreement, Assignment of Leases and Rents, and Financing Statement (the "Mortgage").  The Mortgage, this Note and all other documents delivered by Maker in connection therewith or herewith are referred to herein collectively as the "Loan Documents."

Section 6. The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder:

    a)    Maker shall fail to make any payment of interest under this Note within ten (10) days of when due hereunder and after not less than five (5) days written notice of delinquency; or

    b)    The occurrence of any other "Event of Default" under any other Loan Document (after passage of any applicable grace or cure period).

Upon the occurrence of an Event of Default, Holder may (i) declare all indebtedness evidenced by this Note to be immediately due and payable, and (ii) exercise all rights and remedies available under this Note, the Mortgage, and applicable law.

Section 7. In the event that Holder institutes legal proceedings to enforce this Note, Maker agrees to pay Holder, in addition to any indebtedness due and unpaid, all reasonable and documented costs and expenses of such proceedings, including reasonable and documented attorneys' fees. Maker and any parties now or hereafter liable for the payment hereof, primarily or secondarily, directly or indirectly, and whether as endorser, guarantor, surety, or otherwise, hereby severally waive presentment, demand, protest, notice of protest and/or of dishonor, and all other demands or notices of any sort whatever with respect to this Note unless specifically provided for elsewhere herein. If any provision hereof is, for any reason and to any extent, invalid or unenforceable, then neither the remainder of the document in which such provision is contained, nor the application of the provision to other persons, entities, or circumstances, nor any other document referred to herein, shall be affected thereby, but instead shall be enforceable to the maximum extent permitted by law. This Note shall be construed and enforced in accordance with the laws of the State of Hawaii.

Section 8. All notices hereunder shall be in writing and shall be given or served by actual delivery or by being deposited in the United States Mail, registered or certified, return receipt requested, or with a nationally recognized overnight commercial delivery service requiring proof of delivery, addressed to the parties as follows (or to such other address as any party may notify the others in writing in the manner set forth herein):

        AS TO HOLDER:    Sandro Sordi
                                    200 Yorkland Boulevard - Suite 200
                                    Toronto, Ontario
                                    CANADA M2J 5C1

        AS TO MAKER:    Sheldon H. Ginsburg and
                                    Craig J. Goldstein
                                    Shell Vacations LLC
                                    40 Skokie Boulevard - #350
                                    Northbrook, IL  60062-1699

Such notice shall be deemed delivered on the date personally delivered, or if mailed, on the third (3rd) business day after the same was deposited in the United States mail, postage prepaid, as aforesaid or on the next business day after the same was sent via a nationally recognized express next-business-day-delivery service.

**IN WITNESS WHEREOF,** the undersigned has executed this Note on the day and year first written above.

MAKER:
SVC-WAIKIKI LLC
By: Shell Vacations LLC, its member

By: _____

Its: _Manager Director_

25



L-510   STATE OF HAWAII
OFFICE OF ASSISTANT REGISTRAR
RECORDED
APR 05, 2005     10:00 AM

Doc No(s) 3249999
on Cert(s) 741,772

/s/ CARL T. WATANABE
ASSISTANT REGISTRAR

20   8/9   Z1

---

AFTER RECORDATION, RETURN BY MAIL (X)  PICK-UP ( )

Strategy Resort Financing Inc.                    200464675-S
200 Yorkland Blvd., Suite 200
Toronto, Ontario, Canada  M2J 5C1        Total Pages:  20          LC-8
Attn:  Sandro Sordi

TITLE OF DOCUMENT:

MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF
LEASES AND RENTS, AND FINANCING STATEMENT

---

PARTIES TO DOCUMENT:

MORTGAGOR:      SVC-WAIKIKI, LLC, a Delaware limited liability company

MORTGAGEE:      STRATEGY RESORT FINANCING INC., a Florida corporation

---

| PROPERTY DESCRIPTION: | LIBER/PAGE/DOCUMENT NO.: |
|---|---|
| | LAND COURT DOCUMENT NO.: 3249997 |
| | TRANSFER CERTIFICATE OF TITLE NO(S).: 741,772 |

