by Mortgagee of any default or breach by Mortgagor hereunder shall be implied from any omission by Mortgagee to take action on account of such default if such default persists or is repeated, and no express waiver shall affect any default other than that default identified in the waiver and such waiver shall be operative only for the time and to the extent therein stated. Waivers of any covenant, term or condition contained herein shall not be construed as a waiver of any subsequent breach of the same covenant, term or condition. The consent or approval by Mortgagee to or of any act by Mortgagor requiring further consent or approval shall not be deemed to waive or render unnecessary the consent or approval to or of any subsequent similar act. No delay or omission of Mortgagee in the exercising of any right or remedy available upon an Event of Default shall impair such right or remedy or any other right or remedy nor shall the same be construed to be a waiver of any Event of Default or any acquiescence therein; and every right and remedy given under this Mortgage to Mortgagee may be exercised from time to time as often as may be deemed expedient by Mortgagee.

     6.3    <u>Reconveyance; Release.</u>

     (a)    If all sums secured hereby have been paid as provided in the Note, Mortgagee shall release the lien of this Mortgage and reconvey the applicable portion of the Mortgaged Property then held hereunder by proper instruments(s) to Mortgagor or the person or persons legally entitled thereto, without warranty, and Mortgagor shall pay all fees in connection with the preparation, recordation and filing thereof. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in any reconveyance may be described as "the person or persons legally entitled thereto."

     (b)    Mortgagee agrees to release the lien of this Mortgage on any Timeshare Interest sold consistent with the provisions of Section 2.2 hereof.

     6.4    <u>Notices.</u> All notices hereunder shall be in writing and shall be given or served by actual delivery or by being deposited in the United States Mail, registered or certified, return receipt requested, or with a nationally recognized overnight commercial delivery service requiring proof of delivery, addressed to the parties as follows (or to such other address as any party may notify the others in writing in the manner set forth herein):

     "Mortgagor"       SVC-WAIKIKI, LLC
                       40 Skokie Boulevard - #350
                       Northbrook, IL  60062-1699
                       Attention: Sheldon H. Ginsburg and
                       Craig J. Goldstein

     "Mortgagee"       STRATEGY RESORT FINANCING INC.
                       200 Yorkland Boulevard – Suite 200

42781\1138294v1



Toronto, Ontario
CANADA M2J 5C1
Attention: Sandro Sordi

Such notice shall be deemed delivered on the date personally delivered, or if mailed, on the third (3rd) business day after the same was deposited in the United States mail, postage prepaid, as aforesaid or on the next business day after the same was sent via a nationally recognized express next-business-day-delivery service.

6.5    **Intentionally Omitted.**

6.6    **Intentionally Omitted.**

6.7    **Successors and Assigns; Gender.**  This Mortgage applies to and shall be binding on and enure to the benefit of all parties to this Mortgage and their respective successors and assigns. In this Mortgage, whenever the context so requires, the masculine gender shall include the feminine and/or neuter and the singular number shall include the plural and conversely in each case.

6.8    **Headings.**  Headings are for convenience only and are not intended as a limitation on the content of the paragraph following or as an aid to the construction thereof.

6.9    **Waiver.**  To the full extent permitted by law, Mortgagor waives the pleading of any statute of limitations as a defense to any and all obligations secured by this Mortgage.

6.10    **Assignment.**  This Mortgage is assignable by Mortgagee, and any assignment hereof by Mortgagee shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Mortgagee.

6.11    **Time of the Essence.**  Time is of the essence with respect to each and every covenant, agreement, and obligation of Mortgagor under this Mortgage and any and all other Loan Documents.

6.12    **Attorneys' Fees.**  Mortgagor shall forthwith pay to Mortgagee the amount of all reasonable and documented attorneys' fees, costs and expenses incurred by Mortgagee under and pursuant to this Mortgage, and other Loan Document given to Mortgagee as security for the Mortgagor's obligations to Mortgagee under the Loan or in connection with any transaction contemplated hereby or thereby, or with respect to the Mortgaged Property or any defense or protection or enforcement of Mortgagee's security interest in the Mortgaged Property which Mortgagee believes is necessary or desirable (whether or not Mortgagee files a lawsuit against Mortgagor and including without limitation a judicial foreclosure action or a non-judicial foreclosure proceeding) in the event Mortgagee retains counsel, or incurs costs in order to: obtain legal advice; enforce, or seek to enforce, any of its rights; commence, intervene in, respond to, or defend any action or proceeding; file or prosecute a claim in any action or proceeding (including without limitation, any probate claim, bankruptcy claim, third-party claim, or secured creditor claim); protect, obtain possession of, lease, dispose of or otherwise enforce Mortgagor's right, title and interest in the Premises or any portion thereof; or obtain the appointment of a receiver. In addition to the foregoing reasonable and documented attorneys'

fees, costs and expenses, Mortgagee shall be entitled to its reasonable and documented attorneys' fees, costs and expenses incurred in any post judgment proceedings to enforce any judgment in connection with the matters described above. This provision is separate and several and shall survive the merger of this provision into any judgment.

6.13    Loss of Note. Upon notice from Mortgagee of the loss, theft, or destruction of any of the Notes and upon receipt of indemnity reasonably satisfactory to Mortgagor from Mortgagee, or in the case of mutilation of the Note, upon surrender of the mutilated Note, Mortgagor shall make and deliver a new note of like tenor in lieu of the then to be superseded Note.

6.14    Waiver of Jury Trial. MORTGAGOR HEREBY WAIVES ITS RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS MORTGAGE AND THE RELATIONSHIP THAT IS BEING ESTABLISHED. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY MORTGAGOR, AND MORTGAGOR ACKNOWLEDGES THAT NEITHER MORTGAGEE NOR ANY PERSON ACTING ON BEHALF OF MORTGAGEE HAS MADE ANY REPRESENTATIONS OF FACT TO INCLUDE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. MORTGAGOR ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT MORTGAGEE HAS ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS MORTGAGE AND THAT MORTGAGEE WILL CONTINUE TO RELY ON THIS WAIVER IN ITS RELATED FUTURE DEALINGS WITH MORTGAGOR. MORTGAGOR FURTHER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED, IN THE SIGNING OF THIS MORTGAGE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL.

