## SECURED PROMISSORY NOTE

$9,500,000US

Date: ~~April~~ JUN 24, 2005

FOR VALUE RECEIVED, the undersigned, SVC-MOUNTAINSIDE ULC, a Nova Scotia unlimited liability company ("MAKER") promises to pay to the order of HAMSOR HOLDINGS ~~INC.~~ corporation., an Ontario corporation incorporated under no. 001651037 , ("HOLDER") the principal sum of Nine Million Five Hundred Thousand United States Dollars ($9,500,000) (the "Principal Sum"), together with interest at the "Interest Rate" (as defined below) on the unpaid balance of principal (the "Outstanding Balance"), commencing on the date hereof, principal and interest payable as follows:

Section 1.  Principal; Interest

a)      The Outstanding Balance, and accrued and unpaid interest thereon, is due and payable on or before May 1, 2009 (the "Maturity Date").  Until such time, there shall be no payment of principal due hereunder.  The Principal Sum may be advanced in one or more advances (each, an "Advance").

b)      Interest at the "Interest Rate" (as defined below) shall be due on the first day of August, 2005, and continuing on the 1st day of each calendar quarter thereafter, until the Maturity Date, at which time all unpaid accrued interest and other amounts payable hereunder shall be due and payable in full.  For purposes hereof, the "Interest Rate" shall be the reference rate (being the per annum rate of interest announced by the Wall Street Journal to be in effect from time to time as the prime lending rate) plus 3.00% per annum.

Section 2.      Calculation of Interest.  Interest hereunder shall be computed on the basis of a year consisting of a three hundred sixty-five (365) day year and shall be calculated on each Advance from the date it is actually advanced..  Maker may prepay the loan evidenced by this Note in full or in part without penalty at any time upon not less than one (1) days notice.  The "Release Price" (as defined in the Mortgage) delivered to Holder in connection with a release of a "Timeshare Interest" (as defined in the Mortgage) shall be applied to the principal amount due hereunder.

Section 3.  Security.  This Note is secured by that certain Mortgage and Assignment of Leases and Rents, Security Agreement and Financing Statement registered in the British Columbia Personal Property Registry (the "Security").  The Security, this Note and all other documents delivered by Maker in connection therewith or herewith are referred to herein collectively as the "Loan Documents."

Section 4.  Events of Default. The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder:

a)  .    Maker shall fail to make any payment of interest under this Note within ten (10) days of when due hereunder and after not less than five (5) days written notice of delinquency; or

ARK11199



b)    The occurrence of any other "Event of Default" under any other Loan Document (after passage of any applicable grace or cure period).

Upon the occurrence of an Event of Default, Holder may (i) declare all indebtedness evidenced by this Note to be immediately due and payable, and (ii) exercise all rights and remedies available under this Note, the Mortgage, and applicable law.

Section 5.    Costs.  In the event that Holder institutes legal proceedings to enforce this Note, Maker agrees to pay Holder, in addition to any indebtedness due and unpaid, all reasonable and documented costs and expenses of such proceedings, including reasonable and documented attorneys' fees.  Maker and any parties now or hereafter liable for the payment hereof, primarily or secondarily, directly or indirectly, and whether as endorser, guarantor, surety, or otherwise, hereby severally waive presentment, demand, protest, notice of protest and/or of dishonor, and all other demands or notices of any sort whatever with respect to this Note unless specifically provided for elsewhere herein.  If any provision hereof is, for any reason and to any extent, invalid or unenforceable, then neither the remainder of the document in which such provision is contained, nor the application of the provision to other persons, entities, or circumstances, nor any other document referred to herein, shall be affected thereby, but instead shall be enforceable to the maximum extent permitted by law.  This Note shall be construed and enforced in accordance with the laws of the Province of Ontario.

Section 6.  Notices.  All notices hereunder shall be in writing and shall be given or served by actual delivery or by being deposited in the Canadian Mail, registered or certified, return receipt requested, or with a nationally recognized overnight commercial delivery service requiring proof of delivery, addressed to the parties as follows (or to such other address as any party may notify the others in writing in the manner set forth herein):

AS TO HOLDER:    Sandro Sordi
                 24 Duval Drive
                 Toronto, Ontario
                 CANADA M6L 2K1

AS TO MAKER:     Sheldon H. Ginsburg and
                 Craig J. Goldstein
                 Shell Vacations LLC
                 40 Skokie Boulevard - #350
                 Northbrook, IL  60062-1699

Such notice shall be deemed delivered on the date personally delivered, or if mailed, on the third (3rd) business day after the same was deposited in the Canadian mail, postage prepaid, as aforesaid or on the next business day after the same was sent via a nationally recognized express next-business-day-delivery service.

**IN WITNESS WHEREOF,** the undersigned has executed this Note on the day and year first written above.

MAKER:

SVC MOUNTAINSIDE ULC

By: _____

Authorized Signatory

09 36          B X 2 6 1 3 9 0          19 AUG 2005    09 36          B X 2 6 1 3 9 1

*LAND TITLE ACT*
FORM B
(Section 219.1)

Province of British Columbia
**MORTGAGE – PART 1**          (This area for Land Title Office Use)          Page 1 of 34 Pages

1. **\*** **APPLICATION:** (Name, address, phone number and signature of applicant, applicant's solicitor or agent)

   OWEN BIRD LAW CORPORATION
   29th Floor – 595 Burrard Street, Vancouver, B.C. V7X 1J5 (Phone: [604] 688-0401)
   File No. 24577-0012

   _____
   Signature of Applicant (Gina Elsey)

2. **PARCEL IDENTIFIER(S) AND LEGAL DESCRIPTION(S) OF THE MORTGAGED LANDS:**
   (PID)                    (Legal Description)

   SEE SCHEDULE

3. **BORROWER(S)/MORTGAGOR(S)** (Including postal address(es) and postal code(s))

   **SHELL OWNERS ASSOCIATION -- PACIFIC (Reg. No. A0063969)**
   C/O 29th Floor – 595 Burrard Street, Vancouver, B.C.  V7X 1J5

4. **LENDER(S)/MORTGAGEE(S)** (Including occupation(s), postal address(es) and postal code(s))

   **HAMSOR HOLDING CORPORATION**
   24 Duval Drive, Toronto, Ontario  M6L 2K1

5. **PAYMENT PROVISIONS**

| (a)  Principal Amount: $9,500,000.00 U.S. | (b)  Interest Rate: SEE SCHEDULE | (c)  Interest Adjustment Date: N/A | Y | M | D |
|---|---|---|---|---|---|
| (d)  Interest Calculation Period: Annually | (e)  Payment Dates: Quarterly, in arrears | (f)  First Payment Date: | 05 | 8 | 1 |
| (g)  Amount of each periodic payment: INTEREST ONLY | (h)  Interest Act (Canada) Statement: The equivalent rate of interest calculated half-yearly not in advance is N/A % per annum | (i)  Last Payment Date: | 09 | 5 | 1 |
| (j)  Assignment of Rents which the applicant wants registered? (X) NO ( ) Paragraph 49, Pages 25 to 27 | (k)  Place of Payment: Postal Address in Item 4 | (l)  Balance Due Date: | 09 | 5 | 1 |

**MORTGAGE - PART 1**                                                          Page 2

| | |
|---|---|
| 6.    **MORTGAGE** contains floating charge on land:<br><br>Yes ( )      No ( X ) | 7.    **MORTGAGE** secures a current or running account:<br><br>Yes ( X )      No ( ) |

8.    **INTEREST MORTGAGED:**

Freehold:                              ( )           SEE SCHEDULE
Other (Specify):                  ( )

9.    **MORTGAGE TERMS:**
Part 2 of this mortgage consists of (selection one only):
(a) Prescribed Standard Mortgage Terms          ( )
(b) Filed Standard Mortgage Terms                    ( )
(c) Express Standard Mortgage Terms               ( X )
A selection of (a) or (b) includes any additional or modified terms referred to in item 10 or in a schedule annexed to this mortgage.

