### SECURED PROMISSORY NOTE

$23,500,000                                    Date: April __, 2005

FOR VALUE RECEIVED, the undersigned, SVC-NAPA, L.P., a California limited partnership ("MAKER") promises to pay to the order of STRATEGY RESORT FINANCING INC., a Florida corporation ("HOLDER") the principal sum of Twenty Three Million Five Hundred Thousand Dollars ($23,500,000), together with interest at the "Interest Rate" (as defined below) on the unpaid balance of principal (the "Outstanding Balance"), commencing on the date hereof, principal and interest payable as follows:

Section 1.  Advances; Maturity.

a)  This Note is being delivered to Holder currently with its initial advance of $ 9,000,000.00 (the "Initial Advance")..

b)  Maker shall be entitled to additional advance hereunder Amounts for "Construction and Overhead Costs" (as defined below) as follows:

1.  Maker shall give not less than ten (10) days notice of a requested advance (each, a "Supplemental Advance");

2.  There shall be no default or Event of Default at the time of the requested Supplemental Advance;

3.  At no point may the outstanding principal amount of this Note exceed Twenty Three Million Five Hundred Thousand ($23,500,000);

4.  The sum of (a) aggregate amount of Supplemental Advances hereunder attributable for "Phase I Construction and Overhead Costs" (as defined below) and (b) the Initial Advance shall not exceed Twenty Four Million Eight Hundred Thousand Dollars ($24,800,000);

5.  Maker shall not be entitled to any "Phase II Construction and Overhead Costs" (as defined below) unless and until the maturity of the Loan is extended;

6.  Maker shall be entitled to obtain Supplemental Advances for Phase II Construction and Overhead Costs only during the period commencing as of the extension of the Loan as provided in Section 9 and ending on the earlier of twelve (12) months from such extension and the Extended Maturity Date; and

7.  The aggregate amount of advances hereunder attributable for Phase II Construction and Overhead Costs shall not exceed Ten Million Three Hundred Thousand Dollars ($10,300,000).



For purposes hereof, (i) Phase I Construction and Overhead Costs shall mean all hard and soft costs attributable to construction of "Phase I" (as defined in the Exhibit 1 hereto) and all interest accruing hereunder until the earlier of the Initial Maturity Date and the extension of the maturity of the Loan as provided in Section 9, and (ii) Phase II Construction and Overhead Costs shall mean all hard and soft costs attributable to construction of "Phase II" (as defined in the Exhibit 1 hereto) and all interest accruing hereunder from the date the maturity of the Loan is extended through and including the Extended Maturity Date.

c)  Amounts paid or repaid as provided in Section 3 hereof may be re-borrowed, subject at all times to compliance with Section 1 b) 3. above.

d)  Unless the loan evidence hereby is extended as provided in Section 9, the Outstanding Balance, and accrued and unpaid interest thereon, is due and payable on or before August __, 2008 (the "Initial Maturity Date"). Until such time, there shall be no payment of principal due hereunder.

Section 2.  Interest. Maker shall pay interest at the Interest Rate on the principal amount outstanding in arrears commencing on the first day of July 2005, and continuing on the 1st day of each calendar quarter thereafter, until the Maturity Date, at which time all unpaid accrued interest and other amounts payable hereunder shall be due and payable in full. For purposes hereof, the "Interest Rate" shall be the fluctuating rate (the "Interest Rate") per annum at all times equal to the greater of (a) three percent (3%) over the Reference Rate and (b) eight percent (8%). As used herein, "Reference Rate" shall mean the per annum rate of interest announced by *The Wall Street Journal* to be in effect from time to time, as the "Prime Lending Rate". Any change in the Reference Rate shall take effect on the day specified by *The Wall Street Journal* in connection with the establishment thereof. In the event *The Wall Street Journal* ceases to have a Prime Lending Rate, Maker and Holder shall negotiate in good faith an alternative rate as the "Reference Rate". Interest hereunder shall be computed on the basis of a year consisting of a three hundred sixty-five (365) day year.

Section 3.  Prepayment; Application of Release Prices

a)  Maker may prepay the loan evidenced by this Note in full or in part without penalty at any time upon not less than one (1) days notice.

b)  The "Release Price" (as defined in the "Deed of Trust" (as defined below)) delivered to Holder in connection with a release of a "Timeshare Interest" (as defined in the Deed of Trust) shall be applied to the principal amount due hereunder.

Section 4.  Late Payment. If any payment hereunder is not made on or before its due date (taking into account any applicable grace or cure period), other than the payment of the outstanding principal amount due under this Note upon the Maturity Date, a late charge of four percent (4%) of the amount so overdue shall be charged by Holder for the purpose of defraying the expense incident to handling such delinquent payments. Upon any "Event of Default" (as defined below), Holder shall be entitled to charge interest equal to twelve percent (12%) per annum.

Section 5.  Security. This Note is secured by that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents, and Financing Statement (the "Deed of Trust"). The Deed of Trust, this Note and all other documents delivered by Maker in connection therewith or herewith are referred to herein collectively as the "Loan Documents."

Section 6.  Events of Default. The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder:

a)  Maker shall fail to make any payment of interest under this Note within ten (10) days of when due hereunder and after not less than five (5) days written notice of delinquency; or

b)  The occurrence of any other "Event of Default" under any other Loan Document (after passage of any applicable grace or cure period).

Upon the occurrence of an Event of Default, Holder may (i) declare all indebtedness evidenced by this Note to be immediately due and payable, and (ii) exercise all rights and remedies available under this Note, the Deed of Trust, and applicable law.

Section 7.  Costs.  In the event that Holder institutes legal proceedings to enforce this Note, Maker agrees to pay Holder, in addition to any indebtedness due and unpaid, all reasonable and documented costs and expenses of such proceedings, including reasonable and documented attorneys' fees.  Maker and any parties now or hereafter liable for the payment hereof, primarily or secondarily, directly or indirectly, and whether as endorser, guarantor, surety, or otherwise, hereby severally waive presentment, demand, protest, notice of protest and/or of dishonor, and all other demands or notices of any sort whatever with respect to this Note unless specifically provided for elsewhere herein.  If any provision hereof is, for any reason and to any extent, invalid or unenforceable, then neither the remainder of the document in which such provision is contained, nor the application of the provision to other persons, entities, or circumstances, nor any other document referred to herein, shall be affected thereby, but instead shall be enforceable to the maximum extent permitted by law.  This Note shall be construed and enforced in accordance with the laws of the State of California.

