SECURED PROMISSORY NOTE

$15,700,000                                                  Date: April 5, 2005

FOR VALUE RECEIVED, the undersigned, STRATEGY RESORT FINANCING INC., a Florida corporation (the "Maker"), promises to pay to the order of VERITAS HIGH YIELD ARBITRAGE FUND (BERMUDA) LTD., a Bermuda company (the "Holder"), the principal sum of Fifteen Million Seven Hundred Thousand Dollars ($15,700,000), together with interest at the "Interest Rate" (as defined below) on the unpaid balance of principal (the "Outstanding Balance"), commencing on the date hereof, principal and interest payable as follows:

Section 1. The Outstanding Balance, and accrued and unpaid interest thereon, is due and payable on or before April 5, 2008 (the "Maturity Date"). Until such time, there shall be no payment of principal due hereunder.

Section 2. Maker shall pay interest at the Interest Rate on the principal amount outstanding in arrears commencing on the first day of July 2005, and continuing on the 1st day of each calendar quarter thereafter, until the Maturity Date, at which time all unpaid accrued interest and other amounts payable hereunder shall be due and payable in full. For purposes hereof, the "Interest Rate" shall be the fluctuating rate (the "Interest Rate") per annum at all times equal to the greater of (a) three percent (3%) over the Reference Rate and (b) eight percent (8%). As used herein, "Reference Rate" shall mean the per annum rate of interest announced by *The Wall Street Journal* to be in effect from time to time, as the "Prime Lending Rate". Any change in the Reference Rate shall take effect on the day specified by *The Wall Street Journal* in connection with the establishment thereof. In the event *The Wall Street Journal* ceases to have a Prime Lending Rate, Maker and Holder shall negotiate in good faith an alternative rate as the "Reference Rate".

Section 3. Interest hereunder shall be computed on the basis of a year consisting of three hundred sixty-five (365) day year. Maker may prepay the loan evidenced by this Note in full or in part without penalty at any time upon not less than one (1) days notice. The "Release Price" (as defined in the "Mortgage" (as defined below)) delivered to Holder in connection with a release of a "Timeshare Interest" (as defined in the Mortgage) shall be applied to the principal amount due hereunder.

Section 4. If any payment hereunder is not made on or before its due date (taking into account any applicable grace or cure period), other than the payment of the outstanding principal amount due under this Note upon the Maturity Date, a late charge of four percent (4%) of the amount so overdue shall be charged by Holder for the purpose of defraying the expense incident to handling such delinquent payments. Upon any "Event of Default" (as defined below), Holder shall be entitled to charge interest equal to twelve percent (12%) per annum.

Section 5. This Note is secured by that certain Mortgage, Security Agreement, Assignment of Leases and Rents, and Financing Statement (the "Mortgage"). The Mortgage, this Note and all other documents delivered by Maker in connection therewith or herewith are referred to herein collectively as the "Loan Documents."

Section 6. The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder:

a)     Maker shall fail to make any payment of interest under this Note within ten (10) days of when due hereunder and after not less than five (5) days written notice of delinquency; or

b)     The occurrence of any other "Event of Default" under any other Loan Document (after passage of any applicable grace or cure period).

Upon the occurrence of an Event of Default, Holder may (i) declare all indebtedness evidenced by this Note to be immediately due and payable, and (ii) exercise all rights and remedies available under this Note, the Mortgage, and applicable law.

Section 7. In the event that Holder institutes legal proceedings to enforce this Note, Maker agrees to pay Holder, in addition to any indebtedness due and unpaid, all reasonable and documented costs and expenses of such proceedings, including reasonable and documented attorneys' fees. Maker and any parties now or hereafter liable for the payment hereof, primarily or secondarily, directly or indirectly, and whether as endorser, guarantor, surety, or otherwise, hereby severally waive presentment, demand, protest, notice of protest and/or of dishonor, and all other demands or notices of any sort whatever with respect to this Note unless specifically provided for elsewhere herein. If any provision hereof is, for any reason and to any extent, invalid or unenforceable, then neither the remainder of the document in which such provision is contained, nor the application of the provision to other persons, entities, or circumstances, nor any other document referred to herein, shall be affected thereby, but instead shall be enforceable to the maximum extent permitted by law. This Note shall be construed and enforced in accordance with the laws of the State of Hawaii.

Section 8. All notices hereunder shall be in writing and shall be given or served by actual delivery or by being deposited in the United States Mail, registered or certified, return receipt requested, or with a nationally recognized overnight commercial delivery service requiring proof of delivery, addressed to the parties as follows (or to such other address as any party may notify the others in writing in the manner set forth herein):

AS TO HOLDER:          Veritas High Yield Arbitrage Fund (Bermuda) Ltd.
                       73 Front Street
                       Hamilton HM 12, Bermuda

                       Attention: Henry Cox
                             Director

AS TO MAKER:     Strategy Resort Financing Inc.
200 Yorkland Blvd.
Suite 200
Toronto, Ontario  M2J 5C1

Attention:  Sandro Sordi

Such notice shall be deemed delivered on the date personally delivered, or if mailed, on the third (3rd) business day after the same was deposited in the United States mail, postage prepaid, as aforesaid or on the next business day after the same was sent via a nationally recognized express next-business-day-delivery service.

IN WITNESS WHEREOF, the undersigned has executed this Note on the day and year first written above.

MAKER:

STRATEGY RESORT FINANCING INC.

By: _____

Its: _____

GUARANTOR(S):

STRATEGY INTERNATIONAL INSURANCE GROUP, INC.

By: _____

STRATEGY HOLDINGS COMPANY LTD.

By: _____

Its:  President

STRATEGY INSURANCE LTD

By: _____

Its:  Authorized  Signatory

## SECURED PROMISSORY NOTE

$1,800,000                                            Date: April 5, 2005

FOR VALUE RECEIVED, the undersigned, STRATEGY RESORT FINANCING, INC., a Florida corporation (the "Maker"), promises to pay to the order of VERITAS HIGH YIELD ARBITRAGE FUND II LLC, a Delaware limited liability company (the "Holder"), the principal sum of One Million Eight Hundred Thousand Dollars ($1,800,000), together with interest at the "Interest Rate" (as defined below) on the unpaid balance of principal (the "Outstanding Balance"), commencing on the date hereof, principal and interest payable as follows:

Section 1. The Outstanding Balance, and accrued and unpaid interest thereon, is due and payable on or before April 5, 2008 (the "Maturity Date"). Until such time, there shall be no payment of principal due hereunder.

