# LOAN AGREEMENT

This Loan Agreement ("Agreement") is made and entered into as of January 26, 2006 ("Effective Date"), by and between GVEC Resource Inc., an international business company organized under the laws of the British Virgin Islands ("LENDER"), and Strategy Investments, LLC, a Florida limited liability company ("Borrower").

## WITNESSETH:

WHEREAS Borrower desires to borrow funds in the amount of US$29,000,000 from Lender for funds disbursed under second mortgages to recapitalize funds disbursed in connection with the Whistler Mortgage with Strategy Resort Financing, Inc., an Ontario company which is a wholly owned subsidiary of Borrower, the Waikiki Mortgage and the Napa Deed of Trust, for the purposes set forth below in Section 5.1;

WHEREAS Borrower desires to assign to Lender its interests in the Waikiki Mortgage, the Napa Deed of Trust and the Whistler Mortgage to secure the repayment of funds borrowed from Lender;

WHEREAS Borrower desires to set aside a two-year interest reserve to secure the first two years of interest payments on the borrowed funds; and

WHEREAS Borrower desires to offer a surety bond or insurance policy to further secure the re-payment of the funds borrowed plus payment of the third year's interest in the amount of US$31,900,000 and, Borrower has provided Lender with assurances for the placement of such bond in a financial performance bond in the amount of US$31,900,000 or direct endorsement of the policy to an insurance or financial guarantee company as security for the repayment of such funds as set forth below.

NOW, THEREFORE, in consideration of the promises and mutual covenants herein contained the parties agree as follows:

Article I.

Definitions

Assignments: shall mean the collateral assignment documents attached as Exhibits B, C, and D hereto.

Closing:  shall mean the Closing as set forth in Section 3.2 hereof.

Escrow Agent: shall mean Baker & McKenzie LLP under the Escrow Agreement.

Event of Default:  shall mean an Event of Default as set forth in Section 7.1(a) hereof.

Executive Order:  shall means Executive Order No. 13224 – Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support

GVECR     PEMG     SI,LLC     SIIG     SRFI

Exhibit 8

Terrorism, effective September 24, 2001, and all applicable orders, rules, regulations, and recommendations promulgated under or in connection therewith, and all amendments of the foregoing.

Governmental Authority:   shall mean the United States of America, the jurisdictions in which the properties secured by the Waikiki Mortgage, the Napa Deed of Trust, and the Whistler Mortgage are located, and each other governmental authority having jurisdiction over Borrower, Surety, or Lender, as applicable.

Insurance Policy:   shall mean an insurance policy securing the re-payment of the principal borrowed plus payment of the third year's interest in the total amount of US$31,900,000 directly underwritten by Strategy Insurance Limited, a Barbados insurance company ("SIL"), with 100% of the obligation of SIL retroceded to an insurance or financial guarantee company, rated at least "A" or better, by way of direct endorsement of the Insurance Policy, or by the pledge of negotiable securities which are rated no less than "A" and reasonably acceptable to LENDER.

Interest Reserve:   shall mean the first two years of interest on the Loan.

Interest Reserve Agent:   shall mean the Interest Reserve Agent as set forth in Section 3.1(a) hereof.

Interest Reserve Acknowledgment:   shall mean the Interest Reserve Acknowledgment as set forth in Section 3.1(a) hereof and in the form of Exhibit F hereto.

Loan:   shall mean the Loan of twenty-nine million U.S. Dollars (US$29,000,000) from Lender to Borrower, as described in Section 4.1 hereof.

Loan Documents:   shall mean this Agreement, the Note, the Surety Bond, the Insurance Policy and the agreements set forth in Exhibit A hereto.

Maturity Date:   shall mean the Maturity Date as set forth in the Note.

Napa Deed of Trust:   shall mean the Deed of Trust, Security Agreement, Assignment of Leases and Rents, and Fixture Filing recorded in the Official Records of Napa County, California on May 16, 2005 with the document number 0019081 which is between Strategy Investments, LLC as Beneficiary and SVC-NAPA, L.P. as Trustor.

Note:   shall mean the Promissory Note of the Borrower in substantially the form set forth in Exhibit G hereto.

PEMG:   shall mean Private Equity Management Group, Inc., a Nevada corporation.

Prohibited Person:   means any person or entity:

(a) listed in the Annex to, or otherwise subject to the provisions of, the Executive Order;

GVECR   PEMG   SILLC   SIIG   SRFI

(b) that is owned or controlled by, or acting for or on behalf of, any person or entity that is listed to the Annex to, or is otherwise subject to the provisions of, the Executive Order;

(c) with whom Borrower or Lender is prohibited from dealing or otherwise engaging in any transaction by any terrorism or money laundering law, including the Executive Order;

(d) who commits, threatens or conspires to commit or supports "terrorism" as defined in the Executive Order;

(e) that is named as a "specially designated national and blocked person" on the most current list published by the U.S. Treasury Department Office of Foreign Assets Control at its official website, http://www.treas.gov.ofac/t11sdn.pdf or at any replacement website or other replacement official publication of such list; or

(f) who is an affiliate of or in any way related to any person or entity listed above.

Strategy Parties: shall mean Strategy Investments, LLC, Strategy Resort Financing, Inc., and Strategy International Insurance Group, Inc. ("SIIG").

SRFI: shall mean Strategy Resort Financing, Inc., an Ontario corporation and a wholly owned subsidiary of Borrower.

