Promissory Note

Amount: U.S. $29,000,000.00                                Date: January 26, 2006

1. <u>Promise to Pay</u>. FOR VALUE RECEIVED, Strategy Investments, LLC, a Florida limited liability company ("<u>Maker</u>"), with an address of 200 Yorkland Boulevard, Suite 200, Toronto, Ontario Canada, M2J 5C1, promises to pay to the order of GVEC Resource Inc., an international business company organized under the laws of the British Virgin Islands ("<u>Holder</u>"), at c/o Equity Resource Management Ltd., 1 Park Plaza, Suite 550, Irvine, California 92614-2594 U.S.A., or at such other place as Holder may from time to time designate in writing, in lawful money of the United States of America, and in immediately available funds, the sum of U.S. twenty-nine million dollars (U.S. $29,000,000.00), together with all other amounts added thereto pursuant to this Note ("<u>Loan</u>") (or so much thereto as may from time to time be outstanding) together with interest thereon as set forth in this Note and the Loan Agreement between Maker and Holder and guaranteed by Strategy Resort Financing Inc. and Strategy International Insurance Group, Inc. dated January 24, 2006 ("Loan Agreement").

The repayment of the Loan evidenced by this Note is secured by, among other things, (i) those certain collateral assignments documents as listed on <u>Exhibit "A"</u> to this Note of even date herewith, as amended, modified, or supplemented from time to time in accordance with their terms (collectively, "<u>Assignments</u>"); (ii) interest reserve equal to two years interest set aside and placed with HSBC Securities (USA) Inc.. ("Interest Reserve"); and (iii) a surety bond ("<u>Surety Bond</u>") in the amount of U.S. thirty-one million nine hundred thousand dollars (U.S. $31,900,000). This Note, the Loan Agreement, the Assignments, the Interest Reserve, the Surety Bond and all other documents evidencing or securing the Loan or executed in connection with the Loan, (and any modification, renewal, or extension of any of the foregoing) are collectively the "Loan Documents". All instruments evidencing or securing the indebtedness under the Loan other than this Note are made a part of and are deemed incorporated in this Note in full. Capitalized terms used in this Note and not otherwise defined in this Note have the meanings set forth in the Loan Agreement and the Assignments.

2. <u>Principal and Interest; Default Interest Rate; Lawful Rate of Interest</u>.

    (a) <u>Principal and Interest</u>. Interest shall accrue on the principal balance of this Note from time to time outstanding and Maker shall pay interest thereon at a rate equal to ten percent (10%) per annum simple interest ("Interest Rate"). Interest shall accrue daily on the basis of a three hundred sixty (360) day year and charged for the actual number of days elapsed.

    (b) <u>Default Interest Rate</u>. In the event of a default under this Note or under any of the Loan Documents or any other document related to this transaction, then the Interest Rate from date of such default shall be eighteen percent (18%) (the "Default Interest Rate").

3. <u>Payments; Application of Payments; Maturity Date</u>.

    (a) <u>Payments</u>. In accordance with the Payment Grid Schedule attached hereto as Exhibit C, interest at the Interest Rate shall be due on the 24th day of July, 2006, and continuing on the

Exhibit 9

first day of each semi-annual calendar date thereafter, until the Maturity Date (as defined below), at which time all unpaid accrued interest and other amounts payable hereunder shall be due and payable in full. Maker may not prepay the loan evidenced by this Note in full or in part at any time, without the consent of Holder, at the Holder's sole discretion.

(b) <u>Application of Payments</u>. This Note is secured by the liens, encumbrances, and obligations created by this Note and by the other Loan Documents. All payments under this Note will be applied to as follows:

(i) First, to any outstanding costs or fees including, but not limited to, service fees, wire fees, Late Fees, and collection costs Maker is obligated to pay under the Loan Documents;

(ii) Second, to accrued interest due; and

(iii) Third, on the Maturity Date, to the outstanding principal balance.

(c) Maturity Date. The Loan shall be due and payable on or before January 24, 2009 or any earlier date on which the Loan is required to be paid in full, whether by acceleration or otherwise ("Maturity Date"). Until such time, there shall be no payment of principal hereunder without the written consent of the Holder at the Holder's sole discretion.

4. Event of Default and Remedies.

(a) <u>Event of Default</u>. An "Event of Default" under this Note means

(i) the failure to pay any payment as and when required under this Note;

(ii) default under any of the Loan Documents;

(ii) default under any of the Secured Promissory Notes listed in Exhibit B; or

(iv) release of any of the Assignments or the Secured Promissory Notes listed in Exhibit B without the written consent of Holder.

