Recording requested by, and
after recording return to:

Peter Paul Mendel, Esq.
GVEC Resource Inc.
c/o Equity Resource Management Limited
1 Park Plaza, Suite 550
Irvine, California 92614-2594
RECORDING REQUESTED BY
CHICAGO TITLE ESCONDIDO

CERTIFIED to be a correct Copy of the
Contents of the Original Document
recorded **FEB 0 1 2006** File No. 004037
Official records of  N a p a  County, CA.
CHICAGO TITLE COMPANY

DV

## COLLATERAL ASSIGNMENT OF DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS, AND FIXTURE FILING

THIS COLLATERAL ASSIGNMENT OF DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS, AND FIXTURE FILING (this "Assignment") is effective as of this 26th day of January, 2006 (the "Effective Date"), and is by and between STRATEGY INVESTMENTS, LLC, a Florida limited liability company ("Assignor"), and GVEC Resource, Inc., an international business company organized under the laws of the British Virgin Islands ("Assignee"). Assignor and Assignee are sometimes referred to individually as a "Party" or collectively as the "Parties" in this Assignment.

### RECITALS:

A. Simultaneously with the execution and delivery of this Assignment, Assignor has executed and delivered a Promissory Note ("Promissory Note") to Assignee;

B. Assignor is in possession of and is the beneficiary under that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents, and Fixture Filing executed by SVC-NAPA, L.P., a California limited partnership, in favor of Assignor, recorded as Document Number  **  'in the Public Records of Napa County, California (the "Deed of Trust");        **2005-0019081

C. As security for the debt represented by the Promissory Note, and in order to induce Assignor to timely make payments to Assignee under the Promissory Note, Assignor desires to collaterally assign to Assignee all of Assignor's right, title and interest in and to the Deed of Trust, subject to the terms and conditions of this Assignment.

NOW, THEREFORE, in consideration of the terms and conditions of this Assignment and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

1. Recitals. The above listed recitals are true and correct and incorporated as part of this Assignment by this reference.

2. Collateral Assignment of Deed of Trust. Assignor hereby collaterally, presently and unconditionally grants, assigns, transfers, conveys and sets over unto Assignee, as additional security for the Promissory Note and payment and performance of all obligations of Assignor under the Promissory Note, subject to all of the terms, covenants and conditions set forth in this



Assignment, all of Assignor's right, title and beneficial interest in and to the Deed of Trust. Notwithstanding said assignment, Assignor hereby retains the right to issue partial releases of said Deed of Trust unilaterally, unconditionally, and absolutely, and Assignor may execute such releases without the consent or further consent of the Assignee. Assignor hereby retains the power to sign such documents and instruments as shall be necessary to make or confirm such releases.

3. <u>Purpose of Assignment</u>.   Assignor agrees that this Assignment is given by Assignor to Assignee to secure the following in such order of priority as Assignee may elect:

a.  The repayment of the indebtedness evidenced by the Promissory Note, the terms of which are incorporated as part of this Assignment by this reference, payable to the order of Assignee, together with any applicable interest and penalties and all extensions, renewals, modifications, amendments and replacements of the Promissory Note or terms of the Promissory Note; and

b.  The performance of each and every of the covenants and agreements of Assignor contained in the Promissory Note.

4. <u>Performance and Release</u>.   The full repayment of the indebtedness evidenced by the Promissory Note and the performance of all of the obligations set forth in the Promissory Note shall constitute a reassignment by Assignee of the Deed of Trust to Assignor and termination of this Assignment and all terms and conditions hereof. Upon the full repayment of the indebtedness evidenced by the Promissory Note and the performance of all of the obligations set forth in the Promissory Note, Assignee agrees to execute, deliver, and record any releases, satisfactions or other documents as may reasonably be requested by Assignor evidencing reassignment by Assignee of the Deed of Trust to Assignor and termination of this Assignment and all terms and conditions hereof.

5. <u>Representations and Warranties</u>.   Assignor represents and warrants that Assignor has the right, power and capacity to make this Assignment and that Assignor will not further encumber the Deed of Trust except as provided by the Promissory Note.

6. <u>Covenants</u>.

a.  Assignor shall not, without the prior written consent of Assignee: (i) pledge, assign, sell, transfer or encumber the Deed of Trust.

b.  Assignor agrees, from time to time, to execute and deliver, upon demand, all assignments and any and all other writings as Assignee may reasonably deem necessary or desirable to carry out the purpose and intent of this Assignment, or to enable Assignee to enforce any right or rights under this Assignment.

7. <u>Events of Default</u>.   The term "Event of Default" as used in this Assignment shall mean the occurrence of any one of the following:

a.  If Assignor shall fail to comply with any of the covenants, duties or obligations of Assignor set forth in this Assignment and such default shall continue for fifteen (15) days or more after written notice to Assignor from Assignee specifying the nature of such default;

b.  If a default shall occur under the Promissory Note and shall not be cured within any applicable curative period as stated in the Promissory Note; or

c.  If any representation or warranty made by Assignor in this Assignment was false or misleading in any material respect when made.