Tax Map Key No. 2-6-010-007 (Oahu)

42781\1138294v1

## MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS, AND FINANCING STATEMENT

THIS MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS, AND FINANCING STATEMENT ("Mortgage") is made and executed as of April 5, 2005, by and between SVC-WAIKIKI, LLC, a Delaware limited liability company ("Mortgagor"), whose address is 40 Skokie Boulevard, Suite 350, Northbrook, Illinois 60062-1699 in favor of STRATEGY RESORT FINANCING INC., a Florida corporation ("Mortgagee"), whose address is 200 Yorkland Blvd, Suite 200, Toronto, Ontario M2J5C1.

The defined terms used in this Mortgage, if not otherwise defined, have the meanings set forth in the Secured Promissory Note in the amount of $23,000,000, dated as of the date hereof, by Mortgagor, as maker, in favor of Mortgagee, as holder (the "Note"). The terms of this Mortgage are in addition to and supplement the terms and conditions of the Note. In the event of conflict, the terms and conditions of the Note shall control over the terms and provisions of this Mortgage.

For valuable consideration, Mortgagor irrevocably grants, transfers mortgages, releases, liens and assigns to Mortgagee, its successors and assigns, WITH POWER OF SALE AND RIGHT OF ENTRY AND POSSESSION, and creates a security interest in favor of Mortgagee in, all rights, title, interests, estates, powers and privileges that Mortgagor now has or may hereafter acquire in or to the following property and interests therein (the "Mortgaged Property"):

A.    The real property located in the State of Hawaii, City and County of Honolulu, more particularly described on Exhibit A hereto (the "Premises");

B.    All buildings, structures and other improvements now or in the future located or to be constructed on the Premises (the "Improvements");

C.    All tenements, hereditaments, appurtenances, privileges, options to purchase or lease all or any part of the Premises or Improvements or any interest therein (and any greater estate in the Premises or Improvements now owned or hereafter acquired pursuant thereto), and other rights and interests now or in the future benefiting or otherwise relating to the Premises or the Improvements, including easements, rights-of-way, sidewalks, alleys and strips and gores of land adjacent to or used in connection with the Premises, development rights, mineral rights, water rights and water stock;

D.    All income, rents, room rates, issues, profits, revenues (including oil and gas or other mineral royalties and bonuses), deposits, and other benefits from the Premises or Improvements (collectively, the "Rents");

E.    All present and future rights, title and interests of Mortgagor, in and to all leases and other agreements affecting the use, enjoyment or occupancy of the Premises or Improvements heretofore or hereafter entered into (including without limitation subleases, licenses, concessions, tenancies and other occupancy agreement covering or encumbering all or

42781U138294v1

any portion of the Premises or Improvements), together with any guarantees, supplements, amendments, modifications, extensions and renewals of any thereof, and all additional remainders, reversions, and other rights and estates appurtenant thereto (collectively, the "Leases");

F.	All present and future rights, title and interest of Mortgagor in and to all machinery, furnishings, equipment, fixtures, inventory and articles of personal property and accessions thereof and renewals, replacements thereof and substitutions therefor, other customary equipment and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises, or appurtenant thereto, and usable in connection with the present or future materials and supplies of any nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises or in the Improvements, or appurtenant thereto, or usable in connection with the present or future operation, enjoyment and occupancy of the Premises or the Improvements (the "Equipment");

G.	All present and future rights, title and interests of Mortgagor in and to (i) all accounts, escrows, documents, instruments, chattel paper, claims, deposits and general intangibles, as such terms are defined in the Uniform Commercial Code of the State of Hawaii, Hawaii Revised Statutes, Chapter 490, as the same may hereafter be amended from time to time (the "UCC"), and (ii) all contract rights, franchises, books, records, appraisals, architects and engineering plans, specifications, environmental and other reports relating to the Premises or the Improvements, licenses, contracts, permits and agreements required, related to or used in connection with the ownership, operation and/or maintenance of the Premises or the Improvements (to the extent assignable), approvals, actions, correspondence with present and prospective purchasers, tenants and suppliers, advertising materials and telephone exchange numbers as identified in such materials, refunds of real estate taxes and assessments and causes of action which now or hereafter relate to, are derived from or are used in connection with the Premises or the Improvements, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (collectively, the "Intangibles");