6.15    No Liability or Obligation on Mortgagee. Nothing in this Mortgage shall be construed to impose any obligation upon Mortgagee to expend any money or to take any other discretionary act herein permitted and Mortgagee shall not have any liability or obligation for any delay or failure to take any discretionary act.

[SIGNATURES BEGIN ON NEXT PAGE.]

13

IN WITNESS WHEREOF, Mortgagor has executed this Mortgage as of the date first above written.

Mortgagor:

SVC-WAIKIKI, LLC,
a Delaware limited liability company

By:  SHELL VACATIONS LLC,
     an Arizona limited liability company
     Its Sole Member

By:  _____
     Robert Lee Foster
     Its Vice President

14

STATE OF HAWAII                          )
                                         ) SS.
CITY AND COUNTY OF HONOLULU              )


       On April 4, 2005, before me appeared ROBERT LEE FOSTER, to me personally known, who being by me duly sworn or affirmed, did say that such person executed the foregoing instrument as the free act and deed of such person, and if applicable in the capacity shown, having been duly authorized to execute such instrument in such capacity.

Name:  Noelani N. Jinbo
Notary Public, State of Hawaii

My commission expires:  9/22/2006

15

<u>EXHIBIT "A"</u>

-ITEM I:-

-FIRST:-

Apartment Nos. (described in Exhibit "1" attached hereto) of the Condominium Project known as the "ILIKAI APARTMENT BUILDING", as established by Declaration of Horizontal Property Regime dated April 22, 1964, filed in said Office of the Assistant Registrar of the Land Court as Land Court Document No. 330338, as amended, and as shown on Condominium Map No. 3 and any amendments thereto.

-SECOND:-

An undivided percentage interest appurtenant to each apartment, as set forth in said Exhibit "1", as tenant in common with the owners from time to time of other undivided interests in and to the common elements, including the aforesaid building and the lands described herein, said common elements being more particularly described in said Declaration of Horizontal Property Regime filed as Land Court Document No. 330338, as amended.

-ITEM II:-

-FIRST:-

Apartment Nos. (described in Exhibit "2" attached hereto) of the Condominium Project known as the "ILIKAI APARTMENT BUILDING", as established by Declaration of Horizontal Property Regime dated April 22, 1964, filed in said Office of the Assistant Registrar of the Land Court as Land Court Document No. 330338, as amended, and as shown on Condominium Map No. 3 and any amendments thereto.

-SECOND:-

An undivided percentage interest appurtenant to each apartment, as set forth in said Exhibit "2", as tenant in common with the owners from time to time of other undivided interests in and to the common elements, including the aforesaid building and the lands described herein, said common elements being more particularly described in said Declaration of Horizontal Property Regime filed as Land Court Document No. 330338, as amended.

The lands upon which said Condominium Project "ILIKAI APARTMENT BUILDING" is located are described as follows:

All of those certain parcels of land situate at Kalia, Waikiki, Honolulu, City and County of Honolulu, State of Hawaii, described as follows:

LOTS: 1-A-1, area 122,071 square feet, and
      1-A-2, area    143 square feet, as shown on Map 4;
      2, area      467 square feet,

1

16

| 3, area | 293 square feet, |
| 4, area | 120 square feet, and |
| 5, area | 2,202 square feet, as shown on Map 1; |

The Maps above referred to by numbers are filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Consolidation No. 64 of Ala Moana Properties, Limited;

Together with a perpetual easement appurtenant to said Lots 1-A-1 and 1-A-2 for the construction, use and maintenance for storm drain purposes only over, across or under Lot 25, as shown on Map 4, filed in said Office with Land Court Consolidation No. 32 of Bishop Trust Company, Limited, Trustee for Hobron Land Trust;

Together also with a perpetual nonexclusive easement appurtenant to Lots 1-A-1 and 1-A-2 for pedestrian and vehicular traffic over and across Lot 23, as shown on said Map 4;

Being the land(s) described in Transfer Certificate of Title No. 741,177, issued to SVC-Waikiki, LLC, a Delaware limited liability company, as to an undivided interest appurtenant to each apartment referred to in said Exhibits "1" and "2".

Being the premises conveyed by FORWARD ONE, LLC, a California limited liability company, to SVC-WAIKIKI, LLC, a Delaware limited liability company, by Limited Warranty Deed, filed with the Office of the Assistant Registrar of the Land Court of the State of Hawaii as Land Court Document No. 3,249,997.

SUBJECT, HOWEVER, to the following:

1.   Improvement Assessment: Waikiki Business Improvement District, Second Installment, for the Fiscal Year July 1, 2004 - June 30, 2005.

2.   -AS TO LOT 1-A-2 ONLY:-  A perpetual easement for a public right-of-way over, across, along and upon said Lot, reserving the right to use said easement for a right-of-way in common with the public, as set forth in Grant dated December 31, 1963, filed as Land Court Document No. 324985.

3.   -AS TO LOTS 1-A-1 and 1-A-2 ONLY:-

   (A)   Reservation in favor of the State of Hawaii of "all littoral rights of whatever nature or kind which are or may be thereunto appertaining"; as reserved in Exchange Deed dated December 20, 1956, filed as Land Court Document No. 196551.

   (B)   All of the access rights over and across the common boundaries of said Lots, reserving the right to use said Lot 1-A-2 for a right-of-way in common with the public, as set forth in Deed dated December 31, 1963, filed as Land Court Document No. 324987.

4.   -AS TO LOT 3 ONLY:-  A perpetual easement in favor of the City and County of

2

Honolulu for an existing concrete box culvert.