10.   **ADDITIONAL OR MODIFIED TERMS:**

N/A

11.   **PRIOR ENCUMBRANCES PERMITTED BY LENDER:**

SEE SCHEDULE

12.   **EXECUTION(S)** This mortgage charges the Borrower's interest in the land mortgaged as security for payment of all money due and performance of all obligations in accordance with the mortgage terms referred to in Item 9 and the Borrower(s) and every other signatory agree(s) to be bound by and acknowledge(s) receipt of a true copy of those terms.

| | Execution Date | | | |
|---|---|---|---|---|
| **Officer's Signature(s)** | **Y**<br>05 | **M**<br>4 | **D**<br>20 | **Borrower(s) Signature(s)** |

*Mary K. Poppe*
40 SKOKIE BLVD #350
NORTHBROOK, ILLINOIS, USA
60062-1699

"OFFICIAL SEAL"
MARY K. POPPE
COMMISSION EXPIRES 06/10/06

**SHELL OWNERS ASSOCIATION –**
**PACIFIC**
by its authorized signatory(ies)

Name: *SECRETARY*
*DANIEL GLICKSTEIN*
Name:

**Officer Certification:** Your signature constitutes a representation that you are a solicitor, notary public or other person authorized by the **Evidence Act**, R.S.B.C. 1996, c. 116, to take affidavits for use in British Columbia and certifies the matters set out in Part 5 of the **Land Title Act** as they pertain to the execution of this instrument.

*LAND TITLE ACT*
*FORM E*
*SCHEDULE*                                                    *Page 3*

---

2.       **PARCEL IDENTIFIER(S) AND LEGAL DESCRIPTION(S):**
         (PID)                          (Legal Description)

| | |
|---|---|
| 006-298-192 | Strata Lot 3 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-298-214 | Strata Lot 4 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 002-996-413 | Strata Lot 5 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-298-257 | Strata Lot 6 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-298-273 | Strata Lot 7 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-298-290 | Strata Lot 8 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-298-346 | Strata Lot 9 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-298-397 | Strata Lot 10 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-298-419 | Strata Lot 11 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-298-451 | Strata Lot 12 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-298-486 | Strata Lot 13 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-298-508 | Strata Lot 14 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-298-541 | Strata Lot 15 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-298-575 | Strata Lot 16 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-298-591 | Strata Lot 17 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-298-613 | Strata Lot 18 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-298-648 | Strata Lot 19 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-298-664 | Strata Lot 20 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-298-702 | Strata Lot 21 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 002-995-816 | Strata Lot 22 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-298-737 | Strata Lot 23 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-298-761 | Strata Lot 24 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-298-796 | Strata Lot 25 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-298-834 | Strata Lot 26 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-298-869 | Strata Lot 27 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-298-885 | Strata Lot 28 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-059 | Strata Lot 29 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-075 | Strata Lot 30 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-083 | Strata Lot 31 District Lots 1902 and 4610 Strata Plan VR. 1026 |

*LAND TITLE ACT*
*FORM E*
*SCHEDULE*                                                              *Page 4*

---

| | |
|---|---|
| 006-299-091 | Strata Lot 32 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-121 | Strata Lot 33 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-130 | Strata Lot 34 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-148 | Strata Lot 35 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-172 | Strata Lot 36 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-181 | Strata Lot 37 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-199 | Strata Lot 38 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-211 | Strata Lot 39 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-253 | Strata Lot 40 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 005-260-833 | Strata Lot 41 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 005-502-811 | Strata Lot 42 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-300 | Strata Lot 43 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-334 | Strata Lot 44 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-342 | Strata Lot 45 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-377 | Strata Lot 46 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 003-115-429 | Strata Lot 47 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-393 | Strata Lot 48 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-407 | Strata Lot 49 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-415 | Strata Lot 50 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-440 | Strata Lot 51 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 003-004-341 | Strata Lot 52 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-466 | Strata Lot 53 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 004-581-121 | Strata Lot 54 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-512 | Strata Lot 55 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-547 | Strata Lot 56 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-571 | Strata Lot 57 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-628 | Strata Lot 58 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-652 | Strata Lot 59 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-687 | Strata Lot 60 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-725 | Strata Lot 61 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-733 | Strata Lot 62 District Lots 1902 and 4610 Strata Plan VR. 1026 |

*LAND TITLE ACT*
*FORM E*
*SCHEDULE*                                                            *Page 5*

---

| | |
|---|---|
| 006-299-750 | Strata Lot 63 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-873 | Strata Lot 64 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-903 | Strata Lot 65 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 003-661-091 | Strata Lot 66 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-938 | Strata Lot 67 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-299-989 | Strata Lot 68 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-300-014 | Strata Lot 69 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-324-223 | Strata Lot 70 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-300-081 | Strata Lot 71 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-300-146 | Strata Lot 72 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 003-020-193 | Strata Lot 73 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-300-171 | Strata Lot 74 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-300-197 | Strata Lot 75 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-300-227 | Strata Lot 76 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-300-243 | Strata Lot 77 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-300-278 | Strata Lot 78 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 003-114-198 | Strata Lot 79 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-300-316 | Strata Lot 80 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-300-341 | Strata Lot 81 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-300-383 | Strata Lot 82 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-300-448 | Strata Lot 83 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-300-481 | Strata Lot 84 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 002-752-034 | Strata Lot 85 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-300-511 | Strata Lot 86 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-300-553 | Strata Lot 87 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 005-994-250 | Strata Lot 88 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-300-596 | Strata Lot 89 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-300-642 | Strata Lot 90 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 006-300-677 | Strata Lot 91 District Lots 1902 and 4610 Strata Plan VR. 1026 |
| 010-484-973 | Strata Lot 95 District Lots 1902 and 4610 Strata Plan VR. 1026 |

*LAND TITLE ACT*
*FORM E*
*SCHEDULE*                                                              *Page 6*

8.    **INTEREST MORTGAGED:**
      (a)          **FREEHOLD; and**
      (b)          **OTHER:  Mortgages of Leases as set out below**

Lease No. K10883 (assigned by BG204133 and modified by BG215575 as assigned by BX501843) with respect to Strata Lot 3

Lease No. K11051 (assigned by BG204200 and modified by BG215576 as assigned by BX501844) with respect to Strata Lot 4

Lease No. K11024 (assigned by BG204212 and modified by BG215577 as assigned by BX501845) with respect to Strata Lot 5

Lease No. K10895 (assigned by BG204195 and modified by BG215578 as assigned by BX501846) with respect to Strata Lot 6

Lease No. J90240 (assigned by BG204180 and modified by BG215579 as assigned by BX501847) with respect to Strata Lot 7

Lease No. K11008 (assigned by BG204199 and modified by BG215580 as assigned by BX501848) with respect to Strata Lot 8

Lease No. J90332 (assigned by BG204181 and modified by BG215581 as assigned by BX501849) with respect to Strata Lot 9

Lease No. GD119117 (assigned by BG204182 and modified by BG215582 as assigned by BX501850) with respect to Strata Lot 10

Lease No. K10887 (assigned by BG204214 and modified by BG215583 as assigned by BX501851) with respect to Strata Lot 11

Lease No. J90248 (assigned by BG204134 and modified by BG215584 as assigned by BX501852) with respect to Strata Lot 12

Lease No. J90130 (assigned by BG204135 and modified by BG215585 as assigned by BX501853) with respect to Strata Lot 13

Lease No. K3970 (assigned by BG204136 and modified by BG215586 as assigned by BX501854) with respect to Strata Lot 14

Lease No. J90154 (assigned by BG204137 and modified by BG215587 as assigned by BX501855) with respect to Strata Lot 15

Lease No. J90211 (assigned by BG204138 and modified by BG215588 as assigned by BX501856) with respect to Strata Lot 16

Lease No. K11054 (assigned by BG204201 and modified by BG215589 as assigned by BX501857) with respect to Strata Lot 17