Section 8.  Notices.  All notices hereunder shall be in writing and shall be given or served by actual delivery or by being deposited in the United States Mail, registered or certified, return receipt requested, or with a nationally recognized overnight commercial delivery service requiring proof of delivery, addressed to the parties as follows (or to such other address as any party may notify the others in writing in the manner set forth herein):

|  |  |
|---|---|
| AS TO HOLDER: | Sandro Sordi |
|  | 200 Yorkland Boulevard - Suite 200 |
|  | Toronto, Ontario |
|  | CANADA M2J 5C1 |
|  |  |
| AS TO MAKER: | Sheldon H. Ginsburg and |
|  | Craig J. Goldstein |

Shell Vacations LLC
40 Skokie Boulevard - #350
Northbrook, IL  60062-1699

Such notice shall be deemed delivered on the date personally delivered, or if mailed, on the third (3rd) business day after the same was deposited in the United States mail, postage prepaid, as aforesaid or on the next business day after the same was sent via a nationally recognized express next-business-day-delivery service.

Section 9.  Extension.  Maker may extend the maturity of the Loan from the Initial Maturity Date to April ___, 2009 (the "Extended Maturity Date") upon the following conditions: (a) Maker shall have given Holder thirty (30) days notice of Maker's request to extend the maturity of the Loan; (b) there is no default or Event of Default hereunder or under any other loans secured by the real property encumbered by the Deed of Trust; (c) Maker shall have repaid the Loan by an amount equal to the product of Two Million Two Hundred Fifty Thousand Dollars ($2,250,000) multiplied the number of full calendar quarters that have occurred since the date that is thirty (30) days from the date sales of Phase I commenced; (d) completion of Phase I shall have been completed, as evidenced by an issuance of a certificate of occupancy or its equivalent; (e) Maker shall have achieved eighty five percent (85%) of the projected sales at projected sales price set forth on Exhibit "1" hereto; (f) Maker shall have achieved eighty five percent (85%) of projected net income set forth in Exhibit "1" hereto; and (g) Maker's actual sales and marketing shall not exceed sixty three percent (63%) of net sales set forth on Exhibit "1".  For purposes hereof, "Maturity Date" shall mean the "Initial Maturity Date" and, upon the extension when and as herein provided, the "Extended Maturity Date".

**IN WITNESS WHEREOF**, the undersigned has executed this Note on the day and year first written above.

MAKER:
SVC-NAPA, L.P., a California limited partnership

By:  Shell Napa Corporation, a Illinois corporation,
its general partner

By: _____

Name: _CRAIG T. GOLDSTEIN_

Its: _Treasurer_

RECORDING REQUESTED BY
CHICAGO TITLE ESCONDIDO

COPY of Document Recorded
16-May-2005    2005-0019081
Has not been compared with
original

NAPA COUNTY RECORDER

Recordation requested by, and
after recordation return to:

Strategy Investments, LLC
Attn: Sandro Sordi
200 Yorkland Boulevard, Suite 200
Toronto, Ontario
Canada, M2J 5C1

---

### SPACE ABOVE THIS LINE FOR RECORDER'S USE

### DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS, AND FIXTURE FILING

BY

SVC-NAPA, L.P., a California limited partnership
Trustor

TO

CHICAGO TITLE COMPANY   , a California Corporation
Trustee

FOR THE BENEFIT OF STRATEGY INVESTMENTS, LLC,
a Florida limited liability company, Beneficiary

THIS DOCUMENT IS ALSO A FIXTURE FILING IN ACCORDANCE WITH SECTIONS
9501(a)(1) AND 9502(b) AND (c) OF THE CALIFORNIA UNIFORM COMMERCIAL CODE

*THIS DEED OF TRUST IS SECOND AND SUBORDINATE TO THE DEED OF TRUST BEING
RECORDED CONCURRENTLY FOR THE AMOUNT OF $23,500,000.00 dated APRIL 30, 2005

42781\1140303v2

## DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS, AND FIXTURE FILING

THIS DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS, AND FIXTURE FILING ("Deed of Trust") is made and executed as of April 30, 2005, by and between SVC-NAPA, L.P., a California limited partnership ("Trustor") whose address is 40 Skokie Boulevard, Suite 350, Northbrook, Illinois 60062-1699 to Chicago Title Company ("Trustee"), whose address is _____, for the benefit of STRATEGY INVESTMENTS, LLC, a Florida limited liability company ("Beneficiary"), whose address is 200 Yorkland Blvd, Suite 200, Toronto, Ontario M2J5C1.

The defined terms used in this Deed of Trust, if not otherwise defined, have the meanings set forth in the Secured Promissory Note in the amount of $6,625,000, dated as of the date hereof, by Trustor, as maker, in favor of Beneficiary, as holder (the "Note"). The terms of this Deed of Trust are in addition to and supplement the terms and conditions of the Note. In the event of conflict, the terms and conditions of the Note shall control over the terms and provisions of this Deed of Trust.