Section 2. Maker shall pay interest at the Interest Rate on the principal amount outstanding in arrears commencing on the first day of July 2005, and continuing on the 1st day of each calendar quarter thereafter, until the Maturity Date, at which time all unpaid accrued interest and other amounts payable hereunder shall be due and payable in full. For purposes hereof, the "Interest Rate" shall be the fluctuating rate (the "Interest Rate") per annum at all times equal to the greater of (a) three percent (3%) over the Reference Rate and (b) eight percent (8%). As used herein, "Reference Rate" shall mean the per annum rate of interest announced by *The Wall Street Journal* to be in effect from time to time, as the "Prime Lending Rate". Any change in the Reference Rate shall take effect on the day specified by *The Wall Street Journal* in connection with the establishment thereof. In the event *The Wall Street Journal* ceases to have a Prime Lending Rate, Maker and Holder shall negotiate in good faith an alternative rate as the "Reference Rate".

Section 3. Interest hereunder shall be computed on the basis of a year consisting of three hundred sixty-five (365) day year. Maker may prepay the loan evidenced by this Note in full or in part without penalty at any time upon not less than one (1) days notice. The "Release Price" (as defined in the "Mortgage" (as defined below)) delivered to Holder in connection with a release of a "Timeshare Interest" (as defined in the Mortgage) shall be applied to the principal amount due hereunder.

Section 4. If any payment hereunder is not made on or before its due date (taking into account any applicable grace or cure period), other than the payment of the outstanding principal amount due under this Note upon the Maturity Date, a late charge of four percent (4%) of the amount so overdue shall be charged by Holder for the purpose of defraying the expense incident to handling such delinquent payments. Upon any "Event of Default" (as defined below), Holder shall be entitled to charge interest equal to twelve percent (12%) per annum.

Section 5. This Note is secured by that certain Mortgage, Security Agreement, Assignment of Leases and Rents, and Financing Statement (the "Mortgage"). The Mortgage, this Note and all other documents delivered by Maker in connection therewith or herewith are referred to herein collectively as the "Loan Documents."

Section 6. The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder:

a)     Maker shall fail to make any payment of interest under this Note within ten (10) days of when due hereunder and after not less than five (5) days written notice of delinquency; or

b)     The occurrence of any other "Event of Default" under any other Loan Document (after passage of any applicable grace or cure period).

Upon the occurrence of an Event of Default, Holder may (i) declare all indebtedness evidenced by this Note to be immediately due and payable, and (ii) exercise all rights and remedies available under this Note, the Mortgage, and applicable law.

Section 7. In the event that Holder institutes legal proceedings to enforce this Note, Maker agrees to pay Holder, in addition to any indebtedness due and unpaid, all reasonable and documented costs and expenses of such proceedings, including reasonable and documented attorneys' fees. Maker and any parties now or hereafter liable for the payment hereof, primarily or secondarily, directly or indirectly, and whether as endorser, guarantor, surety, or otherwise, hereby severally waive presentment, demand, protest, notice of protest and/or of dishonor, and all other demands or notices of any sort whatever with respect to this Note unless specifically provided for elsewhere herein. If any provision hereof is, for any reason and to any extent, invalid or unenforceable, then neither the remainder of the document in which such provision is contained, nor the application of the provision to other persons, entities, or circumstances, nor any other document referred to herein, shall be affected thereby, but instead shall be enforceable to the maximum extent permitted by law. This Note shall be construed and enforced in accordance with the laws of the State of Hawaii.

Section 8. All notices hereunder shall be in writing and shall be given or served by actual delivery or by being deposited in the United States Mail, registered or certified, return receipt requested, or with a nationally recognized overnight commercial delivery service requiring proof of delivery, addressed to the parties as follows (or to such other address as any party may notify the others in writing in the manner set forth herein):

AS TO HOLDER:          Veritas High Yield Arbitrage Fund II LCC
                       500 West Putnam Avenue
                       Greenwich, Connecticut 06830

                       Attention: Joe Dwyer
                              Chief Accounting Officer

AS TO MAKER:      Strategy Resort Financing Inc.
                                    200 Yorkland Blvd.
                                    Suite 200
                                    Toronto, Ontario M2J 5C1

                                    Attention: Sandro Sordi

Such notice shall be deemed delivered on the date personally delivered, or if mailed, on the third (3rd) business day after the same was deposited in the United States mail, postage prepaid, as aforesaid or on the next business day after the same was sent via a nationally recognized express next-business-day-delivery service.

IN WITNESS WHEREOF, the undersigned has executed this Note on the day and year first written above.

                                    MAKER:

                                    STRATEGY RESORT FINANCING, INC.

                                    By: _____

                                    Its: _____

**GUARANTOR(S)**

STRATEGY INTERNATIONAL INSURANCE GROUP, INC.
BY: _____

    Its: President

STRATEGY HOLDINGS COMPANY LTD.           STRATEGY INSURANCE LTD.
By: _____                   By _____

Its: President                             Its: Authorized Signing Officer

## SECURED PROMISSORY NOTE

$5,500,000                                                            Date: April 5, 2005

FOR VALUE RECEIVED, the undersigned, STRATEGY RESORT FINANCING, INC., a Florida corporation (the "Maker"), promises to pay to the order of VERITAS HIGH YIELD ARBITRAGE FUND I LLC, a Delaware limited liability company (the "Holder"), the principal sum of Five Million Five Hundred Thousand Dollars ($5,500,000), together with interest at the "Interest Rate" (as defined below) on the unpaid balance of principal (the "Outstanding Balance"), commencing on the date hereof, principal and interest payable as follows:

Section 1.  The Outstanding Balance, and accrued and unpaid interest thereon, is due and payable on or before April 5, 2008 (the "Maturity Date").  Until such time, there shall be no payment of principal due hereunder.