Surety: shall mean Builder's & Contractor's Assurance Company, Ltd., a Bahamian insurance company.

Surety Bond: shall mean Payment Bond No. CAN9876149P to be issued by the Surety in substantially the form set forth in Exhibit E hereto in an amount of thirty-one million nine hundred thousand U.S. Dollars (US $31,900,000).

Waikiki Mortgage: shall mean the Mortgage, Security Agreement, Assignment of Leases and Rents, and Financing Statement recorded with the Hawaii Office of Assistant Registrar on April 26, 2005 with the document number 3258727 which is between Strategy Investments, LLC as Mortgagee and SVC-Waikiki, LLC as Mortgagor.

Whistler Mortgage: shall mean the Mortgage registered on November 3, 2005 as Instrument Nos. BX285208 and BX285209 which are between Strategy Resort Financing, Inc. as Mortgagee and Shell Owners Association – Pacific as Mortgagor.

Article II.

Representation

GVECR   PEMG   SILLC   SIIG   SRFI

2.1   Representations and Warranties by the Borrower.   The Borrower represents and warrants as follows:

(a)     The Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of Florida, has legal authority to enter into and to perform the agreements and covenants on its part contained in this Agreement and the other Loan Documents and has duly authorized the execution, delivery and performance of this Agreement and the other Loan Documents, except in the case of the documents directly pertaining to the collateral assignment of the Whistler Mortgage, in which case Borrower will cause Strategy Resort to execute, deliver, and perform such documents.   Immediately prior to the consummation of the Loan, the Borrower's sole member is Strategy International Insurance Group, Inc., a Texas corporation.

(b)     The execution and delivery by the Borrower of this Agreement and the other Loan Documents, the causation of Strategy Resort to execute and deliver the documents directly pertaining to the collateral assignment of the Whistler Mortgage, the consummation by the Borrower of the transactions contemplated hereby and thereby, and the fulfillment of or compliance by the Borrower with the terms and conditions hereof and thereof do not and will not violate, conflict with or constitute a breach of or default under or require any consent (except for such consents and approvals as have heretofore been obtained) pursuant to the articles of organization or operating agreement, as in effect immediately prior to the consummation of the Loan, of the Borrower, any written agreements to which the Borrower is a party, any law or regulation of any Governmental Authority or, to the best knowledge of the Borrower, of any other jurisdiction presently applicable to the Borrower, any order of any court, regulatory body or arbitral tribunal or any agreement or instrument to which the Borrower is a party or by which it or any of its property is bound.   At all times throughout the term of the Loan, Borrower and any of Borrower's affiliates or other parties in any way similarly related to Borrower shall (i) not be a Prohibited Person, and (ii) be in full compliance with Executive Order and the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Pub. L. No. 107-56, 115 Stat. 272 (2001) and all amendments thereto.

(c)     Assuming due authorization, execution and delivery by the other parties thereto, when executed and delivered, this Agreement and the other Loan Agreements to which Borrower is a party, and the documents directly pertaining to the collateral assignment of the Whistler Mortgage to which Strategy Resort is a party, will be valid and binding obligations and agreements and enforceable in accordance with their terms, subject to limitations imposed by bankruptcy, insolvency or other laws affecting creditors' rights generally or by general principles of equity affecting the remedies provided for herein and therein.

(d)     Borrower represents and warrants that there are no environmental issues dealing with the properties (secured by the  Napa Deed of Trust, the Waikiki Mortgage and the Whistler Mortgage) that would impair the rights of or inure to the detriment, in any manner, to the Lender or cause the Lender to have any financial responsibility for any environmental remediation.   Borrower explicitly accepts financial responsibility for

GVECR       PEMG          SIILC       SIIG       SRFI

any and all environmental remediation. Borrower shall indemnify Lender for any and all environmental claims.

(e)    There is no action, suit or proceeding at law or in equity or by or before any governmental instrumentality or agency or arbitral body now pending, or to the knowledge of the Borrower, threatened against or affecting the Borrower or any properties or rights of the Borrower which, if adversely determined, would materially impair the right of the Borrower to carry on its business substantially as now conducted or would materially adversely affect the financial condition, business or operations of the Borrower or the transactions contemplated by, or the validity of, this Agreement

(f)    To the knowledge of Borrower, there is no action, suit or proceeding at law or in equity or by or before any governmental instrumentality or agency or arbitral body now pending, or threatened against or affecting Strategy Resort or any properties or rights of Strategy Resort which, if adversely determined, would materially impair the right of Strategy Resort to carry on its business substantially as now conducted or would materially adversely affect the financial condition, business or operations of Strategy Resort or the transactions contemplated by, or the validity of, this Agreement.

(g)    The Borrower has filed all tax returns which are required to be filed by it and has paid or caused to be paid all taxes as shown on said returns or on any assessment received by it, to the extent that such taxes have become due, and no controversy in respect of additional income taxes, of the Borrower is pending or, to the knowledge of the Borrower, threatened which has not heretofore been disclosed in writing to the Lender and which, if adversely determined, would materially and adversely affect the financial condition or operations of the Borrower.

(h)    To the knowledge of the Borrower, Strategy Resort has filed all tax returns which are required to be filed by it and has paid or caused to be paid all taxes as shown on said returns or on any assessment received by it, to the extent that such taxes have become due, and no controversy in respect of additional income taxes, of Strategy Resort is pending or, to the knowledge of the Borrower, threatened which has not heretofore been disclosed in writing to the Lender and which, if adversely determined, would materially and adversely affect the financial condition or operations of the Strategy Resort.