(b) <u>Remedies</u>. On and during the occurrence of an Event of Default: (i) Holder may, at its option and without notice (such notice being expressly waived), declare the Loan immediately due and payable; (ii) the Default Interest Rate shall be in effect from that time forward, and (iii) Holder may pursue all rights and remedies available under the Assignments and all other Loan Documents. Holder's rights, remedies, and powers, as provided in this Note and the other Loan Documents, are cumulative and concurrent, and may be pursued singly, successively, or together against Maker, any guarantor of the Loan or the Loan Agreement, the security described in the Loan Documents, and all other security given at any time to secure the payment of this Note, all at the sole discretion of Holder. Additionally, Holder may resort to every other right or remedy available at law or in equity without first exhausting the rights and remedies contained in this Note, all in Holder's sole discretion. Failure of Holder, for any period of time or on more than one occasion, to exercise its option to accelerate the Maturity Date shall not constitute a waiver of the right to exercise the same at any time during the continued existence of any Event of



Default or any subsequent Event of Default. No course of dealing between Maker and Holder or any delay on the part of Holder in exercising any rights under this Note shall operate as a waiver of any rights of Holder.

If any attorney is engaged: (i) to collect the Loan or any sums due under the Loan Documents, whether or not legal proceedings are thereafter instituted by Holder; (ii) to represent Holder in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under this Note; (iii) to protect the liens and security interests of any of the Loan Documents; (iv) to foreclose on the collateral described in any of the Loan Documents; (v) to represent Holder in any other proceedings whatsoever in connection with any of the Loan Documents including, without limitation, post judgment proceedings to enforce any judgment related to the Loan Documents, bankruptcy, and probate proceedings; or (vi) in connection with seeking an out-of-court workout or settlement of any of the foregoing, then Maker shall pay to Holder all reasonable costs, attorneys' fees, and expenses in connection therewith, in addition to all other amounts due under this Note.

5. <u>Waiver</u>. Maker, for itself and all endorsers, guarantors, and sureties of this Note, and their heirs, successors, assigns, and legal representatives, waives presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest, and protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this Note, and agrees that their respective liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time, renewal, waiver, or modification granted or consented to by Holder. Maker, for itself and all endorsers, guarantors, and sureties of this Note, and their heirs, legal representatives, successors, and assigns, consents to every extension of time, renewal, waiver, or modification that may be granted by Holder with respect to the payment or other provisions of this Note, and to the release of any makers, endorsers, guarantors, or sureties, and of any collateral given to secure the payment of this Note, or any part of this Note, with or without substitution, and agrees that additional makers, endorsers, guarantors, or sureties may become parties to this Note without notice to Maker or to any endorser, guarantor, or surety, and without affecting the liability of any of them.

6. <u>Evidence of Indebtedness</u>. This Note is given and accepted as evidence of indebtedness only and not in payment or satisfaction of any indebtedness or obligation.

8. <u>Choice of Law, Jurisdiction, and Venue</u>. This Note shall be deemed to have been made and executed in Orange County, Florida, and this Note shall be interpreted, construed, and enforced in accordance with the laws of the State of Florida without regard to the principles of conflict of laws.

MAKER AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING DIRECTLY, INDIRECTLY, OR OTHERWISE IN CONNECTION WITH, OUT OF, RELATED TO OR FROM THIS NOTE SHALL BE LITIGATED, AT HOLDER'S SOLE DISCRETION AND ELECTION, ONLY IN COURTS HAVING A SITUS WITHIN ORANGE COUNTY, FLORIDA. MAKER HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY LOCAL, STATE, OR FEDERAL COURT LOCATED WITHIN OR FOR SUCH COUNTY AND STATE. MAKER HEREBY WAIVES ANY RIGHT IT MAY HAVE TO



TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT AGAINST IT BY HOLDER ON THE LOAN DOCUMENTS IN ACCORDANCE WITH THIS PARAGRAPH.

7. <u>Severability</u>. If one or more of the provisions of this Note shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions of this Note, but this Note shall be construed as if such invalid, illegal, or unenforceable provision had never been contained in this Note.

8. <u>Modification</u>. Except as provided in paragraph 11, this Note shall not be modified, amended, changed, terminated, supplemented, or any term or condition hereof waived except in writing signed by Maker and Holder.

9. <u>Assignment</u>. Maker shall not assign its obligations under this Note without the express written consent of Holder. For purposes of this Paragraph, the term "assign" includes the following if Maker is an entity: (a) any dissolution, merger, consolidation, or other reorganization of Maker; (b) a sale of more than 50% of the value of the assets of Maker; or (c) a sale or other transfer by any of Maker's controlling parties of more than a controlling amount of such party's entity interest in Maker. Holder, however, may assign, transfer, pledge or sell its interest in this Note. On notification of such assignment, Maker shall remit any payments due under this Note directly to the address set forth on the notification.

10. <u>Headings</u>. Headings are for convenience of reference only and shall not be deemed to modify, explain, enlarge, or restrict any of the provisions of this Note.