8.  <u>Remedies of Assignee</u>.  Until such time as the Promissory Note and any amounts accrued thereunder are paid in full, upon the occurrence of any Event of Default, Assignee may, at its option, without any action or notice on its part being required, without in any way waiving such default:

a.  take possession of the Deed of Trust, on such terms and for such period of time as Assignee may deem proper;

b.  whether or not Assignee takes possession of the Deed of Trust, collect payments under, receive payments under, make demand on, sue for, attach, levy on, recover against, compromise or adjust the Deed of Trust; and

c.  deduct from Assignor payments made under the Promissory Note, any amounts necessary to recover its costs or expenses incurred by Assignee in exercising its rights and remedies under this Assignment.

9.  <u>Waiver and Discretion</u>.  The failure of Assignee to enforce any of the terms, covenants or conditions of this Assignment shall not be construed or deemed to be a waiver of any rights or remedies of Assignee under this Assignment.  Assignee shall have the full right, power and authority to enforce this Assignment, or any of the terms, covenants or conditions of this Assignment, at any time or times that Assignee shall deem necessary.

10. <u>Notices</u>.  All notices required to be given by Assignee to Assignor and all notices and demands of any kind or nature whatsoever which Assignor may be required or may desire to give to or serve on Assignee shall be in writing and shall be (i) hand-delivered, effective upon delivery, or (ii) sent by a nationally recognized overnight courier, effective one (1) day after deposit with such courier. All notices shall be addressed as follows; provided, however that Assignee and Assignor may change the address for notice purposes up to four (4) times:

|  |  |
|---|---|
| If to Assignor: | Strategy Investments, LLC |
| | 200 Yorkland Boulevard |
| | Suite 200 |
| | Toronto, Ontario |
| | Canada, M2J 5C1 |
| | Attn:  Sandro Sordi |

|                      |                                                  |
|----------------------|--------------------------------------------------|
| With a copy to:      | Robert J. Webb, Esq.                             |
|                      | Baker & Hostetler LLP                            |
|                      | 200 South Orange Avenue                          |
|                      | Suite 2300                                       |
|                      | Orlando, Florida 32801                           |
|                      |                                                  |
| If to Assignee:      | GVEC Resource, Inc.                              |
|                      | c/o Equity Resource Management, Ltd.             |
|                      | 1 Park Plaza                                     |
|                      | Suite 550                                        |
|                      | Irvine, California 92614-2594                    |
|                      | United States of America                         |
|                      | Attn: Todd Gillespie                             |
|                      |                                                  |
| With a copy to:      | Peter Paul Mendel, Esq.                          |
|                      | 1 Park Plaza                                     |
|                      | Suite 550                                        |
|                      | Irvine, California 92614-2594                    |
|                      | United States of America                         |

11. <u>Binding Effect</u>.  This Assignment applies to and binds the Parties and their respective heirs, administrators, executors, successors and assigns.

12. <u>Actions by Assignee</u>.  Assignee may take or release other security, may release any party primarily or secondarily liable for any indebtedness secured by this Assignment, may grant extensions, renewals or indulgences with respect to such indebtedness, and may apply any other security held by it to the satisfaction of such indebtedness, without prejudice to any of its rights under this Assignment.

13. <u>No Election of Remedies</u>.  Nothing contained in this Assignment and no act done or omitted by Assignee pursuant to the powers and rights granted it in this Assignment shall be deemed to be a waiver by Assignee of its rights and remedies under the Promissory Note, and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms of this Assignment.  The right of Assignee to collect the indebtedness and to enforce any other security for the indebtedness held by it may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by it under this Assignment.  It is the intent of both Assignor and Assignee that this Assignment be supplementary to, and not in substitution or derogation of, any provision contained in the Promissory Note.

14. <u>Number and Gender and Include</u>.  Whenever the context indicates or requires, the singular name shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.  The term "include" and similar terms (*e.g.*, includes, including, included, comprises, such as, e.g., and for example), when used as part of a sentence or phrase including one or more specific items, are used by way of example and not of limitation.

15. Choice of Law, Jurisdiction and Venue. The interpretation and enforcement of this Assignment shall be governed by and construed in accordance with the laws of the State of California. Jurisdiction and venue of any legal action in connection with this Assignment shall be proper only in Napa County, California.

16. Severability. If any one or more of the provisions contained in this Assignment shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity or unenforceability shall not affect any other provision of this Assignment, and this Assignment shall be construed as if such invalid, illegal or unenforceable provision had never been contained in this Assignment, but only to the extent that it is invalid, illegal or unenforceable.

17. Modification. Except as otherwise provided in paragraph 10, this Assignment may not be amended or modified orally, the Assignment may only be amended or modified by an agreement in writing signed by the party against whom enforcement of any amendment or modification is sought.

18. Costs of Enforcement. If either Party initiates action to enforce its rights under this Assignment, the substantially prevailing Party shall recover from the substantially non-prevailing Party its reasonable expenses, court costs and reasonable attorneys' and paralegals' fees, whether suit be brought or not. As used in this Assignment, expenses, court costs and attorneys' and paralegals' fees include expenses, court costs and attorneys' and paralegals' fees incurred in any appellate proceeding. All such expenses shall bear interest at the highest rate allowable under California law from the date the substantially prevailing Party pays such expenses until the date the substantially non-prevailing Party repays such expenses. Expenses incurred in enforcing this Paragraph shall be covered by this Paragraph. For this purpose, the court shall be and is requested to award actual costs and attorneys' and paralegals' fees incurred by the substantially prevailing Party, it being the intention of the Parties that the substantially prevailing Party be completely reimbursed for all such costs and fees. The Parties request that inquiry by the court as to the fees and costs be limited to a review of whether the fees charged and hourly rates for such fees are consistent with the fees and hourly rates routinely charged by the attorneys for the substantially prevailing Party.