H.	All present and future rights, title and interest of Mortgagor in and to Equipment, awards for any taking in or by any condemnation or other eminent domain proceeding, insurance proceeds, tradenames, trademarks, servicemarks, logos, copyrights, goodwill, books and records, all refunds, rebates or credits in connection with a reduction in real estate taxes and assessments charged against the Premises as a result of tax certiorari or any applications or proceedings for reduction, all agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all proceeds, substitutions and replacements thereof;

I.	All of the rights and benefits accruing to Mortgagor in connection with Mortgagor's ownership, management and/or leasing of the condominium units and under the condominium documents creating the condominium regime at the Premises (the "Condominium Documents"), including without limitation all unsold timeshare interests (whether represented as points or otherwise); and

J.	All proceeds, products, profits or offspring of any of the foregoing.

FOR THE PURPOSE OF SECURING, in such order as Mortgagee may elect:

A.      Payment of an indebtedness in the sum of Twenty Three Million Dollars ($23,000,000), with interest thereon, evidenced by the Note, and any and all modifications, replacements, extensions and renewals thereof whether hereafter evidenced by the Note or otherwise;

B.      Payment of all other sums, with interest thereon at the Default Rate becoming due or payable under the provisions hereof or under the Note and any other document executed in connection with the Note (collectively, with the Note, the "Loan Documents");

C.      Payment of such additional sums and interest thereon which may hereafter be loaned to Mortgagor, or its successors or assigns, by Mortgagee, when evidenced by a promissory note or notes reciting that they are secured by this Mortgage;

D.      Due, prompt and complete observance, performance and discharge of each and every obligation, covenant and agreement of Mortgagor contained herein, in the Note or in the Loan Documents, and all supplements, amendments and modifications thereto and all extensions and renewals thereof, or in any other instrument or document heretofore or hereafter executed by Mortgagor having reference to or arising out of the indebtedness represented by the Note which recites that the obligations thereunder are secured by this Mortgage; and

E.      Payment of all sums advanced by Mortgagee to protect the Mortgaged Property, with interest thereon at the Default Rate.

This Mortgage constitutes a financing statement filed as a fixture filing in the Bureau of Conveyances of the State of Hawaii with respect to any and all fixtures included within the Mortgaged Property and with respect to any goods or other personal property that may now be or hereafter become such fixtures.

UPON CONDITION that subject to the terms hereof, until the happening of an Event of Default, the Mortgagor shall be permitted to use and possess the Mortgaged Property and to use and receive the rents, issues, profits, revenues and other income thereof.

## ARTICLE 1. AFFIRMATIVE COVENANTS
## AGREEMENTS OF MORTGAGOR

Mortgagor hereby agrees as follows:

1.1     Performance of Obligations.   Mortgagor shall pay, perform, observe and discharge each and every obligation, covenant and agreement for which this Mortgage has been given as security as provided above.

1.2     Covenants.   Mortgagor shall comply with each and every term, covenant and condition of the Note and the Loan Documents, all of which are incorporated by reference herein and made a part hereof.

    **1.3**   <u>Actions Affecting Mortgaged Property</u>. Mortgagor, at Mortgagor's expense, shall appear in and contest any action or proceeding purporting to affect the Mortgaged Property or the security hereof or the rights or powers of Mortgagee. Mortgagor shall pay all costs and expenses incurred by Mortgagee, including the cost of evidence of title and reasonable and documented attorneys' fees, costs and expenses in any such action or proceeding in which Mortgagee may appear.