5.  -AS TO LOTS 2, 3, 4 and 5 ONLY:-

    (A)    A perpetual easement in favor of the State of Hawaii for a public right-of-way.

    (B)    Agreement dated December 23, 1963, filed as Land Court Document No. 324984, by and among the State of Hawaii, Ilikai, Incorporated and Makaha Valley Farms, Limited.

6.  -AS TO LOTS 1-A-1, 1-A-2, 2 and 5 ONLY:-  Any and all littoral rights appurtenant to said Lots in favor of the State of Hawaii, as set forth in instrument dated December 20, 1956, filed as Land Court Document No. 196552.

7.  The terms and provisions, including the failure to comply with any covenants, conditions and reservations, contained in First Restated Declaration of Condominium Property Regime of Ilikai Apartment Building dated May 10, 1994, recorded as Land Court Document No. 2158834, and as shown on Condominium Map No. 3 and any amendments thereto, which Restated Declaration restates the original Declaration dated April 22, 1964, filed as Land Court Document No. 330338, and any amendments thereto, and which Restated Declaration was amended by instrument dated March 6, 2001, recorded as Land Court Document No. 2709107.

8.  The terms and provisions, including the failure to comply with any covenants, conditions and reservations, contained in First Restated By-Laws of the Association of Apartment Owners of Ilikai Apartment Building dated May 10, 1994, recorded as Land Court Document No. 2158835, which Restated By-Laws restates the original By-Laws dated April 22, 1964, filed as Land Court Document No. 330338, and any amendments thereto, and which Restated By-Laws were amended by instruments dated --- (acknowledged September 16, 1997), recorded as Land Court Document No. 2429786, dated August 3, 2001, recorded as Land Court Document No. 2734838, and dated September 24, 2002, recorded as Land Court Document No. 2849302.

9.  The rights granted or reserved to the Association of Owners of such Horizontal Property Regime to give, convey, transfer, cancel, relocate, and otherwise deal with any and all utility and other easements now or hereafter located on or affecting the premises and to grant, convey or exchange easements to or with the adjoining lot or lots for construction of a structure, or structures, to facilitate parking and use of the lands described herein and for ingress and egress between the lands described herein and said adjoining lot or lots, pursuant to Paragraph 7 of said Declaration of Horizontal Property Regime, as amended.

10.  The following Survey matters as shown on map prepared by Russell Figueiroa, Land Surveyor, with R.M. Towill Corporation, dated November 8, 1984, updated January 5, 2000:  Concrete curb crosses from Lot 1-A-1 (Items I and II) into Lot 5-C-2, Land Court Application 852, by approximately 1 foot.

11.  Declaration of Annexation (Ilikai) dated April 5, 2005, filed with the Office of the Assistant Registrar of the Land Court of the State of Hawaii as Land Court Document No. 3249998

ILIKAI APARTMENT BUILDING
Exhibit "1"

| Apartment No. | Undivided Interest | HPR No. |
|---|---|---|
| 301 | 1/1330 | 708 |
| 303 | 1/1330 | 710 |
| 305 | 1/1330 | 712 |
| 307 | 1/1330 | 714 |
| 311 | 1/1330 | 715 |
| 312 | 1/1330 | 716 |
| 313 | 1/1330 | 717 |
| 314 | 1/1330 | 718 |
| 315 | 1/1330 | 719 |
| 316 | 1/1330 | 720 |
| 317 | 1/1330 | 721 |
| 318 | 1/1330 | 722 |
| 319 | 1/1330 | 723 |
| 320 | 1/1330 | 724 |
| 321 | 1/1330 | 725 |
| 322 | 1/1330 | 726 |
| 323 | 1/1330 | 727 |
| 324 | 1/1330 | 728 |
| 328 | 1/1330 | 730 |
| 330 | 1/1330 | 732 |
| 332 | 1/1330 | 734 |
| 334 | 1/1330 | 736 |
| 336 | 1/1330 | 738 |
| 338 | 1/1330 | 740 |
| 340 | 1/1330 | 742 |
| 342 | 1/1330 | 744 |
| 530 | 1/1330 | 764 |
| 532 | 1/1330 | 765 |
| 534 | 1/1330 | 766 |
| 536 | 1/1330 | 767 |
| 538 | 1/1330 | 768 |
| 540 | 1/1330 | 769 |

END OF EXHIBIT "1"

1

19

ILIKAI APARTMENT BUILDING
Exhibit "2"

| Apartment No. | Undivided Interest | HPR No. |
|---|---|---|
| 403 | 1/1330 | 0559 |
| 411 | 1/1330 | 0562 |
| 415 | 1/1330 | 0564 |
| 417 | 1/1330 | 0565 |
| 428 | 1/1330 | 0016 |
| 432 | 1/1330 | 0020 |
| 434 | 1/1330 | 0022 |
| 442 | 1/1330 | 0030 |
| 503 | 1/1330 | 0570 |
| 511 | 1/1330 | 0573 |
| 515 | 1/1330 | 0575 |
| 519 | 1/1330 | 0577 |
| 523 | 1/1330 | 0579 |
| 636 | 1/1330 | 0075 |
| 715 | 1/1330 | 0597 |
| 717 | 1/1330 | 0598 |
| 721 | 1/1330 | 0600 |
| 723 | 1/1330 | 0601 |
| 740 | 1/1330 | 0103 |
| 902 | 1/1330 | 0137 |
| 903 | 1/1330 | 0614 |
| 913 | 1/1330 | 0618 |
| 915 | 1/1330 | 0619 |
| 920 | 1/1330 | 0147 |
| 921 | 1/1330 | 0622 |
| 942 | 1/1330 | 0167 |
| 1011 | 1/1330 | 0628 |
| 1012 | 1/1330 | 0176 |
| 1014 | 1/1330 | 0177 |
| 1023 | 1/1330 | 0634 |
| 1024 | 1/1330 | 0182 |
| 1040 | 1/1330 | 0198 |
| 1103 | 1/1330 | 0508 |
| 1111 | 1/1330 | 0636 |
| 1112 | 1/1330 | 0209 |
| 1211 | 1/1330 | 0638 |
| 1213 | 1/1330 | 0519 |
| 1215 | 1/1330 | 0520 |
| 1301 | 1/1330 | 0639 |
| 1303 | 1/1330 | 0640 |
| 1305 | 1/1330 | 0641 |
| 1311 | 1/1330 | 0643 |
| 1317 | 1/1330 | 0646 |
| 1807 | 1/1330 | 0690 |
| 1811 | 1/1330 | 0691 |
| 1813 | 1/1330 | 0692 |
| 1815 | 1/1330 | 0693 |
| 1823 | 1/1330 | 0540 |