Lease No. K10899 (assigned by BG204139 and modified by BG215590 as assigned by BX501858) with respect to Strata Lot 18

Lease No. K11004 (assigned by BG204215 and modified by BG215591 as assigned by BX501859) with respect to Strata Lot 19

*LAND TITLE ACT*
*FORM E*
*SCHEDULE*                                                        *Page 7*

---

Lease No. K11059 (assigned by BG204140 and modified by BG215592 as assigned by BX501860) with respect to Strata Lot 20

Lease No. K11063 (assigned by BG204141 and modified by BG215593 as assigned by BX501861) with respect to Strata Lot 21

Lease No. K11020 (assigned by BG204213 and modified by BG215594 as assigned by BX501862) with respect to Strata Lot 22

Lease No. K10891 (assigned by BG204196 and modified by BG215595 as assigned by BX501863) with respect to Strata Lot 23

Lease No. K11016 (assigned by BG204197 and modified by BG215596 as assigned by BX501864) with respect to Strata Lot 24

Lease No. J90191 (assigned by BG204142 and modified by BG215597 as assigned by BX501865) with respect to Strata Lot 25

Lease No. J90336 (assigned by BG204143 and modified by BG215598 as assigned by BX501866) with respect to Strata Lot 26

Lease No. J90324 (assigned by BG204144 and modified by BG215599 as assigned by BX501867) with respect to Strata Lot 27

Lease No. R123914 (assigned by BG204145 and modified by BG215600 as assigned by BX501868) with respect to Strata Lot 28

Lease No. K390 (assigned by BG204146 and modified by BG215601 as assigned by BX501869) with respect to Strata Lot 29

Lease No. J90134 (assigned by BG204147 and modified by BG215602 as assigned by BX501870) with respect to Strata Lot 30

Lease No. N110686 (assigned by BG204183 and modified by BG215603 as assigned by BX501871) with respect to Strata Lot 31

Lease No. GE6983 (assigned by BG204203 and modified by BG215604 as assigned by BX501872) with respect to Strata Lot 32

Lease No. J90138 (assigned by BG445908 and modified by BG445909 as assigned by BX501873) with respect to Strata Lot 33

Lease No. J90664 (assigned by BG204184 and modified by BG215605 as assigned by BX501874) with respect to Strata Lot 34

Lease No. J90142 (assigned by BG204148 and modified by BG215606 as assigned by BX501875) with respect to Strata Lot 35

Lease No. N110685 (assigned by BG204208 and modified by BG215607 as assigned by BX501876) with respect to Strata Lot 36

Lease No. J90260 (assigned by BG204149 and modified by BG215608 as assigned by BX501877) with respect to Strata Lot 37

Lease No. GD119118 (assigned by BG204185 and modified by BG215609 as assigned by BX501878) with respect to Strata Lot 38

*LAND TITLE ACT*
*FORM E*
*SCHEDULE*                                                                 *Page 8*

---

Lease No. J90158 (assigned by BG204191 and modified by BG215610 as assigned by BX501879) with respect to Strata Lot 39

Lease No. N99102 (assigned by BG204209 and modified by BG215611 as assigned by BX501880) with respect to Strata Lot 40

Lease No. J90215 (assigned by BG204150 and modified by BG215612 as assigned by BX501881) with respect to Strata Lot 41

Lease No. R20921 (assigned by BG204151 and modified by BG215613 as assigned by BX501882) with respect to Strata Lot 42

Lease No. P53352 (assigned by BG204152 and modified by BG215614 as assigned by BX501883) with respect to Strata Lot 43

Lease No. J90166 (assigned by BG204186 and modified by BG215615 as assigned by BX501884) with respect to Strata Lot 44

Lease No. K8 (assigned by BG204153 and modified by BG215616 as assigned by BX501885) with respect to Strata Lot 45

Lease No. J90228 (assigned by BG204154 and modified by BG215617 as assigned by BX501886) with respect to Strata Lot 46

Lease No. P79377 (assigned by BG204155 and modified by BG215618 as assigned by BX501887) with respect to Strata Lot 47

Lease No. R123915 (assigned by BG204187 and modified by BG215619 as assigned by BX501888) with respect to Strata Lot 48

Lease No. J90288 (assigned by BG445904 and modified by BG445905 as assigned by BX501889) with respect to Strata Lot 49

Lease No. N51400 (assigned by BG204188 and modified by BG215620 as assigned by BX501890) with respect to Strata Lot 50

Lease No. P90244 (assigned by BG204156 and modified by BG215621 as assigned by BX501891) with respect to Strata Lot 51

Lease No. J90171 (assigned by BK350979 and modified by BK350980 as assigned by BX501892) with respect to Strata Lot 52

Lease No. K1952 (assigned by BG204157 and modified by BG215622 as assigned by BX501893) with respect to Strata Lot 53

Lease No. P90207 (assigned by BG204158 and modified by BG215623 as assigned by BX501894) with respect to Strata Lot 54

Lease No. J90328 (assigned by BG204159 and modified by BG215624 as assigned by BX501895) with respect to Strata Lot 55

Lease No. J90179 (assigned by BG204189 and modified by BG215625 as assigned by BX501896) with respect to Strata Lot 56

Lease No. J90232 (assigned by BG204193 and modified by BG215626 as assigned by BX501897) with respect to Strata Lot 57

*LAND TITLE ACT*
*FORM E*
*SCHEDULE*                                                          *Page 9*

Lease No. P90187 (assigned by BG204160 and modified by BG215627 as assigned by BX501898) with respect to Strata Lot 58

Lease No. J90304 (assigned by BG204202 and modified by BG215628 as assigned by BX501899) with respect to Strata Lot 59

Lease No. J90316 (assigned by BG204161 and modified by BG215629 as assigned by BX501900) with respect to Strata Lot 60

Lease No. J90252 (assigned by BG204162 and modified by BG215630 as assigned by BX501901) with respect to Strata Lot 61

Lease No. J90236 (assigned by BG204163 and modified by BG215631 as assigned by BX501902) with respect to Strata Lot 62

Lease No. J90394 (assigned by BG204164 and modified by BG215632 as assigned by BX501903) with respect to Strata Lot 63

Lease No. J90308 (assigned by BG204165 and modified by BG215633 as assigned by BX501904) with respect to Strata Lot 64

Lease No. J90340 (assigned by BG204194 and modified by BG215634 as assigned by BX501905) with respect to Strata Lot 65

Lease No. K3954 (assigned by BG204204 and modified by BG340557 as assigned by BX501906) with respect to Strata Lot 66

Lease No. N51398 (assigned by BG204210 and modified by BG215636 as assigned by BX501907) with respect to Strata Lot 67

Lease No. K8259 (assigned by BG204205 and modified by BG215637 as assigned by BX501908) with respect to Strata Lot 68

Lease No. K11012 (assigned by BG204198 and modified by BG215638 as assigned by BX501909) with respect to Strata Lot 69

Lease No. J90203 (assigned by BG204166 and modified by BG215639 as assigned by BX501910) with respect to Strata Lot 70

Lease No. J90296 (assigned by BG445906 and modified by BG445907 as assigned by BX501911) with respect to Strata Lot 71

Lease No. J90292 (assigned by BG204206 and modified by BG215640 as assigned by BX501912) with respect to Strata Lot 72

Lease No. J90175 (assigned by BG204167 and modified by BG215641 as assigned by BX501913) with respect to Strata Lot 73

Lease No. N51399 (assigned by BG204211 and modified by BG215642 as assigned by BX501914) with respect to Strata Lot 74

Lease No. J90312 (assigned by BG204168 and modified by BG215643 as assigned by BX501915) with respect to Strata Lot 75

Lease No. J90150 (assigned by BG204207 and modified by BG215644 as assigned by BX501916) with respect to Strata Lot 76