For valuable consideration, Trustor irrevocably grants, transfers mortgages, releases, liens and assigns to Trustee, its successors and assigns, WITH POWER OF SALE AND RIGHT OF ENTRY AND POSSESSION, for the benefit of Beneficiary, and creates a security interest in favor of Beneficiary in, all rights, title, interests, estates, powers and privileges that Trustor now has or may hereafter acquire in or to the following property and interests therein (the "Trust Estate"):

A.      The real property located in the State of California, City and County of Napa, more particularly described on Exhibit A hereto (the "Premises");

B.      All buildings, structures and other improvements now or in the future located or to be constructed on the Premises (the "Improvements");

C.      All tenements, hereditaments, appurtenances, privileges, options to purchase or lease all or any part of the Premises or Improvements or any interest therein (and any greater estate in the Premises or Improvements now owned or hereafter acquired pursuant thereto), and other rights and interests now or in the future benefiting or otherwise relating to the Premises or the Improvements, including easements, rights-of-way, sidewalks, alleys and strips and gores of land adjacent to or used in connection with the Premises, development rights, mineral rights, water rights and water stock;

D.      All income, rents, room rates, issues, profits, revenues (including oil and gas or other mineral royalties and bonuses), deposits, and other benefits from the Premises or Improvements (collectively, the "Rents");

E.    All present and future rights, title and interests of Trustor, in and to all leases and other agreements affecting the use, enjoyment or occupancy of the Premises or Improvements heretofore or hereafter entered into (including without limitation subleases, licenses, concessions, tenancies and other occupancy agreement covering or encumbering all or any portion of the Premises or Improvements), together with any guarantees, supplements, amendments, modifications, extensions and renewals of any thereof, and all additional remainders, reversions, and other rights and estates appurtenant thereto (collectively, the "Leases");

F.    All present and future rights, title and interest of Trustor in and to all machinery, furnishings, equipment, fixtures, inventory and articles of personal property and accessions thereof and renewals, replacements thereof and substitutions therefor, other customary equipment and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Trustor, or in which Trustor has or shall have an interest, now or hereafter located upon the Premises, or appurtenant thereto, and usable in connection with the present or future materials and supplies of any nature whatsoever owned by Trustor, or in which Trustor has or shall have an interest, now or hereafter located upon the Premises or in the Improvements, or appurtenant thereto, or usable in connection with the present or future operation, enjoyment and occupancy of the Premises or the Improvements (the "Equipment");

G.    All present and future rights, title and interests of Trustor in and to (i) all accounts, escrows, documents, instruments, chattel paper, claims, deposits and general intangibles, as such terms are defined in the Uniform Commercial Code of the State of California, as the same may hereafter be amended from time to time (the "UCC"), and (ii) all contract rights, franchises, books, records, appraisals, architects and engineering plans, specifications, environmental and other reports relating to the Premises or the Improvements, licenses, contracts, permits and agreements required, related to or used in connection with the ownership, operation and/or maintenance of the Premises or the Improvements (to the extent assignable), approvals, actions, correspondence with present and prospective purchasers, tenants and suppliers, advertising materials and telephone exchange numbers as identified in such materials, refunds of real estate taxes and assessments and causes of action which now or hereafter relate to, are derived from or are used in connection with the Premises or the Improvements, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (collectively, the "Intangibles");

H.    All present and future rights, title and interest of Trustor in and to Equipment, awards for any taking in or by any condemnation or other eminent domain proceeding, insurance proceeds, tradenames, trademarks, servicemarks, logos, copyrights, goodwill, books and records, all refunds, rebates or credits in connection with a reduction in real estate taxes and assessments charged against the Premises as a result of tax certiorari or any applications or proceedings for reduction, all agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all proceeds, substitutions and replacements thereof; and

I.    All proceeds, products, profits or offspring of any of the foregoing.

FOR THE PURPOSE OF SECURING, in such order as Beneficiary may elect:

A.     Payment of an indebtedness in the sum of Six Million Six Hundred Twenty Five Thousand Dollars ($6,625,000), with interest thereon, evidenced by the Note, and any and all modifications, replacements, extensions and renewals thereof whether hereafter evidenced by the Note or otherwise;

.B.     Payment of all other sums, with interest thereon at the Default Rate becoming due or payable under the provisions hereof or under the Note and any other document executed in connection with the Note (collectively, with the Note, the "Loan Documents");

C.     Payment of such additional sums and interest thereon which may hereafter be loaned to Trustor, or its successors or assigns, by Beneficiary, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust;

D.     Due, prompt and complete observance, performance and discharge of each and every obligation, covenant and agreement of Trustor contained herein, in the Note or in the Loan Documents, and all supplements, amendments and modifications thereto and all extensions and renewals thereof, or in any other instrument or document heretofore or hereafter executed by Trustor having reference to or arising out of the indebtedness represented by the Note which recites that the obligations thereunder are secured by this Deed of Trust; and

E.     Payment of all sums advanced by Beneficiary to protect the Trust Estate, with interest thereon at the Default Rate.

This Deed of Trust constitutes a financing statement filed as a fixture filing with the State of California with respect to any and all fixtures included within the Trust Estate and with respect to any goods or other personal property that may now be or hereafter become such fixtures.  The purpose of this Deed of Trust is to secure monies advanced by Beneficiary to be used in whole or in part for the reimbursement to Trustor of certain costs incurred in connection with the construction of the Trust Estate Property and other working capital needs of the Trustor. This Deed of Trust secures payment of all advances which may be made by Beneficiary and other indebtedness of Trustor to Beneficiary (including without limitation on account of the "Exit Fee" (as defined in the Note)) up to the sum of Three Million Three Hundred Seventy Five Thousand Dollars ($3,375,000).

UPON CONDITION that subject to the terms hereof, until the happening of an Event of Default, the Trustor shall be permitted to use and possess the Trust Estate and to use and receive the rents, issues, profits, revenues and other income thereof.

## ARTICLE 1.  AFFIRMATIVE COVENANTS
## AGREEMENTS OF TRUSTOR

Trustor hereby agrees as follows:

**1.1     Performance of Obligations**.  Trustor shall pay, perform, observe and discharge each and every obligation, covenant and agreement for which this Deed of Trust has been given as security as provided above.

1.2    <u>Covenants</u>.  Trustor shall comply with each and every term, covenant and condition of the Note and the Loan Documents, all of which are incorporated by reference herein and made a part hereof.

1.3    <u>Actions Affecting Trust Estate</u>.  Trustor, at Trustor's expense, shall appear in and contest any action or proceeding purporting to affect the Trust Estate or the security hereof or the rights or powers of Beneficiary.  Trustor shall pay all costs and expenses incurred by Beneficiary, including the cost of evidence of title and reasonable and documented attorneys' fees, costs and expenses in any such action or proceeding in which Beneficiary may appear.