Section 2.  Maker shall pay interest at the Interest Rate on the principal amount outstanding in arrears commencing on the first day of July 2005, and continuing on the 1st day of each calendar quarter thereafter, until the Maturity Date, at which time all unpaid accrued interest and other amounts payable hereunder shall be due and payable in full.  For purposes hereof, the "Interest Rate" shall be the fluctuating rate (the "Interest Rate") per annum at all times equal to the greater of (a) three percent (3%) over the Reference Rate and (b) eight percent (8%).  As used herein, "Reference Rate" shall mean the per annum rate of interest announced by _The Wall Street Journal_ to be in effect from time to time, as the "Prime Lending Rate".  Any change in the Reference Rate shall take effect on the day specified by _The Wall Street Journal_ in connection with the establishment thereof.  In the event _The Wall Street Journal_ ceases to have a Prime Lending Rate, Maker and Holder shall negotiate in good faith an alternative rate as the "Reference Rate".

Section 3.  Interest hereunder shall be computed on the basis of a year consisting of three hundred sixty-five (365) day year.  Maker may prepay the loan evidenced by this Note in full or in part without penalty at any time upon not less than one (1) days notice.  The "Release Price" (as defined in the "Mortgage" (as defined below)) delivered to Holder in connection with a release of a "Timeshare Interest" (as defined in the Mortgage) shall be applied to the principal amount due hereunder.

Section 4.  If any payment hereunder is not made on or before its due date (taking into account any applicable grace or cure period), other than the payment of the outstanding principal amount due under this Note upon the Maturity Date, a late charge of four percent (4%) of the amount so overdue shall be charged by Holder for the purpose of defraying the expense incident to handling such delinquent payments.  Upon any "Event of Default" (as defined below), Holder shall be entitled to charge interest equal to twelve percent (12%) per annum.

Section 5. This Note is secured by that certain Mortgage, Security Agreement, Assignment of Leases and Rents, and Financing Statement (the "Mortgage"). The Mortgage, this Note and all other documents delivered by Maker in connection therewith or herewith are referred to herein collectively as the "Loan Documents."

Section 6. The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder:

   a)   Maker shall fail to make any payment of interest under this Note within ten (10) days of when due hereunder and after not less than five (5) days written notice of delinquency; or

   b)   The occurrence of any other "Event of Default" under any other Loan Document (after passage of any applicable grace or cure period).

Upon the occurrence of an Event of Default, Holder may (i) declare all indebtedness evidenced by this Note to be immediately due and payable, and (ii) exercise all rights and remedies available under this Note, the Mortgage, and applicable law.

Section 7. In the event that Holder institutes legal proceedings to enforce this Note, Maker agrees to pay Holder, in addition to any indebtedness due and unpaid, all reasonable and documented costs and expenses of such proceedings, including reasonable and documented attorneys' fees. Maker and any parties now or hereafter liable for the payment hereof, primarily or secondarily, directly or indirectly, and whether as endorser, guarantor, surety, or otherwise, hereby severally waive presentment, demand, protest, notice of protest and/or of dishonor, and all other demands or notices of any sort whatever with respect to this Note unless specifically provided for elsewhere herein. If any provision hereof is, for any reason and to any extent, invalid or unenforceable, then neither the remainder of the document in which such provision is contained, nor the application of the provision to other persons, entities, or circumstances, nor any other document referred to herein, shall be affected thereby, but instead shall be enforceable to the maximum extent permitted by law. This Note shall be construed and enforced in accordance with the laws of the State of Hawaii.

Section 8. All notices hereunder shall be in writing and shall be given or served by actual delivery or by being deposited in the United States Mail, registered or certified, return receipt requested, or with a nationally recognized overnight commercial delivery service requiring proof of delivery, addressed to the parties as follows (or to such other address as any party may notify the others in writing in the manner set forth herein):

             AS TO HOLDER:        Veritas High Yield Arbitrage Fund I LCC
                                  500 West Putnam Avenue
                                  Greenwich, Connecticut 06830

                                  Attention:  Joe Dwyer
                                             Chief Accounting Officer

AS TO MAKER:      Strategy Resort Financing Inc.
200 Yorkland Blvd.
Suite 200
Toronto, Ontario M2J 5C1

Attention:    Sandro Sordi

Such notice shall be deemed delivered on the date personally delivered, or if mailed, on the third (3rd) business day after the same was deposited in the United States mail, postage prepaid, as aforesaid or on the next business day after the same was sent via a nationally recognized express next-business-day-delivery service.

IN WITNESS WHEREOF, the undersigned has executed this Note on the day and year first written above.

MAKER:

STRATEGY RESORT FINANCING, INC.

By: _____

Its:  President

**GUARANTOR(S):**

STRATEGY INTERNATIONAL INSURANCE GROUP, INC.

BY: _____

Its:  President

STRATEGY HOLDINGS COMPANY LTD.

By: _____

Its:   President

STRATEGY INSURANCE LTD.

By: _____

Its:   Authorized Signing Officer

## SECURED PROMISSORY NOTE

$7,125,000                                                      Date: August 18, 2005

FOR VALUE RECEIVED, the undersigned, STRATEGY RESORT FINANCING, INC., a Florida corporation (the "Maker"), promises to pay to the order of VERITAS HIGH YIELD ARBITRAGE FUND (BERMUDA) LTD., a Bermuda company (the "Holder"), the principal sum of Seven Million One Hundred Twenty Five Thousand Dollars ($7,125,000), together with interest at the "Interest Rate" (as defined below) on the unpaid balance of principal (the "Outstanding Balance"), commencing on the date hereof, principal and interest payable as follows:

Section 1. The Outstanding Balance, and accrued and unpaid interest thereon, is due and payable on or before April 5, 2009 (the "Maturity Date"). Until such time, there shall be no payment of principal due hereunder.