(i)    No approval, consent or authorization of, or registration, declaration or filing with, any governmental or public body or authority is required to be obtained by the Borrower in connection with the valid execution, delivery and performance by the Borrower of this Agreement or the other Loan Documents to which it is a party which has not heretofore been obtained.

(j)    To the knowledge of Borrower, no approval, consent or authorization of, or registration, declaration or filing with, any governmental or public body or authority is required to be obtained by Strategy Resort in connection with the valid execution, delivery and performance by the Borrower of this Agreement or the other Loan Agreements to which it is a party which has not heretofore been obtained and the

GVECR   PEMG   SILLC   SIIG   SRFI

execution, delivery and performance by Strategy Resort of the assignment as written in Exhibit C.

(k)     This Agreement and the other Loan Documents do not contain any misrepresentation or untrue statement of fact or omit to state a material fact necessary in order to make a representation or statement contained therein not misleading.

Article III.

Conditions Precedent to Closing; Closing

3.1     <u>Conditions Precedent to Closing</u>.  At or prior to the occurrence of the Closing, and as conditions precedent thereto, each of the following conditions shall have been satisfied:

(a)     HSBC Securities (USA) Inc. (the "Interest Reserve Agent") has executed and delivered to the Borrower, an acknowledgment which sets forth the Interest Reserve Agent's duties and obligations with respect to the prepaid interest received from the proceeds of the Loan in substantially the form set forth in Exhibit F hereto (the "Interest Reserve Acknowledgment");

(b)     Escrow Agent upon receipt of all of the Documents specified in this Section 3.1(b)(i), except as waived by LENDER and PEMG,  will make the Initial Disbursements listed in Section 5.1(b):

      (i)     Documents

         (1)     Loan Agreement (an executed original);

         (2)     Promissory Note (an executed original);

         (3)     Financial Guarantee:

            a.     Payment Bond from Builder's and Contractor's Assurance Co., Ltd. ("Builders") (draft in the form to be issued at closing); or

            b.     Insurance Policy from Strategy Insurance Limited ("SIL") (draft in the form to be issued at closing);

         (4)     Reinsurance

            a.     Reinsurance Cover Attachment (draft in the form to be issued at closing); or

            b.     Direct Endorsement (draft in the form to be issued at closing);

GVECR   PEMG   SILLC   SIIG   SRFI

(5)    Opinion Letter of Baker & McKenzie LLP regarding Bond or Policy (draft in the form to be issued at closing);

(6)    Invoice for Financial Guarantee

    a.    Bond

        i.    Bond Premium Invoice from Builder's;

        ii.    Bond Premium Invoice from Apple Agency, LLC ("Apple"); or

    b.    Policy

        i.    Policy Premium Invoice from SIL

(7)    Collateral Assignment of Mortgage on Whistler property (draft in the form to be recorded);

(8)    Collateral Assignment of Deed of Trust, Security Agreement, Assignment of Leases and Rents, and Fixture Filing on the Napa property (draft in the form to be recorded);

(9)    Collateral Assignment of Mortgage, Security Agreement, Assignment of Leases and Rents, and Financing Statement for Waikiki property (in the form to be recorded);

(10)    BORROWER Company Documents

    a.    Certificate of Good Standing of BORROWER

    b.    Action by Unanimous Written Consent of the Members of BORROWER (as executed):

    c.    Officer's Certificate of BORROWER (as executed);

(11)    SRFI Corporate Documents

    a.    Certificate of Good Standing of SRFI

    b.    Action by Unanimous Written Consent of the Officers and Directors of SRFI (as executed):

    c.    Officer's Certificate of SRFI (as executed);

(12)    SIIG Corporate Documents

    a.    Certificate of Good Standing of SIIG

GVECR    PEMG    SILLC    SIIG    SRFI

    b.    Action by Unanimous Written Consent of the Officers and Directors of SIIG (as executed):

    c.    Officer's Certificate of SIIG (as executed);

(13)    Opinion Letter from Baker & Hostetler, LLP, counsel to BORROWER (as executed);

(14)    Opinion Letter from Baker & McKenzie LLP, counsel to SIIG (as executed);

(15)    Opinion Letter from Anthony Maniaci, LLB, counsel to SRFI (as executed);

(16)    BORROWER Operating Agreement (photocopy of the executed original);

(ii)    Simultaneously with making the Disbursements listed in Section 5.1(b), the Escrow Agent shall deliver the Documents listed in Section 3.1(b)(i) to LENDER at the following address:

> GVEC Resource Inc.
> c/o Equity Resource Management Ltd.
> One Park Plaza, Suite 550
> Irvine, California 92614-2594
> United States of America

(c)    The Escrow Agent, upon receipt of all of the documents specified in this Section 3.1(c)(i) and any documents waived by LENDER and PEMG under Section 3.1(b), will disburse the funds constituting a portion of the Escrowed Amount, as provided for it in Section 5.1(c).