11. <u>Notices</u>. All notices and other communication required or permitted to be given shall be in writing addressed to the respective party as set forth below and may be personally served or sent by reputable overnight courier and shall be deemed given: (a) if served in person, when served; or (b) if by reputable overnight courier, on the first business day after delivery to the courier (or the date on which the return receipt or courier service confirms that acceptance of delivery was refused by the addressee). Notices shall be sent to the parties at the following addresses; provided, however that Assignee and Assignor may change the address for notice purposes up to four (4) times:

    (i)    To Maker:

    Strategy Investments, LLC
    200 Yorkland Boulevard
    Suite 200
    Toronto, Ontario
    Canada M2J 5C1
    Attention: Sandro Sordi

    With a copy to:

    Robert J. Webb, Esq.
    Baker & Hostetler LLP



200 South Orange Avenue
Suite 2300
Orlando, Florida 32801

(ii)   To Holder:

GVEC Resource Inc.
c/o Equity Resource Management Ltd.
1 Park Plaza, Suite 550
Irvine, California 92614-2594
U.S.A.

With a copy to:

Peter Paul Mendel, Esq.
One Park Plaza, Suite 550
Irvine, California 92614-2594
U.S.A.

(iii)   To Guarantors:

Strategy International Insurance Group, Inc.
200 Yorkland Boulevard, Suite 710
Toronto, Ontario M2J5C1
Canada
Attention: Stephen F. Stonhill

Strategy Resort Financing, Inc. (Ontario)
200 Yorkland Boulevard
Suite 200
Toronto, Ontario
Canada M2J 5C1
Attn: Sandro Sordi

With a copy to:

Robert J. Webb, Esq.
Baker & Hostetler LLP
200 South Orange Avenue
Suite 2300
Orlando, Florida 32801

12. <u>Joint and Several Obligations</u>. The obligations of Maker under this Note are joint and several obligations of Maker and of each Maker, if more than one, each Guarantor, if more than one, and of each Maker's and Guarantor's heirs, personal representatives, successors, and



Case 1:06-cv-05199-DLC    Document 13-13    Filed 07/13/06    Page 6 of 9

assigns, provided nothing in this Note shall be deemed consent to any assignment restricted or prohibited by the Loan Documents.

13. <u>Time of Essence</u>.  Time is of the essence of this Note and the performance of each of the covenants and agreements in this Note.

In witness whereof, the undersigned has executed this Note as of the date above first written.

Maker:

STRATEGY INVESTMENTS, LLC,
a Florida limited liability company

_____
By: Sandro Sordi, Manager

Guarantors:

STRATEGY INTERNATIONAL INSURANCE GROUP, INC.,
a Texas corporation

_____
By: Stephen F. Stonhill, President

STRATEGY RESORT FINANCING, INC.,
an Ontario company

_____
By: Sandro Sordi, President

## Exhibit "A"

1. Collateral Assignment of Mortgage, Security Agreement, Assignment of Leases and Rents, and Financing Statement between Strategy Investments, LLC, a Florida limited liability company to GVEC Resource Inc., an international business company organized under the laws of the British Virgin Islands (Waikiki)

2. Collateral Assignment of Mortgage by Strategy Resort Financing, Inc., an Ontario corporation to GVEC Resource Inc., an international business company organized under the laws of the British Virgin Islands (Mountainside)

3. Collateral Assignment of Deed of Trust, Security Agreement, Assignment of Leases and Rents, and Fixture Filing by Strategy Investments, LLC, a Florida limited liability company to GVEC Resource Inc., an international business company organized under the laws of the British Virgin Islands (Napa)

<u>Exhibit "B"</u>

1. Secured Promissory Note dated April 20, 2005 made by SVC-Waikiki, LLC, a Delaware limited liability company to Strategy Investments LLC, a Florida limited liability company.

2. Secured Promissory Note dated July 26, 2005 made by SVC-Mountainside ULC, a Nova Scotia unlimited liability company to Strategy Resort Financing Inc., an Ontario corporation incorporated under no. 002068281.

3. Secured Promissory Note dated April 20, 2005 made by SVC-Napa, L.P., a California limited partnership to Strategy Investments LLC, a Florida limited liability company

Exhibit C

Payment Grid Schedule

| Date Payment Due | Date Payment Received | Amount | Comments |
|---|---|---|---|
| July 24, 2006 | | $1,450,000.00 | |
| January 24, 2007 | | $1,450,000.00 | |
| July 24, 2007 | | $1,450,000.00 | |
| January 24, 2008 | | $1,450,00,000 | |
| July 24, 2008 | | $1,450,000.00 | |
| January 24, 2009 | | $1,450,000.00 | |
| January 24, 2009 | | $29,000,000.00 | |