19. Waiver of Jury Trial. ASSIGNOR AND ASSIGNEE, FOR THEMSELVES AND THEIR SUCCESSORS, PERSONAL REPRESENTATIVES AND ASSIGNS KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ALL RIGHTS EITHER MAY HAVE NOW OR IN THE FUTURE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION, INCLUDING ANY COUNTERCLAIM, CROSS CLAIM OR THIRD PARTY CLAIM, BASED ON THIS ASSIGNMENT OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS ASSIGNMENT OR THE PROMISSORY NOTE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS RELATED TO THIS ASSIGNMENT OR THE NOTE. NEITHER ASSIGNOR NOR ASSIGNEE NOR THEIR SUCCESSORS, PERSONAL REPRESENTATIVES OR ASSIGNS WILL SEEK TO CONSOLIDATE ANY SUCH ACTION, IN WHICH A JURY TRIAL HAS BEEN WAIVED, WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT OR HAS NOT BEEN WAIVED. ASSIGNEE REPRESENTS AND ACKNOWLEDGES THAT

THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY DISCUSSED BY ASSIGNOR AND ASSIGNEE, THAT ASSIGNOR AND ASSIGNEE WERE ABLY REPRESENTED BY LICENSED COUNSEL IN THE NEGOTIATION OF THIS PARAGRAPH, THAT IT BARGAINED AT ARMS LENGTH AND IN GOOD FAITH AND WITHOUT DURESS OF ANY KIND FOR THE TERMS AND CONDITIONS OF THIS PARAGRAPH AND THAT THE PROVISIONS OF THIS PARAGRAPH SHALL BE SUBJECT TO NO EXCEPTIONS.    THIS PROVISION IS A MATERIAL INDUCEMENT FOR ASSIGNOR ENTERING INTO THIS ASSIGNMENT AND THE NOTE.

**IN WITNESS WHEREOF**, the Parties have executed this Assignment as of the Effective Date.

Witnesses:

"**Assignor**"

Strategy Investments, LLC

Print Name: PETER PAUL MENDEL

By: _____
Sandro Sordi

Print Name: Danielle Foroozandeh

As its:  Manager

\*\*SEE ATTACHED NOTARY\*\*

STATE OF CALIFORNIA    )
                                          ) S.S.
COUNTY OF ORANGE     )

The foregoing instrument was acknowledged before me this 26 day of January, 2006, by Sandro Sordi as Manager of Strategy Investments, LLC, a Florida limited liability company, on behalf of the company, who is personally known to me or has produced CANADA PASSPORT _____ as identification.

_____
(Notary Signature)
TODD BONESTEELE
(Notary Name Printed)
NOTARY PUBLIC, STATE OF CALIFORNIA

(NOTARY SEAL)

Commission No. 1540959
Commission Expires: JANUARY 2, 2009

TODD BONESTEELE
COMM. #1540959
Notary Public-California
ORANGE COUNTY
My Comm. Exp. Jan 2, 2009

STATE OF CALIFORNIA )
) ss.
COUNTY OF ORANGE )

On January 26, 2006, before me, Todd Bonesteele, a Notary Public in and for said State, personally appeared Sandro Sordi personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the persons, or the entity upon behalf of which the persons acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____                    (Seal)

TODD BONESTEELE
COMM. #1540859
Notary Public-California
ORANGE COUNTY
My Comm. Exp. Jan 2, 2009

Witnesses:                                    "Assignee"

*Peter Paul Mendel*                           GVEC Resource, Inc.

Print Name: *PETER PAUL MENDEL*

                                              By: _____

*Danielle Anglin*                             Print Name: *Robert J. Anderson*

Print Name: *Danielle Foroozandeh*
                                              As its: *Director*

                                              **SEE ATTACHED NOTARY**

STATE OF _CALIFORNIA_   )
                        ) S.S.
COUNTY OF _ORANGE_      )

The foregoing instrument was acknowledged before me this _26_ day of January, 2006, by GVEC Resource, Inc., an international business company organized under the laws of the British Virgin Islands on behalf of the corporation, who is personally known to me or has produced _CALIFORNIA DRIVERS LICENSE_ as identification.