    **1.4**   <u>Actions by Mortgagee to Preserve Mortgaged Property</u>. If there is an Event of Default under this Mortgage, the Note, or other Loan Documents, then Mortgagee, in its discretion, without obligation to do so and without notice to or demand upon Mortgagor and without releasing Mortgagor from any obligation, may make or do the same in such manner and to such extent as Mortgagee may deem necessary to protect the security hereof. In connection therewith (without limiting its general powers), Mortgagee shall have and is hereby given the right, but not the obligation to: (a) enter upon and take possession of the Mortgaged Property; (b) make additions, alterations, repairs and improvements to the Mortgaged Property that Mortgagee may consider necessary or proper to keep the Mortgaged Property in good condition and repair; (c) appear and participate in any action or proceeding affecting or that may affect the security hereof or the rights or powers of Mortgagee; (d) pay, purchase, contest or compromise any encumbrance, claim, charge, lien or debt that in the judgment of either may affect or appears to affect the security of this Mortgage or may be or appears to be prior or superior hereto; and (e) in exercising such powers, pay necessary expenses, including employment of counsel or other necessary or desirable consultants. Mortgagor shall, immediately upon demand therefor by Mortgagee, pay all costs and expenses incurred by Mortgagee in connection with the exercise by Mortgagee of the foregoing rights, together with interest at the Default Rate until paid, and all such sums shall be secured by this Mortgage.

    **1.5**   <u>Inspections</u>. Mortgagee, through its agents, representatives or employees, is authorized, to enter during normal business hours and upon reasonable notice, upon or in any part of the Mortgaged Property for the purpose of inspecting the same and for the purpose of performing any of the acts it is authorized to perform under the terms of any of the Loan Documents.

## ARTICLE 2. NEGATIVE COVENANTS OF MORTGAGOR

    Mortgagor hereby covenants, promises and agrees as follows:

    **2.1**   <u>Other Financing</u>. Mortgagor shall not create or permit to continue in existence any mortgage, pledge, security interest, lien or charge of any kind or other encumbrance upon any of the Mortgaged Property except for (a) liens for taxes and assessments not yet delinquent, (b) the liens to secure the "<u>Other Lender Debt</u>" (as defined below), and (c) such other liens or charges as are specifically permitted by the Note or approved in writing by Mortgagee prior to the recordation thereof. For purposes hereof, "<u>Other Lender Debt</u>" means that certain Eight Million Two Hundred Seventy Five Thousand Dollar ($8,275,000) loan to be made by Strategy Investments LLC, a limited liability company, to Mortgagor and secured by that certain second priority mortgage, and that certain One Million Three Hundred Eighty Thousand Dollar ($1,380,000) loan made by Mortgagee to Mortgagor and secured by that certain third priority

mortgage (it being understood and agreed by Mortgagee, by its acceptance hereof, that such One Million Three Hundred Eighty Thousand Dollar ($1,380,000) loan shall be second in priority until the funding of the Eight Million Two Hundred Seventy Five Thousand Dollar ($8,275,000) loan). Mortgagor shall take all action necessary to promptly secure releases of all liens and encumbrances which in the opinion of Mortgagee are or may be prior to Mortgagee's security interest.

    2.2    Transferability. Other than in connection with sales of timeshare interests in the Mortgaged Property (when and as provided in the Note), Mortgagor shall not, directly or indirectly, sell, convey, alienate, mortgage, encumber, pledge or otherwise transfer all or any part of the Mortgaged Property or permit the Mortgaged Property or any part thereof to be sold, conveyed, alienated, mortgaged, encumbered or otherwise transferred, except as expressly permitted by the Note. Mortgagor shall have the right to sell timeshare interests (whether as points or otherwise) (collectively, "Timeshare Interests"), and Mortgagee shall release the lien hereof with respect to such sold Timeshare Interests, upon the following conditions: (a) there shall be then no Event of Default; and (b) Mortgagor shall pay the "Release Price" (as defined below). For purposes hereof, "Release Price" shall mean $1.32 per point represented in the Shell Owners' Association Club associated with the Timeshare Interest being sold. Upon any such sale and release of such Timeshare Interests, Mortgagee shall execute all such releases, reconveyances or other documentation to establish the lien free transfer of the applicable Points to the applicable buyer.