END OF EXHIBIT "2"

1

20



L-694        STATE OF HAWAII
OFFICE OF ASSISTANT REGISTRAR
RECORDED
JAN 30, 2006        10:30 AM

Doc No(s) 3384918

on Cert(s) 745,388



/s/ CARL T. WATANABE
ASSISTANT REGISTRAR

20    1/1    Z1

| LAND COURT SYSTEM | REGULAR SYSTEM |
|---|---|

AFTER RECORDATION:   RETURN BY MAIL (X)   PICK UP ( )

Peter Paul Mendel, Esq.
GVEC Resource Inc.
c/o Equity Resource Management Limited
1 Park Plaza, Suite 550
Irvine, California 92614-2594

TG-2005457165-S

LC

Tax Map Key No. (1) 2-6-010-007                    Total Pages: __16__

## COLLATERAL ASSIGNMENT OF MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS, AND FINANCING STATEMENT

THIS COLLATERAL ASSIGNMENT OF MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS, AND FINANCING STATEMENT (this "Assignment") is effective as of this 26th day of January, 2006 (the "Effective Date"), and is by and between STRATEGY INVESTMENTS, LLC, a Florida limited liability company ("Assignor"), and GVEC RESOURCE, INC., an international business company organized under the laws of the British Virgin Islands ("Assignee").  Assignor and Assignee are sometimes referred to individually as a "Party" or collectively as the "Parties" in this Assignment.

### R E C I T A L S:

A.  Simultaneously with the execution and delivery of this Assignment, Assignor has executed and delivered a Promissory Note ("Promissory Note") to Assignee;

B.  Assignor is in possession of that certain Mortgage, Security Agreement, Assignment of Leases and Rents, and Financing Statement executed by SVC-Waikiki, LLC, a Delaware limited liability company, in favor of Assignor, recorded on April 26, 2005 in the Office of the Registrar of the Land Court of the State of Hawaii as Document No. 3258727 and duly noted on Land Court Certificate of Title No. 741,772 (the "Mortgage");

C.  As security for the debt represented by the Promissory Note, and in order to induce Assignor to timely make payments to Assignee under the Promissory Note, Assignor desires to collaterally

assign to Assignee all of Assignor's right, title and interest in and to the Mortgage, subject to the terms and conditions of this Assignment.

NOW, THEREFORE, in consideration of the terms and conditions of this Assignment and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

1. <u>Recitals</u>.  The above listed recitals are true and correct and incorporated as part of this Assignment by this reference.

2. <u>Collateral Assignment of Assets and Contracts</u>.  Assignor hereby collaterally, presently and unconditionally grants, assigns, transfers, conveys and sets over unto Assignee, as additional security for the Promissory Note and payment and performance of all obligations of Assignor under the Promissory Note, subject to all of the terms, covenants and conditions set forth in this Assignment, all of Assignor's right, title and interest in and to the Mortgage.  Notwithstanding said assignment, Assignor hereby retains the right to issue partial releases of said Mortgage unilaterally, unconditionally, and absolutely, and Assignor may execute such releases without the consent or further consent of the Assignee.  Assignor hereby retains the power to sign such documents and instruments as shall be necessary to make or confirm such releases.

3. <u>Purpose of Assignment</u>.  Assignor agrees that this Assignment is given by Assignor to Assignee to secure the following in such order of priority as Assignee may elect:

a.  The repayment of the indebtedness evidenced by the Promissory Note, the terms of which are incorporated as part of this Assignment by this reference, payable to the order of Assignee, together with any applicable interest and penalties and all extensions, renewals, modifications, amendments and replacements of the Promissory Note or terms of the Promissory Note; and

b.  The performance of each and every of the covenants and agreements of Assignor contained in the Promissory Note.

4. <u>Performance and Release</u>.  The full repayment of the indebtedness evidenced by the Promissory Note and the performance of all of the obligations set forth in the Promissory Note shall constitute a reassignment by Assignee of the Mortgage to Assignor and termination of this Assignment and all terms and conditions hereof.  Upon the full repayment of the indebtedness evidenced by the Promissory Note and the performance of all of the obligations set forth in the Promissory Note, Assignee agrees to execute, deliver, and record any releases, satisfactions or other documents as may reasonably be requested by Assignor evidencing reassignment by Assignee of the Mortgage to Assignor and termination of this Assignment and all terms and conditions hereof.

5. <u>Representations and Warranties</u>.  Assignor represents and warrants that Assignor has the right, power and capacity to make this Assignment and that Assignor will not further encumber the Mortgage except as provided by the Promissory Note.

6. <u>Covenants</u>.

a.  Assignor shall not, without the prior written consent of Assignee: (i) pledge, assign, sell, transfer or encumber the Mortgage.

b.  Assignor agrees, from time to time, to execute and deliver, upon demand, all assignments and any and all other writings as Assignee may reasonably deem necessary or desirable to carry out the purpose and intent of this Assignment, or to enable Assignee to enforce any right or rights under this Assignment.