*LAND TITLE ACT*
*FORM E*
*SCHEDULE*                                                          *Page 10*

---

Lease No. J90280 (assigned by BG204169 and modified by BG215645 as assigned by BX501917) with respect to Strata Lot 77

Lease No. J90284 (assigned by BG204170 and modified by BG215646 as assigned by BX501918) with respect to Strata Lot 78

Lease No. P79378 (assigned by BG204190 and modified by BG215647 as assigned by BX501919) with respect to Strata Lot 79

Lease No. J90264 (assigned by BG204171 and modified by BG215648 as assigned by BX501920) with respect to Strata Lot 80

Lease No. J90219 (assigned by BG204172 and modified by BG215649 as assigned by BX501921) with respect to Strata Lot 81

Lease No. J91130 (assigned by BG204173 and modified by BG215650 as assigned by BX501922) with respect to Strata Lot 82

Lease No. J90162 (assigned by BG204192 and modified by BG215651 as assigned by BX501923) with respect to Strata Lot 83

Lease No. N51401 (assigned by BG204174 and modified by BP265641 as assigned by BX501924) with respect to Strata Lot 84

Lease No. P64211 (assigned by BG204175 and modified by BG215653 as assigned by BX501925) with respect to Strata Lot 85

Lease No. J900300 (assigned by BX501932) with respect to Strata Lot 86

Lease No. J90256 (assigned by BG204176 and modified by BG215654 as assigned by BX501926) with respect to Strata Lot 87

Lease No. J90276 (assigned by BG204177 and modified by BG215655 as assigned by BX501927) with respect to Strata Lot 88

Lease No. K12 (assigned by BG204178 and modified by BG215656 as assigned by BX501928) with respect to Strata Lot 89

Lease No. J90268 (assigned by BG445910 and modified by BG445911 as assigned by BX501929) with respect to Strata Lot 90

Lease No. J90320 (assigned by BG204179 and modified by BG215657 as assigned by BX501930) with respect to Strata Lot 91

*LAND TITLE ACT*
*FORM E*
*SCHEDULE* *Page 11*

---

5(b)   **INTEREST RATE**

The Interest Rate under this mortgage shall be the reference rate (being the per annum rate of interest announced by the Wall Street Journal to be in effect from time to time as the prime lending rate) plus 3.00% per annum.

11.   **PRIOR ENCUMBRANCES PERMITTED BY LENDER:**

(a)   Covenant H46398 (as modified by BX 461132 ) in favour of Resort Municipality of Whistler;

(b)   With respect to Strata Lots 3 to 91 – Head Leases, variously numbered, as set out in Item 8(b) of the Form B forming part 1 of this Mortgage, all in favour of the Mortgagor;

(c)   Subleases, variously numbered, in favour of Computershare Trust Company of Canada.

## PART 2 – EXPRESS STANDARD MORTGAGE TERMS:

WHEREAS:

A.   These mortgage terms are included in and form a part of the Form B - Mortgage to which they are attached. All definitions of words and phrases as contained in Part 1 or Part 2 of the Mortgage shall apply to the Mortgage in its entirety. Each of the clauses and paragraphs hereinafter contained shall be deemed to constitute the agreement of the Mortgagor, as the context shall permit, without further or express words or agreement.

B.   This Mortgage is given as security for a Promissory Note (the "Note") dated on or about the date hereof in support of a Loan made by the Mortgagee to SVC-Mountainside ULC (the "Company") in the amount of $9,500,000.00 U.S. (the "Loan"); and

C.   The Mortgagor, at the request of the Mortgagee and to further secure the Note and the repayment of the Loan, has agreed to execute and deliver this Mortgage.

WITNESS that in consideration of the premises and the sum of One ($1.00) Dollar now paid by the Mortgagee to the Mortgagor, the receipt and sufficiency of which is hereby acknowledged, and for other good and valuable consideration, the Mortgagor grants and mortgages to the Mortgagee, its heirs, executors, administrators, successors and assigns, all of the Mortgagor's right, title and interest in and to those lands and premises (the "Lands") more particularly known and described in Section 2 of the Form E Schedule forming part of this Mortgage and those leases (the "Leases") more particularly known and described in Section 8 of the Form E Schedule forming part of this Mortgage.

1.   The Mortgagor jointly and severally agrees and confirms that:

(a)   the Mortgagor at the request of the Mortgagee and to further secure the Note has agreed to execute and deliver this Mortgage;

(b)   the Mortgagor acknowledges that it has agreed to give to the Mortgagee this Mortgage to secure obligations under the Note, and the Mortgagor has agreed to grant and mortgage its interest in the Lands and the Leases described in Part 1 of this Mortgage, in accordance with the terms and conditions hereof;

(c)   the mortgage and charge herein shall charge the Lands and the Leases and all of the right, title and interest of the Mortgagor therein, so that this mortgage shall charge the entire interest in and to the Lands and theLeases and all of the interests of each and all of the Mortgagor in and to the Lands and the Leases;

2.  The Mortgagor further jointly and severally agrees and confirms with the Mortgagee:

(a)   that the Mortgagor will comply with the terms hereof, and observe the above proviso;

(b)   that the Mortgagor has good title in fee simple to the Lands, save as aforesaid;

(c)   that the Mortgagor has good title to the Leases, save as aforesaid;

(d)   that the Mortgagor has the right to convey and mortgage the Lands and the Leases to the Mortgagee, save as aforesaid;

(e)   that on default, the Mortgagee shall have possession of the Lands and the Leases, free from all encumbrances, save as aforesaid;

(f)   that the Mortgagor will execute such further assurances of the Lands and the Leases as may be requisite;

(g)   that the Mortgagor has done nothing to encumber the Lands and the Leases, save as aforesaid;

(h)   that the Mortgagor will insure and keep insured the buildings and improvements on the Lands to the amount of their replacement value or, if the Mortgagee so elects, such lesser amount as the Mortgagee may determine, in U.S. currency and:

   i.   such insurance shall cover against loss or damage by fire and any other insurable risks and perils that the Mortgagee may see fit, and shall include boiler, plate glass, rental, business interruption and public liability insurance in an amount satisfactory to the Mortgagee,

   ii.   shall place the required insurance with an insurer and on such terms as may be approved by the Mortgagee with loss payable to the Mortgagee in priority to every person except the holder of any prior charges approved by the Mortgagee,

   iii.   upon execution of this Mortgage immediately deliver to the Mortgagee a copy of the policy or policies evidencing the insurance and of receipts for the premiums thereon and at least fifteen (15) days prior to the expiry of a policy or at least five (5) days prior to the date fixed for cancellation of a policy should

notice of cancellation be given, the Mortgagor shall deliver to the Mortgagee evidence of renewal or replacement of the policy,

iv. obtain such new insurance as the Mortgagee may require if the insurer or the insurance ceases to have the approval of the Mortgagee,

v. that the Mortgagee shall have a lien in the amount secured hereby against all insurance on the said buildings and improvements,

vi. in any event, that the Mortgagee shall not be liable for any failure to insure the said buildings, the non-payment of premiums on any policy, or any loss arising out of any defect in any policy or failure of any insurer to indemnify for any loss,

vii. that forthwith in the event of any loss or damage, and at the expense of the Mortgagor, to furnish all proofs and to do all acts necessary to enable the Mortgagee to obtain payment of the insurance monies under such insurance;

(i) if the Mortgagor fails to properly insure, the Mortgagee may, but shall not be obligated to, effect such insurance as it sees fit which may be solely for the benefit of the Mortgagee, with no duty to account for the proceeds thereof, and the costs of that insurance:

i shall be a charge on the Lands in favour of the mortgagee in priority to all claims subsequent to the date of execution of this Mortgage,

ii. shall be payable by the Mortgagor immediately with interest calculated at the rate and in the manner set out under the Loan until paid, and

iii. shall with interest at the said rate be added to the monies hereby secured as if those amounts had originally formed part of the current Loan;