1.4    <u>Actions by Beneficiary to Preserve Trust Estate</u>.  If there is an Event of Default under this Deed of Trust, the Note, or other Loan Documents, then Beneficiary, in its discretion, without obligation to do so and without notice to or demand upon Trustor and without releasing Trustor from any obligation, may make or do the same in such manner and to such extent as Beneficiary may deem necessary to protect the security hereof.  In connection therewith (without limiting its general powers), Beneficiary shall have and is hereby given the right, but not the obligation to: (a) enter upon and take possession of the Trust Estate; (b) make additions, alterations, repairs and improvements to the Trust Estate that Beneficiary may consider necessary or proper to keep the Trust Estate in good condition and repair; (c) appear and participate in any action or proceeding affecting or that may affect the security hereof or the rights or powers of Beneficiary; (d) pay, purchase, contest or compromise any encumbrance, claim, charge, lien or debt that in the judgment of either may affect or appears to affect the security of this Deed of Trust or may be or appears to be prior or superior hereto; and (e) in exercising such powers, pay necessary expenses, including employment of counsel or other necessary or desirable consultants.  Trustor shall, immediately upon demand therefor by Beneficiary, pay all costs and expenses incurred by Beneficiary in connection with the exercise by Beneficiary of the foregoing rights, together with interest at the Default Rate until paid, and all such sums shall be secured by this Deed of Trust.

1.5    <u>Inspections</u>.  Beneficiary, through its agents, representatives or employees, is authorized, to enter during normal business hours and upon reasonable notice, upon or in any part of the Trust Estate for the purpose of inspecting the same and for the purpose of performing any of the acts it is authorized to perform under the terms of any of the Loan Documents.

## ARTICLE 2. NEGATIVE COVENANTS OF TRUSTOR

Trustor hereby covenants, promises and agrees as follows:

2.1    <u>Other Financing</u>.  Trustor shall not create or permit to continue in existence any mortgage, pledge, security interest, lien or charge of any kind or other encumbrance upon any of the Trust Estate except for (a) liens for taxes and assessments not yet delinquent, (b) the liens to secure the "<u>Other Lender Debt</u>" (as defined below), and (c) such other liens or charges as are specifically permitted by the Note or approved in writing by Beneficiary prior to the recordation thereof.  For purposes hereof, "<u>Other Lender Debt</u>" means that certain Twenty Three Million Five Hundred Thousand Dollar ($23,500,000) loan to be made by Strategy Resort Financing Inc., a Florida corporation ("<u>SRF</u>") to Trustor and secured by that certain first priority deed of

trust (it being understood and agreed by Beneficiary, by its acceptance hereof, that it shall be bound by the provisions of Section 6.15 hereof with respect to the automatic subordination of this Deed of Trust upon SRF's funding of the Twenty Three Million Five Hundred Thousand Dollar ($23,500,000) loan) and that certain One Million Eight Hundred Eighty Thousand Dollar ($1,880,000) loan to be made by SRF to Trustor and secured by that certain third priority deed of trust.   Trustor shall take all action necessary to promptly secure releases of all liens and encumbrances which in the opinion of Beneficiary are or may be prior to Beneficiary's security interest.

      **2.2**    **Transferability.**   Other than in connection with sales of timeshare interests in the Trust Estate, without Beneficiary's consent (which shall not be unreasonably withheld, conditioned or delayed), Trustor shall not, directly or indirectly, sell, convey, alienate, mortgage, encumber, pledge or otherwise transfer all or any part of the Trust Estate or permit the Trust Estate or any part thereof to be sold, conveyed, alienated, mortgaged, encumbered or otherwise transferred, except as expressly permitted by the Note.   Trustor shall have the right to sell timeshare interests (whether as points or otherwise) (collectively, "Timeshare Interests"), and Beneficiary shall release the lien hereof with respect to such sold Timeshare Interests, upon the following conditions:  (a) there shall be then no Event of Default; and (b) Trustor shall pay to SRF the "Release Price" (as defined below).  For purposes hereof, "Release Price" shall mean $1.11 per point represented in the Shell Owners' Association Club associated with the Timeshare Interest being sold.  Upon any such sale and release of such Timeshare Interests, Beneficiary shall execute all such releases, reconveyances or other documentation to establish the lien free transfer of the applicable points to the applicable buyer.

## ARTICLE 3.  SECURITY AGREEMENT

      This Deed of Trust shall be self-operative and constitute a security agreement pursuant to the UCC with respect to all such part of the Trust Estate as is governed by the UCC, and Beneficiary shall have all of the rights and remedies of a secured party under the UCC as well as all other rights and remedies available at law or in equity.  This Deed of Trust also shall be self-operative as a fixture filing pursuant to UCC.  For purposes of the preceding sentences, Trustor shall be the "debtor" and Beneficiary shall be the "secured party," each with the addresses set forth herein.  Trustor, upon demand of Beneficiary, shall assemble all such part of the Trust Estate and make it available to Beneficiary at the Premises or a place which is reasonably convenient to Beneficiary.  Expenses of retaking, holding, preparing for sale, selling or the like shall be borne by Trustor.

## ARTICLE 4.  INTENTIONALLY OMITTED

## ARTICLE 5.  EVENTS OF DEFAULT
## AND REMEDIES UPON DEFAULT

**5.1**     <u>Events of Default</u>.  Any of the following events shall be deemed an event of default ("<u>Event of Default</u>") hereunder:

(a)     The failure to make any payment of interest within ten (10) days of the due date thereof and after not less than five (5) days written notice of delinquency, or to make payment principal upon the Maturity Date;

(b)     if for more than thirty (30) days after receipt of written notice from Beneficiary, Trustor shall continue to be in default under any term, covenant, or condition hereof, the Note, or any of the other Loan Documents other than as specified in any of subsections (a) above or (c) below; provided, however, that if the cure of any such default cannot reasonably be effected within such thirty (30) day period and Trustor shall have promptly and diligently commenced to cure such default within such thirty (30) day period, then the period to cure shall be deemed extended for so long as Trustor diligently and continuously proceeds to cure such default to Beneficiary's satisfaction; and

(c)     The occurrence of any "Event of Default" under any of the other Loan Documents (as the same is defined therein).