Section 2. Maker shall pay interest at the Interest Rate on the principal amount outstanding in arrears commencing on the first day of November 2005, and continuing on the 1st day of each calendar quarter thereafter, until the Maturity Date, at which time all unpaid accrued interest and other amounts payable hereunder shall be due and payable in full. For purposes hereof, the "Interest Rate" shall be the fluctuating rate (the "Interest Rate") per annum at all times equal to the greater of (a) three percent (3%) over the Reference Rate and (b) eight percent (8%). As used herein, "Reference Rate" shall mean the per annum rate of interest announced by *The Wall Street Journal* to be in effect from time to time, as the "Prime Lending Rate." Any change in the Reference Rate shall take effect on the day specified by *The Wall Street Journal* in connection with the establishment thereof. In the event *The Wall Street Journal* ceases to have a Prime Lending Rate, Maker and Holder shall negotiate in good faith an alternative rate as the "Reference Rate."

Section 3. Interest hereunder shall be computed on the basis of a year consisting of three hundred sixty-five (365) days. Maker may prepay the loan evidenced by this Note in full or in part without penalty at any time upon not less than one (1) days notice. The "Release Price" (as defined in the "Mortgage" (as defined below)) delivered to Holder in connection with a release of a "Timeshare Interest" (as defined in the Mortgage) shall be applied to the principal amount due hereunder.

Section 4. If any payment hereunder is not made on or before its due date (taking into account any applicable grace or cure period), other than the payment of the outstanding principal amount due under this Note upon the Maturity Date, a late charge of four percent (4%) of the amount so overdue shall be charged by Holder for the purpose of defraying the expense incident to handling such delinquent payments. Upon any "Event of Default" (as defined below), Holder shall be entitled to charge interest equal to twelve percent (12%) per annum.

Section 5. This Note is secured by that certain assignment of the mortgage, security agreement, assignment of leases and rents, financing statement, and other related documents made by Shell Owners Association – Pacific, as trustee, to Hamsor Holdings Inc. regarding the land, building, condominium units, and other interests commonly known as Mountainside Resort located in Whistler, British Columbia (collectively, the "Mortgage"). The Mortgage, this Note and all other documents delivered by Maker in connection therewith or herewith are referred to herein collectively as the "Loan Documents."

Section 6. The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder:

(a) Maker shall fail to make any payment of interest or principal under this Note within ten (10) days of when due hereunder and after not less than five (5) days written notice of delinquency; or

(b) The occurrence of any other "Event of Default" under any other Loan Document (after passage of any applicable grace or cure period).

Upon the occurrence of an Event of Default, Holder may (i) declare all indebtedness evidenced by this Note to be immediately due and payable, and (ii) exercise all rights and remedies available under this Note, the Mortgage, and applicable law.

Section 7. In the event that Holder institutes legal proceedings to enforce this Note, Maker agrees to pay Holder, in addition to any indebtedness due and unpaid, all reasonable and documented costs and expenses of such proceedings, including reasonable and documented attorneys' fees. Maker and any parties now or hereafter liable for the payment hereof, primarily or secondarily, directly or indirectly, and whether as endorser, guarantor, surety, or otherwise, hereby severally waive presentment, demand, protest, notice of protest and/or of dishonor, and all other demands or notices of any sort whatever with respect to this Note unless specifically provided for elsewhere herein. If any provision hereof is, for any reason and to any extent, invalid or unenforceable, then neither the remainder of the document in which such provision is contained, nor the application of the provision to other persons, entities, or circumstances, nor any other document referred to herein, shall be affected thereby, but instead shall be enforceable to the maximum extent permitted by law. This Note shall be construed and enforced in accordance with the laws of the State of Connecticut.

Section 8. All notices hereunder shall be in writing and shall be given or served by actual delivery or by being deposited in the United States Mail, registered or certified, return receipt requested, or with a nationally recognized overnight commercial delivery service requiring proof of delivery, addressed to the parties as follows (or to such other address as any party may notify the others in writing in the manner set forth herein):

AS TO HOLDER:     Veritas High Yield Arbitrage Fund (Bermuda) Ltd.
                  73 Front Street
                  Hamilton HM 12, Bermuda

                  Attention: Henry Cox
                            Director

-2-

AS TO MAKER:      Strategy Resort Financing, Inc.
                               200 Yorkland Boulevard – Suite 200
                               Toronto, Ontario  M2J 5C1
                               Attention:  Sandro Sordi

Such notice shall be deemed delivered on the date personally delivered, or if mailed, on the third (3rd) business day after the same was deposited in the United States mail, postage prepaid, as aforesaid or on the next business day after the same was sent via a nationally recognized express next-business-day-delivery service.

IN WITNESS WHEREOF, the undersigned has executed this Note on the day and year first written above.

MAKER:

STRATEGY RESORT FINANCING, INC.

By: _____

Its: _____  President

GUARANTORS:

STRATEGY INTERNATIONAL
   INSURANCE GROUP, INC.

By: _____

Its:  President

STRATEGY HOLDING COMPANY LTD.

By: _____

Its:  President

HAMSOR HOLDINGS INC.

By: _____

Its: _____  President

STRATEGY INSURANCE LTD.

By: _____

Its:  Authorized Signing Officer

-3-

# SECURED PROMISSORY NOTE

$2,375,000

Date: August 18, 2005

FOR VALUE RECEIVED, the undersigned, STRATEGY RESORT FINANCING, INC., a Florida corporation (the "Maker"), promises to pay to the order of VERITAS HIGH YIELD ARBITRAGE FUND I LLC, a Delaware limited liability company (the "Holder"), the principal sum of Two Million Three Hundred Seventy Five Thousand Dollars ($2,375,000), together with interest at the "Interest Rate" (as defined below) on the unpaid balance of principal (the "Outstanding Balance"), commencing on the date hereof, principal and interest payable as follows:

Section 1. The Outstanding Balance, and accrued and unpaid interest thereon, is due and payable on or before April 5, 2009 (the "Maturity Date"). Until such time, there shall be no payment of principal due hereunder.