(i)    Documents

(1)    Financial Guarantee

    a.    Bond

        i.    Payment Bond (original executed);

        ii.    Reinsurance Cover Attachment (original executed); or

    b.    Policy

        i.    Policy (original executed);

GVECR    PEMG    SIELC    SIIG    SRFI

        ii.     Direct endorsement from [name of insurance or financial guarantee company]

(2)    Confirmation of Financial Guarantee Payment

    a.    Bond

        i.     Confirmation from Apple evidencing receipt and acceptance of US$2,741,250 for payment of the full premium due Builders;

        ii.    Confirmation from Builders acknowledging receipt of premium for payment in full of the Payment Bond; or

    b.    Policy

        i.     Confirmation from SIL acknowledging receipt and acceptance of payment of the full premium due SIL.

(3)    Collateral Assignment of Mortgage on Whistler property (showing acceptance by recording office of jurisdiction);

(4)    Collateral Assignment of Deed of Trust, Security Agreement, Assignment of Leases and Rents, and Fixture Filing on the Napa property (showing acceptance by recording office of jurisdiction);

(5)    Collateral Assignment of Mortgage, Security Agreement, Assignment of Leases and Rents, and Financing Statement for Waikiki property (showing acceptance by recording office of jurisdiction); and

(6)    Estoppel, Consent, and Use of Funds Statement from SVC-Mountainside ULC, signed by SVC-Mountainside ULC, SRFI and BORROWER;

(7)    Estoppel, Consent, and Use of Funds Statement from SVC-Napa L.P., signed by SVC-Napa L.P. and BORROWER;

(8)    Estoppel, Consent, and Use of Funds Statement from SVC-Waikiki LLC, signed by SVC-Waikiki LLC and BORROWER;

(9)    Either:

GVECR    PEMG    SILLC    SIIG    SRFI

a.   Confirmation by Baker & McKenzie, LLP, in the event a Bond is issued, confirming

    i.   receipt of written confirmation from AON Re Worldwide ("AON") regarding the placement of the Pak-Re reinsurance treaties by treaties and facultative arrangements as described in the RCA stating that AON placed the retrocession reinsurance treaties on behalf of Pak-Re with Munich Re, Swiss Re and the London Market (Lloyds) and others with reinsurance security of not less than a rating of "A"; and

    ii.   Pak-Re [name and title of officers of] confirmation in writing that its obligations under the RCA in respect of the Bond are one-hundred percent (100%) retroceded by Pak-Re pursuant to Pak-Re's reinsurance treaties, as stated in the RCA. Thus, under separate cover, Pak-Re [name and title of officers of} has confirmed that its reinsurance obligations in respect of the Bond have been retroceded by reinsurance treaty to one, or a combination of, Swiss Re, Munich Re, and the London Market (Lloyds) and others with reinsurance security of not less than a rating of "A"; or.

    iii.   Original signed acceptance issued to the Lender by Swiss Re or Munich Re of acceptance of obligation under the Payment Bond; or

b.   Confirmation by Baker & McKenzie, LLP, in the event a Policy is issued, confirming

    i.   SIL has underwritten directly the Policy and retroceded 100% of its obligation to an insurance or financial guarantee company, rated at least "A" or better, by way of direct endorsement of the Policy; and

    ii.   Original signed acceptance issued to the Lender by the insurance or financial guarantee company, rated at least "A" or better, accepting direct endorsement of the

GVECR   PEMG   SILLC   SIIG   SRFI

Policy or a pledge of negotiable securities rated no less than "A" and reasonably acceptable to LENDER.

(ii)    Simultaneously with making the disbursements provided for in Section 5.1(c)(i), the Escrow Agent shall deliver the Documents listed in Section 3.1(c)(i) to LENDER at the following address:

GVEC Resource Inc.
c/o Equity Resource Management Ltd.
One Park Plaza, Suite 550
Irvine, California 92614-2594
United States of America

3.2    Closing.  The Closing (the "Closing") shall take place at a time and place or in a manner agreed to by the parties, immediately following the execution of this Agreement, subject to the satisfaction of the conditions set forth in Section 3.1.

Article IV.

The Loans; Provision/Repayment

4.1    Loan.  The Lender agrees, upon the terms, subject to the conditions set forth in Section 3.1 and relying upon the representations and warranties set forth in Section 2.1, to make the Loan to the Borrower by disbursing the proceeds of such Loan as set forth below.  The Loan shall be made and completely disbursed at Closing for the purposes set forth in Section 5.1.  There is no re-borrowing permitted herein under the Agreement or the Note.

4.2    Note.  The Loan of the Lender shall be evidenced by the Note, substantially in the form attached hereto as Exhibit G, appropriately completed, duly executed and delivered on behalf of the Borrower and payable to the Lender or its assigns.  All the terms, conditions and provisions of the Note shall be deemed to have been stated herein in full and shall apply, notwithstanding anything herein or in any of the Loan Documents or other documents to the contrary.  The date and amount of the Loan, and the date and amount of each interest payment and the re-payment of principal of the Loan, shall be recorded on a grid schedule annexed to the Note and the Borrower authorizes the Lender to make such recordation; provided, however, that failure of the Lender to make such recordation shall in no way derogate from the Borrower's obligations thereunder or hereunder.

4.3    Term.  Notwithstanding anything to the contrary, the Note and this Agreement shall terminate January 26, 2009 and all principal and accrued and outstanding interest is then due and payable.  Under no circumstance shall the Note be pre-paid without the written consent of the Lender and such consent shall be at the Lender's sole discretion.

GVECR    PEMG    SILLC    SIIG    SRFI

4.4    Security. The Loan, this Agreement and the Note are general obligations of the Borrower; and additionally, this Agreement is secured by the liens, encumbrances, and obligations created by this Agreement and by the other Loan Documents and the guarantees of the Guarantors signing this Agreement.