(NOTARY SEAL)                                 _____
                                              (Notary Signature)
                                              _TODD BONESTEELE_
                                              (Notary Name Printed)
                                              NOTARY PUBLIC, STATE OF _CALIFORNIA_
                                              Commission No. _1540959_
                                              Commission Expires: _JANUARY 2, 2009_

[Notary stamp: TODD BONESTEELE COMM. #1540959 Notary Public-California ORANGE COUNTY My Comm. Exp. Jan 2, 2009]

STATE OF CALIFORNIA       )
                               ) ss.
COUNTY OF ORANGE        )

On January 26, 2006, before me, Todd Bonesteele, a  Notary Public in and for said State, personally appeared Robert Anderson personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the persons, or the entity upon behalf of which the persons acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

TODD BONESTEELE
COMM. #1540959
Notary Public-California
ORANGE COUNTY
My Comm. Exp. Jan 2, 2009

(Seal)

# MANAGEMENT AGREEMENT

This Management Agreement ("Agreement") is made as of the 26th day of January, 2006, by and between Strategy Investments LLC, a Florida limited liability company ("SILLC") and Private Equity Management Group, Inc., a Nevada corporation ("PEMG").

RECITALS

WHEREAS, SILLC desires to enter into a loan agreement with GVEC Resource Inc., an international business company organized under the laws of the British Virgin Islands, for Twenty Nine Million United States Dollars ($29,000,000) ("Loan Agreement");

WHEREAS, SILLC has issued a promissory note for Twenty Nine Million United States Dollars ($29,000,000) ("Promissory Note") in favor of GVEC Resource Inc.;

WHEREAS, PEMG has arranged the Loan Agreement and the Promissory Note;

WHEREAS, the Promissory Note and the Loan Agreement are secured, in addition to other security, by assignments of mortgages in favor of SILLC issued to secure loan obligations secured by second mortgages on properties owned by Shell Vacations LLC or related entities ("Shell"); and

WHEREAS, the cash flow generated from Shell is remitted to SILLC.

NOW, THEREFORE, in consideration of the foregoing recitals and the covenants and conditions herein set forth, the parties hereto agree as follows:

1. *Appointment*.  SILLC hereby appoints PEMG to arrange, facilitate and structure the Loan Agreement and the Promissory Note.

2. *Services*.  PEMG shall perform the following services:

   a. Arrange and facilitate the Loan Agreement and the Promissory Note.

   b. Arrange and facilitate the funding of the funds represented by the Promissory Note.

   c. Monitor the collection of revenues by SILLC to make the following payments:

      i. Until Thirty One Million Nine Hundred Thousand United States Dollars ($31,900,000) are set aside in an account on which PEMG is a necessary signer ("Sinking Fund") for the repayment of the Promissory Note in accordance with the terms of the Promissory

Exhibit 13

Note and the Loan Agreement, all revenues of SILLC will be directed to the Sinking Fund.

   ii.  Repayment of the Shortfall and Shortfall Interest, as those terms are defined in Sections 2.d and 3.c.

   iii.  Payment of the Management Fee, as described hereinafter.

   iv.  Thereafter, all revenues are available for the use of SILLC at SILLC's sole discretion.

  d.  Arrange, at PEMG's sole discretion, to cover the shortfall should the income received by SILLC from Shell or otherwise not be sufficient to retire the Promissory Note in full in accordance with the terms of the Promissory Note and the Loan Agreement ("Shortfall").

3.  *Compensation*.  PEMG shall receive the following compensation ("Management Fee"):

  a.  PEMG shall receive Nine Million United States Dollars ($9,000,000) as its fee on a priority basis, but such fee shall be payable only from all revenues received by SILLC after payments to the Sinking Fund but before any other payments for expenses and other borrowings and distributions ("Priority Payment").

  b.  A fee equal to the Shortfall, if PEMG covers the Shortfall for covering the Shortfall ("Shortfall Fee").

  c.  Interest on the Shortfall in the amount of eighteen percent (18%) per annum ("Shortfall Interest") until the Shortfall is repaid in full.

  d.  The Priority Payment, Shortfall, the Shortfall Fee and the Shortfall Interest shall be paid from the Shell payments or other sources of SILLC, after funding of the Sinking Fund, and before any other payments or obligations of SILLC.

4.  *Security*.  The payment of the Management Fee shall be secured by the Management Fee Pledge Agreement issued by Strategy International Insurance Group, Inc., a Texas corporation ("SIIG"), in favor of PEMG pledging of all the SIIG membership interest in SILLC ("Management Fee Pledge Agreement") and filing of UCC Statements in Florida and Texas. SIIG guarantees the payments and performance of SILLC under this Management Agreement..

5.  *Events of Default and Remedies*.

  a.  <u>Events of Default</u>.  An "Event of Default" under this Agreement means:

SILLC    SIIG    PEMG

  i. Failure to pay any payment as and when required under this
    Agreement;

  ii. Failure to perform or observe any other covenant or agreement
    contained herein and such failure shall continue for 30 days after
    receipt of written notice thereof from the other party, or if cure is
    not possible within such time, the failure to diligently pursue a cure
    and cure within a reasonable time;

  iii. Any representation, warranty, certification or statement of fact
    made hereto or in any document delivered in connection herewith
    or therewith shall be incorrect or misleading in any material
    respect when made or deemed made;

  iv. Insolvency of SILLC, the issuer of any surety bond or insurance
    policy, or any reinsurer or endorser doing business with SILLC;

  v. An assignment made or attempted to be made by SILLC or
    guarantor without the prior written consent of PEMG;

  vi. Release of any of the assignments securing the Promissory Note
    ("Assignments"), the Promissory Note, or the promissory notes on
    which the Assignments are issued ("Secured Promissory Notes")
    without the prior written consent of PEMG; or

  vii. A default by SILLC or any guarantor or their subsidiaries under
    the Promissory Notes, the Secured Promissory Notes, Deeds of
    Trust, Mortgages, or Assignments.