ARTICLE 3. SECURITY AGREEMENT

    This Mortgage shall be self-operative and constitute a security agreement pursuant to the UCC with respect to all such part of the Mortgaged Property as is governed by the UCC, and Mortgagee shall have all of the rights and remedies of a secured party under the UCC as well as all other rights and remedies available at law or in equity. This Mortgage also shall be self-operative as a fixture filing pursuant to UCC Section 490:9-408. For purposes of the preceding sentences, Mortgagor shall be the "debtor" and Mortgagee shall be the "secured party," each with the addresses set forth herein. Mortgagor, upon demand of Mortgagee, shall assemble all such part of the Mortgaged Property and make it available to Mortgagee at the Premises or a place which is reasonably convenient to Mortgagee. Expenses of retaking, holding, preparing for sale, selling or the like shall be borne by Mortgagor.

ARTICLE 4. INTENTIONALLY OMITTED

ARTICLE 5. EVENTS OF DEFAULT<br>AND REMEDIES UPON DEFAULT

    5.1    Events of Default. Any of the following events shall be deemed an event of default ("Event of Default") hereunder:

(a)    The failure to make any payment of interest within ten (10) days of the due date thereof and after not less than five (5) days written notice of delinquency, or to make payment principal upon the Maturity Date;

(b)    if for more than thirty (30) days after receipt of written notice from Mortgagee, Mortgagor shall continue to be in default under any term, covenant, or condition hereof, the Note, or any of the other Loan Documents other than as specified in any of subsections (a) above or (c) below; provided, however, that if the cure of any such default cannot reasonably be effected within such thirty (30) day period and Mortgagor shall have promptly and diligently commenced to cure such default within such thirty (30) day period, then the period to cure shall be deemed extended for so long as Mortgagor diligently and continuously proceeds to cure such default to Mortgagee's satisfaction; and

(c)    The occurrence of any "Event of Default" under any of the other Loan Documents (as the same is defined therein).

5.2    Acceleration Upon Default, Additional Remedies.  Upon the occurrence of any Event of Default, Mortgagee may, at its option, declare all indebtedness secured hereby to be immediately due and payable without any presentment, demand, protest or notice of any kind. Thereafter, Mortgagee may to the extent permitted by law:

(a)    Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of its security, enter upon and take possession of the Mortgaged Property, or any part thereof, in its own name, and do any acts which it deems necessary or desirable to preserve the value, marketability or rentability of the Mortgaged Property, or any part thereof or interest therein, increase the income therefrom or protect the security hereof and, with or without taking possession of the Mortgaged Property, sue for or otherwise collect the Rents, and apply the same, less costs and expenses of operation and collection including without limitation reasonable and documented attorneys' fees, costs and expenses, upon any indebtedness secured hereby, all in such order as Mortgagee may determine.  The entering upon and taking possession of the Mortgaged Property, the collection of such Rents and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done in response to such default or pursuant to such notice of default and, notwithstanding the continuance in possession of all or any portion of the Mortgaged Property or the collection, receipt and application of Rents, Mortgagee shall be entitled to exercise every right provided for in any of the Loan Documents or by law upon occurrence of any Event of Default, including the right to exercise the power of sale.  Failure or discontinuance of Mortgagee at any time, or from time to time, to collect the Rents shall not in any manner affect the subsequent enforcement of Mortgagee of the right to collect the same.

(b)    Commence an action to foreclose this Mortgage, by power of sale, commencement of action or otherwise, appoint a receiver, or specifically enforce any of the covenants hereof.  Mortgagee shall be entitled to foreclose against the entire fee interest in the Mortgaged Property, or any portion thereof, or interests therein that are subject or junior to the lien of this Mortgage, in any order which it chooses.  Mortgagee shall be entitled to foreclose against the leasehold estates of each Lease which is subordinate to this Mortgage, whether such

subordination arose by virtue of its original priority, contract, or election of Mortgagee pursuant to this Mortgage, in any order which it chooses.  Mortgagee shall be entitled to complete its foreclosure as to any portion of the Mortgaged Property and/or leasehold estates, and postpone foreclosure as to the remainder.