7.  Events of Default.  The term "Event of Default" as used in this Assignment shall mean the occurrence of any one of the following:

a.  If Assignor shall fail to comply with any of the covenants, duties or obligations of Assignor set forth in this Assignment and such default shall continue for fifteen (15) days or more after written notice to Assignor from Assignee specifying the nature of such default;

b.  If a default shall occur under the Promissory Note and shall not be cured within any applicable curative period as stated in the Promissory Note; or

c.  If any representation or warranty made by Assignor in this Assignment was false or misleading in any material respect when made.

8.  Remedies of Assignee.  Until such time as the Promissory Note and any amounts accrued thereunder are paid in full, upon the occurrence of any Event of Default, Assignee may, at its option, without any action or notice on its part being required, without in any way waiving such default:

a.  take possession of the Mortgage, on such terms and for such period of time as Assignee may deem proper;

b.  whether or not Assignee takes possession of the Mortgage, collect payments under, receive payments under, make demand on, sue for, attach, levy on, recover against, compromise or adjust the Mortgage; and

c.  deduct from Assignor payments made under the Promissory Note, any amounts necessary to recover its costs or expenses incurred by Assignee in exercising its rights and remedies under this Assignment.

10.  Waiver and Discretion.  The failure of Assignee to enforce any of the terms, covenants or conditions of this Assignment shall not be construed or deemed to be a waiver of any rights or remedies of Assignee under this Assignment.  Assignee shall have the full right, power and authority to enforce this Assignment, or any of the terms, covenants or conditions of this Assignment, at any time or times that Assignee shall deem necessary.

11.  Notices.  All notices required to be given by Assignee to Assignor and all notices and demands of any kind or nature whatever which Assignor may be required or may desire to give to or serve

on Assignee shall be in writing and shall be (i) hand-delivered, effective upon delivery, or (ii) sent by a nationally recognized overnight courier, effective one (1) day after deposit with such courier. All notices shall be addressed as follows; provided, however that Assignee and Assignor may change the address for notice purposes up to four (4) times:

|  |  |
|---|---|
| If to Assignor: | Strategy Investments, LLC<br>200 Yorkland Boulevard<br>Suite 200<br>Toronto, Ontario<br>Canada, M2J 5C1<br>Attn: Sandro Sordi |
| With a copy to: | Robert J. Webb, Esq.<br>Baker & Hostetler LLP<br>200 South Orange Avenue<br>Suite 2300<br>Orlando, Florida 32801 |
| If to Assignee: | GVEC Resource, Inc.<br>c/o Equity Resource Management, Ltd.<br>1 Park Plaza<br>Suite 550<br>Irvine, California 92614-2594<br>United States of America<br>Attn: Todd Gillespie |
| With a copy to: | Peter Paul Mendel, Esq.<br>1 Park Plaza<br>Suite 550<br>Irvine, California 92614-2594<br>United States of America |

12. <u>Binding Effect</u>.  This Assignment applies to and binds the Parties and their respective heirs, administrators, executors, successors and assigns.

13. <u>Actions by Assignee</u>.  Assignee may take or release other security, may release any party primarily or secondarily liable for any indebtedness secured by this Assignment, may grant extensions, renewals or indulgences with respect to such indebtedness, and may apply any other security held by it to the satisfaction of such indebtedness, without prejudice to any of its rights under this Assignment.

14. <u>No Election of Remedies</u>.  Nothing contained in this Assignment and no act done or omitted by Assignee pursuant to the powers and rights granted it in this Assignment  shall be deemed to be a waiver by Assignee of its rights and remedies under the Promissory Note, and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms of this Assignment.  The right of Assignee to collect the indebtedness and to

enforce any other security for the indebtedness held by it may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by it under this Assignment. It is the intent of both Assignor and Assignee that this Assignment be supplementary to, and not in substitution or derogation of, any provision contained in the Promissory Note.

15. Number and Gender and Include. Whenever the context indicates or requires, the singular name shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders. The term "include" and similar terms (*e.g.*, includes, including, included, comprises, such as, e.g., and for example), when used as part of a sentence or phrase including one or more specific items, are used by way of example and not of limitation.

16. Choice of Law, Jurisdiction, and Venue. The interpretation and enforcement of this Agreement shall be governed by and construed in accordance with the laws of the State of Hawaii. Jurisdiction and venue of any legal action in connection with this Agreement shall be proper only in the State of Hawaii.

17. Severability. If any one or more of the provisions contained in this Assignment shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity or unenforceability shall not affect any other provision of this Assignment, and this Assignment shall be construed as if such invalid, illegal or unenforceable provision had never been contained in this Assignment, but only to the extent that it is invalid, illegal or unenforceable.

18. Modification. Except as otherwise provided in paragraph 11, this Assignment may not be amended or modified orally, the Assignment may only be amended or modified by an agreement in writing signed by the party against whom enforcement of any amendment or modification is sought.

19. Costs of Enforcement. If either Party initiates action to enforce its rights under this Assignment, the prevailing Party shall recover from the non-prevailing Party its reasonable expenses, court costs and reasonable attorneys' and paralegals' fees, whether suit be brought or not. As used in this Assignment, expenses, court costs and attorneys' and paralegals' fees include expenses, court costs and attorneys' and paralegals' fees incurred in any appellate proceeding. All such expenses shall bear interest at the highest rate allowable under Hawaii law from the date the prevailing Party pays such expenses until the date the non-prevailing Party repays such expenses. Expenses incurred in enforcing this Paragraph shall be covered by this Paragraph. For this purpose, the court shall be and is requested to award actual costs and attorneys' and paralegals' fees incurred by the prevailing Party, it being the intention of the Parties that the prevailing Party be completely reimbursed for all such costs and fees. The Parties request that inquiry by the court as to the fees and costs be limited to a review of whether the fees charged and hourly rates for such fees are consistent with the fees and hourly rates routinely charged by the attorneys for the prevailing Party.