(j) that the Mortgagee shall not be required to realize upon or enforce any security collateral to this Mortgage before enforcing the security granted hereby, any rule of law or in equity notwithstanding;

(k)      to pay to the Mortgagee upon request all costs, charges and expenses of and incidental to:

     i.      the preparation, execution and registration of this Mortgage, and

     ii.      all proceedings taken by the Mortgagee to enforce this Mortgage or the Mortgagee's remedies under and;

     iii.      the discharge or release of this Mortgage;

All such costs, expenses and charges shall be determined and paid on a solicitor and his own client basis. In the event of non-payment of the said costs, expenses and charges within thirty (30) days of such request, the amount thereof shall be deemed to constitute principal under this Mortgage and shall bear interest at the said rate and be paid forthwith;

(l)      to pay as and when due all monies payable under any and all liens, charges and encumbrances in priority to this Mortgage, if any, and observe and perform all the terms, provisos, covenants and conditions in the encumbrances prior hereto; and to duly pay all rates, taxes, levies and assessments whatsoever affecting the Lands and all premiums for insurance effected pursuant to this Mortgage;

(m)      that any and all amounts in connection with the Loan not paid by the Mortgagor to the Mortgagee when due shall be a charge on the Lands and the Leases in favour of the Mortgagee in priority to all claims subsequent to the date of execution of this Mortgage and shall be added to the principal sum and interest at the rate hereunder shall be charged thereon;

(n)      that all payments to the Mortgagee shall be made at the office of the Mortgagee set out in the Form B - Mortgage or such other place that the Mortgagee may designate in writing from time to time;

(o)      that the charge created by this Mortgage shall take effect immediately upon the execution of this Mortgage;

(p)      that the Mortgagor has done no act nor been guilty of any omission whereby the rights of the Mortgagor in the Lands and the Leases have become in any way impaired or invalid;

(q)      that the Mortgagor shall promptly comply with all restrictive covenants and all federal, provincial, municipal or local statutes, regulations, by-laws and ordinances affecting the land, now or hereafter in effect.

3. The Mortgagor releases to the Mortgagee all of the Mortgagor's claims upon the Lands and the Leases subject to the proviso.

4. Provided that the Mortgagee on default under the Note for one month may on thirty (30) days' notice enter on and lease or sell the Lands or assign the Leases.

5. PROVIDED ALSO that no purchaser at any sale purporting to be made in pursuance of the aforesaid power of sale referred to in Paragraph 8 hereof, shall be bound or concerned to see or inquire whether any such default has been made or continues or whether any such notice has been given as aforesaid or as to the necessity or expediency of the stipulations subject to which such sale shall have been made or otherwise as to the propriety of such sale or regularity of its proceedings or be affected by notice that any such default has been made or continues or notice given as aforesaid or that the sale has been otherwise unnecessary, improper or irregular nor shall any irregularity or want of notice invalidate any such sale and that any such sale may be on such terms and subject to such conditions including special conditions as to title or conveyance or otherwise as the Mortgagee shall deem fit, and notwithstanding any impropriety or irregularity in any such sale or notice thereof the sale as regards such purchaser shall be deemed to be within the aforesaid power and valid accordingly and the remedy (if any) of the Mortgagor in respect of any impropriety or irregularity whatsoever in any such sale shall be in damages only.

6. PROVIDED that any demand or notice necessary to be given in pursuance of the exercise of the powers and provisions herein contained may be given to the Mortgagor or to any encumbrancer by writing signed or purporting to be signed by or on behalf of the Mortgagee.

7. UPON ANY DEFAULT hereunder, the Mortgagee may from time to time appoint by writing a receiver, receiver - manager or receiver and manager (the "Receiver") of the Lands, with or without bond, and may from time to time remove the Receiver and appoint another in its stead.

8. Any Receiver appointed hereunder shall by virtue of that appointment be the agent of the Mortgagor and shall have the following powers:

    (a) to take possession of the Lands and for that purpose to enter into and upon any buildings and premises wheresoever and whatsoever and for that purpose to do any and take any proceedings in the name of the Mortgagor or otherwise as the Receiver may see fit;

    (b) to carry on or concur in carrying on the business of the Mortgagor on the Lands including the development thereof, and to employ and discharge agents, workmen, accountants, and others upon the terms and for the salaries, wages, or remuneration that the Receiver shall think proper and to repair and keep in repair the Lands and to do all necessary acts and things for the carrying on of the business of the Mortgagor on the Lands and the protection of the Lands;

(c) to cease carrying on the business of the Mortgagor on the Lands and to sell or lease or concur in selling or leasing any or all of the Lands or any part thereof or assign or concur in assigning any or all of the Leases, or any part thereof, and to carry any sale or lease into effect by conveying in the name of or on behalf of the Mortgagor or otherwise; and any sale may be made from time to time as to the whole or any part or parts of the Lands or Leases and the Receiver may:

    i. make any stipulations as to title or conveyance or commencement of title or otherwise which the Receiver shall see fit,

    ii. buy in or rescind or vary any contracts for the sale of any part of the Lands or Leases and may re-sell any of the Lands and assign any of the Leases, and

    iii. sell any of the Lands and assign any of the Leases on the terms as to credit or part cash and part credit or otherwise that shall appear to be most advantageous and at the prices that can reasonably be obtained therefor,

and in the event of a sale on credit neither the Receiver nor the Mortgagee shall be accountable for or charged with any monies until actually received;

(d) to make any arrangement or compromise which the Receiver may think expedient in the interest of the Mortgagee and to consent to any modification or change in or omission from the provisions of this Mortgage;

(e) to exchange any part or parts of the Lands for any other property which the Receiver determines to be suitable for the purposes of the Mortgagor and upon the terms that the Receiver shall see fit and either with or without payment or exchange of money or regard to the equality of the exchange or otherwise;

(f) to borrow money to carry on the business of the Mortgagor on the Lands, including the development thereof, or to maintain the whole or any part of the Lands in the amounts that the Receiver may from time to time see fit and in so doing the Receiver may issue certificates that may be payable when the Receiver thinks expedient and shall bear interest as stated therein and the amounts from time to time payable under those certificates shall charge the Lands and the Leases in priority to this Mortgage;

(g) to execute and prosecute all suits, proceedings, and actions which the Receiver in his sole discretion may see fit for the proper protection of the Lands and the Leases, to defend all suits, proceedings, and actions against

the Mortgagor or the Receiver, to appear in and conduct the prosecution and defense of any suit, proceeding, or action then pending or thereafter instituted and to appeal any suit, proceeding, or action;

(h) to execute and deliver to the purchaser of any part or parts of the Lands and the Leases, good and sufficient deeds, the Receiver hereby being constituted the irrevocable attorney of the Mortgagor for the purpose of making a sale and executing a deed, and any sale made as set out above shall be a perpetual bar both in law and equity against the Mortgagor, and all other persons claiming the Lands and the Leases or any interest therein or any part or parts thereof by, from, through, or under the Mortgagor and the proceeds of any sale shall be distributed in the manner set out below;

and it is agreed that no purchaser at any sale purporting to be made under these powers shall be bound or concerned to see or inquire whether any default has been made or continued, or whether any notice required hereunder has been given, or as to the necessity or expediency of the stipulations subject to which any sale shall have been made, or otherwise as to the propriety of any sale or regularity of its proceedings, or be affected by notice that no default has been made or continues, or notice given, or that the sale is otherwise unnecessary, improper, or irregular; and notwithstanding any impropriety or irregularity or notice thereof to that purchaser, the sale as regards that purchaser shall be deemed to be within these powers and be valid accordingly and the remedy (if any) of the Mortgagor, or of any party claiming by or under it, in respect of any impropriety or irregularity whatsoever in any sale shall be in damages only;

9. The net profits of the business of the Mortgagor on the Lands and the Leases and the net proceeds of any sale of the Lands and assignment of the Leases or part thereof shall be applied by the Receiver subject to the claims of any creditors ranking in priority to this Mortgage:

(a) FIRSTLY, in payment to the Receiver on account of all costs, charges, and expenses of and incidental to the appointment of the Receiver and the exercise by him of all or any of the powers set out in the previous section including the reasonable remuneration of the Receiver and all amounts properly payable by him;

(b) SECONDLY, in payment to the Receiver and the Mortgagee, as the case may be, on account of all costs, charges, and expenses payable hereunder, including the legal fees of the Receiver and of the Mortgagee on a solicitor and his own client basis;

(c) THIRDLY, in payment to the Mortgagee on account of the current loan;

(d) FOURTHLY, in payment to the Mortgagee on account of all interest on the current loan and any other monies remaining unpaid hereunder; and

(e) FIFTHLY, in payment to the Mortgagor of any surplus, provided that if any party claims a charge against all or a portion of the surplus, the Receiver shall make such disposition of all or a portion of the surplus as the Receiver sees fit in the circumstances.