**5.2**     <u>Acceleration Upon Default, Additional Remedies</u>.  Upon the occurrence of any Event of Default, Beneficiary may, at its option, declare all indebtedness secured hereby to be immediately due and payable without any presentment, demand, protest or notice of any kind. Thereafter, Beneficiary may:

(a)     Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of its security, enter upon and take possession of the Trust Estate, or any part thereof, in its own name or in the name of Trustee, and do any acts which it deems necessary or desirable to preserve the value, marketability or rentability of the Trust Estate, or any part thereof or interest therein, increase the income therefrom or protect the security hereof and, with or without taking possession of the Trust Estate, sue for or otherwise collect the Rents, and apply the same, less costs and expenses of operation and collection including without limitation reasonable and documented attorneys' fees, costs and expenses, upon any indebtedness secured hereby, all in such order as Beneficiary may determine.  The entering upon and taking possession of the Trust Estate, the collection of such Rents and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done in response to such default or pursuant to such notice of default and, notwithstanding the continuance in possession of all or any portion of the Trust Estate or the collection, receipt and application of Rents, Trustee or Beneficiary shall be entitled to exercise every right provided for in any of the Loan Documents or by law upon occurrence of any Event of Default, including the right to exercise the power of sale.  Failure or discontinuance of Beneficiary at any time, or from time to time, to collect the Rents shall not in any manner affect the subsequent enforcement of Beneficiary of the right to collect the same.

(b)    Commence an action to foreclose this Deed of Trust, by power of sale, commencement of action or otherwise, appoint a receiver, or specifically enforce any of the covenants hereof. Beneficiary shall be entitled to foreclose against the entire fee interest in the Trust Estate, or any portion thereof, or interests therein that are subject or junior to the lien of this Deed of Trust, in any order which it chooses. Beneficiary shall be entitled to foreclose against the leasehold estates of each Lease which is subordinate to this Deed of Trust, whether such subordination arose by virtue of its original priority, contract, or election of Beneficiary pursuant to the Lease or this Deed of Trust, in any order which it chooses. Beneficiary shall be entitled to complete its foreclosure as to any portion of the Trust Estate and/or leasehold estates, and postpone foreclosure as to the remainder.

(c)    Exercise all other rights and remedies provided herein, in the Note, in the Loan Agreement, in any of the Loan Documents or other document or agreement now or hereafter securing all or any portion of the obligations secured hereby, or by law. Notwithstanding any statute or rule of law to the contrary, the failure to join any tenant(s) of the Trust Estate as party defendant or defendants in any foreclosure action or the failure of any such order or judgment to foreclose their rights shall not be asserted by Trustor as a defense in any civil action instituted to collect (1) the Debt, or any part thereof or (2) any deficiency remaining unpaid after foreclosure and sale of the Trust Estate.

(d)    Should Beneficiary elect to foreclose by exercise of the power of sale contained herein, Beneficiary shall notify Trustee and shall, if required, deposit with Trustee the Note, the original or a certified copy of this Deed of Trust, and such other documents, receipts and evidences of expenditures made and secured hereby as Trustee may require. Upon receipt of such notice from Beneficiary, Trustee shall:  (1) cause to be recorded and delivered to Trustor such notice of default as may then be required by law and by this Deed of Trust; (2) without demand on Trustor, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale has been given as required by law, sell the Trust Estate at the time and place of sale fixed by it in said notice of sale, either as a whole or in separate lots or parcels or items as Trustee shall deem expedient, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale; and (3) deliver to the purchaser or purchasers at such sale its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied, with the recitals in such deed of any matters or facts being conclusive proof of the truthfulness thereof. Any person, including without limitation Trustor, Trustee or Beneficiary, may purchase at such sale, and Trustor hereby covenants to warrant and defend the title of such purchaser or purchasers. Trustee and Beneficiary may postpone the sale of all or any portion of the Trust Estate from time to time in accordance with the laws of the State in which the Land is located.

To the fullest extent allowed by law, Trustor hereby expressly waives any right which it may have to direct the order in which any of the Trust Estate shall be sold in the event of any sale or sales pursuant to this Deed of Trust. Upon any foreclosure sale, Beneficiary may bid for and purchase the Trust Estate and shall be entitled to apply all or any part of the Debt as a credit to the purchase price.

Beneficiary may from time to time rescind any notice of default or notice of sale before any Trustee's sale as provided above in accordance with the laws of the of the State in which the Land is located. The exercise by Beneficiary of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Beneficiary to execute and deliver to Trustee, as above provided, other declarations or notices of default to satisfy the obligations of this Deed of Trust, or otherwise affect any provision, covenant or condition of any Loan Document or any of the rights, obligations or remedies of Trustee or Beneficiary hereunder or thereunder.

(e)     After deducting all costs, fees and expenses of Trustee and of this trust, including costs of evidence of title in connection with sale, Trustee shall, to the extent permitted by law, apply the proceeds of sale in the manner provided in the Loan Agreement.

(f)     Subject to applicable law, Trustee may postpone sale of all or any portion of the Trust Estate by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement or subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give a new notice of sale.

(g)     Upon the occurrence of an Event of Default hereunder, Beneficiary may proceed, in any sequence: (1) to exercise its rights hereunder with respect to all or any portion of the Trust Estate and all or any portion of the personal property subject hereto; and (2) to exercise its rights under Article 4 hereof with respect to all or any portion of the personal property subject hereto in accordance with the provisions of the UCC.

(h)     In addition to all other rights and remedies of Beneficiary, Beneficiary may waive its lien against the Trust Estate or any portion thereof, together with fixtures or personal property thereon, to the extent such property is found to be environmentally impaired, and may exercise any and all rights and remedies of an unsecured creditor against Trustor and all of Trustor's assets and property for the recovery of any deficiency. No such waiver shall be final or binding on Beneficiary unless and until a final money judgment is obtained against Trustor. Notwithstanding anything to the contrary contained in this Deed of Trust or the other Loan Documents, Trustor shall be fully and personally liable for any such deficiency and Trustor's liability to Beneficiary in such event shall not be limited to the original principal amount of the obligations secured by this Deed of Trust. Trustor's obligations hereunder shall survive the foreclosure, deed in lieu of foreclosure, release, reconveyance or any other transfer of the Trust Estate or this Deed of Trust. For the purpose of any action brought under this Section, Trustor hereby waives the defense of laches.