Section 2. Maker shall pay interest at the Interest Rate on the principal amount outstanding in arrears commencing on the first day of November 2005, and continuing on the 1st day of each calendar quarter thereafter, until the Maturity Date, at which time all unpaid accrued interest and other amounts payable hereunder shall be due and payable in full. For purposes hereof, the "Interest Rate" shall be the fluctuating rate (the "Interest Rate") per annum at all times equal to the greater of (a) three percent (3%) over the Reference Rate and (b) eight percent (8%). As used herein, "Reference Rate" shall mean the per annum rate of interest announced by *The Wall Street Journal* to be in effect from time to time, as the "Prime Lending Rate." Any change in the Reference Rate shall take effect on the day specified by *The Wall Street Journal* in connection with the establishment thereof. In the event *The Wall Street Journal* ceases to have a Prime Lending Rate, Maker and Holder shall negotiate in good faith an alternative rate as the "Reference Rate."

Section 3. Interest hereunder shall be computed on the basis of a year consisting of three hundred sixty-five (365) days. Maker may prepay the loan evidenced by this Note in full or in part without penalty at any time upon not less than one (1) days notice. The "Release Price" (as defined in the "Mortgage" (as defined below)) delivered to Holder in connection with a release of a "Timeshare Interest" (as defined in the Mortgage) shall be applied to the principal amount due hereunder.

Section 4. If any payment hereunder is not made on or before its due date (taking into account any applicable grace or cure period), other than the payment of the outstanding principal amount due under this Note upon the Maturity Date, a late charge of four percent (4%) of the amount so overdue shall be charged by Holder for the purpose of defraying the expense incident to handling such delinquent payments. Upon any "Event of Default" (as defined below), Holder shall be entitled to charge interest equal to twelve percent (12%) per annum.

Section 5. This Note is secured by that certain assignment of the mortgage, security agreement, assignment of leases and rents, financing statement, and other related documents made by Shell Owners Association – Pacific, as trustee, to Hamsor Holdings Inc. regarding the land, building, condominium units, and other interests commonly known as Mountainside Resort located in Whistler, British Columbia (collectively, the "Mortgage"). The Mortgage, this Note and all other documents delivered by Maker in connection therewith or herewith are referred to herein collectively as the "Loan Documents."

Section 6. The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder:

(a) Maker shall fail to make any payment of interest or principal under this Note within ten (10) days of when due hereunder and after not less than five (5) days written notice of delinquency; or

(b) The occurrence of any other "Event of Default" under any other Loan Document (after passage of any applicable grace or cure period).

Upon the occurrence of an Event of Default, Holder may (i) declare all indebtedness evidenced by this Note to be immediately due and payable, and (ii) exercise all rights and remedies available under this Note, the Mortgage, and applicable law.

Section 7. In the event that Holder institutes legal proceedings to enforce this Note, Maker agrees to pay Holder, in addition to any indebtedness due and unpaid, all reasonable and documented costs and expenses of such proceedings, including reasonable and documented attorneys' fees. Maker and any parties now or hereafter liable for the payment hereof, primarily or secondarily, directly or indirectly, and whether as endorser, guarantor, surety, or otherwise, hereby severally waive presentment, demand, protest, notice of protest and/or of dishonor, and all other demands or notices of any sort whatever with respect to this Note unless specifically provided for elsewhere herein. If any provision hereof is, for any reason and to any extent, invalid or unenforceable, then neither the remainder of the document in which such provision is contained, nor the application of the provision to other persons, entities, or circumstances, nor any other document referred to herein, shall be affected thereby, but instead shall be enforceable to the maximum extent permitted by law. This Note shall be construed and enforced in accordance with the laws of the State of Connecticut.

Section 8. All notices hereunder shall be in writing and shall be given or served by actual delivery or by being deposited in the United States Mail, registered or certified, return receipt requested, or with a nationally recognized overnight commercial delivery service requiring proof of delivery, addressed to the parties as follows (or to such other address as any party may notify the others in writing in the manner set forth herein):

AS TO HOLDER:    Veritas High Yield Arbitrage Fund I LCC
500 West Putnam Avenue
Greenwich, Connecticut 06830

Attention: Joseph C. Dwyer
Chief Accounting Officer



-2-

AS TO MAKER:      Strategy Resort Financing, Inc.
200 Yorkland Boulevard – Suite 200
Toronto, Ontario  M2J 5C1
Attention:  Sandro Sordi

Such notice shall be deemed delivered on the date personally delivered, or if mailed, on the third (3rd) business day after the same was deposited in the United States mail, postage prepaid, as aforesaid or on the next business day after the same was sent via a nationally recognized express next-business-day-delivery service.

IN WITNESS WHEREOF, the undersigned has executed this Note on the day and year first written above.

MAKER:

STRATEGY RESORT FINANCING, INC.

By: _____

Its: _____

GUARANTORS:

STRATEGY INTERNATIONAL
  INSURANCE GROUP, INC.

By: _____

Its:  President

STRATEGY HOLDING COMPANY LTD.

By: _____

Its:  President

HAMSOR HOLDINGS INC.

By: _____

Its: _____

STRATEGY INSURANCE LTD.

By: _____

Its:  Authorized Signing Officer

-3-

PROMISSORY NOTE

$1,880,000                                                    Date: April 5, 2005

     FOR VALUE RECEIVED, the undersigned, STRATEGY RESORT FINANCING, INC., a Florida corporation (the "Maker"), promises to pay to the order of VERITAS HIGH YIELD ARBITRAGE FUND II LLC,   a Delaware limited liability company (the   "Holder"), the principal sum of One Million Eight Hundred and Eight Thousand Dollars ($1,880,000), together with interest at the "Interest Rate" (as defined below) on the unpaid balance of principal (the "Outstanding Balance"), commencing on the date hereof, principal and interest payable as follows:

     Section 1.  Advances; Maturity

     a)     This Note is being delivered to Holder currently with its initial advance of $760,000.00 (the "Initial Advance").

     b)     Maker shall be entitled to additional advance hereunder as may be required to facilitate the Makers obligation pursuant to a Secured Promissory Note entered into between Maker and SVC-NAPA, L.P. dated April _5_, 2005, of which Holder is aware of and of which Maker has assigned said Note between Maker and Holder as additional security for this Promissory Note.