Article V.

Use of Proceeds

5.1    Use of Proceeds. The proceeds of the Loan will be disbursed as follows:

(a)    LENDER shall transfer the following funds:

(i)    US$5,800,000 to HSBC Bank USA National Association ("HSBC"), the Interest Reserve Agent, to account specified in writing by HSBC stating payments to pay the Interest Reserve to LENDER is set up by LENDER outside of escrow.

(ii)    US$6,625,000 to a bank account specified in writing by BORROWER and SVC-Napa, to fund the Napa Deed of Trust;

(iii)    US$8,275,000 to a bank account specified in writing by BORROWER and SVC-Waikiki, to fund the Waikiki Mortgage;

(iv)    US$1,500,000 to a bank account specified in writing by SFRI, BORROWER and SVC-Mountainside, to fund the balance of the Whistler Mortgage;

(b)    Escrow Agent upon receipt of all of the Documents specified in Section 3.1(b)(i), except as waived by LENDER and PEMG,  will make the Initial Disbursements listed in Section 5.1(b):

(i)    US$2,000,000 to a bank account specified in writing by SFRI, BORROWER and SVC-Mountainside, to fund as an advance to partially fund the Whistler Mortgage which may be issued upon receipt by Escrow Agent of written instructions from LENDER and notwithstanding, in this instance only, the receipt or non-receipt of all documents in Section 3.1(b)(i).

(c)    The Escrow Agent, upon receipt of all of the documents specified in Section 3.1(c)(i) and any documents waived by LENDER and PEMG under Section 3.1(b), will disburse the funds constituting a portion of the Escrowed Amount, as provided for it in Section 5.1(c)(i).

(i)    Disbursements of funds constituting the balance of Escrowed Amount as follows in the order stated:

GVECR    PEMG    SILLC    SIIG    SRFI

(1)   Financial Guarantee Payment

    a.    US$2,741,250 to Apple to a bank account specified in writing by Apple, as the U.S. agent to Builders; or

    b.    US$[XXX,XXX[ to    [name of insurance or financial guarantee company] to a bank account specified in writing by [name of insurance or financial guarantee company];

(2)   US$1,015,000 to PEMG for the placement fee to a bank account specified in writing to the Escrow Agent by PEMG (this amount may, at the discretion of LENDER, be withheld from Escrow, notwithstanding anything to the contrary, and such withholding shall be compliance by the Escrow Agent;

(3)   All expenses, including legal fees of LENDER, Strategy Parties, and PEMG under Section 6.2 and Exhibit Q of this Loan Agreement.

(4)   The residual of the Escrowed Amount minus the costs and expenses specifically set forth in a statement provided by LENDER and/or PEMG and not included in Section 1(a)(ii)(3), will be disbursed to BORROWER.

Article VI.

Covenants

6.1   <u>Further Assurances and Corrective Instruments</u>.  Subject to the provisions of this Agreement, the Borrower and Lender agree that they each will, from time to time, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, such supplements and amendments hereto and such further instruments as may reasonably be required for carrying out the intention or facilitating the performance of this Agreement.

6.2   <u>Administrative Expenses</u>.  The Borrower will pay, to the extent not already paid by Borrower, to or for the account of the Lender within 30 days after each notice thereof all reasonable costs and expenses incurred by the Lender in connection with the financing and administration of the Loan, including, without limitation, any fees and expenses of the Interest Reserve Agent incurred by Lender, except such as may be paid out of the proceeds of the Loan, including, without limitation, the costs of administering this Agreement and the fees and expenses of attorneys, consultants and others.

6.3   <u>Indemnity Against Claims</u>.  The Borrower will pay and discharge and will indemnify and hold harmless the Lender from (a) any lien or charge upon amounts

GVECR    PEMG    USLLC    SIIG    SRPI

payable hereunder by the Borrower to the Lender, and (b) any taxes, assessments, impositions and other charges imposed upon Borrower or amounts payable by Borrower to Lender in respect of the Loan unless caused by the negligence, fraud, or willful misconduct of Lender. Borrower shall not be liable for taxes, assessments, impositions, or other charges imposed upon and properly payable by Lender in connection with the Loan. If any claim of any such lien or charge upon payments, or any such taxes, assessments, impositions or other charges, are sought to be imposed, the Lender will give prompt notice to the Borrower, and the Borrower will have the sole right and duty to assume, and will assume, the defense thereof, with full power to litigate, compromise or settle the same in its sole discretion.

6.4    Release and Indemnification.  The Borrower will at all times protect and hold the Lender and its respective members, officers, employees, counsel and agents harmless against any claims or liability resulting from any loss or damage to property or any injury to or death of any person that may be occasioned by any cause whatsoever pertaining to the Loan or the use thereof, including without limitation any lease thereof or assignment of its interest in this Agreement, such indemnification to include reasonable expenses and attorneys' fees incurred by the Lender and its members, officers, employees, counsel and agents in connection therewith, provided that such indemnity will be effective only to the extent of any loss that may be sustained by the Lender or its respective members, officers, employees, counsel and agents in excess of the net proceeds received by it or them from any insurance carrier with respect to such loss; and provided further that the benefits of this Section will not inure to any person other than the Lender or its members, officers, employees and agents.