b. <u>Remedies</u>.  On and during the occurrence of an Event of Default:

  i. PEMG may, at its option and without notice (such notice being
    expressly waived), declare the Management Fee immediately due
    and payable; and

  ii. PEMG may pursue all rights and remedies available under law
    including money damage and specific performance.

  iii. All remedies are cumulative and concurrent, and may be pursued
    singly, successively, or together against SILLC, any guarantor, the
    security described in this Agreement, and all other security given
    at any time to secure payment under this Agreement all at the sole
    discretion of PEMG.

  iv. Additionally, PEMG may resort to every other right or remedy
    available at law or in equity without first exhausting the rights and
    remedies contained in this Agreement, all in PEMG's sole
    discretion.

SILLC  SIIG  PEMG

v.   Failure of PEMG, for any period of time or on more than one
occasion, to exercise its option to accelerate the Maturity Date
shall not constitute a waiver of the right to exercise the same at any
time during the continued existence of any Event of Default or any
subsequent Event of Default. No course of dealing between
SILLC and PEMG or any delay on the part of PEMG in exercising
any rights under this Agreement shall operate as a waiver of any
rights of PEMG.

vi.  If any attorney is engaged by PEMG: (i) to collect the
Management Fee, whether or not legal proceedings are thereafter
instituted by PEMG; (ii) to represent PEMG in any bankruptcy,
reorganization, receivership, or other proceedings wherein SILLC,
guarantors or any related entity is a party, affecting creditors'
rights and involving a claim under this Agreement; (iii) to protect
the liens and security interests under this Agreement; (iv) to
represent PEMG in any other proceedings whatsoever in
connection with this Agreement including, without limitation, post
judgment proceedings to enforce any judgment related to this
Agreement, bankruptcy, and probate proceedings; or (vi) in
connection with seeking an out-of-court workout or settlement of
any of the foregoing, then SILLC shall pay to PEMG all
reasonable costs, attorneys' fees, and expenses in connection
therewith, in addition to all other amounts due under this
Agreement or the Note.

6.  _Waiver_.  Except to the extent otherwise expressly set forth in this Agreement,
SILLC, for itself and all endorsers, guarantors, and sureties of this Agreement,
and their heirs, successors, assigns, and legal representatives, waives presentment
for payment, demand, notice of nonpayment, notice of dishonor, protest of any
dishonor, notice of protest, and protest of this Agreement, and all other notices in
connection with the delivery, acceptance, performance, default, or enforcement of
the payment of this Agreement, and agrees that their respective liability shall be
unconditional and without regard to the liability of any other party and shall not
be in any manner affected by any indulgence, extension of time, renewal, waiver,
or modification granted or consented to by PEMG.  SILLC, for itself and all
endorsers, guarantors, and sureties of this Agreement, and their heirs, legal
representatives, successors, and assigns, consents to every extension of time,
renewal, waiver, or modification that may be granted by PEMG with respect to
the payment or other provisions of this Agreement, and to the release of any
makers, endorsers, guarantors, or sureties, and of any collateral given to secure
the payment of this Agreement, or any part of this Agreement, with or without
substitution, and agrees that additional makers, endorsers, guarantors, or sureties
may become parties to this Agreement without notice to SILLC or to any
endorser, guarantor, or surety, and without affecting the liability of any of them.

SILLC        SIIG        PEMG

7. *Choice of Law, Jurisdiction, and Venue*.  This Agreement shall be deemed to have been made and executed in the State of Nevada, and this Agreement shall be interpreted, construed, and enforced in accordance with the laws of the State of Nevada without regard to the principles of conflict of laws.

> SILLC AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING DIRECTLY, INDIRECTLY, OR OTHERWISE IN CONNECTION WITH, OUT OF, RELATED TO OR FROM THIS AGREEMENT SHALL BE LITIGATED, AT PEMG'S SOLE DISCRETION AND ELECTION, IN COURTS HAVING A SITUS WITHIN THE STATE OF NEVADA. SILLC HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY LOCAL, STATE, OR FEDERAL COURT LOCATED WITHIN OR FOR SUCH STATE.  SILLC HEREBY WAIVES ANY RIGHT IT MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT AGAINST IT BY PEMG ON THE LOAN DOCUMENTS INCLUDING THE NOTE OR THIS AGREEMENT IN ACCORDANCE WITH THIS PARAGRAPH.

8. *Severability*.  If one or more of the provisions of this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall to the fullest extent permitted by applicable law not affect any other provisions of this Agreement, but this Agreement shall be construed to the fullest extent permitted by applicable law as if such invalid, illegal, or unenforceable provision had never been contained in this Agreement.

9. *Amendment or Modification*.  This Agreement shall not be modified, amended, changed, terminated, supplemented, or any term or condition hereof waived except in writing signed by SILLC and PEMG.