(c)  Exercise all other rights and remedies provided herein, in the Note, in any of the Loan Documents or other document or agreement now or hereafter securing all or any portion of the obligations secured hereby, or by law.  Notwithstanding any statute or rule of law to the contrary, the failure to join any tenant(s) of the Mortgaged Property as party defendant or defendants in any foreclosure action or the failure of any such order or judgment to foreclose their rights shall not be asserted by Mortgagor as a defense in any civil action instituted to collect (1) the Debt, or any part thereof or (2) any deficiency remaining unpaid after foreclosure and sale of the Mortgaged Property.

(d)  Should Mortgagee elect to foreclose by exercise of the power of sale contained herein, Mortgagee shall:  (1) cause to be recorded and delivered to Mortgagor such notice of default as may then be required by law and by this Mortgage; (2) without demand on Mortgagor, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale has been given as required by law, sell the Mortgaged Property at the time and place of sale fixed by it in said notice of sale, either as a whole or in separate lots or parcels or items as Mortgagee shall deem expedient, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale; and (3) deliver to the purchaser or purchasers at such sale its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied, with the recitals in such deed of any matters or facts being conclusive proof of the truthfulness thereof.  Any person, including without limitation Mortgagor or Mortgagee, may purchase at such sale, and Mortgagor hereby covenants to warrant and defend the title of such purchaser or purchasers.  Mortgagee may postpone the sale of all or any portion of the Mortgaged Property from time to time in accordance with the laws of the State in which the Land is located.

To the fullest extent allowed by law, Mortgagor hereby expressly waives any right which it may have to direct the order in which any of the Mortgaged Property shall be sold in the event of any sale or sales pursuant to this Mortgage.  Upon any foreclosure sale, Mortgagee may bid for and purchase the Mortgaged Property and shall be entitled to apply all or any part of the Debt as a credit to the purchase price.

Mortgagee may from time to time rescind any notice of default or notice of sale before any sale as provided above in accordance with the laws of the State in which the Premises is located.  The exercise by Mortgagee of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or otherwise affect any provision, covenant or condition of any Loan Document or any of the rights, obligations or remedies of Mortgagee hereunder or thereunder.

(e)  If Mortgagee, its nominee, designee, successor, or assignee acquires title to one or more of the Condominium Units by reason of foreclosure of this Mortgage, deed-in-lieu of foreclosure or otherwise, Mortgagee, its nominee, designee, successor, assign or such

purchaser shall (1) succeed to all of the rights of and benefits accruing to Mortgagor under the Condominium Documents, and (2) be entitled to exercise all of the rights and benefits accruing to Mortgagor under the Condominium Documents. At such time as Mortgagee shall request, Mortgagor agrees to execute and deliver to Mortgagee such documents as Mortgagee and its counsel may require in order to insure that the provisions of this paragraph will be validly and legally enforceable and effective against Mortgagor and all parties claiming by, through, under or against Mortgagor. Mortgagor hereby absolutely and irrevocably appoints Mortgagee as its true and lawful attorney, coupled with an interest, in its name and stead to make and execute on behalf of Mortgagor any documents necessary to validly and legally carry out the rights granted to Mortgagee under the terms of this paragraph, Mortgagor ratifying all that its said attorney shall do by virtue thereof. In addition, Mortgagor covenants and agrees to give to Mortgagee prompt notice of any notice of any special assessment relating to the condominium units received by Mortgagor.

(f)      After deducting all costs, fees and expenses of Mortgagee, including costs of evidence of title in connection with sale, Mortgagee shall, to the extent permitted by law, apply the proceeds of sale in the manner provided in the Note.