20. Waiver of Jury Trial. ASSIGNOR AND ASSIGNEE, FOR THEMSELVES AND THEIR SUCCESSORS, PERSONAL REPRESENTATIVES AND ASSIGNS KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ALL RIGHTS EITHER MAY HAVE NOW OR IN THE FUTURE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION,

INCLUDING ANY COUNTERCLAIM, CROSS CLAIM OR THIRD PARTY CLAIM, BASED ON THIS ASSIGNMENT OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS ASSIGNMENT OR THE PROMISSORY NOTE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS RELATED TO THIS ASSIGNMENT. NEITHER ASSIGNOR NOR ASSIGNEE (NOR THEIR SUCCESSORS, PERSONAL REPRESENTATIVES OR ASSIGNS) WILL SEEK TO CONSOLIDATE ANY SUCH ACTION, IN WHICH A JURY TRIAL HAS BEEN WAIVED, WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT OR HAS NOT BEEN WAIVED. ASSIGNEE REPRESENTS AND ACKNOWLEDGES THAT THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY DISCUSSED BY ASSIGNOR AND ASSIGNEE, THAT ASSIGNOR AND ASSIGNEE WERE ABLY REPRESENTED BY LICENSED COUNSEL IN THE NEGOTIATION OF THIS PARAGRAPH, THAT IT BARGAINED AT ARMS LENGTH AND IN GOOD FAITH AND WITHOUT DURESS OF ANY KIND FOR THE TERMS AND CONDITIONS OF THIS PARAGRAPH AND THAT THE PROVISIONS OF THIS PARAGRAPH SHALL BE SUBJECT TO NO EXCEPTIONS. THIS PROVISION IS A MATERIAL INDUCEMENT FOR ASSIGNOR ENTERING INTO THIS ASSIGNMENT AND THE PROMISSORY NOTE.

**IN WITNESS WHEREOF**, the Parties have executed this Assignment as of the Effective Date.

"Assignor"

Strategy Investments, LLC

By: _____
Sandro Sordi
As its: Manager

"Assignee"

GVEC Resource, Inc.

By: _____
Name: _Robert J. Anderson_
As its: _Director_

STATE OF _CALIFORNIA_

COUNTY OF _ORANGE_                                SS:

    On this _26th_ day of _JANUARY_ , 2006, before me appeared _SANDRO SORDI_ , to me personally known, who being by me duly sworn or affirmed, did say that such person(s) executed the foregoing instrument as the free act and deed of such person(s), and if applicable, in the capacities shown, having been duly authorized to execute such instrument in such capacities.

TODD BONESTEELE
COMM. #1540959
Notary Public-California
ORANGE COUNTY
My Comm. Exp. Jan 2, 2009
ES11

Name: _TODD BONESTEELE_
Notary Public, State of _CALIFORNIA_
My commission expires: _JANUARY 2, 2009_

STATE OF _CALIFORNIA_

COUNTY OF _ORANGE_                                SS:

    On this _26th_ day of _JANUARY_ , 2006, before me appeared _ROBERT ANDERSON_ , to me personally known, who being by me duly sworn or affirmed, did say that such person(s) executed the foregoing instrument as the free act and deed of such person(s), and if applicable, in the capacities shown, having been duly authorized to execute such instrument in such capacities.

TODD BONESTEELE
COMM. #1540959
Notary Public-California
ORANGE COUNTY
My Comm. Exp. Jan 2, 2009
ES11

Name: _TODD BONESTEELE_
Notary Public, State of _CALIFORNIA_
My commission expires: _JANUARY 2, 2009_

THE CURRENT TCT IS 745,388.

<u>Promissory Note</u>

Amount: U.S. $29,000,000.00                               Date: January 26, 2006

1. <u>Promise to Pay</u>.  FOR VALUE RECEIVED, Strategy Investments, LLC, a Florida limited liability company ("<u>Maker</u>"), with an address of 200 Yorkland Boulevard, Suite 200, Toronto, Ontario Canada, M2J 5C1, promises to pay to the order of GVEC Resource Inc., an international business company organized under the laws of the British Virgin Islands ("<u>Holder</u>"), at c/o Equity Resource Management Ltd., 1 Park Plaza, Suite 550, Irvine, California 92614-2594 U.S.A., or at such other place as Holder may from time to time designate in writing, in lawful money of the United States of America, and in immediately available funds, the sum of U.S. twenty-nine million dollars (U.S. $29,000,000.00), together with all other amounts added thereto pursuant to this Note ("<u>Loan</u>") (or so much thereto as may from time to time be outstanding) together with interest thereon as set forth in this Note and the Loan Agreement between Maker and Holder and guaranteed by Strategy Resort Financing Inc. and Strategy International Insurance Group, Inc. dated January 24, 2006 ("Loan Agreement").

The repayment of the Loan evidenced by this Note is secured by, among other things, (i) those certain collateral assignments documents as listed on <u>Exhibit "A"</u> to this Note of even date herewith, as amended, modified, or supplemented from time to time in accordance with their terms (collectively, "<u>Assignments</u>"); (ii) interest reserve equal to two years interest set aside and placed with HSBC Securities (USA) Inc.. ("Interest Reserve"); and (iii) a surety bond ("<u>Surety Bond</u>") in the amount of U.S. thirty-one million nine hundred thousand dollars (U.S. $31,900,000).  This Note, the Loan Agreement, the Assignments, the Interest Reserve, the Surety Bond and all other documents evidencing or securing the Loan or executed in connection with the Loan, (and any modification, renewal, or extension of any of the foregoing) are collectively the "Loan Documents".  All instruments evidencing or securing the indebtedness under the Loan other than this Note are made a part of and are deemed incorporated in this Note in full. Capitalized terms used in this Note and not otherwise defined in this Note have the meanings set forth in the Loan Agreement and the Assignments.

2. <u>Principal and Interest; Default Interest Rate; Lawful Rate of Interest</u>.