10. The appointment of any Receiver hereunder shall not render the Mortgagee a mortgagee in possession;

11. The Mortgagee shall not be liable to the Receiver for his remuneration, costs, charges, or expenses and the Receiver shall not be liable for any loss howsoever arising unless that loss shall be caused by the gross negligence or willful default of the Receiver and the Mortgagor shall be solely responsible for the acts, defaults, and remuneration of the Receiver.

12. All remedies stipulated for the Mortgagee herein shall be in addition to and not restrictive of the remedies of a Mortgagee at law and in equity.

13. Each remedy of the Mortgagee may be enforced in priority to or concurrently with or subsequent to any other remedy or remedies of the Mortgagee.

14. The Mortgagee may realize upon various securities and the parts thereof in any order that the Mortgagee may determine and any realization upon any security or securities shall not bar realization upon any other security or securities.

15. Any demand, notice or court process may be effectively given to or served upon the Mortgagor by the Mortgagee:

(a) by leaving the demand, notice, or court process with an adult person on the Lands, if occupied, or placing it on some portion thereof, if unoccupied;

(b) by mailing that demand, notice, or court process by prepaid post to the Mortgagor at the Mortgagor's address set out in the Mortgage Form or at any other address that may be given in writing by the Mortgagor to the Mortgagee,

(c) and shall be deemed to have been received on the second business day immediately following the date of mailing;

(d) if the Mortgagor is a corporation, by mailing any demand, notice, or court process to the Mortgagor at its registered office, and shall be deemed to have been received on the second business day immediately following the date of mailing; or

(e) by publishing the demand, notice or court process twice in a newspaper published or circulating in the county or district in which the Lands are situate,

and to the Mortgagee by the Mortgagor by mailing any notice by prepaid registered mail to the Mortgagee at the Mortgagee's address set out in the Mortgage Form or to any other address that may be given by the Mortgagee to the Mortgagor.

16. Every part into which the Lands are or may hereafter be divided does and shall stand charged with the whole of the monies hereby secured and no person shall have any right to require the monies hereby secured to be apportioned on or in respect of these parts, but the Mortgagee may, but shall not be required to, release any part or parts of the Lands with or without sufficient consideration without thereby releasing the Mortgagor from this Mortgage.

17. No sale or other dealing by the Mortgagor with the equity of redemption in the Lands or Leases shall in any way change the liability of the Mortgagor or in any way alter the rights of the Mortgagee as against the Mortgagor or any other person liable for payment of the monies secured by this Mortgage.

18. THE Mortgagor agrees and confirms with the said Mortgagee that he will keep the Lands and buildings and improvements thereon in good condition and repair according to the nature and condition thereof respectively, and that in case of neglect to do so or if the Mortgagor or those claiming under him commit any act of waste on the Lands or make default as to any of the agreements or provisos herein contained the principal and interest as aforesaid and all other amounts hereby secured shall at the option of the Mortgagee forthwith become due and payable and in default of payment the powers of sale hereby given may be exercised or the Mortgagee may at his option make such repairs to the mortgaged premises as he may deem necessary and any and all sum or sums of money expended in such repairs shall be forthwith payable with interest at the rate aforesaid from the time or respective times of the payment of the said sum or sums until paid, and until paid shall be a charge on the Lands and the Leases in favour of the Mortgagee prior to all claims thereon subsequent to these presents, and may be added to the principal sum hereby secured as if the same had originally formed part thereof and in default the power of sale hereby given and all other powers exercisable by the Mortgagee hereunder in case of default shall be forthwith exercisable.

19. THE WHOLE of the current loan and interest and all other amounts secured hereby shall become due and payable forthwith, but only at the option of the Mortgagee upon:

(a) default by the Mortgagor in payment of the monies due pursuant to the Note; or

(b) default by the Mortgagor in payment of any other monies payable pursuant to this Mortgage; or

20. IT IS EXPRESSLY AGREED AND UNDERSTOOD that should the Mortgagor, without the consent of the Mortgagee, sell, transfer, assign or convey his or its or any of his or its interest or any part thereof in the Lands or the Leases or enter into any agreement or arrangement so to do, the whole of the current loan or the amount thereof remaining, together with interest thereon as herein provided shall become due and payable forthwith but only at the option of the Mortgagee. If the Mortgagor is a corporation, or if the Mortgagor includes a corporation, the transfer, in trust or otherwise, of any of the voting shares of such corporation shall be deemed a conveyance of an interest in the land for the purpose of this paragraph.

21. PROVIDED FURTHER and it is expressly understood and agreed that should the Mortgagor (or any of them, if more than one person or corporation is named as Mortgagor) become bankrupt or insolvent, or make an assignment for the benefit of his creditors, then and in every such case the whole of the principal remaining unpaid shall, at the option of the Mortgagee, forthwith become due and payable in like manner and with like consequences and effects to all intents and purposes whatsoever as if the time herein mentioned for payment of such principal money had fully come and expired and demand had been made under the Note immediately prior to such bankruptcy or insolvency or assignment.

22. PROVIDED that no extension of time, indulgences, releases or discharges given by the Mortgagee to the Mortgagor or anyone claiming under him, nor any other dealing by the Mortgagee with the Mortgagor or the owner of the equity of redemption of land shall in any way affect or prejudice the rights of the Mortgagee against the Mortgagor or any other person liable for the payment of the monies hereby secured.

23. AND IT IS FURTHER AGREED that the taking of judgment or judgments on any of the agreements herein contained shall not operate as a merger of such agreements or affect the Mortgagee's right to interest at the rate and times as set out in the Loan, and any such judgment shall provide that interest thereon be computed at the same rate and in the same manner as provided in the Loan until the said judgment shall have been fully paid and satisfied.

24. PROVIDED that until default of payment pursuant to the Note the Mortgagor shall have quiet possession of the Lands.

25. AND it is hereby mutually agreed and confirmed by and between the parties that all erections, buildings, improvements, fences, machinery, plants, furnaces,

boilers, refrigeration equipment, gas and electric stoves, water heaters, ice boxes, electrical light fixtures, window blinds and fixtures, plumbing and heating equipment, and all apparatus and equipment appurtenant thereto, which are now or shall hereafter be placed or installed upon the land, are or shall thereafter be deemed to be fixtures and on accession to the freehold and a part of the realty as between the parties hereto and all persons claiming by, through, or under them, and shall be deemed to be a portion of the security for the indebtedness herein mentioned.

26. AND it is further agreed that neither the preparation nor registration of this Mortgage nor the advance of part of the monies hereby intended to be secured shall bind the Mortgagee to advance  or re-advance the said monies or any unadvanced portion thereof.