5.3     **Appointment of Receiver.** Upon the occurrence of an Event of Default, or when permitted under Section 564 of the California Code of Civil Procedure (including without limitation in order to enforce Beneficiary's rights under Section 2929.5 of the California Civil Code), Beneficiary, as a matter of right and without notice to Trustor or anyone claiming under Trustor, and without regard to the then value of the Trust Estate or the interest of Trustor therein, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers of the Trust Estate, and Trustor hereby irrevocably consents to such appointment and waives notice of any application therefor. Any such receiver or receivers shall have all the usual powers and

duties of receivers in like or similar cases and all the powers and duties of Beneficiary in case of entry as provided in this Deed of Trust and shall continue as such and exercise all such powers until the later of: (a) the date of confirmation of sale of the Trust Estate; (b) the disbursement of all proceeds of the Trust Estate collected by such receiver and the payment of all reasonable, necessary and documented expenses incurred in connection therewith, including without limitation expenses incurred in connection with cleanup, remediation or other response action concerning the release or threatened release of hazardous materials from or at the Premises and/or the Improvements, whether or not such actions are pursuant to an order of any federal, state or local governmental agency; or (c) the termination of such receivership with the consent of Beneficiary or pursuant to an order by a court of competent jurisdiction.

5.4    **Remedies Not Exclusive**.  No remedy herein conferred upon or reserved to Beneficiary is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute.  Every power or remedy given by the Note or any of the Loan Documents to Trustee or Beneficiary, or to which either of them may be otherwise entitled, may be exercised concurrently or independently, from time to time and as often as may be deemed expedient by Trustee or Beneficiary.  No delay or omission of Trustee or Beneficiary in the exercising of any right or power accruing upon any Event of Default hereunder shall impair such right or power or any other right or power nor shall the same be construed to be a waiver of any default or any acquiescence therein.  If there exists additional security for the obligations secured hereby, Beneficiary, at its sole option, and without limiting or affecting any of the rights or remedies hereunder, may exercise any of the rights or remedies to which it may be entitled hereunder either concurrently with whatever rights it may have in connection with such other security or in such order and in such manner as Beneficiary may deem fit without waiving any rights with respect to any other security.

5.5    **Request for Notice**.  Trustor hereby requests a copy of any notice of default and that any notice of sale hereunder be mailed to it at the address set forth in this Deed of Trust.

## ARTICLE 6. MISCELLANEOUS

6.1    **Governing Law, Severability**.    THIS DEED OF TRUST AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CALIFORNIA APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA.

In the event of any one or more of the provisions contained in this Deed of Trust or in the Note or in any of the other Loan Documents shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability will not affect any other provision of this Deed of Trust, but this Deed of Trust shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein or therein.

6.2    **Amendment, No Implied Waiver**.  This Deed of Trust cannot be modified, waived, discharged or terminated orally, but only by a written instrument signed by the party

against whom enforcement of the modification, waiver, discharge or termination is asserted. No waiver by Beneficiary of any default or breach by Trustor hereunder shall be implied from any omission by Beneficiary to take action on account of such default if such default persists or is repeated, and no express waiver shall affect any default other than the default identified in the waiver and such waiver shall be operative only for the time and to the extent therein stated. Waivers of any covenant, term or condition contained herein shall not be construed as a waiver of any subsequent breach of the same covenant, term or condition. The consent or approval by Beneficiary to or of any act by Trustor requiring further consent or approval shall not be deemed to waive or render unnecessary the consent or approval to or of any subsequent similar act. No delay or omission of Trustee or Beneficiary in the exercising of any right or remedy available upon an Event of Default shall impair such right or remedy or any other right or remedy nor shall the same be construed to be a waiver of any Event of Default or any acquiescence therein; and every right and remedy given under this Deed of Trust to Trustee or Beneficiary may be exercised from time to time as often as may be deemed expedient by Trustee or Beneficiary.

**6.3    Reconveyance; Release.**

(a)    Upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed of Trust and the Note to Trustee for cancellation and retention and upon payment by Trustor of Trustee's fees, Trustee shall reconvey to Trustor, or the person or persons legally entitled thereto, without warranty, any portion of the Trust Estate then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in any reconveyance may be described as "the person or persons legally entitled thereto."

(b)    Beneficiary agrees to release the lien of this Deed of Trust on any Timeshare Interest sold consistent with the provisions of Section 2.2 hereof.

**6.4    Notices.** All notices hereunder shall be in writing and shall be given or served by actual delivery or by being deposited in the United States Mail, registered or certified, return receipt requested, or with a nationally recognized overnight commercial delivery service requiring proof of delivery, addressed to the parties as follows (or to such other address as any party may notify the others in writing in the manner set forth herein):

|   |   |
|---|---|
| "Beneficiary" | STRATEGY INVESTMENTS LLC |
|  | 200 Yorkland Boulevard - Suite 200 |
|  | Toronto, Ontario |
|  | CANADA M2J 5C1 |
|  | Attention:  Sandro Sordi |

"Trustor"            SVC-NAPA, L.P.
                     40 Skokie Boulevard - #350
                     Northbrook, IL  60062-1699
                     Attention:  Sheldon H. Ginsburg and
                     Craig J. Goldstein

Such notice shall be deemed delivered on the date personally delivered, or if mailed, on the third (3rd) business day after the same was deposited in the United States mail, postage prepaid, as aforesaid or on the next business day after the same was sent via a nationally recognized express next-business-day-delivery service.

**6.5    Acceptance by Trustee and Certain Actions of Trustee**.  Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**6.6    Successor Trustee**.  Beneficiary acting alone, may, from time to time, by written instrument executed and acknowledged by Beneficiary, mailed to Trustor and recorded in the County in which the Trust Estate is located, and by otherwise complying with the provisions of applicable law, substitute a successor or successors to the Trustee named herein or acting hereunder.

**6.7    Headings**.  Headings are for convenience only and are not intended as a limitation on the content of the paragraph following or as an aid to the construction thereof.

**6.8    Waiver**.  To the full extent permitted by law, Trustor waives the pleading of any statute of limitations as a defense to any and all obligations secured by this Deed of Trust.