     Section 2.  The Outstanding Balance, and accrued and unpaid interest thereon, is due and payable on or before August 30, 2008 (the "Maturity Date").  Until such time, there shall be no payment of principal due hereunder.

     Section 3. Maker shall pay interest at the Interest Rate on the principal amount outstanding in arrears commencing on the first day of July 2005, and continuing on the 1st day of each calendar quarter thereafter, until the Maturity Date, at which time all unpaid accrued interest and other amounts payable hereunder shall be due and payable in full.  For purposes hereof, the "Interest Rate" shall be the fluctuating rate (the "Interest Rate") per annum at all times equal to the greater of (a) three percent (3%) over the Reference Rate and (b) eight percent (8%).  As used herein, "Reference Rate" shall mean the per annum rate of interest announced by *The Wall Street Journal* to be in effect from time to time, as the "Prime Lending Rate".  Any change in the Reference Rate shall take effect on the day specified by *The Wall Street Journal* in connection with the establishment thereof.  In the event *The Wall Street Journal* ceases to have a Prime Lending Rate, Maker and Holder shall negotiate in good faith an alternative rate as the "Reference Rate".

     Section 4.  Interest hereunder shall be computed on the basis of a year consisting of three hundred sixty-five (365) day year.  Maker may prepay the loan evidenced by this Note in full or in part without penalty at any time upon not less than one (1) days notice.  The "Release Price" (as defined in the "Mortgage" (as defined below)) delivered to Holder in connection with a release of a "Timeshare Interest" (as defined in the Mortgage) shall be applied to the principal amount due hereunder.

Section 5. If any payment hereunder is not made on or before its due date (taking into account any applicable grace or cure period), other than the payment of the outstanding principal amount due under this Note upon the Maturity Date, a late charge of four percent (4%) of the amount so overdue shall be charged by Holder for the purpose of defraying the expense incident to handling such delinquent payments. Upon any "Event of Default" (as defined below), Holder shall be entitled to charge interest equal to twelve percent (12%) per annum.

Section 6. This Note is secured by that certain Mortgage, Security Agreement, Assignment of Leases and Rents, and Financing Statement (the "Mortgage"). The Mortgage, this Note and all other documents delivered by Maker in connection therewith or herewith are referred to herein collectively as the "Loan Documents."

Section 7. The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder:

a)      Maker shall fail to make any payment of interest under this Note within ten (10) days of when due hereunder and after not less than five (5) days written notice of delinquency; or

b)      The occurrence of any other "Event of Default" under any other Loan Document (after passage of any applicable grace or cure period).

Upon the occurrence of an Event of Default, Holder may (i) declare all indebtedness evidenced by this Note to be immediately due and payable, and (ii) exercise all rights and remedies available under this Note, the Mortgage, and applicable law.

Section 8.   In the event that Holder institutes legal proceedings to enforce this Note, Maker agrees to pay Holder, in addition to any indebtedness due and unpaid, all reasonable and documented costs and expenses of such proceedings, including reasonable and documented attorneys' fees. Maker and any parties now or hereafter liable for the payment hereof, primarily or secondarily, directly or indirectly, and whether as endorser, guarantor, surety, or otherwise, hereby severally waive presentment, demand, protest, notice of protest and/or of dishonor, and all other demands or notices of any sort whatever with respect to this Note unless specifically provided for elsewhere herein. If any provision hereof is, for any reason and to any extent, invalid or unenforceable, then neither the remainder of the document in which such provision is contained, nor the application of the provision to other persons, entities, or circumstances, nor any other document referred to herein, shall be affected thereby, but instead shall be enforceable to the maximum extent permitted by law.  This Note shall be construed and enforced in accordance with the laws of the State of California.

Section 9. All notices hereunder shall be in writing and shall be given or served by actual delivery or by being deposited in the United States Mail, registered or certified, return receipt requested, or with a nationally recognized overnight commercial delivery service requiring proof of delivery, addressed to the parties as follows (or to such other address as any party may notify the others in writing in the manner set forth herein):

AS TO HOLDER:

Veritas High Yield Arbitrage Fund II LLC
500 West Putnam Avenue
Greenwich, Connecticut 06830

Attention:  Joe Dwyer
                    Chief Accounting Officer

AS TO MAKER:        Strategy Resort Financing Inc.
                    200 Yorkland Blvd.
                    Suite 200
                    Toronto, Ontario
                    M2J 5C1

                    Attention:  Sandro Sordi


        Such notice shall be deemed delivered on the date personally delivered, or if mailed, on the third (3rd) business day after the same was deposited in the United States mail, postage prepaid, as aforesaid or on the next business day after the same was sent via a nationally recognized express next-business-day-delivery service.

        IN WITNESS WHEREOF, the undersigned has executed this Note on the day and year first written above.

                            MAKER:

                            STRATEGY RESORT FINANCING, INC.

                            By _____

                                Sandro Sordi

                                President


            GUARANTOR(S) WILL APPEAR ON FOLLOWING PAGES


42781\1137457v3                    3

**GUARANTOR(S):**

STRATEGY INTERNATIONAL INSURANCE GROUP, INC.

BY: _____

Its:    President


STRATEGY HOLDING COMPANY LTD.

By: _____

Its:    President

STRATEGY INSURANCE LTD.

By _____

Its    Authorized Signing Officer

PROMISSORY NOTE

$5,405,000                                                    Date: April 5, 2005

FOR VALUE RECEIVED, the undersigned, STRATEGY RESORT FINANCING, INC., a Florida corporation (the "Maker"), promises to pay to the order of VERITAS HIGH YIELD ARBITRAGE FUND I LLC, a Delaware limited liability company (the "Holder"), the principal sum of Five Million Four and Five Thousand Dollars ($5,405,.000), together with interest at the "Interest Rate" (as defined below) on the unpaid balance of principal (the "Outstanding Balance"), commencing on the date hereof, principal and interest payable as follows:

Section 1.  Advances; Maturity

a)      This Note is being delivered to Holder currently with its initial advance of $2,185,000.00 (the "Initial Advance").

b)      Maker shall be entitled to additional advance hereunder as may be required to facilitate the Makers obligation pursuant to a Secured Promissory Note entered into between Maker and SVC-NAPA, L.P. dated April 5, 2005, of which Holder is aware of and of which Maker has assigned said Note between Maker and Holder as additional security for this Promissory Note.