Notwithstanding anything to the contrary contained herein, the Borrower will have no liability to indemnify the Lender against claims or damages resulting from the Lender's own gross negligence or willful misconduct.

6.5    Additional Information.  The Borrower will promptly, from time to time, deliver to the Lender such information regarding the operations, business affairs and financial condition of the Borrower as the Lender may reasonably request. The Lender is hereby authorized to deliver a copy of any such financial information delivered hereunder, or otherwise obtained by the Lender, to any regulatory authority having jurisdiction over the Lender and to any other person as may be required by law.

6.6    Corporate Existence, Sale of Assets, Consolidation or Merger.  Unless the Lender consents in writing, such consent not to be unreasonably withheld, the Borrower will maintain its corporate existence, will not dissolve or otherwise dispose of all or substantially all of its assets and will not enter into any transaction of merger or consolidation where the Borrower is not the surviving entity.

6.7    Observe Laws.  The Borrower and Lender will observe all applicable laws, regulations and other valid requirements of any regulatory authority with respect to the operations of Borrower's and Lender's businesses respectively.

Article VII.

GVECR    PBMG    SILIC    SIIG    SIIFI

Defaults and Remedies

7.1   Event of Default and Remedies.

    (a)   Event of Default.  An "Event of Default" under the Agreement means (i) the failure to pay any payment as and when required under this Agreement or the Note (after the expiration of any applicable grace period); (ii) failure to perform or observe any covenant or agreement contained herein and such failure shall continue for 30 days after receipt of written notice thereof from the other party, or if cure is not possible within such time, the failure to diligently pursue a cure and cure within a reasonable time; (iii) any representation, warranty, certification or statement of fact made by hereto or in any Loan Documents or in any document delivered in connection herewith or therewith shall be incorrect or misleading in any material respect when made or deemed made; (iv) there shall be an event of default under any other Loan Document; or (v) insolvency of Borrower, the issuer of the Surety Bond or of the Insurance Policy, or a reinsurer or an endorser, (vi) an assignment made or attempted to be made by Borrower or guarantor as described in Section 8.4 without the written consent of the Lender, (vii) release of any of the Assignments or the Secured Promissory Notes listed in Exhibits B, C, and D without the written consent of Holder or (viii) a default by Borrower or any guarantor or their subsidiaries under the promissory notes, deed of trust, or mortgages relating to the properties on which the Assignments relate .

    (b)   Remedies.  On and during the occurrence of an Event of Default wherein the Borrower is in default:  (i) the Lender may, at its option and without notice (such notice being expressly waived), declare the Loan immediately due and payable; and (ii) the Lender may pursue all rights and remedies available under the Assignments, the Surety Bond and all other Loan Documents.  Lender's rights, remedies, and powers, as provided in this Agreement and the other Loan Documents, are cumulative and concurrent, and may be pursued singly, successively, or together against the Borrower, any guarantor of the Loan, the security described in the Loan Documents, and all other security given at any time to secure payment under this Agreement and the Note, all at the sole discretion of the Lender.  Additionally, the Lender may resort to every other right or remedy available at law or in equity without first exhausting the rights and remedies contained in this Agreement or the Note, all in Lender's sole discretion.  Failure of the Lender, for any period of time or on more than one occasion, to exercise its option to accelerate the Maturity Date shall not constitute a waiver of the right to exercise the same at any time during the continued existence of any Event of Default or any subsequent Event of Default.  No course of dealing between the Borrower and the Lender or any delay on the part of the Lender in exercising any rights under this Agreement, the Note or any of the Loan Documents shall operate as a waiver of any rights of the Lender.

    If any attorney is engaged by Lender: (i) to collect the Loan or any sums due under the Loan Documents including this Agreement or the Note, whether or not legal proceedings are thereafter instituted by the Lender; (ii) to represent the Lender in any bankruptcy, reorganization, receivership, or other proceedings wherein Borrower is a party, affecting creditors' rights and involving a claim under this Agreement or the Note;

GVECR      PEMG      SILIC      SIIG      SRFI

(iii) to protect the liens and security interests under any of the Loan Documents; (iv) to foreclose on the collateral described in any of the Loan Documents; (v) to represent the Lender in any other proceedings whatsoever in connection with any of the Loan Documents including, without limitation, post judgment proceedings to enforce any judgment related to the Loan Documents, bankruptcy, and probate proceedings; or (vi) in connection with seeking an out-of-court workout or settlement of any of the foregoing, then the Borrower shall pay to the Lender all reasonable costs, attorneys' fees, and expenses in connection therewith, in addition to all other amounts due under this Agreement or the Note.

7.2   <u>Waiver</u>.   Except to the extent otherwise expressly set forth in the Loan Documents, the Borrower, for itself and all endorsers, guarantors, and sureties of this Agreement or the Note, and their heirs, successors, assigns, and legal representatives, waives presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest, and protest of this Agreement or the Note, and all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this Agreement or the Note, and agrees that their respective liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time, renewal, waiver, or modification granted or consented to by the Lender. The Borrower, for itself and all endorsers, guarantors, and sureties of this Agreement and the Note, and their heirs, legal representatives, successors, and assigns, consents to every extension of time, renewal, waiver, or modification that may be granted by the Lender with respect to the payment or other provisions of this Agreement and the Note, and to the release of any makers, endorsers, guarantors, or sureties, and of any collateral given to secure the payment of this Agreement and the Note, or any part of this Agreement or the Note, with or without substitution, and agrees that additional makers, endorsers, guarantors, or sureties may become parties to this Agreement or the Note without notice to the Borrower or to any endorser, guarantor, or surety, and without affecting the liability of any of them.