10. *Assignment*.  Neither SILLC nor the guarantor shall assign its obligations under this Agreement without the express written consent of PEMG.  For purposes of this Paragraph, the term "assign" includes the following: (a) any dissolution, merger, consolidation, or other reorganization of SILLC or the guarantor; (b) a sale of more than 50% of the value of the assets of SILLC or the guarantor; or (c) a sale or other transfer by any of SILLC's or the guarantor's controlling parties of more than a controlling amount of such party's equity interest in SILLC. PEMG, however, may assign, transfer, pledge or sell its interest in this Agreement.  On notification of such assignment, SILLC shall thereafter remit all payments under this Agreement directly to the address set forth on the notification.

11. *Headings*.  Headings are for convenience of reference only and shall not be deemed to modify, explain, enlarge, or restrict any of the provisions of this Agreement.

SILLC          SIIG          PEMG

12. _Notices_.  All notices and other communication required or permitted to be given shall be in writing addressed to the respective party as set forth below and may be personally served or sent by reputable overnight courier and shall be deemed given:  (a) if served in person, when served; or (b) if by reputable overnight courier, on the first business day after delivery to the courier (or the date on which delivery was refused by the addressee as confirmed by the return receipt or courier service).  Notices shall be sent to the parties at the following addresses; provided, however that the parties may change the address for notice purposes up to four (4) times in accordance with this Agreement:

    a.   To SILLC:

        Strategy Investments, LLC
        200 Yorkland Boulevard
        Suite 200
        Toronto, Ontario
        Canada M2J 5C1
        Attn: Sandro Sordi

    With a copy to:

        Robert J. Webb, Esq.
        Baker & Hostetler LLP
        200 South Orange Avenue
        Suite 2300
        Orlando, Florida 32801

    b.   To the Guarantor:

        Strategy International Insurance Group, Inc.
        200 Yorkland Boulevard
        Suite 710
        Toronto, Ontario
        Canada M2J 5C1

    With a copy to:

        Robert J. Webb, Esq.
        Baker & Hostetler LLP
        200 South Orange Avenue
        Suite 2300
        Orlando, Florida 32801

    c.   To PEMG:

        Private Equity Management Group, Inc.

2006-01-26           Page 6 of 8

SILLC    SIIG    PEMG

One Park Plaza, Suite 550
Irvine, CA 92614-2594
Attn: Nasar Aboubakare and Robert Anderson

With a copy to:

Peter Paul Mendel, Esq.
Private Equity Management Group, Inc.
One Park Plaza, Suite 550
Irvine, CA 92614-2594

13. *Time of Essence*.  Time is of the essence of this Agreement and the performance of each of the covenants and agreements in this Agreement.

14. *Confidentiality and Reputation*.  The parties hereto shall not disclose to any person, not authorized by the relevant party to receive, any information relating to such party or to the affairs of such party of which the party disclosing the same shall have possessed during the period of this Agreement and each party shall use its reasonable endeavors to prevent any such disclosure as aforesaid, except for disclosure: (i) to legal counsel, accountants and other professional advisors to the parties or their agents on a need-to-know basis who have agreed to be subject to this Section; (ii) to regulatory officials having jurisdiction over the parties; (iii) required by applicable law or as required in connection with any legal proceeding; (iv) to any other party hereto; (v) to another person in connection with a potential assignment or participation under this Agreement, provided that such person shall have agreed in writing to be subject to this Section; and (vi) of information that has been previously disclosed publicly without breach of this provision or as otherwise required by this Agreement or the other Loan Documents.

15. *Binding Effect*:  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, successors and assigns.

16. *Counterparts*:  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same document.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of Effective Date.

STRATEGY INVESTMENTS, LLC,

_____
Name:  Sandro Sordi
Title: Managing Director

2006-01-26                              Page 7 of 8

SILLC          SIIG          PEMG

STRATEGY INTERNATIONAL INSURANCE GROUP, INC., as Guarantor

Name:  Stephen J. Stonhill
Title:   President

PRIVATE EQUITY MANAGEMENT GROUP, INC.,

Name: Wil Quon
Title: Principal and Chief Financial Officer

Name: Todd Gillespie
Title: Principal

2006-01-26                          Page 8 of 8

SILLC        SIIG        PEMG

MANAGEMENT FEE PLEDGE AGREEMENT

MANAGEMENT FEE PLEDGE AGREEMENT, dated as of January 26, 2006 ("Management Fee Pledge Agreement"), by and between Strategy International Insurance Group, Inc., a Texas corporation (the "Pledgor"), and Private Equity Management Group, Inc., a corporation organized under the laws of the State of Nevada (the "Pledgee").

R E C I T A L S

A.      Strategy Investments LLC ("SILLC") and Pledgee are parties to that certain Management Agreement, dated of even date herewith ("Management Agreement").

B.      Pledgor guarantees the payments and performance of SILLC under the Management Agreement.

C.      Pledgor and Pledgee desire to secure the Management Fee, as that term is defined in the Management Agreement.

D.      Pledgor is both the parent company of SILLC and the holder of one hundred percent (100%) of the membership interest in SILLC ("Member Interest").

E.      The Pledgor, as owner of the Member Interest and parent company of SILLC, shall derive benefit from the Management Agreement and has therefore agreed to pledge all of its Member Interest to the Pledgee, upon the terms and subject to the conditions set forth herein.