(g)      Subject to applicable law, Mortgagee may postpone sale of all or any portion of the Mortgaged Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement or subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give a new notice of sale.

(h)      Upon the occurrence of an Event of Default hereunder, Mortgagee may proceed, in any sequence: (1) to exercise its rights hereunder with respect to all or any portion of the Mortgaged Property and all or any portion of the personal property subject hereto; and (2) to exercise its rights under Article 4 hereof with respect to all or any portion of the personal property subject hereto in accordance with the provisions of the UCC.

(i)      In addition to all other rights and remedies of Mortgagee, Mortgagee may waive its lien against the Mortgaged Property or any portion thereof, together with fixtures or personal property thereon, to the extent such property is found to be environmentally impaired, and may exercise any and all rights and remedies of an unsecured creditor against Mortgagor and all of Mortgagor's assets and property for the recovery of any deficiency. No such waiver shall be final or binding on Mortgagee unless and until a final money judgment is obtained against Mortgagor. Notwithstanding anything to the contrary contained in this Mortgage or the other Loan Documents, Mortgagor shall be fully and personally liable for any such deficiency and Mortgagor's liability to Mortgagee in such event shall not be limited to the original principal amount of the obligations secured by this Mortgage. Mortgagor's obligations hereunder shall survive the foreclosure, deed in lieu of foreclosure, release, reconveyance or any other transfer of the Mortgaged Property or this Mortgage. For the purpose of any action brought under this Section, Mortgagor hereby waives the defense of laches.

5.3      Appointment of Receiver. Upon the occurrence of an Event of Default, Mortgagee, as a matter of right and without notice to Mortgagor or anyone claiming under Mortgagor, and without regard to the then value of the Mortgaged Property or the interest of

9

Mortgagor therein, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers of the Mortgaged Property, and Mortgagor hereby irrevocably consents to such appointment and waives notice of any application therefor. Any such receiver or receivers shall have all the usual powers and duties of receivers in like or similar cases and all the powers and duties of Mortgagee in case of entry as provided in this Mortgage and shall continue as such and exercise all such powers until the later of: (a) the date of confirmation of sale of the Mortgaged Property; (b) the disbursement of all proceeds of the Mortgaged Property collected by such receiver and the payment of all expenses incurred in connection therewith; or (c) the termination of such receivership with the consent of Mortgagee or pursuant to an order by a court of competent jurisdiction.

     5.4   <u>Remedies Not Exclusive</u>. No remedy herein conferred upon or reserved to Mortgagee is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every power or remedy given by the Note or any of the Loan Documents to Mortgagee may be exercised concurrently or independently, from time to time and as often as may be deemed expedient by Mortgagee. No delay or omission of Mortgagee in the exercising of any right or power accruing upon any Event of Default hereunder shall impair such right or power or any other right or power nor shall the same be construed to be a waiver of any default or any acquiescence therein. If there exists additional security for the obligations secured hereby, Mortgagee, at its sole option, and without limiting or affecting any of the rights or remedies hereunder, may exercise any of the rights or remedies to which it may be entitled hereunder either concurrently with whatever rights it may have in connection with such other security or in such order and in such manner as Mortgagee may deem fit without waiving any rights with respect to any other security.

     5.5   <u>Request for Notice</u>. Mortgagor hereby requests a copy of any notice of default and that any notice of sale hereunder be mailed to it at the address set forth in this Mortgage.

ARTICLE 6. MISCELLANEOUS

     6.1   <u>Governing Law, Severability</u>. THIS MORTGAGE AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF HAWAII APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA.

     In the event of any one or more of the provisions contained in this Mortgage or in the Note or in any of the other Loan Documents shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability will not affect any other provision of this Mortgage, but this Mortgage shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein or therein.

     6.2   <u>Amendment, No Implied Waiver</u>. This Mortgage cannot be modified, waived, discharged or terminated orally, but only by a written instrument signed by the party against whom enforcement of the modification, waiver, discharge or termination is asserted. No waiver

10