(a) <u>Principal and Interest</u>.  Interest shall accrue on the principal balance of this Note from time to time outstanding and Maker shall pay interest thereon at a rate equal to ten percent (10%) per annum simple interest ("Interest Rate").  Interest shall accrue daily on the basis of a three hundred sixty (360) day year and charged for the actual number of days elapsed.

(b) Default Interest Rate.  In the event of a default under this Note or under any of the Loan Documents or any other document related to this transaction, then the Interest Rate from date of such default shall be eighteen percent (18%) (the "Default Interest Rate").

3. <u>Payments; Application of Payments; Maturity Date</u>.

(a) <u>Payments</u>.  In accordance with the Payment Grid Schedule attached hereto as Exhibit C, interest at the Interest Rate shall be due on the 24th day of July, 2006, and continuing on the

first day of each semi-annual calendar date thereafter, until the Maturity Date (as defined below), at which time all unpaid accrued interest and other amounts payable hereunder shall be due and payable in full.  Maker may not prepay the loan evidenced by this Note in full or in part at any time, without the consent of Holder, at the Holder's sole discretion.

(b)  Application of Payments.  This Note is secured by the liens, encumbrances, and obligations created by this Note and by the other Loan Documents.  All payments under this Note will be applied to as follows:

(i)  First, to any outstanding costs or fees including, but not limited to, service fees, wire fees, Late Fees, and collection costs Maker is obligated to pay under the Loan Documents;

(ii)  Second, to accrued interest due; and

(iii)  Third, on the Maturity Date, to the outstanding principal balance.

(c)  Maturity Date.  The Loan shall be due and payable on or before January 24, 2009 or any earlier date on which the Loan is required to be paid in full, whether by acceleration or otherwise ("Maturity Date").  Until such time, there shall be no payment of principal hereunder without the written consent of the Holder at the Holder's sole discretion.

4.  Event of Default and Remedies.

(a)  Event of Default.  An "Event of Default" under this Note means

(i)  the failure to pay any payment as and when required under this Note;

(ii)  default under any of the Loan Documents;

(ii)  default under any of the Secured Promissory Notes listed in Exhibit B; or

(iv)  release of any of the Assignments or the Secured Promissory Notes listed in Exhibit B without the written consent of Holder.

(b)  Remedies.  On and during the occurrence of an Event of Default: (i) Holder may, at its option and without notice (such notice being expressly waived), declare the Loan immediately due and payable; (ii) the Default Interest Rate shall be in effect from that time forward, and (iii) Holder may pursue all rights and remedies available under the Assignments and all other Loan Documents.  Holder's rights, remedies, and powers, as provided in this Note and the other Loan Documents, are cumulative and concurrent, and may be pursued singly, successively, or together against Maker, any guarantor of the Loan or the Loan Agreement, the security described in the Loan Documents, and all other security given at any time to secure the payment of this Note, all at the sole discretion of Holder.  Additionally, Holder may resort to every other right or remedy available at law or in equity without first exhausting the rights and remedies contained in this Note, all in Holder's sole discretion.  Failure of Holder, for any period of time or on more than one occasion, to exercise its option to accelerate the Maturity Date shall not constitute a waiver of the right to exercise the same at any time during the continued existence of any Event of



Default or any subsequent Event of Default. No course of dealing between Maker and Holder or any delay on the part of Holder in exercising any rights under this Note shall operate as a waiver of any rights of Holder.

If any attorney is engaged: (i) to collect the Loan or any sums due under the Loan Documents, whether or not legal proceedings are thereafter instituted by Holder; (ii) to represent Holder in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under this Note; (iii) to protect the liens and security interests of any of the Loan Documents; (iv) to foreclose on the collateral described in any of the Loan Documents; (v) to represent Holder in any other proceedings whatsoever in connection with any of the Loan Documents including, without limitation, post judgment proceedings to enforce any judgment related to the Loan Documents, bankruptcy, and probate proceedings; or (vi) in connection with seeking an out-of-court workout or settlement of any of the foregoing, then Maker shall pay to Holder all reasonable costs, attorneys' fees, and expenses in connection therewith, in addition to all other amounts due under this Note.

5. <u>Waiver</u>. Maker, for itself and all endorsers, guarantors, and sureties of this Note, and their heirs, successors, assigns, and legal representatives, waives presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest, and protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this Note, and agrees that their respective liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time, renewal, waiver, or modification granted or consented to by Holder. Maker, for itself and all endorsers, guarantors, and sureties of this Note, and their heirs, legal representatives, successors, and assigns, consents to every extension of time, renewal, waiver, or modification that may be granted by Holder with respect to the payment or other provisions of this Note, and to the release of any makers, endorsers, guarantors, or sureties, and of any collateral given to secure the payment of this Note, or any part of this Note, with or without substitution, and agrees that additional makers, endorsers, guarantors, or sureties may become parties to this Note without notice to Maker or to any endorser, guarantor, or surety, and without affecting the liability of any of them.

6. <u>Evidence of Indebtedness</u>. This Note is given and accepted as evidence of indebtedness only and not in payment or satisfaction of any indebtedness or obligation.

8. <u>Choice of Law, Jurisdiction, and Venue</u>. This Note shall be deemed to have been made and executed in Orange County, Florida, and this Note shall be interpreted, construed, and enforced in accordance with the laws of the State of Florida without regard to the principles of conflict of laws.

MAKER AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING DIRECTLY, INDIRECTLY, OR OTHERWISE IN CONNECTION WITH, OUT OF, RELATED TO OR FROM THIS NOTE SHALL BE LITIGATED, AT HOLDER'S SOLE DISCRETION AND ELECTION, ONLY IN COURTS HAVING A SITUS WITHIN ORANGE COUNTY, FLORIDA. MAKER HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY LOCAL, STATE, OR FEDERAL COURT LOCATED WITHIN OR FOR SUCH COUNTY AND STATE. MAKER HEREBY WAIVES ANY RIGHT IT MAY HAVE TO



TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT AGAINST IT BY HOLDER ON THE LOAN DOCUMENTS IN ACCORDANCE WITH THIS PARAGRAPH.