27. PROVIDED AND IT IS HEREBY AGREED by and between the parties hereto that the Mortgagee may on default of the Mortgagor in making payment thereof on the due date thereof pay or satisfy any taxes, rates, levies, assessments, water rates or charges, liens, charges or encumbrances against the land, monies for insurance, cost of suit or otherwise howsoever, or costs, charges and expenses of and incidental to the negotiations for and the preparation, registration, extension or release of this Mortgage, and of or connected with the recovery, collection or enforcing payment of any money whether for principal, interest, rents, profits or otherwise hereby secured or payable hereunder, and valuators' fees and solicitors' costs and commission on all monies so recovered or collected whether as a result of suit or otherwise together with all costs as between solicitor and client which may be incurred by taking or defending proceedings of any nature whether by instituting or defending suit in any court or otherwise concerning these presents or the land and the amounts so paid shall be a charge on the land in favour of the Mortgagee and shall be payable forthwith with interest at the rate set out in the Loan from the day or respective days of payment until paid by the Mortgagor and in the event of the Mortgagee satisfying or discharging any such payment, lien, charge or encumbrance either out of the money advanced on this security or otherwise, it shall be entitled to all equities and securities held by any person or persons in respect of the said payment, liens, charges and encumbrances so paid and satisfied, and the Mortgagor agrees to pay such amount and interest forthwith, and in the meantime the said amount shall at the option of the Mortgagee be added to the principal and bear interest from the date of payment until paid, and in default of payment, the power of sale hereby given and  all other powers exercisable by the Mortgagee hereunder in case of default shall forthwith be exercisable.

28. AND the Mortgagor further agrees and confirms forthwith on the happening of any loss or damage by fire or other hazards or perils to furnish at his expense all the necessary proofs and do all the necessary acts to enable the Mortgagee to obtain payment of the insurance monies. IT IS AGREED AND DECLARED between the parties hereto that all monies received by virtue of any policy or

policies of insurance may at the option of the Mortgagee either be forthwith applied on suspense account or in or towards substantially rebuilding, reinstating and repairing the said premises or in or towards the payment of the of principal until the whole of the principal hereunder shall be paid and in case of a surplus, then in and towards the payment of the interest.

29. IT IS ALSO AGREED that where a party includes more than one person, the obligations herein of each person shall be deemed to be joint as well as several as the context shall permit.

30. The Mortgagor agrees to waive, and does hereby waive, on the exercise of such right and license, all rights to exemption from seizure and distress under any Statute of this Province.

31. The Mortgagee may, at its discretion at all times release any part or parts of the land or any other security for the monies hereby secured either with or without any consideration therefor, and without being accountable for the value thereof or for any monies except those actually received by it and without thereby releasing any other of the land, or any of the covenants herein contained including any covenants or agreements on the part of any guarantor, surety, or other party hereto for the repayment of the monies and interest hereby secured and the performance of the covenants herein contained, to all of which such guarantor, surety, or other part hereby expressly agrees.

32. This Mortgage is subject to the doctrine of consolidation as and to the extent permitted by the *Property Law Act*, R.S.B.C. and amendments thereto.

33. IT IS AGREED that any payment made to the Mortgagee after twelve o'clock noon on any day shall be deemed to have been received on the business day next following the date of payment.

34. Any and all payments made by the Mortgagor or any other person in respect of the Loan and any money or other proceeds realized from any securities held therefor may be applied and re-applied, notwithstanding any previous application, on such part or parts of the current loan as the Mortgagee may see fit.

35. Every and any certificate signed by a representative of the Mortgagee purporting to show the amount at any particular time due and payable hereunder shall be prima facie evidence as against the Mortgagor of the amount of monies due and payable hereunder at such time.

36. This Mortgage is and shall be a continuing security and shall be deemed to be taken as security for the ultimate balance of the Loan at the time of demand under the Note together with interest as aforesaid and all other monies hereby secured. The Mortgagee may advance and re-advance monies hereunder and accept

payments from the Company without prejudicing its rights as against the Mortgagor pursuant to this Mortgage or the Note.

37. This Mortgage shall not operate, nor shall anything herein contained operate, so as to create any merger, rebate or discharge of any debt owing to the Mortgagee or any other security held by or which may hereafter be held by the Mortgagee from the Mortgagor or any other person whatsoever, and this Mortgage shall not in any way prejudicially affect any such security or securities held by the Mortgagee now or hereafter.

38. Time shall be of the essence hereof.

39. IT IS AGREED between the parties hereto that this Mortgage shall be binding upon and operate to the benefit of the successors in interest of the parties hereto.

40. The principal of deemed reinvestment of interest shall not apply to this Mortgage.

41. THE Mortgagor shall not permit the Lands to remain unoccupied or unused and shall not permit any building being erected on the Lands to remain unfinished or without any work being done thereon for a period exceeding 30 days.

42. No apparent change in the state of the account of the Mortgagor with the Company or the Mortgagee, by reason of monies deposited or bills of exchange, Notes, or other commercial paper discounted or given in renewal, substitution, or alteration of the bills, notes, and paper from time to time held by the Mortgagee or otherwise, shall be deemed to be repayment on account of the principal sum or interest or any part thereof or call for or require the application of any cash deposits or proceeds as payments on account of the monies secured by this Mortgage or any part thereof, or in any way affect the security of this Mortgage, unless an authorized employee of the Mortgagee shall give a receipt to the Mortgagor to that effect.

43. The Mortgagee may grant time, renewals, extensions, indulgences, releases, and discharges to, may take securities from, and give them and any and all existing securities up to, may abstain from taking securities from or from perfecting securities of, may accept compositions from, and may otherwise deal with the Mortgagor and all other persons and securities that the Mortgagee may see fit without prejudicing the rights of the Mortgagee under this Mortgage.

44. All rights, advantages, privileges, immunities, powers, and things hereby secured to the Mortgagee, shall be equally secured to and exercisable by its successors and assigns.

45. All amounts payable to the Mortgagee hereunder shall be made without deduction, compensation, set-off, or counterclaim.

46. Any rights, claims, or causes of action which the Mortgagor now has or in the future may have against any vendor, contractor, material man, or other party with respect to the Lands or any buildings or improvements thereon are hereby assigned to the Mortgagee as further security for the amounts secured by this Mortgage;

47. To the best of the Mortgagor's knowledge, no regulated, hazardous or toxic substances are being stored on the Lands or any adjacent property nor have any such substances been stored or used on the Lands or any adjacent property prior to the Mortgagor's ownership, possession or control of the Lands. The Mortgagor agrees to provide written notice to the Mortgagee immediately upon the Mortgagor becoming aware that the Lands or any adjacent property is being or has been contaminated with the regulated, hazardous or toxic substances. The Mortgagor will not cause nor permit any activities on the Lands or any other property being contaminated with regulated, hazardous or toxic substances. For the purposes of this Mortgage, the term "regulated, hazardous or toxic substances" means any substance, defined or designated as hazardous or toxic wastes, hazardous or toxic material, a hazardous, toxic or radioactive substance or other similar term, by any applicable federal, provincial, state or local statute, regulation or ordinance now or hereafter in effect, or any substance or materials, the use or disposition of which is regulated by any such statue, regulation or ordinance.

48. The Mortgagor shall promptly comply with all statutes, regulations and ordinances, and with all orders, decrees or courts having jurisdiction, relating to the use, collection, storage, treatment, control, removal or cleanup of regulated, hazardous or toxic substances in, on, or under the Lands or in, on, or under any adjacent property that becomes contaminated with regulated, hazardous or toxic substances as a result of construction, operations or other activities on, or the contamination of, the Lands, or incorporated in any improvements thereon. The Mortgagee may, but shall not be obligated to, enter upon the Lands and take such actions and incur such costs and expenses to effect such compliance as it deems advisable and the Mortgagor shall reimburse the Mortgagee on demand for the full amount of all costs and expenses incurred by the Mortgagee in connection with such compliance activities.

49. ASSIGNMENT OF RENTS

For the purposes of this Paragraph, the term "Assignor" refers to the Mortgagor and the term "Assignee" refers to the Mortgagee.