**6.9    Assignment**.  This Deed of Trust is assignable by Beneficiary with the prior written consent of Trustor, which consent may be subject to the Trustor's determination (in its reasonable discretion) that the proposed assignee has sufficient credit worthiness and wherewithal to perform the financial obligations of Beneficiary with respect to the supplemental advances that Trustor may request under the Note. Any such assignment with the prior written consent by Beneficiary shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Beneficiary.

**6.10    Time of the Essence**.  Time is of the essence with respect to each and every covenant, agreement, and obligation of Trustor under this Deed of Trust and any and all other Loan Documents.

**6.11    Attorneys' Fees**.  Trustor shall forthwith pay to Beneficiary the amount of all reasonable and documented attorneys' fees, costs and expenses incurred by Beneficiary under and pursuant to this Deed of Trust, any other Loan Document given to Beneficiary as security for the Trustor's obligations to Beneficiary under the Loan or in connection with any transaction contemplated hereby or thereby, or with respect to the Trust Estate or any defense or protection or enforcement of Beneficiary's security interest in the Trust Estate which Beneficiary believes is necessary or desirable (whether or not Beneficiary files a lawsuit against Trustor and including without limitation a judicial foreclosure action or a non-judicial foreclosure proceeding) in the event Beneficiary retains counsel, or incurs costs in order to:  obtain legal advice; enforce, or

seek to enforce, any of its rights; commence, intervene in, respond to, or defend any action or proceeding; file or prosecute a claim in any action or proceeding (including without limitation, any probate claim, bankruptcy claim, third-party claim, or secured creditor claim); protect, obt, a possession of, lease, dispose of or otherwise enforce Trustor's right, title and interest in the Premises or any portion thereof; or obtain the appointment of a receiver. In addition to the foregoing reasonable and documented attorneys' fees, costs and expenses, Beneficiary shall be entitled to its reasonable and documented attorneys' fees, costs and expenses incurred in any post judgment proceedings to enforce any judgment in connection with the matters described above. This provision is separate and several and shall survive the merger of this provision into any judgment.

**6.12** **Loss of Note**. Upon notice from Beneficiary of the loss, theft, or destruction of the Note and upon receipt of indemnity reasonably satisfactory to Trustor from Beneficiary, or in the case of mutilation of the Note, upon surrender of the mutilated Note, Trustor shall make and deliver a new note of like tenor in lieu of the then to be superseded Note.

**6.13** **Waiver of Jury Trial**. TRUSTOR HEREBY WAIVES ITS RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS DEED OF TRUST AND THE RELATIONSHIP THAT IS BEING ESTABLISHED. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY TRUSTOR, AND TRUSTOR ACKNOWLEDGES THAT NEITHER BENEFICIARY NOR ANY PERSON ACTING ON BEHALF OF BENEFICIARY HAS MADE ANY REPRESENTATIONS OF FACT TO INCLUDE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. TRUSTOR ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT BENEFICIARY HAS ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS DEED OF TRUST AND THAT BENEFICIARY WILL CONTINUE TO RELY ON THIS WAIVER IN ITS RELATED FUTURE DEALINGS WITH TRUSTOR. TRUSTOR FURTHER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED, IN THE SIGNING OF THIS DEED OF TRUST AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL.

**6.14** **No Liability or Obligation on Trustee or Beneficiary**. Nothing in this Deed of Trust shall be construed to impose any obligation upon either Trustee or Beneficiary to expend any money or to take any other discretionary act herein permitted and neither Trustee nor Beneficiary shall have any liability or obligation for any delay or failure to take any discretionary act.

**6.15** **Consent to SRF loans; Automatic Subordination of Deed of Trust**. Beneficiary, by its acceptance hereof, hereby agrees and acknowledges that it has approved of that certain Twenty Three Million Five Hundred Thousand Dollar ($23,500,000) loan to be made by SRF to Trustor and that certain One Million Eight Hundred Eighty Thousand Dollar ($1,880,000) loan to be made by SRF to Trustor (collectively, the "SRF Loans"). Beneficiary, by its acceptance hereof, acknowledges that, as a condition to funding such loans, such loans must each be secured by a deed of trust, the Twenty Three Million Five Hundred Thousand Dollar ($23,500,000) loan to be senior in priority to this Deed of Trust and the One Million Eight

Hundred Eighty Thousand Dollar ($1,880,000) loan to be junior in priority to this Deed of Trust. Therefore, Beneficiary (by its acceptance hereof) further agrees that upon funding of the SRF Loans, this Deed of Trust shall be automatically subordinated to the deed of trust securing the Twenty Three Million Five Hundred Thousand Dollar ($23,500,000) loan to be made by SRF to Trustor. This provision is self operative, with no need of any future action by Beneficiary or Trustor.

[SIGNATURES BEGIN ON NEXT PAGE.]

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust as of the date first above written.

Trustor:  SVC-NAPA, L.P., a California limited partnership

By:  Shell Napa Corporation, a Illinois corporation, its general partner

By: _____

Name: DANIEL GLICKSTEIN

Its: SECRETARY

STATE OF ILLINOIS       }
                        }
COUNTY OF COOK          }

On April 30, 2005, before me, Mary K. Poppe, personally appeared Daniel B. Glickstein, Secretary of Shell-Napa Corporation, the general partner of SVC-Napa, L.P. (a California limited partnership), personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacities, and that by his signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Mary K. Poppe_

"OFFICIAL SEAL"
MARY K. POPPE
COMMISSION EXPIRES 06/10/06

*Exhibit* A

## LEGAL DESCRIPTION
### PARCEL 3

Being a portion of Parcels 2 & 3 as shown on that certain Parcel Map entitled "The Lands of LGA-3, Inc." filed December 15, 2000 in Book 23 of Parcel Maps, at Pages 51 and 52 in the office of the Napa County Recorder more particularly described as follows:

Beginning at the northeastern corner of said Parcel 3, said point also being on the western Right of Way line of State Highway 221; thence running along the boundary of said Parcel 3 the following courses: (1) South 06° 19' 25" West 333.77 feet; (2) South 01° 01' 37" East 1000.27 feet to a point on the southern boundary of said Parcel 3; (3) South 52° 35' 10" West 22.58 feet; thence leaving said southern boundary North 81° 12' 29" West 465.07 feet; thence North 20° 22' 42" West 280.36 feet; thence North 73° 44' 06" East 98.53 feet; thence North 42° 39' 46" East 95.89 feet; thence North 36° 16' 52" West 123.82 feet; thence North 25° 54' 20" West 246.22 feet; thence North 14° 46' 13" West 65.58 feet to a point on the northern boundary of said Parcel Map, said point also being on the eastern right of way line of Trefethen Way as shown on said map, said point further being the beginning of a non-tangent curve concave to the northeast having a radius of 482.00 feet and to which said point a radial line bears South 18° 13' 11" East; thence along said boundary the following courses: (1) northeasterly 124.34 feet along said curve through a central angle of 14° 46' 49"; (2) North 57° 00' 00" East 430.53 feet to the beginning of a curve concave to the northwest having a radius of 332.00 feet; (3) northeasterly 293.64 feet along said curve through a central angle of 50° 40' 35"; (4) South 83° 40' 35" East 10.00 feet to the Point of Beginning.

## END DESCRIPTION

<u>**SECURED PROMISSORY NOTE**</u>

$1,880,000                                                          Date:  April __, 2005

FOR VALUE RECEIVED, the undersigned, SVC-NAPA, L.P., a California limited partnership ("MAKER") promises to pay to the order of STRATEGY RESORT FINANCING INC., a Florida corporation ("HOLDER") the principal sum of One Million Eight Hundred Eighty Thousand Dollars ($1,880,000), together with interest at the "Interest Rate" (as defined below) on the unpaid balance of principal (the "Outstanding Balance"), commencing on the date hereof, principal and interest payable as follows:

Section 1.  The Outstanding Balance, and accrued and unpaid interest thereon, is due and payable on or before April __, 2009 (the "Maturity Date").  Until such time, there shall be no payment of principal due hereunder.

Section 2.  Maker shall pay interest at the Interest Rate on the principal amount outstanding in arrears commencing on the first day of July 2005, and continuing on the 1st day of each calendar quarter thereafter, until the Maturity Date, at which time all unpaid accrued interest and other amounts payable hereunder shall be due and payable in full.  For purposes hereof, the "Interest Rate" shall be the fixed rate of zero percent (0%) per annum.

Section 3.  Interest hereunder shall be computed on the basis of a year consisting of a three hundred sixty-five (365) day year.  Maker may prepay the loan evidenced by this Note in full or in part without penalty at any time upon not less than one (1) days notice.  The "Release Price" (as defined in the "Deed of Trust" (as defined below)) delivered to Holder in connection with a release of a "Timeshare Interest" (as defined in the Deed of Trust) shall be applied to the principal amount due hereunder.

Section 4.  If any payment hereunder is not made on or before its due date (taking into account any applicable grace or cure period), other than the payment of the outstanding principal amount due under this Note upon the Maturity Date, a late charge of four percent (4%) of the amount so overdue shall be charged by Holder for the purpose of defraying the expense incident to handling such delinquent payments.  Upon any "Event of Default" (as defined below), Holder shall be entitled to charge interest equal to four percent (4%) per annum.

Section 5.  This Note is secured by that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents, and Financing Statement (the "Deed of Trust").  The Deed of Trust, this Note and all other documents delivered by Maker in connection therewith or herewith are referred to herein collectively as the "Loan Documents."

Section 6.  The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder:

a)      Maker shall fail to make any payment of interest under this Note within ten (10) days of when due hereunder and after not less than five (5) days written notice of delinquency; or

42781\1140072v2

b)    The occurrence of any other "Event of Default" under any other Loan Document (after passage of any applicable grace or cure period).

Upon the occurrence of an Event of Default, Holder may (i) declare all indebtedness evidenced by this Note to be immediately due and payable, and (ii) exercise all rights and remedies available under this Note, the Deed of Trust, and applicable law.

Section 7.   In the event that Holder institutes legal proceedings to enforce this Note, Maker agrees to pay Holder, in addition to any indebtedness due and unpaid, all reasonable and documented costs and expenses of such proceedings, including reasonable and documented attorneys' fees.   Maker and any parties now or hereafter liable for the payment hereof, primarily or secondarily, directly or indirectly, and whether as endorser, guarantor, surety, or otherwise, hereby severally waive presentment, demand, protest, notice of protest and/or of dishonor, and all other demands or notices of any sort whatever with respect to this Note unless specifically provided for elsewhere herein.  If any provision hereof is, for any reason and to any extent, invalid or unenforceable, then neither the remainder of the document in which such provision is contained, nor the application of the provision to other persons, entities, or circumstances, nor any other document referred to herein, shall be affected thereby, but instead shall be enforceable to the maximum extent permitted by law.  This Note shall be construed and enforced in accordance with the laws of the State of California.

Section 8.  All notices hereunder shall be in writing and shall be given or served by actual delivery or by being deposited in the United States Mail, registered or certified, return receipt requested, or with a nationally recognized overnight commercial delivery service requiring proof of delivery, addressed to the parties as follows (or to such other address as any party may notify the others in writing in the manner set forth herein):

AS TO HOLDER:      Sandro Sordi
200 Yorkland Boulevard - Suite 200
Toronto, Ontario
CANADA M2J 5C1


AS TO MAKER:       Sheldon H. Ginsburg and
Craig J. Goldstein
Shell Vacations LLC
40 Skokie Boulevard - #350
Northbrook, IL  60062-1699


Such notice shall be deemed delivered on the date personally delivered, or if mailed, on the third (3rd) business day after the same was deposited in the United States mail, postage prepaid, as aforesaid or on the next business day after the same was sent via a nationally recognized express next-business-day-delivery service.

IN WITNESS WHEREOF, the undersigned has executed this Note on the day and year first written above.

MAKER:

SVC-NAPA, L.P., a California limited partnership

By: Shell Napa Corporation, an Illinois corporation, its general partner

By: _____

Name: CRAIG J. GOLDSTEIN

Its: TREASURER