Section 2.  The Outstanding Balance, and accrued and unpaid interest thereon, is due and payable on or before August 30, 2008 (the "Maturity Date").  Until such time, there shall be no payment of principal due hereunder.

Section 3.  Maker shall pay interest at the Interest Rate on the principal amount outstanding in arrears commencing on the first day of July 2005, and continuing on the 1st day of each calendar quarter thereafter, until the Maturity Date, at which time all unpaid accrued interest and other amounts payable hereunder shall be due and payable in full.  For purposes hereof, the "Interest Rate" shall be the fluctuating rate (the "Interest Rate") per annum at all times equal to the greater of (a) three percent (3%) over the Reference Rate and (b) eight percent (8%).  As used herein, "Reference Rate" shall mean the per annum rate of interest announced by *The Wall Street Journal* to be in effect from time to time, as the "Prime Lending Rate".  Any change in the Reference Rate shall take effect on the day specified by *The Wall Street Journal* in connection with the establishment thereof.  In the event *The Wall Street Journal* ceases to have a Prime Lending Rate, Maker and Holder shall negotiate in good faith an alternative rate as the "Reference Rate".

Section 4.  Interest hereunder shall be computed on the basis of a year consisting of three hundred sixty-five (365) day year.  Maker may prepay the loan evidenced by this Note in full or in part without penalty at any time upon not less than one (1) days notice.  The "Release Price" (as defined in the "Mortgage" (as defined below)) delivered to Holder in connection with a release of a "Timeshare Interest" (as defined in the Mortgage) shall be applied to the principal amount due hereunder.

Section 5. If any payment hereunder is not made on or before its due date (taking into account any applicable grace or cure period), other than the payment of the outstanding principal amount due under this Note upon the Maturity Date, a late charge of four percent (4%) of the amount so overdue shall be charged by Holder for the purpose of defraying the expense incident to handling such delinquent payments. Upon any "Event of Default" (as defined below), Holder shall be entitled to charge interest equal to twelve percent (12%) per annum.

Section 6. This Note is secured by that certain Mortgage, Security Agreement, Assignment of Leases and Rents, and Financing Statement (the "Mortgage"). The Mortgage, this Note and all other documents delivered by Maker in connection therewith or herewith are referred to herein collectively as the "Loan Documents."

Section 7. The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder:

a)    Maker shall fail to make any payment of interest under this Note within ten (10) days of when due hereunder and after not less than five (5) days written notice of delinquency; or

b)    The occurrence of any other "Event of Default" under any other Loan Document (after passage of any applicable grace or cure period).

Upon the occurrence of an Event of Default, Holder may (i) declare all indebtedness evidenced by this Note to be immediately due and payable, and (ii) exercise all rights and remedies available under this Note, the Mortgage, and applicable law.

Section 8.   In the event that Holder institutes legal proceedings to enforce this Note, Maker agrees to pay Holder, in addition to any indebtedness due and unpaid, all reasonable and documented costs and expenses of such proceedings, including reasonable and documented attorneys' fees. Maker and any parties now or hereafter liable for the payment hereof, primarily or secondarily, directly or indirectly, and whether as endorser, guarantor, surety, or otherwise, hereby severally waive presentment, demand, protest, notice of protest and/or of dishonor, and all other demands or notices of any sort whatever with respect to this Note unless specifically provided for elsewhere herein. If any provision hereof is, for any reason and to any extent, invalid or unenforceable, then neither the remainder of the document in which such provision is contained, nor the application of the provision to other persons, entities, or circumstances, nor any other document referred to herein, shall be affected thereby, but instead shall be enforceable to the maximum extent permitted by law.  This Note shall be construed and enforced in accordance with the laws of the State of California.

Section 9. All notices hereunder shall be in writing and shall be given or served by actual delivery or by being deposited in the United States Mail, registered or certified, return receipt requested, or with a nationally recognized overnight commercial delivery service requiring proof of delivery, addressed to the parties as follows (or to such other address as any party may notify the others in writing in the manner set forth herein):

AS TO HOLDER:

42781\1137457v3                                     2

Veritas High Yield Arbitrage Fund I LCC
500 West Putnam Avenue
Greenwich, Connecticut 06830

Attention: Joe Dwyer
            Chief Accounting Officer

AS TO MAKER:        Strategy Resort Financing Inc.
                    200 Yorkland Blvd.
                    Suite 200
                    Toronto, Ontario
                    M2J 5C1

Attention: Sandro Sordi


Such notice shall be deemed delivered on the date personally delivered, or if mailed, on the third (3rd) business day after the same was deposited in the United States mail, postage prepaid, as aforesaid or on the next business day after the same was sent via a nationally recognized express next-business-day-delivery service.

IN WITNESS WHEREOF, the undersigned has executed this Note on the day and year first written above.

MAKER:

STRATEGY RESORT FINANCING, INC.

By _____

Sandro Sordi

President


**GUARANTOR(S) WILL APPEAR ON FOLLOWING PAGES**

**GUARANTOR(S):**

STRATEGY INTERNATIONAL INSURANCE GROUP, INC.

BY: _____

Its:   President


STRATEGY HOLDING COMPANY LTD.

By: _____

Its:   President


STRATEGY INSURANCE LTD.