Article VIII.

Miscellaneous

8.1   <u>Choice of Law, Jurisdiction, and Venue</u>.   This Agreement shall be deemed to have been made and executed in the State of New York, and this Agreement shall be interpreted, construed, and enforced in accordance with the laws of the State of New York without regard to the principles of conflict of laws.

GVECR   PEMG   SILLC   SIIG   SRFI

THE BORROWER AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING DIRECTLY, INDIRECTLY, OR OTHERWISE IN CONNECTION WITH, OUT OF, RELATED TO OR FROM THIS AGREEMENT SHALL BE LITIGATED, AT THE LENDER'S SOLE DISCRETION AND ELECTION, IN COURTS HAVING A SITUS WITHIN THE STATE OF NEW YORK. THE BORROWER HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY LOCAL, STATE, OR FEDERAL COURT LOCATED WITHIN OR FOR SUCH STATE. THE BORROWER HEREBY WAIVES ANY RIGHT IT MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT AGAINST IT BY THE LENDER ON THE LOAN DOCUMENTS INCLUDING THE NOTE OR THIS AGREEMENT IN ACCORDANCE WITH THIS PARAGRAPH.

8.2    Severability.  If one or more of the provisions of this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall to the fullest extent permitted by applicable law not affect any other provisions of this Agreement, but this Agreement shall be construed to the fullest extent permitted by applicable law as if such invalid, illegal, or unenforceable provision had never been contained in this Agreement.

8.3    Amendment or Modification.  Except as provided in Section 8.6, this Agreement shall not be modified, amended, changed, terminated, supplemented, or any term or condition hereof waived except in writing signed by the Borrower and the Lender.

8.4    Assignment.  The Borrower shall not assign its obligations under this Agreement without the express written consent of the Lender.  For purposes of this Paragraph, the term "assign" includes the following, if the Borrower is an entity: (a) any dissolution, merger, consolidation, or other reorganization of the Borrower; (b) a sale of more than 50% of the value of the assets of the Borrower; or (c) a sale or other transfer by any of the Borrower's controlling parties of more than a controlling amount of such party's equity interest in the Borrower.  The Lender, however, may assign, transfer, pledge or sell its interest in this Agreement.  On notification of such assignment, the Borrower shall thereafter remit all payments under this Agreement directly to the address set forth on the notification.

8.5    Headings.  Headings are for convenience of reference only and shall not be deemed to modify, explain, enlarge, or restrict any of the provisions of this Agreement.

8.6    Notices.  All notices and other communication required or permitted to be given shall be in writing addressed to the respective party as set forth below and may be personally served or sent by reputable overnight courier and shall be deemed given: (a) if served in person, when served; or (b) if by reputable overnight courier, on the first business day after delivery to the courier (or the date on which delivery was refused by the addressee as confirmed by the return receipt or courier service).  Notices shall be sent to the parties at the following addresses; provided, however that the parties may change the address for notice purposes up to four (4) times in accordance with this Agreement:

(a)    To the Borrower:

GVECR    PEMG    SILLC    SIIG    SRFI

Strategy Investments, LLC
200 Yorkland Boulevard
Suite 200
Toronto, Ontario
Canada M2J 5C1
Attn: Sandro Sordi

With a copy to:

Robert J. Webb, Esq.
Baker & Hostetler LLP
200 South Orange Avenue
Suite 2300
Orlando, Florida 32801

(b)    To the Lender:

GVEC Resource Inc.
c/o Equity Resource Management Ltd.
One Park Plaza, Suite 550
Irvine, CA 92614-2594
Attn: Nasar Aboubakare and Robert Anderson

With a copy to:

Peter Paul Mendel, Esq.
Private Equity Management Group, Inc.
One Park Plaza, Suite 550
Irvine, CA 92614-2594

(c)    To the Interest Reserve Agent

HSBC Securities (USA), Inc.
Attention: Robert Gatti
452 Fifth Avenue, Lower Level
New York, New York 10018

(d)    To the Guarantors

Strategy International Insurance Group Inc.
200 Yorkland Boulevard, Suite 710
Toronto, Ontario
M2J 5C1
Canada

Strategy Resort Financing Inc.

GVECR    PEMG    SIILC    SIIG    SRFI

200 Yorkland Boulevard, Suite 200
Toronto, Ontario
M2J 5C1
Canada

With a copy to:

Robert J. Webb, Esq.
Baker & Hostetler LLP
200 South Orange Avenue
Suite 2300
Orlando, Florida 32801

8.7    Time of Essence.  Time is of the essence of this Agreement and the performance of each of the covenants and agreements in this Agreement.

8.8    Confidentiality and Reputation.  Neither of the parties hereto shall disclose to any person not authorized by the relevant party to receive any information relating to such party or to the affairs of such party of which the party disclosing the same shall have become possessed during the period of this Agreement and each party shall use its reasonable endeavors to prevent any such disclosure as aforesaid, except for disclosure: (i) to legal counsel, accountants and other professional advisors to the parties or their agents on a need-to-know basis who have agreed to be subject to this Section; (ii) to regulatory officials having jurisdiction over the parties; (iii) required by applicable law or as required in connection with any legal proceeding; (iv) to any other party hereto; (v) to another person in connection with a potential assignment or participation under this Agreement, provided that such person shall have agreed in writing to be subject to this Section; and (vi) of information that has been previously disclosed publicly without breach of this provision or as otherwise required by this Agreement or the other Loan Documents.