NOW, THEREFORE, for and in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Pledgor and the Pledgee hereby agree as follows:

1.      Defined Terms; Construction.

(a)      Unless otherwise defined herein, all terms defined in Article 8 and Article 9 of the Uniform Commercial Code in effect as of the date hereof in the State of Nevada are used herein as defined therein.

(b)      The words "hereby," "hereof," "herein" and "hereunder" and words of like import when used in this Pledge Agreement shall refer to this Management Fee Pledge Agreement as a whole and not to any particular provision of this Management Fee Pledge Agreement. Section references herein are to this Management Fee Pledge Agreement unless otherwise specified.

(c)      All terms defined in this Management Fee Pledge Agreement in the singular shall have comparable meanings when used in the plural, and vice versa, unless otherwise specified.

PEMG    SILLC    SIIG

Exhibit 14

2.    Pledge. As collateral security for the payment of the Management Fee by SILLC and guaranteed by Pledgor in accordance with the terms of the Management Agreement, (the "Obligations"), the Pledgor hereby pledges, assigns and grants to the Pledgee a first priority security interest in and to the Member Interest, together with all additional membership interests in SILLC acquired by the Pledgor after the date hereof ("Additional Member Interest"), and the certificates, if any representing Member Interest and Additional Member Interest ("Pledged Member Interest") subordinate only to the Interim Pledge Agreement entered into of even date between Pledgor and GVEC Resource Inc., an international business company organized under the laws of the British Virgin Islands. Simultaneously herewith, the Pledgor is delivering to the Pledgee the certificates, if any representing the Member Interest, together with Member Interest powers, duly executed in blank. The Pledgor will deliver to the Pledgee the certificates, if any representing any Additional Member Interest, together with Additional Member Interest powers, duly executed in blank, once acquired by Pledgor.

3.    Pledgee Rights Regarding Pledged Member Interest. Subject to the rights of GVEC Resource Inc. under the Interim Pledge Agreement, the Pledgee may, upon the failure of SILLC or Pledgor to fulfill the Obligations or on the occurrence of an Event of Default as that term is defined in the Management Agreement ("Event of Default"), at its option, upon prior written notice to the Pledgor, transfer or register the Pledged Member Interest (in whole, but not in part) into its or its nominee's name without any indication that such Pledged Member Interest is subject to the security interest hereunder, and the Pledgor will cause SILLC to cooperate with the Pledgee in effecting any such transfer or registration.

4.    Representations and Warranties. The Pledgor represents and warrants as follows:

(a)    It is the sole legal and beneficial owner of the Member Interest, free and clear of any lien except for the security interest created by this Management Fee Pledge Agreement and the Interim Pledge Agreement, to which this Management Fee Pledge Agreement is subordinate. The Pledged Member Interest constitutes 100% of the issued and membership interested in SILLC.

(b)    It has full corporate power to execute, deliver and perform this Management Fee Pledge Agreement. Such execution, delivery and performance have been duly authorized and do not violate any of the Pledgor's charter documents, any applicable law, rule, negotiation or court order or any contract or agreement binding on the Pledgor or its property.

(c)    There are no restrictions on the voting rights associated with any of the Pledged Member Interest, other than pursuant to this Management Fee Pledge Agreement, the Interim Pledge Agreement, or as set forth in the Management Agreement and as may be set forth in a membership agreement of SILLC, to which the Pledgee shall be a party.

(d)    Except for such action as shall be required to be taken by the Pledgee to perfect its interest in the Pledged Member Interest, no authorization, approval, or other action by, and no notice to or filing with, any governmental authority or regulatory body is required either (i) for the pledge of the Pledged Member Interest pursuant to this

PEMG          SILLC          SIIG

Management Fee Pledge Agreement or (ii) for the execution, delivery or performance of this Management Fee Pledge Agreement by the Pledgor. The pledge of the Pledged Member Interest pursuant to this Management Fee Pledge Agreement creates a valid and perfected first priority security interest in the Pledged Member Interest, in favor of the Pledgee securing the performance of the Obligations, subordinated only to the Interim Pledge Agreement.

5.      Distributions; Voting Rights.    Unless an Event of Default shall have occurred and be continuing, the Pledgor shall be permitted to receive all cash distributions paid in the normal course of business of SILLC and consistent with past practice, to the extent permitted in the Management Agreement, the Interim Pledge Agreement in respect of the Pledged Member Interest   and, except as otherwise agreed among the parties pursuant to the Management Agreement, to exercise all voting and company rights with respect to the Pledged Member Interest; provided, however, that no vote shall be cast or company right exercised or other action taken which, in the Pledgee's reasonable judgment, would impair the Pledged Member Interest or which would be inconsistent with or result in any violation of any provision of the Management Agreement, this Management Fee Pledge Agreement, the Interim Pledge Agreement, or any other document or instrument related to the foregoing or the transactions contemplated thereby and to which Pledgee has not consented in its sole discretion in writing.

6.      Transfers and Other Liens.   The Pledgor agrees that it will not create any lien upon or with respect to any of the Pledged Member Interest, except for the security interest under this Management Fee Pledge Agreement and the Interim Pledge Agreement, not permit any other obligation on SILLC except to which Pledgee has consented in its sole discretion in writing.