7. <u>Severability</u>. If one or more of the provisions of this Note shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions of this Note, but this Note shall be construed as if such invalid, illegal, or unenforceable provision had never been contained in this Note.

8. <u>Modification</u>. Except as provided in paragraph 11, this Note shall not be modified, amended, changed, terminated, supplemented, or any term or condition hereof waived except in writing signed by Maker and Holder.

9. <u>Assignment</u>. Maker shall not assign its obligations under this Note without the express written consent of Holder. For purposes of this Paragraph, the term "assign" includes the following if Maker is an entity: (a) any dissolution, merger, consolidation, or other reorganization of Maker; (b) a sale of more than 50% of the value of the assets of Maker; or (c) a sale or other transfer by any of Maker's controlling parties of more than a controlling amount of such party's entity interest in Maker. Holder, however, may assign, transfer, pledge or sell its interest in this Note. On notification of such assignment, Maker shall remit any payments due under this Note directly to the address set forth on the notification.

10. <u>Headings</u>. Headings are for convenience of reference only and shall not be deemed to modify, explain, enlarge, or restrict any of the provisions of this Note.

11. <u>Notices</u>. All notices and other communication required or permitted to be given shall be in writing addressed to the respective party as set forth below and may be personally served or sent by reputable overnight courier and shall be deemed given: (a) if served in person, when served; or (b) if by reputable overnight courier, on the first business day after delivery to the courier (or the date on which the return receipt or courier service confirms that acceptance of delivery was refused by the addressee). Notices shall be sent to the parties at the following addresses; provided, however that Assignee and Assignor may change the address for notice purposes up to four (4) times:

        (i)     To Maker:

        Strategy Investments, LLC
        200 Yorkland Boulevard
        Suite 200
        Toronto, Ontario
        Canada M2J 5C1
        Attention: Sandro Sordi

        With a copy to:

        Robert J. Webb, Esq.
        Baker & Hostetler LLP



200 South Orange Avenue
Suite 2300
Orlando, Florida 32801

(ii)    To Holder:

GVEC Resource Inc.
c/o Equity Resource Management Ltd.
1 Park Plaza, Suite 550
Irvine, California 92614-2594
U.S.A.

With a copy to:

Peter Paul Mendel, Esq.
One Park Plaza, Suite 550
Irvine, California 92614-2594
U.S.A.


(iii)    To Guarantors:

Strategy International Insurance Group, Inc.
200 Yorkland Boulevard, Suite 710
Toronto, Ontario M2J5C1
Canada
Attention:  Stephen F. Stonhill

Strategy Resort Financing, Inc. (Ontario)
200 Yorkland Boulevard
Suite 200
Toronto, Ontario
Canada M2J 5C1
Attn: Sandro Sordi


With a copy to:

Robert J. Webb, Esq.
Baker & Hostetler LLP
200 South Orange Avenue
Suite 2300
Orlando, Florida 32801

12.   <u>Joint and Several Obligations</u>.  The obligations of Maker under this Note are joint and several obligations of Maker and of each Maker, if more than one, each Guarantor, if more than one, and of each Maker's and Guarantor's heirs, personal representatives, successors, and



12

assigns, provided nothing in this Note shall be deemed consent to any assignment restricted or prohibited by the Loan Documents.

13.  Time of Essence.  Time is of the essence of this Note and the performance of each of the covenants and agreements in this Note.

In witness whereof, the undersigned has executed this Note as of the date above first written.


Maker:

STRATEGY INVESTMENTS, LLC,
a Florida limited liability company


By:  Sandro Sordi, Manager

Guarantors:

STRATEGY INTERNATIONAL INSURANCE GROUP, INC.,
a Texas corporation


By: Stephen F. Stonhill, President

STRATEGY RESORT FINANCING, INC.,
an Ontario company


By:  Sandro Sordi, President

13

## Exhibit "A"

1.    Collateral Assignment of Mortgage, Security Agreement, Assignment of Leases and Rents, and Financing  Statement between Strategy Investments, LLC, a Florida limited liability company to GVEC Resource Inc., an international business company organized under the laws of the British Virgin Islands (Waikiki)

2.    Collateral Assignment of Mortgage by Strategy Resort Financing, Inc., an Ontario corporation to GVEC Resource Inc., an international business company organized under the laws of the British Virgin Islands (Mountainside)

3.    Collateral Assignment of Deed of Trust, Security Agreement, Assignment of Leases and Rents, and Fixture Filing by Strategy Investments, LLC, a Florida limited liability company to GVEC Resource Inc., an international business company organized under the laws of the British Virgin Islands (Napa)

14

<u>Exhibit "B"</u>

1.      Secured Promissory Note dated April 20, 2005 made by SVC-Waikiki, LLC, a Delaware limited liability company to Strategy Investments LLC, a Florida limited liability company.

2.      Secured Promissory Note dated July 26, 2005 made by SVC-Mountainside ULC, a Nova Scotia unlimited liability company to Strategy Resort Financing Inc., an Ontario corporation incorporated under no. 002068281.

3.      Secured Promissory Note dated April 20, 2005 made by SVC-Napa, L.P., a California limited partnership to Strategy Investments LLC, a Florida limited liability company

Exhibit C

Payment Grid Schedule

| Date Payment Due | Date Payment Received | Amount | Comments |
|---|---|---|---|
| July 24, 2006 | | $1,450,000.00 | |
| January 24, 2007 | | $1,450,000.00 | |
| July 24, 2007 | | $1,450,000.00 | |
| January 24, 2008 | | $1,450,00,000 | |
| July 24, 2008 | | $1,450,000.00 | |
| January 24, 2009 | | $1,450,000.00 | |
| January 24, 2009 | | $29,000,000.00 | |