NOW THEREFORE WITNESSETH THAT in consideration of the premises and of the sum of One Dollar ($1.00) (the receipt whereof is hereby acknowledged by the Assignor) and other good and valuable consideration, the Assignor hereby assigns to the Assignee as security for the Note secured by the mortgage all rents

and other monies (hereinafter called "the Rents") now due and payable or hereafter become due and payable:

(a)     under every existing and future lease of and agreement to lease the whole or any portion of the Lands;

(b)     in respect of every existing and future tenancy, use and occupation of and licence in respect of the whole or any portion of the Lands, whether or not pursuant to any lease or agreement to lease; and

(c)     under every existing and future Note or all or any of the obligations of any existing or future tenant, user, occupier or licensee of the whole or any portion of the Lands.

(the lease, tenancies, Notes and agreements above referred to are hereinafter called "the Leases") with full power and authority to demand, collect, sue for, recover, receive and give receipts for the Rents and to enforce payment thereof in the name of the Assignor, its successors and assigns.

The Assignor hereby covenants and agrees that:

(a)     it has not and will not do or omit to do any act having the effect of waiving, releasing, reducing or abating the rights or remedies of the Assignor or obligations of any other party under the Leases or in connection therewith;

(b)     none of such rights, remedies and obligations are or will be affected by any other agreement, document or understanding or by any reduction, abatement, defence, set-off or counter-claim;

(c)     none of the Leases or the Assignor's rights thereunder, including the right to receive the Rents, has been or will be encumbered, discounted or anticipated;

(d)     it has not and will not further assign or encumber any Rents now due or payable or hereafter to become due or payable, under the terms of any existing or future lease and/or any existing or future tenancy agreement and will not accept prepayment of Rents due under the Leases, but only accept payment of Rents at the days and time stipulated in the Leases.

PROVIDED HOWEVER, and it is hereby specifically agreed as follows:

(a)     The Assignee will not exercise the rights granted by this agreement unless the Assignor shall be in default under any of the terms, covenants and conditions of the Note provided that the Assignor agrees that the decision

of the Assignee shall be final and conclusive as to the question of whether default has been made under the Note;

(b)   In the event of default the Assignor agrees to execute a written notice to the tenants of the Lands, directing that the tenant pay the Rents directly to the Assignee;

(c)   Nothing herein contained shall have the effect of making the Assignee, its successors or assigns, responsible for the collection of the Rents or any of them or for the performance of any of the obligations or conditions under or in respect of the Leases or any of them to be observed and performed by the Assignor, and the Assignee shall not by virtue of this agreement or its receipt of the Rents or any of them, become or be deemed an owner in possession of the Lands and the Assignee shall not be under any obligation to take any action or exercise any remedy in collection or recovery of the Rents or any of them or to see to or enforce the performance of the obligations and liabilities of any person under or in respect of the Leases or any of them; and the Assignee shall be liable to account only for such moneys as shall actually come into its hands, less proper collection charges and such moneys may be applied on account of any indebtedness of the Assignor to the Assignee.

The Assignor hereby agrees to execute such further assurances as may be reasonably required by the Assignee from time to time to perfect this assignment.

The Assignor further agrees that it will not lease or agree to lease any part of the Lands except at a rent, on terms and conditions, and to tenants which are not less favourable or desirable to the Assignor than those which a prudent landlord would expect to receive for the premises to be leased.

This assignment and everything herein contained shall extend to, bind and enure to the benefit of the heirs, executors, administrators, successors and assigns of each of the parties hereto.

50. If any one or more of the provisions contained in this Mortgage should be determined to be invalid, illegal or unenforceable in any respect, remaining provisions contained herein shall not in any way be affected or impaired thereby.

51. CONSTRUCTION PROVISIONS
If all or any portion of the proceeds of this Mortgage are to be used by the Mortgagor in the construction or renovation of buildings or improvements on the Lands, then the following provisions shall apply:

(a) Subject to acts of God, strikes, lockouts or other labour or industrial disturbances, the Mortgagor shall forthwith commence construction of the

buildings and improvements on the Lands (hereinafter called "the Project") in accordance with the plans and specifications submitted to and approved by the Mortgagee ("the Plans and Specifications") and shall carry on such construction and installation continuously, and diligently and with dispatch until completed and the Mortgagor will devote its full efforts and energy to the development, construction and sale of the Project and will not, save as herein set out, depart from the Plans and Specifications, and the judgment and determination of the Mortgagee under this paragraph shall be final and conclusive.

(b) The Project shall be constructed in a good workmanlike manner, using first quality materials in accordance with the Plans and Specifications and shall comply with all restrictions, conditions, ordinances, codes, regulations, and laws applicable to the Lands, and to the building or improvements

(c) All utility services necessary for the construction of the Project and operation and use thereof for its intended purpose, including but not limited to, the water supply, storm and sanitary sewer facilities, gas, electric and telephone facilities are available to the boundaries of the Lands.

(d) The Lands are contiguous to the publicly dedicated streets, roads or highways and vehicular and pedestrian access thereto is permitted or, if not, is the dominant tenement of a registered easement or easements creating the perpetual right of such access to any such publicly dedicated streets, roads or highways.

(e) Any defects in the construction or variation of the construction in the Project as reported to the Mortgagee by its consultants shall be promptly corrected by the Mortgagor to the satisfaction of the Mortgagee.

(f) All personal property, furniture, furnishings, Fixtures, attachments and equipment (hereinafter collectively called "the Chattels") delivered upon, attached to the Project or intended to become part of the Project shall be kept free and clear of all chattel mortgages, conditional sales agreements, vendors' liens, and all liens, encumbrances, and security interests other than as may be granted to the Mortgagee and the Mortgagor shall have the absolute ownership of the Chattels and shall, from time to time, furnish the Mortgagee with satisfactory evidence of such ownership, including searches of applicable public records.

(g) If any proceedings are commenced seeking to enjoin or otherwise to prevent or declare invalid or unlawful the construction, occupancy, maintenance, or operation of the Project or the Lands, or any portion thereof, the Mortgagor shall cause such proceedings to be contested in good faith and in the event of

an adverse ruling or decision, prosecute all allowable appeals therefrom and shall, without limiting the generality of foregoing resist the entry or seek the stay of any temporary or permanent injunction that may be entered and use its best efforts to bring about a favourable and speedy disposition of all such proceedings.   Should the Mortgagee in its absolute discretion deem it advisable to take proceedings either judicial or otherwise for the enforcement of the contracts and permits (as hereinafter defined) the Mortgagor shall join the Mortgagee in such proceedings and does hereby grant to the Mortgagee irrevocable authority to join the Mortgagor in such proceedings.

(h) The Mortgagor shall forthwith provide the Mortgagee with such documents, agreements, contracts and other materials in connection with the construction or proposed construction of the Project as the Mortgagee may require.

(i) The authority conferred upon the Mortgagee and any action taken by the Mortgagee in the exercise in such authority in making inspections of the Lands procuring sworn statements, approving permits, contracts, sub-contracts and plans and specifications shall be taken by the Mortgagee for its own protection only and the Mortgagee shall not assume any responsibility to the Mortgagor or to any other Person or waive any of the obligations of the Mortgagor by such approval or otherwise.

(j) The Mortgagor shall cause to be paid as soon as the same are due, all claims and demands of contractors and material men and all wages, salaries, holiday pay, workers' compensation, assessments, or other charges of any nature or kind (hereinafter called "charges"), which could, on any circumstances, constitute a lien or charge having priority over this Mortgage or any future advance hereunder and the Mortgagor will, from time to time on demand provide the Mortgagee with such books, payrolls or other records, receipts, certificates and declarations as the Mortgagee may deem necessary to satisfy itself that such charges have in fact been paid as the same are due.

(k) On default by the Mortgagor under the Mortgage, the Mortgagee shall have the right in addition to any other remedies which the Mortgagee may have to:

    i.        enter upon the Lands and complete the Project with such changes as the Mortgagee may deem appropriate in its absolute discretion, which work will be done at the cost and expense of the Mortgagor;

    ii.       discontinue at any time any work commenced on the Lands or change any course of action taken by the Mortgagor;