By _____

Its:/ Authorized Signing Officer

PROMISSORY NOTE

$16,215,000                                                      Date: April 5, 2005

     FOR VALUE RECEIVED, the undersigned, STRATEGY RESORT FINANCING, INC., a Florida corporation (the "Maker"), promises to pay to the order of VERITAS HIGH YIELD ARBITRAGE FUND (BERMUDA) LTD., a Bermuda company (collectively the "Holder"), the principal sum of Sixteen Million Two Hundred and Fifteen Thousand Dollars ($16,215,000), together with interest at the "Interest Rate" (as defined below) on the unpaid balance of principal (the "Outstanding Balance"), commencing on the date hereof, principal and interest payable as follows:

Section 1.  Advances; Maturity

   a)     This Note is being delivered to Holder currently with its initial advance of $6,555,000.00 (the "Initial Advance").

   b)     Maker shall be entitled to additional advance hereunder as may be required to facilitate the Makers obligation pursuant to a Secured Promissory Note entered into between Maker and SVC-NAPA, L.P. dated April _5_, 2005, of which Holder is aware of and of which Maker has assigned said Note between Maker and Holder as additional security for this Promissory Note.

     Section 2.  The Outstanding Balance, and accrued and unpaid interest thereon, is due and payable on or before August 30, 2008 (the "Maturity Date").  Until such time, there shall be no payment of principal due hereunder.

     Section 3.  Maker shall pay interest at the Interest Rate on the principal amount outstanding in arrears commencing on the first day of July 2005, and continuing on the 1st day of each calendar quarter thereafter, until the Maturity Date, at which time all unpaid accrued interest and other amounts payable hereunder shall be due and payable in full.  For purposes hereof, the "Interest Rate" shall be the fluctuating rate (the "Interest Rate") per annum at all times equal to the greater of (a) three percent (3%) over the Reference Rate and (b) eight percent (8%).  As used herein, "Reference Rate" shall mean the per annum rate of interest announced by *The Wall Street Journal* to be in effect from time to time, as the "Prime Lending Rate".  Any change in the Reference Rate shall take effect on the day specified by *The Wall Street Journal* in connection with the establishment thereof.  In the event *The Wall Street Journal* ceases to have a Prime Lending Rate, Maker and Holder shall negotiate in good faith an alternative rate as the "Reference Rate".

     Section 4.  Interest hereunder shall be computed on the basis of a year consisting of three hundred sixty-five (365) day year.  Maker may prepay the loan evidenced by this Note in full or in part without penalty at any time upon not less than one (1) days notice.  The "Release Price" (as defined in the "Mortgage" (as defined below)) delivered to Holder in connection with a release of a "Timeshare Interest" (as defined in the Mortgage) shall be applied to the principal amount due hereunder.

Section 5.  If any payment hereunder is not made on or before its due date (taking into account any applicable grace or cure period), other than the payment of the outstanding principal amount due under this Note upon the Maturity Date, a late charge of four percent (4%) of the amount so overdue shall be charged by Holder for the purpose of defraying the expense incident to handling such delinquent payments.  Upon any "Event of Default" (as defined below), Holder shall be entitled to charge interest equal to twelve percent (12%) per annum.

Section 6.  This Note is secured by that certain Mortgage, Security Agreement, Assignment of Leases and Rents, and Financing Statement (the "Mortgage").  The Mortgage, this Note and all other documents delivered by Maker in connection therewith or herewith are referred to herein collectively as the "Loan Documents."

Section 7.  The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder:

    a)    Maker shall fail to make any payment of interest under this Note within ten (10) days of when due hereunder and after not less than five (5) days written notice of delinquency; or

    b)    The occurrence of any other "Event of Default" under any other Loan Document (after passage of any applicable grace or cure period).

Upon the occurrence of an Event of Default, Holder may (i) declare all indebtedness evidenced by this Note to be immediately due and payable, and (ii) exercise all rights and remedies available under this Note, the Mortgage, and applicable law.

Section 8.  In the event that Holder institutes legal proceedings to enforce this Note, Maker agrees to pay Holder, in addition to any indebtedness due and unpaid, all reasonable and documented costs and expenses of such proceedings, including reasonable and documented attorneys' fees.  Maker and any parties now or hereafter liable for the payment hereof, primarily or secondarily, directly or indirectly, and whether as endorser, guarantor, surety, or otherwise, hereby severally waive presentment, demand, protest, notice of protest and/or of dishonor, and all other demands or notices of any sort whatever with respect to this Note unless specifically provided for elsewhere herein.  If any provision hereof is, for any reason and to any extent, invalid or unenforceable, then neither the remainder of the document in which such provision is contained, nor the application of the provision to other persons, entities, or circumstances, nor any other document referred to herein, shall be affected thereby, but instead shall be enforceable to the maximum extent permitted by law.  This Note shall be construed and enforced in accordance with the laws of the State of California.

Section 9.  All notices hereunder shall be in writing and shall be given or served by actual delivery or by being deposited in the United States Mail, registered or certified, return receipt requested, or with a nationally recognized overnight commercial delivery service requiring proof of delivery, addressed to the parties as follows (or to such other address as any party may notify the others in writing in the manner set forth herein):

    AS TO HOLDER:

42781\1137457v3               2

Veritas High Yield Arbitrage Fund (Bermuda) Ltd.
500 West Putnam Avenue
Greenwich, Connecticut 06830

Attention: Joe Dwyer
             Chief Accounting Officer

AS TO MAKER:     Strategy Resort Financing Inc.
200 Yorkland Blvd.
Suite 200
Toronto, Ontario
M2J 5C1

Attention: Sandro Sordi

Such notice shall be deemed delivered on the date personally delivered, or if mailed, on the third (3rd) business day after the same was deposited in the United States mail, postage prepaid, as aforesaid or on the next business day after the same was sent via a nationally recognized express next-business-day-delivery service.

IN WITNESS WHEREOF, the undersigned has executed this Note on the day and year first written above.

MAKER:

STRATEGY RESORT FINANCING, INC.

By _____

      Sandro Sordi

      President

**GUARANTOR(S) WILL APPEAR ON FOLLOWING PAGES**

**GUARANTOR(S):**

STRATEGY INTERNATIONAL INSURANCE GROUP, INC.

BY: _____

Its:   President


STRATEGY HOLDING COMPANY LTD.

By: _____

Its:   President

STRATEGY INSURANCE LTD.

By: _____

Its:   Authorized Signing Officer