8.9    Binding Effect:  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, successors and assigns.

8.10    Counterparts:  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same document.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of Effective Date.

GVECR    PEMG    SILAC    SIIG    SKFI

GVEC RESOURCE INC., as Lender

Name: Nasar Aboubakare
Title: Director

Name: Robert Anderson
Title: Director

STRATEGY INVESTMENTS, LLC, as Borrower

Name: SANDRO SORDI
Title: Managing Member

STRATEGY RESORT FINANCING, INC., an Ontario corporation, as Guarantor

Name: SANDRO SORDI
Title: President

STRATEGY INTERNATIONAL INSURANCE GROUP, INC., as Guarantor

Name: S. STONHILL
Title: PRES

PRIVATE EQUITY MANAGEMENT GROUP, INC., as Facilitator

Name: Wil Quon
Title: Principal and Chief Financial Officer

Name: Todd Gillespie
Title: Principal

GVECR   PEMG   SILLC   SIIG   SRFI

# EXHIBITS

A. Loan Documents
B. Collateral Assignment of Mortgage, Security Agreement, Assignment of Leases and Rents, and Financing Statement (Waikiki)
C. Collateral Assignment of Mortgage (Whistler)
D. Collateral Assignment of Deed of Trust, Security Agreement, Assignment of Leases and Rents, and Fixture Filing (Napa)
E. Payment Bond #CAN9876149P or Insurance Policy in the amount of US$31,900,000.
F. HSBC Securities (USA) Inc. Investments Acknowledgment of 2-Years' Interest Reserve
G. Promissory Note
H. Opinion of Baker & Hostetler LLP, counsel to Borrower
I. Opinion of Anthony Maniaci, LLB, counsel to Strategy Resort
J. Opinion of Baker & McKenzie, LLP counsel to the Surety
K. Incumbency Certificate of Strategy Investments LLC
L. Incumbency Certificate of Strategy Resort Financing Inc.
M. Incumbency Certificate of Strategy International Insurance Group, Inc.
N. Lender's Costs and Expenses and Calculation of Balance of Loan Proceeds

2006-01-26                    Page 21 of 35

GVECR        PEMG        SILLC        SIIG        SRFI

Exhibit "A"

Loan Documents

1. Collateral Assignment of Mortgage, Security Agreement, Assignment of Leases and Rents, and Financing Statement (Waikiki) by and between the Borrower and the Lender.

2. Collateral Assignment of Mortgage (Whistler) by and between Strategy Resort and the Lender.

3. Collateral Assignment of Deed of Trust, Security Agreement, Assignment of Leases and Rents, and Fixture Filing (Napa) by and between the Borrower and the Lender.

4. Payment Bond # CAN 9876149P to be issued by the Surety or Insurance Policy underwritten by SIL in the amount of US$31,900,000; or an Insurance Policy from an issuer with a rating of at least "A" in the amount of US$31,900,000; or the pledge of negotiable securities of a rating of "A" or better in the amount of US$31,900,000.

5. Interest Reserve Acknowledgment executed and delivered by the Interest Reserve Agent.

6. Management Agreement.

7. Member Interest Pledge Agreement.

8. Management Fee Promissory Note.

9. Reinsurance Cover Attachment among Pakistan Reinsurance Company Limited, Beema-Pakistan Company, Ltd. and Builder's & Contractor's Assurance Co. Ltd.; or original signed acceptance issued to the Lender by the insurance or financial guarantee company, rated at least "A" or better, accepting direct endorsement of the Insurance Policy.

10. Baker & McKenzie's Opinion Letter.

Exhibit "B"

Form of Collateral Assignment of Mortgage, Security Agreement, Assignment of Leases
and Rents, and Financing Statement (Waikiki)

Exhibit "C"

Form of Collateral Assignment of Mortgage (Whistler)

Exhibit "D"

Form of Collateral Assignment of Deed of Trust, Security Agreement, Assignment of
Leases and Rents, and Fixture Filing (Napa)

Exhibit "E"

Form of Payment Bond #CAN9876149P or Insurance Policy underwritten by SIL in the amount of U.S. $31,900,000

Exhibit "F"

Form of HSBC Securities (USA) Inc.  Investments Acknowledgement
of 2-Years' Interest Reserve

Exhibit "G"

Form of Promissory Note

Exhibit "H"

Form of Opinion of Baker & Hostetler LLP, Counsel to the Borrower

Exhibit "I"

Form of Opinion of Anthony Maniaci, LLB, Counsel to Strategy Resort

Exhibit "J"

Form of Opinion of Baker & McKenzie, LLP, Counsel to the Surety

Exhibit "K"

Incumbency Certificate of Strategy Investments LLC

GVECR    PEMG    SILLC    SIIG    SNFI

Exhibit "L"

Incumbency Certificate of Strategy Resort Financing Inc.

GVECR     PEMG     SRLC     SIIG     SRFI

Exhibit "M"

Incumbency Certificate of Stategy International Insurance Group, Inc.

GVECR   PBMG   SILLC   SIIG   SRFI

Exhibit "N"

Lender's Costs and Expenses and Calculation of Balance of Loan Proceeds

GVECR        PEMG        SILLC        SIIG        SKFI