7.      Additional Security.   As additional security Pledgee and SILLC shall permit and corporate in the filing UCC Statement in Florida and Texas, and such other jurisdictions as requested by Pledgee.

8.      Remedies; Application of Proceeds.

(a)      If an Event of Default shall have occurred and be continuing, without any further action required thereby, the Pledgee may, subject to the rights of GVEC Resource Inc. under the Interim Pledge Agreement upon prior written notice to the Pledgor, transfer the Pledged Member Interest and the Additional Member Interest into the name of the Pledgee or a designee thereof, and the Pledgee or such designee shall thereafter have ownership of the Pledged Member Interest and the Additional Member Interest, as the case may be, together with all rights, including voting rights, appurtenant thereto.

(b)      The parties hereto hereby confirm and agree that the transfer of the Pledged Member Interest to the name of the Pledgee or a designee pursuant to this Section shall be deemed to be in total satisfaction of the Obligations and that no other remedy shall be available to the Pledgee.

9.      Termination of this Security Agreement; Release of Pledged Member Interest. The pledge made and the security interest granted by the Pledgor under this Management Fee Pledge Agreement shall terminate upon the satisfaction of the Obligations and pursuant to the

PEMG        SILLC        SIIG

terms of the Management Agreement and the payment in full of the Management Fee. Upon such termination the Pledgee shall promptly execute and deliver to the Pledgor the certificates, if any evidencing the Pledged Member Interest and the accompanying Member Interest and Additional Member Interest powers, together with such instruments, documents and agreements as are reasonably necessary or reasonably desirable to terminate the Pledgee's security interest in the Pledged Member Interest. However, should the Member Interest and Additional Member Interest be transferred to Pledgee in accordance with Paragraph 8(a), then such transferred interest shall remain and there will not be a return of the Member Interest and Additional Member Interest to Pledgor.

10. <u>Successors and Assigns</u>. This Management Fee Pledge Agreement shall be binding upon the parties and their successors and assigns in accordance with the Management Agreement. Nothing set forth herein is intended or shall be construed to give any other person any right, remedy or claim under, to or in respect of this Management Fee Pledge Agreement or any Pledged Member Interest.

11. <u>Applicable Law.</u> This Management Fee Pledge Agreement shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the internal laws of the State of Nevada, without regard to conflicts of law.

12. <u>Consent to Jurisdiction and Service of Process</u>. The Pledgor and the Pledgee agree that the terms of the Management Agreement with respect to consent to jurisdiction and service of process shall apply equally to this Management Fee Pledge Agreement.

13. <u>Waiver Of Jury Trial</u>. The Pledgor and the Pledgee waive any right to trial by jury in any action, proceeding or dispute, whether sounding in contract, tort, or otherwise, between the Pledgee and the Pledgor arising out of, or related to, the transactions contemplated by this Management Fee Pledge Agreement or any other instrument, document or agreement executed or delivered in connection herewith. The Pledgor or the Pledgee may file an original counterpart or a copy of this Management Fee Pledge Agreement with any court as written evidence of the consent of the parties hereto to the waiver of their right to trial by jury.

14. <u>Severability</u>. Whenever possible, each provision of this Management Fee Pledge Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but, if any provision of this Management Fee Pledge Agreement shall be held to be prohibited or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Management Fee Pledge Agreement.

15. <u>Further Assurances</u>. The parties hereto agree to cooperate and will execute and deliver, or cause to be executed and delivered, all such other Member Interest and Additional Member Interest powers, proxies, instruments and documents as may be reasonably requested from time to time in order to carry out the provisions and purposes of this Management Fee Pledge Agreement.

PEMG      SILLC      SIIG

16.     Notices.  All notices and other communications required or desired to be served, given or delivered hereunder shall be in writing and shall be served, given or delivered as provided with respect to the Pledgor and the Pledgee in the Management Agreement.

17.     Amendments, Waivers and Consents.  None of the terms or provisions of this Management Fee Pledge Agreement may be waived, altered, modified or amended, and no consent to any departure by a party hereto herefrom shall be effective, except by or pursuant to an instrument in writing which is duly executed by the Pledgor and the Pledgee.  Any such waiver shall be valid only to the extent set forth therein.  No failure to exercise or delay in exercising any right, power or privilege under this Management Fee Pledge Agreement shall operate as a waiver thereof; and no single or partial exercise of any right, power or privilege under this Management Fee Pledge Agreement shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

18.     Section Titles.  The section titles herein are for convenience of reference only, and shall not affect in any way the interpretation of any of the provisions hereof.

19.     Execution in Counterparts.  This Management Fee Pledge Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.

IN WITNESS WHEREOF, the Pledgor and the Pledgee have executed this Management Fee Pledge Agreement as of the date set forth above.

STRATEGY INTERNATIONAL INSURANCE GROUP, INC.

By:_____
Name: Stephen J. Stonhill
Title: President


PRIVATE EQUITY MANAGEMENT GROUP, INC.



By:_____
Name: Robert Anderson
Title: Managing Partner

PEMG      SILLC      SIIG

By: _____

Name: Todd Gillespie

Title: Prinicipal